RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 82768
lruss@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
Robert F. Gookin, State Bar No. 251601
rgookin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Defendants
FOREVER 21, INC., FOREVER 21 LOGISTICS, INC.,
FOREVER 21 RETAIL, INC., JIN SOOK CHANG,
and DO WON CHANG

COLUCCI & UMANS
Frank J. Colucci (*Pro Hac Vice*)
fcolucci@colucci-umans.com
David M. Dahan (*Pro Hac Vice*)
ddahan@colucci-umans.com
Janice K. Yoon (*Pro Hac Vice*)
jyoon@colucci-umans.com
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728

Attorneys for Plaintiff,
EXPRESS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, INC.; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; and DOES 1 through 50, inclusive,<br><br>       Defendants. | Case No. CV09-04514 ODW (VBK)<br>[The Honorable Victor B. Kenton]<br>**JOINT STIPULATION RE DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER WITH RESPECT TO THE DEPOSITIONS OF DO WON CHANG AND JIN SOOK CHANG**<br><br>**[Declaration of Do Won Chang; Declaration of Jin Sook Chang; Declaration of Frank J. Colucci Filed Concurrently Herewith]**<br><br>Hearing Date:   November 17, 2009<br>Time:          10:00 a.m.<br>Location:      Courtroom 934H |

RUSS, AUGUST & KABAT

1    Pursuant to Federal Rule of Civil Procedure 37 and Central District of
2    California Local Rule 37-2, Defendants Forever 21, Inc., Forever 21 Logistics,
3    LLC, Forever 21 Retail, Inc., Jin Sook Chang, and Do Won Chang (the "Forever
4    21 Parties"), by and through their undersigned attorneys, and Plaintiff Express,
5    LLC ("Express"), by and through its undersigned attorneys (collectively, the
6    "Parties"), respectfully submit this Joint Stipulation re Defendants' Request For A
7    Protective Order With Respect To The Depositions of Do Won Chang and Jin
8    Sook Chang.

9    **I.    INTRODUCTION**

10   **Defendants' Statement**

11   While the Federal Rules of Civil Procedure permit broad discovery, such
12   discovery is not without limits.   For example, depositions are not to be used to
13   annoy, embarrass and harass high-ranking Forever 21 executives who have no
14   personal knowledge of facts material to the litigation.

15   Here, Express has noticed the depositions of Do Won Chang, the co-founder
16   and CEO of Forever 21, Inc., and Jin Sook Chang, the co-founder and Corporate
17   Secretary of Forever 21, Inc., despite the fact that:

18   • The Forever 21 Parties have identified other Forever 21 employees
19      who would likely have relevant information with respect to this
20      lawsuit and Express has not taken, or even noticed, any of their
21      depositions in this case;

22   • Express is completely aware that the Changs are high level
23      executives and are not involved with the day to day operations of
24      Forever 21 in any way relevant to the allegations in the Complaint
25      and therefore lack specific, unique knowledge with respect to the
26      material allegations in Express's Complaint;

27   • The Court had not even issued a scheduling order in this case; and

28

1

- Express served the deposition notices for the Changs on the same day it served its initial discovery requests and set the depositions weeks before the discovery responses were due – as a result, Express intended to force the Changs to sit for deposition before Express had received any documents or even a single shred of other discovery in this case, including the Changs' responses to Express's First Set of Interrogatories.

Accordingly, because Express's depositions of the Changs are at best premature, and at worst an unwarranted abuse of the discovery process, the Forever 21 Parties request the Court to completely prohibit Express from taking the depositions of Do Won Chang and Jin Sook Chang, or in the alternative, to prohibit Express from taking the depositions of Do Won Chang and Jin Sook Chang until such time as Express has (1) taken the depositions of, at least, the other Forever 21 employees already identified by the Forever 21 Parties as likely to have relevant discoverable information, and (2) demonstrated that the Changs are likely to possess relevant information with respect to this case that Express was not able to obtain through the other depositions or through other, less burdensome means.

**Plaintiff's Statement**

The Federal Rules of Civil Procedure allow for the deposition of any person to be taken during the course of discovery, including a party to an action. Express has noticed the depositions of Jin Sook Chang and Do Won Chang (collectively the "Changs"), who are individual defendants in the present lawsuit. In an attempt to delay the progression of discovery in this case, defendants now request that the Court issue a protective order barring the depositions. As discussed below, Defendants offer no viable reasoning to support the issuance of a protective order by the Court and their request should be denied in its entirety.

Within the past seven years, Forever 21, which the Changs founded and own the majority of, has been named as a defendant in over fifty (50) intellectual

2

property infringement actions stemming from its "shop and copy" business model, whereby, instead of paying or hiring designers, it acquires products to be sold in its own Forever 21 retail stores by purchasing other companies' competing products and directing its manufacturers to produce the products with little or no design changes. It is Express's position in this case that this business model was conceived of by the Changs, put into place by the Changs and continues to be directly supervised and managed, on a day-to-day basis, by the Changs.

Defendants seek a protective order completely precluding Express from taking the depositions of the Changs despite the fact that:

- The Changs are individually named defendants in this action whose depositions were noticed by Express in a timely and proper manner pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court;

- As the owners and co-founders of Forever 21, and in light of Forever 21's immense record as a defendant in infringement actions, the Changs' involvement in the day-today operations of Forever 21 is pervasive and, despite the Changs' contentions to the contrary, there is a substantial and good-faith belief that they are personally knowledgeable of issues relevant to the allegations contained in the complaint, including the very infringements at issue;

- Defendants' declarations professing little or no knowledge of relevant facts are self-serving and entitled to no weight; moreover Express is plainly entitled to depose them with respect to their claimed lack of knowledge; and

- The Changs provide no evidence that they would suffer any harm, undue burden or inconvenience if these depositions were to proceed.

Given the Changs' status as individually named Defendants in this case and given Express's allegations of their extensive involvement in the development,

3

1    implementation and management of the Forever 21 business, Defendants' request
2    for a protective order should be denied in its entirety and Express should be
3    allowed to proceed with the depositions of the Changs without further delay.

4    **II.    BACKGROUND AND RELEVANT FACTS**

5    **Defendants' Statement**

6          Express filed the Complaint (the "Complaint") in this action on June 23,
7    2009.   The Complaint alleges causes of action for Copyright Infringement, Trade
8    Dress Infringement, and Unfair Competition.    Express alleges that it has created
9    four plaid designs, the "Bruin" design, the "Ocean" design, the "Jack" design, and
10   the "Roth" design (collectively, the "asserted Plaid Designs").   Complaint at pp. 6-
11   11. Express alleges that it holds copyrights for each of the asserted Plaid Designs.
12   *Id.* Express alleges that is has used the asserted Plaid Designs on lines of men's
13   shorts that are sold in Express's stores. *Id.* Express further alleges that Defendants
14   have intentionally infringed Express's purported copyrights to the asserted Plaid
15   Designs. *Id.* Additionally, Express alleges that since in or about December 2008,
16   it has adopted, used and is using in interstate commerce throughout the United
17   States, "a unique and distinctive trade dress for one of its men's 'track jacket'
18   products." *Id.* at p. 11. Express further alleges that after Express introduced that
19   "Track Jacket Trade Dress" on the market, "Defendants adopted and began using a
20   trade dress for Defendants which is virtually identical to and/or a colorable
21   imitation of Express's Track Jacket Trade Dress." *Id.* at p. 12.

22         Defendants filed their Answer to Express's Complaint (the "Answer") on
23   August 21, 2009.    Defendants denied the material allegations in Express's
24   Complaint and asserted various Affirmative Defenses, including that some or all of
25   Express's claims are barred or subject to dismissal because Express has failed to
26   comply with renewal, notice, and/or registration requirement, or with other
27   necessary formalities; some or all of Express's works of portions thereof constitute
28   unprotectable ideas, procedures, processes, systems, methods of operation,

4

concepts, principles, or discoveries; and that some or all of Express's works or portions thereof are not original. *See* Answer at p. 36.

On August 24, 2009, the Court issued an Order setting the Scheduling Conference in this action for October 5, 2009. Pursuant to the terms of that Order, the Parties were required to meet and confer with respect to the Joint Rule 26 Report no later than September 14, 2009 and to file their Joint Rule 26 Report no later than September 21, 2009. The Parties complied with both of those directives.

On September 15, 2009, the day after the Parties met and conferred, but prior to the filing of the Joint Rule 26 Report, Express served the following discovery:

- Plaintiff's First Set of Interrogatories to Forever 21, Inc. (Nos. 1-16)
- Plaintiff's First Set of Interrogatories to Forever 21 Retail, Inc. (Nos. 1-16)
- Plaintiff's First Set of Interrogatories to Forever 21 Logistics LLC. (Nos. 1-16)
- Plaintiff's First Set of Interrogatories to Jin Sook Chang (Nos. 1-16)
- Plaintiff's First Set of Interrogatories to Do Won Chang (Nos. 1-16)
- Plaintiff's First Set of Requests for Production to Forever 21, Inc. (Nos. 1-25)
- Plaintiff's First Set of Requests for Production to Forever 21 Retail, Inc. (Nos. 1-25)
- Plaintiff's First Set of Requests for Production to Forever 21 Logistics, LLC. (Nos. 1-25)
- Plaintiff's First Set of Requests for Production to Jin Sook Chang (Nos. 1-25)
- Plaintiff's First Set of Requests for Production to Do Won Chang (Nos. 1-25)
- Notice of Deposition of Jin Sook Chang (for October 6, 2009)

5

RUSS, AUGUST & KABAT

1    • Notice of Deposition of Do Won Chang (for October 7, 2009)

2    On September 25, 2009, the Forever 21 Parties filed their Rule 26(a)(1)

3    Initial Disclosures (the "Forever 21 Disclosures"). In the Forever 21 Disclosures,

4    the Forever 21 Parties identified four lower level Forever 21 employees (Jenny

5    Kim, Derrick Klunchoo, Donna Hampton, and Ann Cadier-Kim), that they

6    believed were likely to have discoverable information with respect to this case.

7    Forever 21 Disclosures at 2. The Forever 21 Parties indicated that those

8    individuals were likely to have information regarding the selection and acquisition

9    of certain of the garments identified in the Complaint; the distribution of the

10   garments identified in the Complaint; financial matters relating to the purchase and

11   sale of the garments identified in the Complaint, as well as the overall operation of

12   Defendants' business and the industry in which Defendants do business. *Id.*

13   On September 29, 2009, the Court issued an Order vacating the October 5,

14   2009 Scheduling Conference.

15   On September 30, 2009, counsel for the Parties met and conferred

16   telephonically with respect to the depositions of Jin Sook Chang and Do Won

17   Chang (collectively, the "Changs"). During that conversation, counsel for the

18   Forever 21 Parties informed counsel for Express that the Changs were high level

19   executives at Forever 21 and did not have any involvement with the allegedly

20   infringing garments or any specific, unique knowledge relevant to this lawsuit that

21   could not be obtained from other Forever 21 employees. Accordingly, counsel for

22   the Forever 21 Parties requested that Express voluntarily withdraw the deposition

23   notices to the Changs and informed counsel for Express that if Express wanted to

24   proceed with depositions on October 6, 2009 and October 7, 2009, the Forever 21

25   Parties would be willing to make the witnesses identified in the Forever 21 Parties'

26   Rule 26(a)(1) Initial Disclosures available. Counsel for the Forever 21 Parties also

27   informed counsel for Express that if Express refused to withdraw the deposition

28   notices for the Changs, then the Forever 21 Parties would be forced to seek a

6

1   protective order.  Counsel for Express indicated that Express intended to proceed
2   with the depositions of the Changs, but would "adjourn" the scheduled depositions
3   until a motion for protective order could be brought and decided.

4   **Plaintiff's Statement**

5   Express filed this lawsuit against Defendants to enforce its intellectual
6   property rights in the wake of Defendants' intentional infringement of four
7   registered copyrights and one trade dress, which are owned by Express.  As urged
8   by the Court in its Order of August 24, 2009, Express actively began conducting
9   discovery prior to the Scheduling Conference required by Fed. R. Civ. P. 16(c)
10  and, in doing so, served its First Sets of Interrogatories and Document Requests on
11  each of the defendants and noticed the depositions of the Changs, two individually
12  named defendants that Express believes to be percipient and knowledgeable
13  witnesses regarding the relevant facts of this case.  Upon the opening of the
14  discovery period, Express immediately began conducting its discovery in order to
15  insure that discovery progresses in a timely and efficient manner in this case.

16  In contrast, thus far Defendants have seemingly done all they can to impede
17  the progression of discovery.  Despite having provided Defendants with a draft
18  stipulated protective order on September 15, 2009, to govern the parties'
19  production of confidential information, Defendants did not provide their comments
20  until October 26, 2009, the date Express's submission herein was due, and, as of
21  the same date, because of such delay, the parties have not filed a proposed
22  stipulated protective order for the Court's approval.  Moreover, Defendants'
23  answers to Express's First Sets of Interrogatories and Requests for Production were
24  evasive, non-responsive and Defendants failed to produce a single document in
25  response to Express's requests.  Thus, these deficiencies may be the subject of a
26  motion to compel should Defendants refuse to supplement them.  Moreover,
27  Defendants are now attempting to prevent Express from taking the properly
28  noticed depositions of two individually named defendants in this action.  It is clear

7

that Defendants' strategy in this litigation is to impede the discovery process at every turn and drive up expenses in the hopes of discouraging Express from continuing with this action.

On March 10, 2009, in a case with facts nearly identical to the present case, where the plaintiff, Anthropologie, another clothing retailer, alleged the infringement of 10 of its copyrights, Judge Dolinger of the United States District Court for the Southern District of New York, issued an opinion that we submit is highly instructive on the issues being raised before this Court. In denying the same relief sought here, a protective order precluding depositions of the Changs, the Court stated:

> First, both proposed defendants are individual defendants in this case. Second, contrary to the representations in the declaration of Jin Sook Chang that she had no involvement in the transactions at issue, she holds the role of Head Buyer, and documents recently produced in unredacted form indicate that she was directly involved in the purchase and sale of all but one of the nine garments at issue. Third, plaintiff has a good-faith basis to inquire whether and in what circumstances she and Do Won Chang personally had access to the allegedly infringed patterns of Anthropologie. Fourth, it now appears that defendants sold some infringing garments at discounted prices after the filing of this lawsuit, and Do Won Chang apparently has ultimately responsibility for such markdowns. Fifth, defendant Forever 21 has a gargantuan record as a defendant in infringement cases, and it is plainly within the purview of relevant discovery for plaintiff to pursue the question of that defendant's business model, which presumably was developed and/or approved by the two co-founders of the business.

1  (Declaration of Frank J. Colucci ("Colucci Decl."), Ex. 4; *Anthropologie, Inc. v.*
2  *Forever 21, Inc. et al.*, 07 Civ. 7873 (RJS) (MHD), March 10, 2009 Memorandum
3  & Order) (internal citations omitted).

4    Thus, similarly to Plaintiff's contentions here, despite the Chang's self-
5  serving sworn declarations stating they had little or no knowledge of the relevant
6  facts at issue, there was a substantial basis to conclude otherwise, namely that
7  Changs were in fact knowledgeable of the relevant facts of the case. Moreover, the
8  Court concluded that Anthropologie was permitted to depose the Changs on the
9  grounds that they are individual defendants and to query them regarding their
10  sworn declarations.

11  ## III. ANALYSIS

12  ## Defendants' Statement

13    The overriding purpose of the Federal Rules of Civil Procedure is to "secure
14  the just, speedy, and inexpensive determination of every action and proceeding."
15  Fed. R. Civ. P. 1.

16    Accordingly, Federal Rule of Civil Procedure 26(c) ("Rule 26(c)")
17  empowers this Court, on good cause shown, to "issue an order to protect a party or
18  person from annoyance, embarrassment, oppression, or undue burden or expense."
19  Fed. R. Civ. P. 26(c); see also *United States v. Columbia Broadcasting System,*
20  *Inc.*, 666 F.2d 364, 369 (9th Cir. 1982)(" Rule 26(c), setting forth grounds for
21  protective orders, was enacted as a safeguard for the protection of parties and
22  witnesses in view of the broad discovery rights authorized in Rule 26(b).")

23    Rule 26(c) further provides that the Court may forbid the requested
24  discovery entirely; may specify terms, including time and place, for the discovery;
25  and/or may prescribe a different discovery method than the one being sought. Fed.
26  R. Civ. P. 26(c).

27    Courts have frequently considered the potential for abuse inherent in
28  noticing the depositions of high-level executives:

RUSS, AUGUST & KABAT

1   When a party seeks to take the deposition of an official at the highest
2   level or "apex" of a corporation, the court may exercise its authority
3   under the federal rules to limit discovery.

4   *Abarca v. Merck & Co., Inc.*, 1:07cv0388 OWW DLB, 2009 U.S. Dist. LEXIS
5   71300 *22 (E.D. Cal. August 3, 2009)(granting Defendant's motion for protective
6   order with respect to Defendant's CEO).

7   Virtually every court that has addressed deposition notices directed at
8   an official at the highest level or "apex" of corporate management has
9   observed that such discovery creates a tremendous potential for abuse
10  or harassment. *See, e.g., Mulvey v. Chrysler Corp., 106 F.R.D. 364*
11  *(D.C. RI 1985)*.  Where a high-level decision maker "removed from
12  the daily subjects of the litigation" has no unique personal knowledge
13  of the facts at issue, a deposition of the official is improper. *Baine v.*
14  *General Motors Corp., 141 F.R.D. 332, 334 (M.D. Ala. 1991); see*
15  also, *First United Methodist Church of San Jose, v. Atlantic Mutual*
16  *Insurance Co.,* 1995 WL 566026 (N.D. Cal. 1995); *Salter v. Upjohn*
17  *Co., 593 F.2d 649 (5th Cir. 1979)*.  This is especially so where the
18  information sought in the deposition can be obtained through less
19  intrusive discovery methods (such as interrogatories) or from
20  depositions of lower-level employees with more direct knowledge of
21  the facts at issue.

22  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL) 2007 U.S.
23  Dist LEXIS 8295 *8 (N.D. Cal. Jan. 25, 2007)(granting Plaintiff's motion for
24  protective order with respect to the deposition of its CEO and COO "pending the
25  taking of less intrusive methods of discovery, including interrogatories and
26  depositions of lower-level [] employees.")

27  When determining whether to allow an apex deposition, courts often
28  consider: (1) whether or not the high-level deponent has unique first-

10

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees. ***When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition.*** However, when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition. Generally, a claimed lack of knowledge on behalf of the deponent does not alone provide sufficient grounds for a protective order.

*WebSideStory, Inc. v. NetRatings, Inc.*, Civil No. 06cv408 WQH (AJB) 2007 U.S. Dist. LEXIS 20481 *7 (S.D. Cal. March 22, 2007)(emphasis added)(denying motion for protective order based on finding that the deponent was "likely to have unique first-hand knowledge of the facts at issue in this case," but ordering defendant to proceed with the corporate deposition of plaintiff's 30(b)(6) witness before taking the deposition of plaintiff's CEO).

Here, Do Won Chang is the co-founder and Chief Executive Officer of Forever 21, Inc. (Declaration of Do Won Chang ("Do Won Chang Decl.") ¶ 1). Mr. Chang's knowledge or information related to the instant litigation is limited to general information regarding the business of Forever 21. (Do Won Chang Decl. ¶ 2.) Mr. Chang has no direct knowledge regarding the creation, design, development, manufacture, production, selection, purchasing, ordering, distribution, marketing, merchandising or recall of any of the allegedly infringing Forever 21 garments at issue in the instant litigation. (Do Won Chang Decl. ¶ 3).

Jin Sook Chang is the co-founder and Corporate Secretary of Forever 21, Inc. (Declaration of Jin Sook Chang ("Jin Sook Chang Decl.") ¶ 1.) In her capacity as Corporate Secretary, Jin Sook Chang is involved with the general

11

supervision of Forever 21 and has general responsibility for developing Forever 21 and its business. (Jin Sook Chang Decl. ¶ 2.) Jin Sook Chang has no unique knowledge regarding the creation, development, manufacture, production, design, selection, purchasing, ordering, advertising, promotion, distribution, marketing, merchandising, retail price, sale, offer for sale or recall of any of the allegedly infringing Forever 21 garments at issue in the present litigation. (Jin Sook Chang Decl. ¶ 3.) Jin Sook Chang's involvement with the Forever 21 buying department is solely in a high-level management capacity. (Jin Sook Chang Decl. ¶ 4.) Any knowledge that Jin Sook Chang might have regarding Forever 21's selection and purchasing of the allegedly infringing garments would be duplicative of information known to other Forever 21 employees, including Jenny Kim, Derrick Klunchoo, Donna Hampton, and Ann Cadier-Kim, all of whom were identified in the Forever 21 Parties' Rule 26(a)(1) Initial Disclosures. (Jin Sook Chang Decl. ¶ 4.)

The Changs are clearly "apex" officers within the context of this litigation. They are involved at the highest level of Forever 21, Inc. and have no "unique first-hand, non-repetitive knowledge of the facts at issue in the case." The Forever 21 Parties have already identified lower-level employees who have the same knowledge with respect to the facts at issue in this case and more. And the fact that the Chang depositions were noticed on the two days after the original date for the Court's scheduling conference; prior to the production of any documents by the Forever 21 Defendants, including the Changs' responses to Express's interrogatories; and prior to the noticing of *any* other depositions, indicates that the true purpose of these depositions is not to obtain relevant, necessary discovery, but rather to force the Changs to take time away from their business and spend money preparing for depositions that will do little, if anything, to move this litigation forward.

12

RUSS, AUGUST & KABAT

**Plaintiff's Statement**

1. **The Party Seeking A Protective Order Carries A "Heavy Burden" To Demonstrate Why The Requested Discovery Should Be Barred**

It is axiomatic that pursuant to Fed. R. Civ. P. 30(a) a plaintiff has the right to depose any person, including a party, without leave of court. In order for good cause to exist for the Court to issue a protective order barring a deposition pursuant to Rule 26(c) "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.")). Thus, while Defendants would have Express demonstrate "that the Changs are likely to possess relevant information with respect to this case that Express was not able to obtain through the other depositions or through other, less burdensome means" such a statement misstates the burden attendant to Defendants' application herein. *Supra*, p. 2. In fact, the Ninth Circuit instructs that the party moving for a protective order, i.e., Forever 21, carries a "heavy burden" of showing why the discovery should not be conducted. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). We respectfully submit that Forever 21 has failed to carry that burden.

2. **The Changs Are Party-Defendants; Therefore, The "Apex Doctrine" Is Inapplicable**

First, given that the Changs are each named as individual defendants in this action, the "apex deposition" doctrine is not applicable and their deposition should proceed. Defendants fail to reference a single authority supporting the proposition that the deposition of an individually named defendant can be completely

13

precluded, either under the "apex deposition" doctrine or otherwise. However, even if the "apex deposition" doctrine were to apply in this case, Defendants' application is nonetheless meritless and should be denied in its entirety. As the authority relied upon by Defendants in making their request makes clear, absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition, as such a ruling would likely be in error. *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06cv408 WQH (AJB), 2007 U.S. Dist. LEXIS 20481, at *6-7 (S.D. Cal. Mar. 22, 2007).

> **3.** **The Changs' Declarations Are Entitled To No Weight; There Is A Substantial Basis To Conclude That Depositions Of The Changs Will Lead To The Discovery Of Relevant And Admissible Evidence**

In attempting to carry its heavy burden of demonstrating the necessity of a protective order, Defendants produce declarations by the Changs professing "no direct personal knowledge" regarding the garments at issue in this case. (D.W. Chang Decl., ¶ 3, J.S. Chang, ¶ 3). However, courts are generally not persuaded by a deponent's declaration declaring he knows nothing about the litigation since an opposing party is entitled to test the extent of his knowledge, or lack thereof. *Grateful Dead Prods. v. Sagan*, No. C 06-7727 (JW) PVT, 2007 U.S. Dist. LEXIS 56810, at *8 (N.D. Cal. July 25, 2007) ("[A] claimed lack of knowledge or recollection does not provide sufficient grounds for a protective order, since the opposing party is entitled to test that lack of knowledge or recollection."); *Mansourian v. Bd. Of Regents*, No. CIV S-03-2591 FCD EFB, 2007 U.S. Dist. LEXIS 95428, at *8 (E.D. Cal. Dec. 21, 2007) (deponent's knowledge and the availability of information from other sources are merely factors considered by some courts, not established prerequisites for an apex deposition); *WebSideStory, Inc*, 2007 U.S. Dist. LEXIS 20481, at *6-7 (a deponent's "claimed lack of knowledge ... does not alone provide sufficient grounds for a protective order");

14

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1   *see Naftchi v. N.Y. Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("Nor, in

2   ordinary circumstances, does it matter that the proposed witness is a busy person or

3   professes lack of knowledge of the matters at issue, as the party seeking the

4   discovery is entitled to test the asserted lack of knowledge.")   In rejecting an

5   application for a protective order based on a "lack of knowledge" declaration, the

6   *Naftchi* Court explained that, even if the declaration was true, it does not foreclose

7   the wide range of discovery under Rule 26. *Id.* at 133 ("[H]e certainly does not say

8   that he lacks any information pertinent to the lawsuit or that could lead to relevant

9   evidence. Hence, there is no basis for precluding a deposition of [the dean]

10   altogether."); *see also, Rolscreen Co. v. Pella Prods. of St. Louis Inc.*, 145 F.R.D.

11   92, 97 (S.D. Iowa 1992).[1]

12       In fact, reviewing the declarations of the Changs raises more questions than

13   they answer.  Mrs. Chang's declaration implicitly acknowledges her current role as

14   "Corporate Secretary" (or "high level management capacity")[2] and actually does

15   not disavow knowledge regarding the infringing garments; rather, she claims that

16   "any knowledge that [she] might have," implying that there is, in fact, knowledge,

17   would be "duplicative of the knowledge of lower-level Forever 21 employees."

18   (J.S. Chang Decl., ¶ 4.)  However, purported "duplicity" is not a basis for an order

19   completely precluding discovery with respect to a party-defendant, particularly

20   when the evidence before this Court that the Changs, are in fact intimately

21   involved with the day to day business of Forever 21, including the selection of the

22   ---

[1] The *Rolscreen* court similarly denied a protective order to prevent the deposition of a company's president based on a declaration that he had no "first-hand knowledge" of a notice of termination, holding that the defendant was permitted to "test" the president's lack of knowledge: "The affidavit utter [sic] fails to explain in detail [the president]'s exact role in approving the issuance of the termination notice. . . . [Plaintiff's] mere incantation of [the president]'s status as president and his claim of limited knowledge cannot be a basis for insulating [the president] from appropriate discovery." *Rolscreen*, 145 F.R.D. at 97.

[2] As evidenced by the Answer To Plaintiff's Second Amended Complaint filed on behalf of Ms. Chang on July 31, 2008, in connection with the *Anthropologie v. Forever 21* case, Ms. Chang recently held the title of "Head Buyer" for Forever 21 and may have actually held this title at the time the activities that gave rise to this lawsuit took place. (Colucci Decl., Ex. 1, Answer at 3).

15

six different infringing garment styles at issue in this case and knowledgeable regarding Forever 21s' buying practices. (*See* Colucci Decl., Exs. 1-2. 4, 6-9, 11-15.) Consequently, there is no basis to preclude the taking of their depositions based on a professed "lack of direct knowledge." *See Parkhurst v. Kling*, 266 F. Supp. 780, 781 (E.D.Penn. 1967)("If the 'good cause' requirement could be thus simply met by an ex parte affidavit that the affiant had no relevant knowledge of the subject matter of the action the salutary purpose of Rule 26, providing for unlimited discovery would be easily and unjustifiably frustrated.")

Among the issues in this case, Express has alleged against all defendants, including the Changs, as follows:

> Upon information and belief, Defendants' regular business practice of copying other companies' products and appropriating the intellectual property of others for their own use, gain and profit has led to them being named as a defendant in over 50 intellectual property cases within the past seven years. Upon further information and belief, the Changs have knowledge of, supervise and/or control the activities and operations of Forever 21, including the aforesaid business practice of Defendants and the infringing activities complained of herein, and personally benefited from such activities.

(Complaint, ¶ 52.)

As set forth previously, the *Anthropologie* Court expressly recognized this same allegation, namely, that Forever 21 may be "a business that is predicated in large measure on the systematic infringement of competitors' intellectual property." *Anthropologie, Inc. v. Forever 21 Inc. et al.*, No. 07 Civ. 7873 (RJS)(MHD), 2009 WL 690239, at *4 (S.D.N.Y. Mar. 13, 2009); (Colucci Decl., Ex. 5, at 11). Moreover, Judge Dolinger further held, that in seeking discovery relating to this "shop and copy practice, it was entirely appropriate to take the depositions of the Changs, since this alleged practice "presumably was developed

16

RUSS, AUGUST & KABAT

1    and/or approved by the two co-founders of the business." (Colucci Decl., Ex. 4,

2    March 10, 2009 Memorandum & Order at 3.) Certainly, the compelling

3    similarities between the Express garments in this case and the accused Forever 21

4    garments give rise, at a minimum, that actions complained of in this case were as a

5    result of an intentional and conscientious practice, rather than coincidence or

6    accident (Compare Exs. A, C, D, F, H, and N of the Complaint, the Express

7    garments, with Exs. J, K, L, M, and O, the Forever 21 copies).

8       Furthermore, in addition to the *Anthropologie v. Forever 21* case, another

9    recent infringement action brought against Forever 21 in the Southern District of

10   New York provides further evidence of the Changs' personal knowledge of and

11   involvement in activities similar to those alleged in the complaint in this action. In

12   *Anna Sui Corp. v. Forever 21, Inc.*, Civil Action No. 1:07-cv-03235 (TPG),

13   Forever 21 moved to dismiss the complaint with respect to the Changs, who, as

14   here, were named as individual defendants, for lack of personal jurisdiction. In

15   denying Forever 21's motion to dismiss Judge Griesa held, *inter alia*, that the

16   Changs derived financial benefit from the sale of infringing designs as the primary

17   owners of Forever 21 and that plaintiff properly alleged that Forever 21's

18   infringing conduct was performed with the Changs knowledge and consent given,

19   among other things, their ownership interest in Forever 21's largest vendor, which

20   was the source of the infringing products. (Colucci Decl., Ex. 2, *Anna Sui*

21   Opinion, dated September 24, 2008, at 6-7.) Thus, it is clear that the Changs'

22   involvement in the Forever 21 business goes well beyond that of "apex" executives

23   and reaches to the very foundation of Defendants' everyday business model.

24       Thus, while both Changs disavow "direct knowledge," and in Mrs. Chang's

25   case, also no "specific, unique" knowledge, the fact that the infringements at issue

26   in this case may have taken place as a matter of corporate policy is itself a basis to

27   depose Forever 21's officers, and in this case co-founders, the Changs since have

28   ultimate authority and direct company policies. *Cf. Travelers Rental Co. Inc. v.*

1  *Ford Motor, Co.*, 116 F.R.D. 140, 145-6 (D.Mass. 1987); *Rolscreen*, 145 F.R.D. at
2  97 (deposing party entitled to "explore whether [the president] has knowledge
3  concerning the motivation behind that decision").

4      **4.   Depositions Of The Changs Will Cause No Undue Burden,**
5         **Prejudice Or Inconvenience To Defendants**

6      While Defendants raise the possibility that discovery of the Changs may be
7  accomplished through less intrusive means, such claims are disingenuous since
8  Defendants would have the Court completely preclude any deposition of the
9  Changs at all.  Moreover, Express should not be first required to seek other
10 methods of discovery to determine the Changs' knowledge since no showing of
11 undue burden has been made and "[a]bsent at least *some* actual showing of undue
12 burden, there is no legal authority for requiring [the deposing party] to use
13 purportedly less burdensome means of obtaining the discovery before allowing
14 'apex' depositions."  *Grateful Dead Prods. v. Sagan*, 2007 U.S. Dist. LEXIS
15 56810 at *7 (N.D. Cal. July 25, 2007).  Defendants have failed to show any
16 evidence of "undue burden" and merely make the dubious claim that the Changs
17 lack knowledge of any relevant information.

18     Moreover, given Forever 21's and the Changs' meager and insufficient
19 responses to Express's initial set of written discovery requests, a deposition is the
20 most efficacious method of obtaining discovery from the Changs.  *Matarazzi v.*
21 *Economy Forms Corp.*, Civil No. 87-5373, 1988 U.S. Dist. LEXIS 8706, at *1
22 (E.D.Pa. Aug. 10, 1988) (protective order precluding 'apex deposition' denied;
23 "[O]ral testimony seems particularly appropriate for the type of questions that are
24 likely to be presented."); *see also*, *Alliance To End Repression v. Rochford*, 75
25 F.R.D. 428, 429 (N.D.Ill. 1976) ("Without doubt, oral deposition is preferable to
26 written interrogatories when dealing with a recalcitrant or hostile witness.").

27
28

IV.   CONCLUSION

**Defendants' Statement**

The Changs are high-level "apex" employees who lack specific, unique, personal or non-repetitive knowledge or information relevant to the facts at issue in this case. The Forever 21 Parties have already identified four lower-level Forever 21 employees who are likely to have relevant, discoverable information and offered to make them available on the originally noticed dates of the Chang depositions. That offer was declined.

Because the Changs do not have relevant, unique and specific knowledge, and because Express has completely failed to exhaust other less intrusive discovery methods, such as interrogatories and depositions of lower level employees, the Forever 21 Parties respectfully request the Court to prohibit Express from taking the depositions of Do Won Chang and Jin Sook Chang, or in the alternative to prohibit Express from taking the depositions of Do Won Chang and Jin Sook Chang until such time as Express has (1) taken the depositions of, at least, the other Forever 21 employees identified by the Forever 21 Parties as likely to have relevant discoverable information, and (2) demonstrated that the Changs are likely to possess relevant information with respect to this case that Express was not able to obtain through the other depositions or through other, less burdensome means.

**Plaintiff's Statement**

As individual defendants in this action, Express is entitled to fully depose the Changs in order to pursue the question of their personal knowledge of, supervision of, and control of the activities and operations of Forever 21, including Forever 21's "shop and copy" business model and the specific infringing activities that form the basis of Express's Complaint.

The Changs are percipient witnesses to this action and, as evidenced by the recent Opinion issued by Judge Dolinger discussed above, Defendants have falsely sworn to possess little or no knowledge of the relevant issues in an

19

1    infringement action in the past. Defendants offer no convincing evidence that

2    suggests either that the discovery sought is being used for an improper purpose or

3    that the taking of these depositions will impose any undue hardship on their

4    business. Accordingly, the Changs' claims of ignorance should be given no

5    weight and Express respectfully asks the Court to deny Defendants' request for a

6    protective order in its entirety.

7

8    DATED: October 27, 2009

9    RUSS, AUGUST & KABAT                    COLUCCI & UMANS
     Larry C. Russ                          Frank J. Colucci
     Nathan D. Meyer                        David D. Dahan
10   Robert F. Gookin                       Janice K. Yoon

11

12   By: /s/ Robert F. Gookin               By: /s/ Frank J. Colucci
     Attorneys for Defendants               Attorneys for Plaintiff
13   Forever 21, Inc., Forever 21           Express, LLC
     Logistics, Inc., Forever 21
14   Retail, Inc., Jin Sook Chang,
     and Do Won Chang
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF DO WON CHANG

I, Do Won Chang, hereby declare:

1.      I am a co-founder and Chief Executive Officer of Forever 21, Inc. ("Forever 21"). Forever 21 is located at 2001 South Alameda Street, Los Angeles, California 90058.

2.      My knowledge and information with respect to the primary subject matters of the instant litigation is limited to general knowledge regarding the business of Forever 21.

3.      I have reviewed the Complaint in this litigation and I have no direct personal knowledge regarding the creation, design, development, manufacture, production, selection, purchasing, ordering, distribution, marketing, merchandising or recall of any of the allegedly infringing Forever 21 garments at issue in the instant litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of October, 2009 in Los Angeles, California.



Do Won Chang

---

# DECLARATION OF JIN SOOK CHANG

I, Jin Sook Chang, hereby declare:

1.     I am a co-founder and Corporate Secretary of Forever 21, Inc. ("Forever 21"). Forever 21 is located at 2001 South Alameda Street, Los Angeles, California 90058.

2.     I am involved in the high-level supervision of many of the corporate activities of Forever 21. I am also generally responsible for developing Forever 21 and its business.

3.     I have reviewed the Complaint in this litigation and I have no direct personal knowledge regarding the creation, design, development, manufacture, production, selection, purchasing, ordering, distribution, marketing, merchandising or recall of any of the allegedly infringing Forever 21 garments at issue in the instant litigation.

4.     My involvement with the Forever 21 buying department with respect to men's clothing is in a high-level management capacity. Any knowledge that I might have regarding Forever 21's selection and purchase of the allegedly infringing garments at issue in this litigation would be duplicative of the knowledge of lower-level Forever 21 employees. I do not have specific, unique information regarding the vast majority of the thousands of garments handled by Forever 21's buying department each month, nor do I have specific, unique knowledge as to the garments at issue in this litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 1‡th day of October, 2009 in Los Angeles, California.

_____
Jin Sook Chang

2
**DECLARATION OF JIN SOOK CHANG**

# DECLARATION OF FRANK J. COLUCCI

Pursuant to 28 U.S.C. § 1746, **Frank J. Colucci** declares under penalty of perjury as follows:

1.     I am a member of the law firm of Colucci & Umans, counsel for Plaintiff, Express, LLC ("Express" or "Plaintiff"), and as such I am fully familiar with the facts hereinafter set forth of my own personal knowledge.

Prior Court Opinions and Action Regarding the Changs and Forever 21

2.     On April 23, 2007, Anna Sui Corporation filed a Complaint against Forever 21, Inc., Forever 21 Retail, Inc., Forever 21 Logistics, LLC, Do Won Chang, and later amended its Complaint to add other parties, including Jin Sook Chang, in the Southern District of New York, for willful copyright infringement, *Anna Sui Corp. v. Forever 21, Inc., et al.*, Civil Action No. 1:07-cv-03235 (TPG) ("*Anna Sui* Case").

3.     Attached hereto and incorporated herein as Exhibit 1 is a true and accurate copy of the Honorable Thomas P. Griesa's approval of Anna Sui's letter request, dated March 27, 2008 (Docket Entry #31), to supplement Plaintiff's Opposition to Defendants Do Won Chang and Jin Sook Chang's Motion to Dismiss upon learning the extent of Ms. Chang's involvement in the selection and purchase of the garments sold through Forever 21 and Mr. Chang's responsibility for Forever 21's vendors. (Ex. 1, at 1.)

4.     Attached hereto and incorporated herein as Exhibit 2 is a true and accurate copy of an opinion by the Honorable Thomas P. Griesa, dated September 24, 2008 (Docket Entry # 74), denying Defendants Do Won Chang and Jin Sook Chang's motion to dismiss Anna Sui's amended complaint for lack of personal jurisdiction. ("Plaintiff also adequately alleges that the infringing conduct of Forever 21 was performed with the knowledge and consent of [Do Won Chang] and [Jin Sook Chang].") (Ex. 2, at 6.)

5.     Attached hereto and incorporated herein as Exhibit 3 is a true and accurate copy of "Permanent Injunction Upon Consent," dated April 17, 2009 (Docket Entry # 90), filed in the *Anna Sui* case, including the signatures of Mr. and Ms. Chang, individually.

6.     On September 5, 2007, Anthropologie, Inc. filed a Complaint, which it later amended, against Forever 21, Inc., Do Won Chang, Jin Sook Chang, and various suppliers in the Southern District of New York, for willful copyright infringement, *Anthropologie, Inc. v. Forever 21, Inc., et al.*, Civil Action No. 1:07-cv-07873 (RJS) ("*Anthropologie* Case").

7.     Attached hereto and incorporated herein as Exhibit 4 is a Memorandum & Order by the Honorable Michael H. Dolinger, dated March 10, 2009 (Docket Entry # 116), in the *Anthropologie* Case, denying Defendants Do Won Chang and Jin Sook Chang's motion for a protective order.   ("Fifth, defendant Forever 21 has a gargantuan record as a defendant in infringement cases, and it is plainly within the purview of relevant discovery for plaintiff to pursue the question of that defendant's business model, which presumably was developed and/or approved by the two co-founders of the business.") (Ex. 4, at 3) (citation omitted).

8.     Attached hereto and incorporated herein as Exhibit 5 is a Memorandum & Order by the Honorable Michael H. Dolinger, dated March 12, 2009 (Docket Entry #118), granting plaintiff Anthropologie's motion to compel. (Ex. 5, at 11.)

9.     Attached hereto and incorporated herein as Exhibit 6 is a Memorandum & Order by the Honorable Michael H. Dolinger, dated March 13, 2009 (Docket Entry # 119), granting in part Anthropologie's motion for sanctions. ("[W]e are well satisfied that defendants deliberately redacted the purchase order documents to conceal Ms. Chang's role in the purchasing decisions.") (Ex. 6, at 6).

10.    On October 9, 2007, Trovata, Inc. filed a Complaint against Forever 21, Inc., Forever 21 Retail, Inc., Forever 21 Logistics, LLC, in the Central District of California, for intentional trade dress infringement and related claims, *Trovata, Inc. v. Forever 21, Inc., et al.*, Civil Action No. 1:07-cv-01196 (JVS) ("*Trovata* Case").

11.    A jury trial in the *Trovata* case commenced on May 12, 2009, and was ultimately declared a mistrial on the 10th day of trial, May 27, 2009. (Docket Entry # 321.) The *Trovata* case was later dismissed by stipulation of the parties on October 16, 2009. (Docket Entry # 344.)

12.    Attached hereto and incorporated herein as Exhibit 7 is a true and accurate copy of the pertinent excerpt from an order by the Honorable James V. Selna, dated March 4, 2009 (Docket Entry # 257), denying Forever 21's motion *in limine* to exclude Jin Sook Chang from Plaintiff's witness list in the *Trovata* Case. ("It is clear that she has relevant knowledge regarding Forever 21's design and purchasing practices.") (Ex. 7, at 2.)

Documents Noting Jin Sook Chang's Position as the Co-Founder and Head Buyer of Forever 21

13.    Attached hereto and incorporated herein as Exhibit 8 is a true and accurate copy of the pertinent excerpt from the Answer to First Amended Complaint, dated July 30, 2007 (Docket Entry # 13), in the *Anna Sui* Case, admitting that Ms. Chang is "the co-founder of and Head Buyer for Forever 21, Inc." (Ex. 8, ¶ 7).

14.    Attached hereto and incorporated herein as Exhibit 9 is a true and accurate copy of "Declaration of Jin Sook Chang in Support of Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)," dated December 3, 2007 (Docket Entry # 25), filed in the *Anna Sui* Case, wherein Ms. Chang states that she is the "co-founder and Head

25

Buyer of Forever 21, Inc." (Ex. 9, ¶ 1) and has "performed all activities relating to the design, distribution and sale of Forever 21 products exclusively in my capacity as an employee of Forever 21, Inc." (*Id.* at ¶ 2).

15. Attached hereto and incorporated herein as Exhibit 10 is a true and accurate copy of the pertinent excerpt from "Declaration of Marya Lenn Yee," counsel for Anna Sui, dated January 3, 2008 (Docket Entry # 27), that includes a copy of Defendants' Initial Disclosures Pursuant to Federal Rule Of Civil Procedure 26(a) (Exhibit D) listing Ms. Chang as a person with knowledge. (Ex. 10, at 8.)

16. Attached hereto and incorporated herein as Exhibit 11 is a true and accurate copy of the pertinent excerpt from the Answer to Plaintiff's Second Amended Complaint, dated July 31, 2008 (Docket Entry # 46), filed in the *Anthropologie* Case admitting that Ms. Chang is "the co-founder of and Head Buyer for Forever 21, Inc." (Ex. 11, ¶ 7).

17. On May 15, 2009, Young Min Cho, a former employee of Forever 21, testified in the *Trovata* Case that Mrs. Chang was involved in Forever 21's buying practices and that buyers had to get approval from Ms. Chang for purchases. Attached hereto and incorporated herein as Exhibit 12 is a true and accurate copy of certain transcript excerpts from Mr. Cho's trial testimony (pp. 1, 4, 15-16, 65).

18. On May 19, 2009, Forever 21's Chief Financial Officer, Ann Kim, testified in the *Trovata* Case that Ms. Chang leads the merchandising initiatives for Forever 21, and is involved with the procurement of products. Attached hereto and incorporated herein as Exhibit 13 is a true and accurate copy of certain transcript excerpts from Ms. Kim's trial testimony (pp. 1, 10, 36-38, 58).

19. On May 19, 2009, Jin Sook Chang testified, with the aid of a Korean-certified court interpreter, in the *Trovata* Case that she works every day with Forever 21's buying team; she is the cofounder, Head Buyer, and Secretary of Forever 21; and as a regular course of business, Ms. Chang approves every single

1  purchase of garments made by Forever 21. Attached hereto and incorporated
2  herein as Exhibit 14 is a true and accurate copy of certain transcript excerpts from
3  Ms. Chang's trial testimony (pp. 1, 7-8, 18-19, 22, 31, 47).

4

5  <u>Documents Noting Do Won Chang as the Co-Founder and Chief Executive Officer</u>
6  <u>of Forever 21</u>

7       20.    Attached hereto and incorporated herein as Exhibit 15 is a true and
8  accurate copy of "Declaration of Do Won Chang in Support of Motion to Dismiss
9  Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction Pursuant to
10  Fed. R. Civ. P. 12(b)(2)," dated December 3, 2007 (Docket Entry # 24), filed in the
11  *Anna Sui* Case, wherein Mr. Chang states that he is the "co-founder and Chief
12  Executive Officer of Forever 21, Inc." (Ex. 15, ¶ 1) and has "performed all
13  activities relating to the design, distribution and sale of Forever 21 products
14  exclusively in my capacity as an employee of Forever 21, Inc." (*Id.* at ¶ 2).

15       21.    Mr. Chang also admits that he is the "co-founder and Chief Executive
16  Officer of Forever 21, Inc." in the *Anna Sui* Case. (Ex. 8, Answer, at ¶ 6.)

17       22.    Mr. Chang further admits that he is a "founder, owner and Chief
18  Executive Officer of Forever 21, Inc." in the *Anthropologie* Case. (Ex. 11, Answer
19  at ¶ 6.)

20

21       I declare under penalty of perjury under the laws of the United States that
22  the foregoing is true and correct.

23

24  Dated:   New York, New York
25            October 27, 2009

26

27                                                         Frank J. Colucci

28

27

# EXHIBIT 1

# MEMO ENDORSED

## DONOVAN & YEE ▲ LLP

The Soho Building ▲ 110 Greene Street, Suite 700 ▲ New York, NY 10012
Telephone: 212-226-7700 ▲ Fax: 212-226-1995
E-mail: myee@yeellp.com

Writer's Direct Dial:
(212) 226-7945



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/2/08

MAR 28 2008

March 27, 2008

<u>Via Hand Delivery</u>

Hon. Thomas P. Griesa
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1630
New York, New York 10007

Re: Case 1:07-cv-03235-TPG
Anna Sui Corp. v. Forever 21, Inc. et al

Your Honor:

We represent Plaintiff Anna Sui Corp. in the above-referenced matter. We are writing to request that the Court permit Plaintiff to supplement Plaintiff's Opposition (hereinafter the "Supplemental Opposition") to Defendants Do Won Chang and Jin Sook Chang's Motion to Dismiss, filed with the Court on December 14, 2007. Plaintiff's Opposition was filed on January 4, 2008 and Defendants' Reply was filed on January 11, 2008. Plaintiff believes that its Supplemental Opposition is necessary and timely because of newly discovered facts that were only revealed to Plaintiff after the conclusion of the briefing period for Defendants' Motion to Dismiss.

On February 8, 2008, after the briefing period for Defendants' motion to dismiss had concluded, Defendants served their Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories. Ms. Chang was there identified for the first time as a person with knowledge of Forever 21's policies and procedures with respect to the manufacture, selection, ordering, purchase, and display of clothing for sale in Forever 21's stores and website. Defendants' also identified Ms. Chang as Forever 21's Head Buyer.

Ms. Chang's involvement in the selection and purchase of the garments sold through Forever 21 and Mr. Chang's responsibility for Forever 21's vendors who Defendants claim are responsible for the infringing conduct, has become even more apparent from the deposition testimony of two of Forever 21's Senior Vice Presidents. These depositions were held in Los Angeles just two weeks ago, several weeks after the conclusion of the briefing period on Defendants' Motion to Dismiss. For example, Lisa

*Approved*
*Thomas P. Griesa / USDJ 4/2/08*

EXHIBIT 1
Page 1 of 2

Boisset, Forever 21's Vice President of Merchandise, testified that during the time the
goods at issue in this litigation were being ordered and sold by Forever 21, she reported
solely to Ms. Chang.

The Chang Defendants will not be prejudiced by Plaintiff's Supplemental
Opposition as Defendants' counsel did not provide Plaintiff with detailed information
concerning the Chang Defendants' roles in Forever 21's business affairs until after the
briefing period for Defendants' motion had expired. Further, the information provided in
Plaintiff's Supplemental Opposition is necessary to provide the Court with a
comprehensive overview of the Chang Defendants' participation in Forever 21's
activities prior to a decision on the Chang Defendants' Motion to Dismiss.

Plaintiff has attached a copy of its Supplemental Opposition (in the form of a
Supplemental Declaration from the undersigned) for Your Honor's convenience. In
accordance with the terms of the Stipulated Protective Order entered by Your Honor on
November 27, 2007, Plaintiff will not electronically file this request via ECF as it is
substantially comprised of information currently designated as Highly Confidential by
Defendants.

Respectfully submitted,

Marya Lenn Yee

Enc.

Cc: James M. Gibson, Esq. (via hand delivery)
Robert L. Powley, Esq. (via hand delivery)
David J. Lorenz, Esq. (via hand delivery)

EXHIBIT 1
Page 2 of 2

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
ANNA SUI CORP.,                          :

                           Plaintiff,    :        07 Civ. 3235 (TPG)

           - against -                   :        **OPINION**

                                         :
FOREVER 21, INC., FOREVER 21             :
RETAIL, INC., FOREVER 21 LOGISTICS,      :
LLC, DO WON CHANG, JIN SOOK              :
CHANG, GADZOOKS, INC., GERALD P.         :
SZCZEPANSKI and JOHN DOES 1 to 20,       :

                           Defendants.   :
------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/08

Plaintiff Anna Sui Corp. brings this action against defendants
Forever 21, Inc., Forever 21 Retail, Inc., Forever 21 Logistics, LLC, Do
Won Chang, Jin Sook Chang, Gadzooks, Inc., Gerald P. Szczepanski and
John Does 1 to 20, asserting (1) willful copyright infringement in
violation of 17 U.S.C. § 101, (2) unfair competition and false designation
of origin or sponsorship in violation of 15 U.S.C. § 1125(a), (3) unlawful
trade practices in violation of New York General Business Law, and (4)
common law unfair competition in violation of New York state law.

Defendants Do Won Chang ("DWC") and Jin Sook Chang ("JSC")
move to dismiss the amended complaint for lack of personal jurisdiction.
The motion is denied.

**Facts**

On a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Where, as here, the parties have not engaged in discovery on the issue of jurisdiction, all pleadings and affidavits must be construed in the light most favorable to the plaintiff and all doubts must be resolved in the plaintiff's favor. <u>Merck & Co. v. Mediplan Health Consulting, Inc.</u>, 425 F. Supp. 2d 402, 418-19 (S.D.N.Y. 2006).

Anna Sui is a well-known designer of women's fashions. She incorporated her business under the name Anna Sui Corp., which is a New York corporation with a principle place of business in New York. The Forever 21 entities ("Forever 21") are domiciled in Delaware and California. The headquarters of the business is in Los Angeles, California. Forever 21 operates women's clothing stores. Defendants Forever 21, Inc. and Forever 21 Retail, Inc. admit personal jurisdiction. Defendant Forever 21 Logistics, LLC, however, denies personal jurisdiction, as do the moving defendants DWC and JSC.

DWC is a co-founder and Chief Executive Officer of Forever 21, Inc. JSC is a co-founder of and Head Buyer for Forever 21, Inc. Plaintiff alleges that Forever 21 is primarily owned by DWC and JSC. Both DWC and JSC are residents of California. Plaintiff's amended complaint alleges that this court has personal jurisdiction over DWC and JSC,

2

EXHIBIT 2
Page 2 of 8

because they "are conscious, active and dominant forces in the infringing activity" of Forever 21, which includes activity in New York. In their motion to dismiss, DWC and JSC contend that they have never undertaken any business activities in New York in their capacities as individuals.

It is uncontested that Forever 21 operates a number of stores in the state of New York, including several stores in New York City. Indeed, plaintiff alleges that a number of infringing designs have been discovered in Forever 21's Manhattan stores. Plaintiff's amended complaint contains numerous allegations to the effect that by virtue of their positions as owners and high ranking officials of Forever 21, DWC and JSC are responsible for the management and operation of Forever 21 stores, including the decision to implement a business plan centered on infringing protected designs. Plaintiff asserts that as owners of Forever 21, DWC and JSC have benefited financially from the sale of Forever 21 goods within New York, including the sale of infringing designs. Plaintiff further alleges that DWC and JSC own a holding company, Too Capital, which owns One Clothing, the largest vendor to Forever 21, which is a source of infringing designs.

### Discussion

In an action arising under federal question jurisdiction, the court will look to the law of the state where the court sits to resolve the question of personal jurisdiction over an out-of-state defendant. Kinetic

3

EXHIBIT 2
Page 3 of 8

Instruments, Inc. v. Lares, 802 F. Supp. 976, 981 (S.D.N.Y. 1992). New York law thus controls on the issue of whether this court may exercise personal jurisdiction over defendants, DWC and JSC.

To determine whether personal jurisdiction may be properly exercised, this court must conduct a two-part analysis: whether New York state law permits personal jurisdiction, and if so, whether the exercise of personal jurisdiction under state law comports with federal due process requirements. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

Exercise of Jurisdiction Under New York's Long-Arm Statute

Plaintiff relies on CPLR § 302(a)(2), which provides, in pertinent part:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> * * *
>
> 2. commits a tortious act within the state, ...

Copyright infringement is a commercial tort that can give rise to jurisdiction under § 302(a)(2). J. Racenstein & Co., Inc. v. Wallace, No. 96 Civ. 9222, 1997 WL 605107, at *2 (S.D.N.Y. Oct. 1, 1997). Indeed, offering "one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this court with personal jurisdiction over the

EXHIBIT 2
Page 4 of 8

infringers." Editorial Musical Latino Americana, S.A. v. MAR Int'l Records, Inc., 829 F.Supp. 62, 64 (S.D.N.Y.1993).

Here, plaintiff does not assert that there is jurisdiction over DWC and JSC on the basis of personal presence in New York and the personal commission of tortious acts in the state. Instead, plaintiff maintains that this court has jurisdiction over DWC and JSC on a theory of agency.

CPLR 302(a) provides that a defendant may be subject to long-arm jurisdiction for acts that he performed personally or "through an agent." Here, plaintiff alleges that Forever 21 engaged in infringing conduct "at the direction and supervision of" DWC and JSC. As it is uncontested that this court has personal jurisdiction over defendants Forever 21, Inc. and Forever 21 Retail, Inc., plaintiff contends that (and this court must assess whether) Forever 21 may be considered the agent of defendants, DWC and JSC, so that the purported infringing activities of Forever 21 in New York may be relied on to obtain personal jurisdiction over DWC and JSC under CPLR 302(a)(2).

Under New York law, "a corporation can act as the agent of a corporate officer and thus subject the officer to personal jurisdiction under section 302." Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006). To assert such an agency theory, a plaintiff must allege: "(1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual

EXHIBIT 2
Page 5 of 8

defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation." Id.[1]

This court should conclude that plaintiff has satisfied this agency test. The first prong of the test is clearly met, as Forever 21 has engaged in purposeful activities in New York in connection with this action by operating a number of stores in the state, where plaintiff alleges a number of infringing designs were discovered. Plaintiff has also satisfied the "benefit" prong of the agency test by alleging that Forever 21 is primarily owned by DWC and JSC, and thus that they both derive financial benefit from the sale of Forever 21 goods in New York, including the sale of infringing designs. Plaintiff also adequately alleges that the infringing conduct of Forever 21 was performed with the knowledge and consent of DWC and JSC. Among other things, plaintiff alleges that DWC and JSC have an ownership interest in One Clothing, the largest vendor to Forever 21 and a vendor identified as the source of infringing designs.

Finally, plaintiff has satisfied the "control" prong of the agency test. Under New York law, a "corporate president who has a financial interest

[1] In Kreutter v. McFadden Oil Corp., the New York Court of Appeals rejected the fiduciary shield doctrine. 71 N.Y.2d 460, 470-72, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988). Therefore, defendants DWC and JSC will not be insulated from jurisdiction in New York simply because their contacts with the state were made pursuant to their employment with Forever 21. Under the fiduciary shield doctrine, a corporate employee sued in his personal capacity was not subject to jurisdiction if his contacts with the forum state were solely on behalf of his corporate employer. Kinetic Instruments, Inc., 802 F. Supp. at 981.

EXHIBIT 2
Page 6 of 8

in the company and the ability to supervise or control an infringing activity will be held personally liable." Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 8332, 2005 WL 1337864, at *3 (S.D.N.Y. June 3, 2005). Here, DWC and JSC are both high ranking officials and primary owners of Forever 21.

Plaintiff sufficiently alleges that both DWC and JSC have committed acts of infringement in New York State through their agents.

Constitutional Minimum Contacts

Before jurisdiction is proper, an additional inquiry must be made into whether the exercise of personal jurisdiction over DWC and JSC under New York law comports with federal due process requirements. Under the Due Process Clause of the Fourteenth Amendment, before an out-of-state defendant may be subject to personal jurisdiction in another state, the defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). When such minimum contacts exist, the defendant should reasonably anticipate being brought into court in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980).

Here, even though DWC and JSC reside in California, their alleged roles in Forever 21's distribution and sale of infringing designs within New York is sufficient to satisfy due process requirements. It is well

EXHIBIT 2
Page 7 of 8

established that as long as "a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 466, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988). These criteria are clearly satisfied as to DWC and JSC.

### Conclusion

The motion to dismiss for lack of personal jurisdiction over defendants DWC and JSC is denied.

Dated: New York, New York
Sept. 24, 2008

SO ORDERED

Thomas P. Griesa
U.S.D.J.

EXHIBIT 2
Page 8 of 8

8