EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ANNA SUI CORP.,                                    x
                                                   x
                        Plaintiff,                 x
                                                   x
        -v.-                                        x
                                                   x        07 Civ. 3235 (TPG)
FOREVER 21, INC., FOREVER 21 RETAIL, INC.,          x
FOREVER 21 LOGISTICS, LLC,                          x
DO WON CHANG, JIN SOOK CHANG,                       x
GADZOOKS, INC., GERALD P. SZCZEPANSKI               x
and  JOHN DOES 1 to 20,                             x
                                                   x
                        Defendants.                 x

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/17/09

## PERMANENT INJUNCTION UPON CONSENT

WHEREAS, Anna Sui Corp. ("Anna Sui") filed a complaint in the above

captioned action on April 23, 2007, as amended on June 26, 2007, charging the

defendants, Forever 21 Inc., Forever 21 Retail, Inc., Forever 21 Logistics, Inc., Do Won

Chang, and Jin Sook Chang (collectively, "F21 Defendants") with, *inter alia*, willful

infringement of Anna Sui's registered and common law copyrights, unfair competition

and false designation of origin or sponsorship, and unfair competition (Anna Sui and the

F21 Defendants are referred to herein collectively as the "Parties"); and

WHEREAS, Anna Sui represents and warrants that Exhibit A hereto sets forth a

complete and accurate listing of all current U.S. Copyright Registrations for the works

asserted by Anna Sui in this action (collectively "AS Copyrighted Works"); and

WHEREAS, Anna Sui has alleged that certain garments sold or offered for sale by

the F21 Defendants infringe the AS Copyrighted Works (collectively, the "Disputed

Garments"); and

**EXHIBIT 3**
**Page 1 of 8**

WHEREAS, the Parties have concurrently entered into a settlement agreement dated *Mll*, 2009 (the "Settlement Agreement") in which each Party has made certain representations and warranties, all of which are expressly incorporated by reference herein, and

WHEREAS, the F21 Defendants hereby warrant and represent that none of the Disputed Garments were manufactured by any of the F21 Defendants; and

WHEREAS, Anna Sui and the F21 Defendants desire to settle the controversy between them, without any admission of liability, and have entered into the Settlement Agreement for that purpose it is:

ORDERED, ADJUDGED AND DECREED as between and among the Parties hereto:

1.   This Court has jurisdiction over Anna Sui and the F21 Defendants in this action and over the subject matter in this action.

2.   The breach of any representation or warranty made by a Party in the Settlement Agreement shall be deemed a breach of this Order.

3.   Anna Sui owns all exclusive right title and interest in and to the copyrights for the AS Copyrighted Works.

4.   The F21 Defendants, and their owners, partners, shareholders, officers, directors, employees, agents, affiliates, subsidiaries, representatives, and all persons acting by, through or in active concert with any of them, shall be and hereby are permanently restrained and enjoined from:

      a.   Any use of the AS Copyrighted Works or any designs substantially similar thereto; and

2

**EXHIBIT 3**
**Page 2 of 8**

b. Any manufacture, reproduction, import, export, preparation, promotion, license, display, sale, offer for sale, distribution or marketing of apparel or any other goods bearing the AS Copyrighted Works, or any designs substantially similar thereto; and

c. Representing, suggesting, or claiming that the F21 Defendants or their products or services are in any way sponsored by, affiliated with, or endorsed or licensed by Anna Sui; and

d. Knowingly assisting, inducing, aiding or abetting any other person or entity engaging in the activities prohibited by this Order.

5.      The F21 Defendants shall, within thirty (30) days of execution of this Injunction, destroy all remaining inventory in the possession of the F21 Defendants and shall immediately provide a declaration confirming the same to Anna Sui pursuant to the Settlement Agreement.

6.      In accordance with the terms of the Parties' Settlement Agreement, within four (4) business days of receipt of written notice from Anna Sui, the F21 Defendants shall cease the promotion and sale of any goods which Anna Sui alleges infringe any copyrighted work owned by Anna Sui, including but not limited to the Anna Sui Copyrighted Works, and shall provide Anna Sui with an accounting for all complained-of goods within ten (10) business days. Within the period of twenty (20) business days following receipt by the F21 Defendants of written notice from Anna Sui, the Parties shall confer in good faith toward a resolution of the alleged infringement in accordance with the terms of the Parties' Settlement Agreement ("Meet and Confer Period"). Neither Party shall initiate any legal action or lawsuit during the Meet and Confer Period.

3

**EXHIBIT 3**
**Page 3 of 8**

7.     Jurisdiction of this Court is retained for the purpose of making any further

orders necessary or proper for the construction or modification of this Permanent

Injunction Upon Consent, the enforcement thereof and the punishment of any violations

thereof and any enforcement of the settlement agreement entered into by the Parties.  The

Parties consent to this Court's venue and personal jurisdiction for any such motion or

proceeding.

8.     The prevailing Party in any motion for contempt of this Order shall be entitled

to its costs and reasonable attorney's fees associated with such motion, in addition to all

other remedies to which it may be entitled in law and equity.

9.     This Order shall be enforceable against the F21 Defendants for any of the F21

Defendants' actions in violation of this Order, whether such actions occur within the

United States or outside of the United States.

10.     This Order is a final adjudication of all claims alleged in the above captioned

action and this Order is not appealable.

SO ORDERED

_____
U.S.D.J.

Dated April 17, 2009

4

**EXHIBIT 3**
**Page 4 of 8**

## CONSENTS

The undersigned Parties, consent to the entry of the foregoing Permanent

Injunction Upon Consent.

Dated:   *MARCH 27*  , 2009

**Anna Sui Corp.**

By: _____

Name:   *ROBERT F. SUI*

Title:   *CFO*

DONOVAN & YEE LLP
Attorneys for Plaintiff
Anna Sui Corp.

By _____
Andrea L.Calvaruso (AC 0514)
Amy C. Opp (AO 2677)
The Soho Building
110 Greens Street, Suite 700
New York, New York 10012
(212) 226-7700

**Forever 21, Inc.**

By:_____

Name:

Title:

**Forever 21 Retail, Inc.**

By:_____

Name:

Title:

5

**EXHIBIT 3**
**Page 5 of 8**

<u>CONSENTS</u>

The undersigned Parties, consent to the entry of the foregoing Permanent

Injunction Upon Consent.

Dated: _____4/2_____, 2009

Anna Sui Corp.

By: _____

Name:

Title:

DONOVAN & YEE LLP
Attorneys for Plaintiff
Anna Sui Corp.


By _____
Andrea L. Calvaruso (AC 0514)
Amy C. Opp (AO 2677)
The Soho Building
110 Greene Street, Suite 700
New York, New York 10012
(212) 226-7700

Forever 21, Inc.

By: _____

Name: *Larry Meyer*

Title: *Executive Vice President*

Forever 21 Retail, Inc.

By: _____

Name: *Larry Meyer*

Title: *Executive Vice President*

5

EXHIBIT 3
Page 6 of 8

Forever 21 Logistics, LLC

By: _____

Name: Larry Meyer

Title: Executive Vice President

Do Won Chang

_____

Jin Sook Chang

_____

POWLEY & GIBSON, P.C.
Attorneys for Defendants

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
304 Hudson Street
2nd Floor
New York, New York 10013
(212) 226 – 5054

6

EXHIBIT 3
Page 7of 8

**Forever 21 Logistics, LLC**

By:_____

Name:

Title:

**Do Won Chang**

_____

**Jin Sook Chang**

_____

POWLEY & GIBSON, P.C.
Attorneys for Defendants

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
304 Hudson Street
2nd Floor
New York, New York 10013
(212) 226 – 5054

6

**EXHIBIT 3**
**Page 8 of 8**

EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ANTHROPOLOGIE, INC.,

             Plaintiff,     :     MEMORANDUM & ORDER

       -against-       :     07 Civ. 7873 (RJS)(MHD)

FOREVER 21, INC., DO WON CHANG,   :
JIN SOOK CHANG, ONE CLOTHING,
INC., ORIGINAL INC., SALT &
PEPPER, STEPS OF CA, UNO TEXTILE, :
and CONCORD VENTURE,

            Defendants.
------------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


    Plaintiff Anthropologie, Inc. has sued defendants for repeated

infringements of plaintiff's copyrighted patterns and designs and

for unfair competition. Defendants have moved for a protective

order under Fed. R. Civ. P. 26(c) to bar plaintiff from taking the

depositions of (1) defendant Do Won Chang, who is a founder of

Forever 21 and its chief executive officer, and (2) defendant Jin

Sook Chang, who is also a founder of the company and its corporate

secretary.[1] The motion is denied.


    The basis for defendants' motion is the contention of these

---

[1] Defendants' motion also sought a protective order against
the deposition of Lawrence Meyer, who is a Senior Vice President
of the company. Plaintiff has since disavowed its intention to
depose Mr. Meyer. (Pl.'s Mem. 1 n.1).

1

EXHIBIT 4
Page 1 of 4

two individuals that they know little or nothing about the pertinent facts beyond the knowledge of the five corporate employees previously deposed in the case. (Decl. of Do Won Chang, executed Dec. 22, 2008, ¶¶ 2-5; Decl. of Jin Sook Chang, executed Dec. 23, 2008, ¶¶ 3-5). Accordingly, they say, these depositions should be precluded as unnecessary and harassing. (Defs.' Mem. 4-10) (citing, inter alia, In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria, 2006 WL 1328259, *10 (S.D.N.Y. May 16, 2006)). This argument is meritless.

First, both proposed deponents are individual defendants in this case. Second, contrary to the representations in the declaration of Jin Sook Chang that she had no involvement in the transactions at issue, she holds the role of Head Buyer, and documents recently produced in unredacted form indicate that she was directly involved in the purchase and sale of all but one of the nine garments at issue. (Decl. of Vanessa Hew, Esq., executed Dec. 24, 2008, ¶¶ 3, 8, 11 & Exs. A, F, H). Third, plaintiff has a good-faith basis to inquire whether and in what circumstances she and Do Won Chang personally had access to the allegedly infringed patterns of Anthropologie. (See id. ¶ 4 & Ex. B). Fourth, it now appears that defendants sold some infringing garments at discounted prices after the filing of this lawsuit (id. ¶¶ 15-16), and Do Won Chang apparently has ultimate responsibility for such markdowns.

2

**EXHIBIT 4**
**Page 2 of 4**

(<u>Id.</u> ¶ 15). Fifth, defendant Forever 21 has a gargantuan record as a defendant in infringement cases (<u>id.</u> ¶ 5), and it is plainly within the purview of relevant discovery for plaintiff to pursue the question of that defendant's business model, which presumably was developed and/or approved by the two co-founders of the business.

In short, plaintiff has ample basis to pursue depositions of both of these defendants. Moreover, defendants offer no evidence suggesting either that the taking of these depositions will impose an undue hardship on their business or that the discovery sought is being used for an improper purpose.

Finally, in defendants' reply papers they undertake a critique of the legal sufficiency of some of plaintiff's claims or anticipated claims, and seem to argue that therefore the noticed depositions should not take place. (Defs.' Reply Mem. 5-10). This argument is pure makeweight. Plaintiff has been litigating facially adequate claims for some time and is entitled to full discovery on those claims.

<u>CONCLUSION</u>

Defendants' motion for a protective order is denied. The

3

**EXHIBIT 4**
**Page 3 of 4**

depositions of Do Won Chang and Jin Sook Chang are to be conducted within thirty days.

Dated: New York, New York
      March 10, 2009

                                    _____
                                    MICHAEL H. DOLINGER
                                    UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been mailed today to:

Gregory P. Gulia, Esq.
Vanessa C. Hew, Esq.
Duane Morris LLP
1540 Broadway
New York, New York 10036-4086

Robert L. Powley, Esq.
David J. Lorenz, Esq.
Hewson Chen, Esq.
James Martin Gibson, Esq.
Powley & Gibson, P.C.
304 Hudson Street
2nd Floor
New York, NY 10013

4

**EXHIBIT 4**
**Page 4 of 4**

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
ANTHROPOLOGIE, INC.,

        Plaintiff,      :     <u>MEMORANDUM & ORDER</u>

        -against-      :    07 Civ. 7873 (RJS)(MHD)

FOREVER 21, INC., DO WON CHANG,  :
JIN SOOK CHANG, ONE CLOTHING,
INC., ORIGINAL INC., SALT &    :
PEPPER, STEPS OF CA, UNO TEXTILE, :
and CONCORD VENTURE,

        Defendants.    :
--------------------------------x

*3/13/09*

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

     Plaintiff Anthropologie, Inc. has sued defendants for repeated
infringements of plaintiff's copyrighted patterns and designs and
for unfair competition. Plaintiff now moves for discovery relief in
the form of an order (1) requiring the production by defendants of
several categories of documents pertaining to the allegedly
infringing products, and (2) authorizing plaintiff to copy and
inspect the hard drives of computers used by defendant Forever 21.

     The record before us demonstrates that defendant Forever 21 is
in violation of its discovery obligations and of our order dated
August 29, 2008, which required defendants to produce all documents
responsive to plaintiff's long-outstanding discovery requests.
Moreover, defendants' responses both to these requests and to the

1

**EXHIBIT 5**
**Page 1 of 15**

motion reflect a troubling degree of disingenuousness. As a result we are compelled to grant plaintiff a substantial portion of the relief that it now seeks. For the reasons that follow, the motion is granted on specified conditions.

### The Facts

Plaintiff commenced this lawsuit on September 6, 2007, and thereafter filed two versions of an amended complaint. It alleges that defendant Forever 21 has purchased and marketed a number of garments that feature patterns protected by copyrights held by the plaintiff. Anthropologie therefore asserts claims under the Copyright Act for infringement, as well as claims under the Lanham Act and New York State law for unfair competition. In its amended pleadings, it added a number of defendants who allegedly supplied or manufactured the allegedly infringing clothing.

On January 28, 2008 plaintiff served its First Request for Documents on Forever 21. (Decl. of Vanessa Hew, Esq., executed Dec. 8, 2008 ("Hew Decl.") ¶ 7 & Ex. A). Among the requests, plaintiff sought documents pertaining to (1) the creation and/or selection of the infringing garments, (2) the marketing and distribution of the infringing clothing by Forever 21, (3) the sales of these garments by Forever 21, and (4) the profits earned by Forever 21 from the

**EXHIBIT 5**
**Page 2 of 15**

sale of the infringing garments. (<u>Id.</u> Ex. A).

Before defendants supplied any response to plaintiff's document requests, the parties apparently engaged in unsuccessful settlement discussions. In the course of those discussions, an attorney for defendants sent plaintiff a letter in which he summarized what he claimed were the sales and profits derived from eight of the garments in question. (<u>See</u> Reply Decl. of Vanessa Hew, Esq., executed Dec. 16, 2008 ("Hew Reply Decl.") ¶ 5 & Ex. C). He did not supply any documentation and provided the purported numbers for settlement purposes only. (<u>Id.</u>).

Defendants served their written response to plaintiff's Rule 34 request on June 2, 2008. (Hew Decl. ¶ 8 & Ex. B). This response was accompanied by the production of only seven pages of documents. (<u>Id.</u>).

On August 15, 2008, we issued an order directing all parties, including Forever 21, to produce all remaining documents responsive to outstanding discovery requests by August 29, 2008 and setting a deadline of December 1, 2008 to complete fact discovery. (Order dated Aug. 15, 2008 ¶¶ 1, 3). On August 29, Forever 21 provided a supplemental production of fifty-two pages of documents. (Hew Decl. ¶ 11). These documents related almost exclusively to purchases by

3

**EXHIBIT 5**
**Page 3 of 15**

Forever 21 of garments for resale, including purchase orders, shipping documents, and invoices, together with a few e-mails concerning those purchases. (Id.). The production included no documents responsive to (1) the creation and/or selection of the infringing garments, (2) the marketing and distribution of the infringing clothing by Forever 21, (3) the sales of these garments by Forever 21, and (4) the profits earned by Forever 21 from the sale of the infringing garments. (Id.).[1]

On September 9, 2008, counsel for defendants offered to provide some summary documents, apparently prepared for the attorney, reflecting data on sales and product information for each allegedly infringing garment, but conditioned that offer on an agreement that these summaries be used solely for settlement purposes. (Hew Decl. ¶ 12; Decl. of Hewson Chen, Esq., executed Dec. 10, 2008 ("Chen Decl.") ¶ 4). From the record before us, we are uncertain as to plaintiff's response to this offer, but in any event, on October 15, 2008, defendants' attorney supplied, by e-mail, a list of certain data for four of the garments at issue, including the number purchased, sold, and in inventory, together with cost and retail price. (Hew Reply Decl. ¶ 3 & Ex. A). This e-mail did not provide any of the documentation on which these

---

[1] We subsequently refer to these four categories as the "documents in issue."

4

EXHIBIT 5
Page 4 of 15

numbers were based, and proffered the data on a "for settlement purposes only" basis. (Id. Ex. A). Similarly, on October 23, 2008 defendants' counsel sent an e-mail providing, on the same "settlement only" basis, some data concerning the purchase by Forever 21 of nine infringing garments and some sales and inventory data concerning one garment. (Id. ¶ 4 & Ex. B). Again, defendants proffered no documentation for this data.

Despite efforts by plaintiff to obtain full compliance with its document requests (see, e.g., Hew Decl. ¶ 13 & Ex. C), defendants failed to comply, apparently claiming, among other things, that it did not maintain sales documents or that it would be unduly burdensome to locate them. (Id. ¶ 14 & Ex. D). This stalemate led to a request by plaintiff for a conference, which we conducted by telephone on December 4, 2008. (Id. ¶ 15).

The day before the conference, defendants turned over to plaintiff's counsel, again on a "settlement only" basis, a set of ten spreadsheets, corresponding to each of the allegedly infringing garments. (See Hew Reply Decl. ¶ 16 & Ex. F; Chen Decl. ¶ 5 & Ex. B). Each of these sheets, supposedly prepared only for defendants' counsel, listed a figure for the cost and official retail price of the garment, the number of such garments purchased and sold, the number in inventory, the total paid for the garment by Forever 21,

5

EXHIBIT 5
Page 5 of 15

the gross revenues from their sale, and a so-called distribution summary, listing the number of stores to which the garment was distributed, categorized by the retail prices actually charged (which seemingly varies from the official retail price). (Id.). Again, defendants did not provide the underlying documentation on the basis of which these statistics had been compiled.

During our conference on December 4, 2008, defendants' counsel reiterated the contention that it lacked sales documents, a representation that plaintiff contested. We directed that the parties were promptly to confer about this and other disagreements about defendants' production and, if they could not resolve these issues, plaintiff was free to move to compel. (Order dated Dec. 4, 2008 ¶ 2).

One day after the conference, defendants provided another eleven pages of documents, although these documents did not address the matters at issue on the current motion except for two "I.B.D. Cost Sheets" from defendant Concord Ventures, a vendor located in the United Arab Emirates, which had supplied one of the allegedly infringing garments. (Chen Decl. ¶¶ 6-7 & Ex. C; Hew Reply Decl. Ex. E). Plaintiff filed the current motion three days later.

6

**EXHIBIT 5**
**Page 6 of 15**

<u>Plaintiff's Motion and Later Developments</u>

On December 8, 2008 plaintiff sought relief from the court. Principally, Anthropologie seeks an order compelling defendants to provide the documents in issue, including all such documents in electronic storage. Plaintiff also asks for an order permitting it to appoint an expert to copy and review the hard drives of the computer system utilized by Forever 21 for its business in order to search for the categories of documents that defendant has contended it does not keep, particularly documentation of its sales of the infringing garments and resulting profits.

More than a week after completion of the briefing of plaintiff's motion, defendants served and filed, without permission, a set of sur-reply papers. In the course of thus submission defendants alluded to a still further production, made on December 17 and 18, after the full briefing of the motion, which they contend moots plaintiff' application. (Sur-Reply Decl. of Hewson Chen, Esq., executed Dec. 23, 2008 ("Chen Sur-Reply Decl.") ¶¶ 3-4 & Exs. A-B; Defs.' Sur-Reply Mem. 3). Plaintiff in turn submitted a letter response, dated December 29, 2008, asking the court to strike defendants' unauthorized filing and further taking issue with the contention that the most recent production had mooted the motion. (Dec. 29, 2008 letter to the Court from Gregory

**EXHIBIT 5**
**Page 7 of 15**

P. Gulia, Esq.).

<u>ANALYSIS</u>

Plaintiff has sought a set of documents plainly pertinent to the claims in this case -- principally involving sales of infringing garments and profits -- and for a period of approximately one year it has waited to receive them. To date, it is still waiting. Instead, Forever 21 has, over an extended period of time, insisted that it did not have such documents or lacked ready access to them, representations that are incredible on their face. Moreover, at the same time --- and in plain contradiction of these representations -- this defendant offered to provide cumulated data, solely for settlement purposes, that it plainly could only have derived from underlying documentation that defendant was claiming either did not exist or was not accessible.

Given the scale of defendants' business, it is virtually inconceivable that it does not keep records -- whether hard copies or in electronic storage -- reflecting the detailed data involved in purchasing, distributing, and selling each of these garments. Now defendants' own conduct in discovery -- including its proffer of summaries of that data -- conclusively demonstrates the falsity of its prior representations. Moreover, its effort to shield even

8

EXHIBIT 5
Page 8 of 15

its summaries from the discovery process (by designating them as "for settlement purposes only") reflects a refusal to comply with even the minimal requirements of the governing discovery rules.

Apart from defendants' deceit and its violation both of its discovery obligations and this court's prior discovery order, this conduct has had serious consequences for the litigation. Defendants have caused substantial delays in the completion of plaintiff's discovery in the case, and have imposed unnecessary expenses because of both the prolongation of that process and the plain necessity for the current motion to obtain even the most grudging and incomplete disclosure by defendants.

In seeking to defend against the motion, Forever 21 offers a string of frivolous arguments. Thus, it first asserts that the motion should be rejected because it was filed one day late under the Court's December 4, 2008 schedule (see Dec. 9, 2008 letter to the Court from James A. Gibson, Esq.; Defs.' Mem. 1), a proposition of considerable irony considering defendants' performance in this case to date. Then they claim that plaintiff has never made clear what data it wants and its relevance (see, e.g., Defs.' Mem. 1, 9), even though the discovery demands are crystal-clear and plainly pertinent to the infringement claims and measurement of potential recovery. They also suggest that by producing summary reports

9

EXHIBIT 5
Page 9 of 15

created for settlement purposes they have fulfilled their discovery obligations even though they have refused to provide the underlying documentation for the summaries. (_Id._ at 4-6). They further assert at one point that plaintiff should be denied the discovery it seeks because it has not accepted what defendants characterize as a generous settlement offer. (_Id._ at 2). They also insist that plaintiff's application is premature because depositions will somehow substitute for document production (_id._ at 10), and finally they suggest, in an unauthorized sur-reply filing, that the application is moot since they have produced -- eleven months after service of the Rule 34 request -- a set of documents again summarizing the data that plaintiff has been seeking since early 2008. (Defs.' Sur-Reply Mem. 2-4).

Delays aside, the proffer by defendants of summaries (even if not limited to settlement purposes) is not a substitute for production of the raw data on which the summaries are based. Plaintiff is not required to take such summaries -- apparently prepared exclusively for the litigation -- on faith. Moreover, while this proposition is true in all cases, it is especially so here, where the credibility of defendants is in serious question. As plaintiff has documented, the small number of each of the allegedly infringing garments that Forever 21 has admitted ordering (and selling) seems highly questionable in view of the hundreds of

10

**EXHIBIT 5**
**Page 10 of 15**

stores that the company supplies. (See Reply Decl. of Gregory
Gulia, Esq., executed Dec. 16, 2008 ¶¶ 6-7). Moreover, the three
different sets of summaries supplied by defendants (all but the
last solely for settlement, and not for discovery) are inconsistent
with each other, raising further questions as to their accuracy.
(See Hew Reply Decl. ¶¶ 6-18). In addition, as noted, defendants
have made a series of manifestly false statements over a period of
many months about the non-existence or inaccessibility of essential
corporate records -- involving documentation of purchases,
distribution, and sale of the allegedly infringing garments -- and
this too puts in serious question the trustworthiness of their
representations as to the accuracy of their data. Finally, we note
the extraordinary litigating history of this company, which raises
the most serious question as to whether it is a business that is
predicated in large measure on the systematic infringement of
competitors' intellectual property. (See Mem. & Order (regarding
Defs.' Motion for a Protective Order) dated March 10, 2009 at 3
(citing Decl. of Vanessa Hew, Esq., executed Dec. 24, 2008 ¶ 5)).

The foregoing makes it manifest that defendants must turn over
to plaintiff's counsel forthwith the data and documentation on the
basis of which they prepared each of the summaries that they have
proffered to plaintiff between last April and the end of December.
They must also provide any additional documents in their custody

11

**EXHIBIT 5**
**Page 11 of 15**

and control that refer to (1) the creation and/or selection of the infringing garments, (2) the marketing and distribution of the infringing clothing by Forever 21, (3) the sales of these garments by Forever 21, and (4) the profits earned by Forever 21 from the sale of the infringing garments. Furthermore, this production is to include not only hard-copy documents, but any electronically stored data that comes even arguably within the scope of these four categories. To facilitate this requirement, plaintiff is to provide to defendants' counsel within seven days the specifications for formatting any such electronically stored data to facilitate its use by plaintiff. The production is to be made within seven days thereafter.

Plaintiff further asks for authorization to copy the hard drives on the computer system of Forever 21 to ascertain definitively whether all documents have been produced. Although such court-ordered on-site inspections are not routinely granted, they may well be justified where there is considerable doubt about the completeness of a litigant's production and the information in question goes to the heart of the claims in the case. See, e.g., Shira A. Scheindlin et al., Electronic Discovery and Digital Evidence: Cases & Materials 271-75 (West 2009) (discussing cases). In this case defendants' performance to date appears to justify the use of such a procedure if it can be performed without undue delay

12

**EXHIBIT 5**
**Page 12 of 15**

and burden.

In this regard, however, we note that plaintiff has not proffered the specifics of what it proposes to do and how, nor has it documented its best estimate of how complicated and extended a process would be involved. By the same token, although Forever 21 asserts in its opposition to the motion that such a process would take weeks and gravely harm its business, it has proffered no evidentiary support for that contention.[2]

Given the need to complete the discovery process without further undue delay and expense, we direct that the production that we have ordered from Forever 21 proceed first. Once that production has been made, we authorize plaintiff, if it wishes, to submit the declaration of a forensic specialist proffering a specific proposal for conducting such a search, with a further explanation by plaintiff of the need for it in light of the document productions made to date. That submission is to be made within seven days after receipt of defendants' documents. Defendants' response will be due

---

[2] We note that in defendants' unauthorized sur-reply they sought to fill that gap by proffering the transcript of a deposition of Forever 21's in-house Network and Systems Assistant Manager. (Chen Sur-reply Decl. Ex. C). That submission was improper, as it was done without court permission, and we therefore disregard any evidentiary submission that it contains, particularly since this manner of proceeding, besides being contemptuous of court rules, deprives the other side of an opportunity to respond.

**EXHIBIT 5**
**Page 13 of 15**

within three days thereafter.

Finally, in view of the delay and expense occasioned by defendants' course of conduct in discovery, plaintiff is authorized to apply, pursuant to Rule 37(a)(4), for an award of the expenses of its motion, including reasonable attorneys' fees.

### CONCLUSION

For the reasons noted, plaintiff's motion to compel is granted on the terms noted.

Dated: New York, New York
      March 12, 2009

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been mailed today to:

Gregory P. Gulia, Esq.
Vanessa C. Hew, Esq.
Duane Morris LLP
1540 Broadway
New York, New York 10036-4086

**EXHIBIT 5**
**Page 14 of 15**

Robert L. Powley, Esq.
David J. Lorenz, Esq.
Hewson Chen, Esq.
James Martin Gibson, Esq.
Powley & Gibson, P.C.
304 Hudson Street
2nd Floor
New York, NY 10013

15

**EXHIBIT 5**
**Page 15 of 15**

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
ANTHROPOLOGIE, INC.,

        Plaintiff,       :    <u>MEMORANDUM & ORDER</u>

      -against-       :    07 Civ. 7873 (RJS)(MHD)

FOREVER 21, INC., DO WON CHANG,
JIN SOOK CHANG, ONE CLOTHING,    :
INC., ORIGINAL INC., SALT &
PEPPER, STEPS OF CA, UNO TEXTILE, :
and CONCORD VENTURE,

                     :

         Defendants.
---------------------------------x

                                    3/13/09

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


    Plaintiff Anthropologie, Inc. commenced this lawsuit against
retailer Forever 21 and others, alleging that defendants had
manufactured, purchased, distributed, and sold garments that
infringed plaintiff's copyrights in a variety of patterns and that
in doing so they had also engaged in unfair competition. At the
tail-end of discovery, the parties have filed a series of motions
directed at their respective adversaries' performance in discovery.
In this decision we address a motion by plaintiff for sanctions --
including entry of default judgments and monetary awards -- against
the defendants for a potpourri of misconduct, mostly involving
deceptive conduct both in discovery and in making representations
about the cessation of allegedly infringing activities by Forever
21.

1

**EXHIBIT 6**
**Page 1 of 16**

For the reasons that follow, we grant the motion in part and deny it in part.

The Motion

Plaintiff recites a series of alleged misdeeds by Forever 21 and its principals that Anthropologie claims have irremediably damaged its ability to conduct meaningful discovery and that demonstrate bad faith by defendants. These include (1) the surreptitious redaction by Forever 21 of purchase orders for the purpose of concealing the role of defendant Jin Sook Chang in the purchase of the infringing garments, (2) the filing by Forever 21 of a dishonest and frivolous motion for a protective order to preclude the taking of Ms. Chang's deposition, a motion premised on concealing her role in the purchases, (3) defendants' delay in producing relevant documents and their failure until recently to make a complete production, (4) a false representation by the general counsel of Forever 21 that the company had stopped selling the allegedly infringing garments as of October 9, 2007, and (5) the improper redaction of other documents on the basis of a suspect assertion of irrelevance.

Defendants contest the motion, insisting that they have done nothing wrong. They further assert that in any event they turned

2

**EXHIBIT 6**
**Page 2 of 16**

over all relevant documents before plaintiff's scheduled depositions of defendants' witnesses -- in short, soon enough to avoid prejudice to plaintiff.

### Analysis

Plaintiff premises its sanctions requests on the terms of Rule 37, which authorizes a broad range of measures to address failures of a party to comply with court orders directing such disclosures. See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2003). Moreover, although Rule 37(b) outlines a non-exclusive range of measures available to the court for the failure of a party to comply with an order, even in the absence of an order the court may impose sanctions for discovery misconduct as an assertion of its inherent powers. See, e.g., id.; Lucky Brand Dungarees, Inc. v. Ally Apparel Res., Inc., 2009 WL 72982, at *7 (S.D.N.Y. Jan. 8, 2009); Metrokane, Inc. v. Built NY, Inc., 2008 WL 4185865, at *3 (S.D.N.Y. Sept. 3, 2008).

We assess the grounds for imposition of sanctions pressed by plaintiff more or less in the order presented. We conclude that some relief is warranted, but that default judgments or other dispositive relief cannot be justified.

3

EXHIBIT 6
Page 3 of 16

## 1. The Redacted Purchase Documents

The most striking accusation by plaintiff concerns the production by Forever 21 of certain transaction-specific documents relating to the purchase of the allegedly infringing garments. At the end of August 2008, defendant produced a set of purchase orders for the garments in question. Those standard forms only listed a buyer for Forever 21 for one of the garments, and there was no indication on any the forms that they had been redacted to conceal any information. (Decl. of Vanessa Hew, Esq., executed Jan. 9, 2009 ¶¶ 8-9 & Ex. A). Then on December 15, 2008, defendants made a supplemental production that included purchase orders for the same set of garments, with one significant difference -- the versions belatedly produced identified Ms. Chang as the buyer for all of the garments. (Id. ¶ 10 & Ex. E). Plaintiff contends that the documents provided on August 29 were deliberately altered to conceal (1) Ms. Chang's direct role in purchasing, and (2) the very fact that the purchase orders had been redacted.

Defendants deny that the purchase orders provided in August were deliberately redacted, and they offer what they describe as an innocent explanation for the sequence of events culminating in the handover of a second version of the documents. According to a declaration by Ann Cadier-Kim, an employee of Forever 21, the

4

**EXHIBIT 6**
**Page 4 of 16**

original purchase orders contained an identifying notation of the buyer, and some included the name of Ms. Chang, who was the "head buyer" and corporate Secretary, even though she was not directly involved in the transaction. (Decl. of Ann Cadier-Kim, executed Jan. 14, 2009 ("Kim Decl.") ¶ 2). Instead, Ms. Kim says, the people directly involved were members of the so-called "buying and purchase order teams." (Id.). Ms. Kim goes on to say that this "historical inaccuracy" was corrected at some point, apparently in the defendant's computer software, and that accordingly when the purchase orders in question were printed out for production, presumably in August 2008, they did not contain the entry for naming a buyer or Ms. Chang's name. (Id. ¶ 3). Ultimately, however, Forever 21 did a further search in December 2008 and unearthed the original purchase orders, which did contain the buyer identification of Ms. Chang, and duly produced them to plaintiff. (Id. ¶ 4).

This explanation is less than compelling. First, it is hard to credit the notion that Forever 21, which defendants describe as not maintaining a very sophisticated computer system, would invest manpower in going back into the system to alter purchase orders and other transactional documents pertaining to past transactions for no purpose other than to delete Ms. Chang's name simply for the sake of "accuracy." Second, if the company had bothered to do so,

5

**EXHIBIT 6**
**Page 5 of 16**

it is entirely unclear why it would not then have inserted the names of those buyers who actually did conduct the transactions, and, more significantly, why all but one of the documents produced in August did not contain any reference to a buyer and even lacked the "buyer" heading found on the original purchase orders. Third, the proffer by Forever 21 about this alleged computerized adjustment comes from Ms. Kim, who, based on her deposition testimony, is not competent to testify about these events, since she professed to have no knowledge about the information systems at the company or record-keeping, accounting, or other related company policies except for payment of bills to suppliers. (Reply Decl. of Vanessa Hew, Esq., executed Jan. 19, 2009 ("Hew Reply Decl.") ¶¶ 6-7 & Ex. C). Fourth, the testimony of another Forever 21 witness, Ms. Heather Choi, directly undercuts defendants' contention, made through Ms. Kim's declaration, that Ms. Chang was not involved in "purchasing decisions." (Kim Decl. ¶ 2). In striking contrast, Ms. Choi testified that Ms. Chang not only was the head of the Buying Department, but was directly involved in purchasing decisions since she "decide[s] whether a certain design can be bought or not bought." (Hew Reply Decl. ¶ 8 & Ex. D).

Under the circumstances, we are well satisfied that defendants deliberately redacted the purchase order documents to conceal Ms. Chang's role in the purchasing decisions. That said, there remains

6

**EXHIBIT 6**
**Page 6 of 16**

the question of what measures are appropriate to deal with this. Plaintiff seeks dispositive relief in the form of a default judgment. We disagree.

The determination of the sanction should be a product of the court's assessment of the degree of fault of the party against whom sanctions are sought and the extent of the prejudice to the moving party. See, e.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267-68 (2d Cir. 1999); Treppel v. Biovail Corp., 249 F.R.D. 111, 123-24 (S.D.N.Y. 2008); Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). Since preclusive sanctions are "a harsh remedy," LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001), the court should invoke them "only in extreme situations," id. (quoting Thielman v. Rutland Hosp., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)), and not ordinarily unless non-compliance is a result of "willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." Handwerker v. AT&T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002); see also Reilly, 181 F.3d at 271 (finding that preclusive sanctions may be imposed for gross negligence).

In this case, for reasons noted, we believe that the most likely explanation for the peculiar sequence of production of redacted and then unredacted purchases orders involved more than

7

EXHIBIT 6
Page 7 of 16

simple negligence. In mitigation, however, it is also undisputed that defendants undertook to correct the deletion of Ms. Chang's name and implicit role in the purchase of the allegedly infringing garments and did so prior to the depositions of the defendants' witnesses. (See Decl. of Hewson Chen, Esq., executed Jan. 15, 2009 ("Chen Decl.") ¶ 8). Moreover, in view of the delay in obtaining Ms. Chang's deposition, plaintiff's counsel will have had an ample opportunity to prepare to question her with the pertinent documents in hand. Hence the prejudice to plaintiff from this imbroglio is minimal, except for the expense of litigating to obtain fuller disclosure of documents, a task undertaken in plaintiff's separate motion to compel, which we have already granted with a further proviso that plaintiff may recover its motion expenses. (March 12, 2009 Mem. & Order 14).

In this regard, we also emphasize, in mitigation of prejudice, that plaintiff may offer competent evidence at trial concerning the sequence of events that involved the redaction of purchase orders and their later production in unredacted form, if plaintiff's counsel deems that desirable, as a means of impeaching the credibility of defendants' witnesses, including Ms. Chang. Furthermore, when deposing Ms. Chang, plaintiff will be free to question her about the circumstances that led to the deletion of her name from the purchase orders.

8

**EXHIBIT 6**
**Page 8 of 16**

## 2. The Protective-Order Motion

On a related topic, plaintiff complains about defendants' pursuit of a Rule 26(c) protective order to bar the deposition of Ms. Chang and her co-defendant Do Won Chang. The point seems to be that defendants' concealment of Ms. Chang's role in purchasing infringing garments dovetailed with what appears to have been a bad-faith argument on the Rule 26(c) motion that Ms. Chang had no direct involvement in the transactions at issue in the lawsuit and should therefore be excused from testifying in this case.

We have already denied defendants' protective-order motion in a separate order. (March 10, 2009 Mem. & Order 3-4). Although plaintiff did not seek an award of motion expenses in its opposition papers, it does so now. Given the fact that defendants' motion was, for reasons previously described, not "substantially justified" (see id. at 2-3), plaintiff's request for an award of motion expenses is eminently justified. See Fed. R. Civ. P. 26(c)(3) & 37(a)(5). Plaintiff may serve and file an appropriate application within two weeks.

Finally, insofar as plaintiff seeks, in the current motion, to compel Mr. and Ms. Chang to travel from California to New York for

9

**EXHIBIT 6**
**Page 9 of 16**

their depositions, we fail to see the justification for such an order. Even if defendants had timely disclosed the role of Ms. Chang and not sought to preclude their depositions, there is no doubt that those depositions would have been conducted in California, where the Changs and their business are located. Their unsuccessful, and possibly dishonest, resistance to those depositions does not logically lead to the conclusion that the locus for the depositions sessions should be moved across the continent. Similarly, plaintiff's alternative request, that it be granted the expenses of those depositions, including attorney's fees, is unjustified. If the Changs had not resisted being deposed, plaintiff would have borne the expense of deposing them, and there is no reason to alter that allocation of burdens now.

### 3. Defendants' Non-Production of Requested Documents

In the course of plaintiff's current motion, it alludes to the failure of defendants to make complete or timely production of various categories of documents. This complaint was the topic of still another separate motion, this one to compel discovery, which we have just adjudicated largely in plaintiff's favor. (March 12, 2009 Mem. & Order 11-14). Moreover, in our order we have authorized an application by plaintiff for an award of motion expenses. (Id. at 14). Plaintiff's reiteration of that set of controversies in the

10

**EXHIBIT 6**
**Page 10 of 16**

broader context of this motion does not justify any additional relief on that score.

### 4. False Representation that Infringing Sales Stopped

Plaintiff recites that at some unspecified time Mr. Young Kwon, identified as the General Counsel for Forever 21, made a representation in an e-mail and by telephone to plaintiff's attorney that the company had stopped selling the allegedly infringing items by October 9, 2007. (Hew Decl. ¶ 24).[1] According to plaintiff, it discovered that this representation was false when it belatedly received some sales documents from Forever 21 on December 17, 2008. (Id. ¶ 24 & Ex. H). It claims prejudice because, it says, a timely production (or an accurate representation by Mr. Kwon) would have led it to seek a temporary restraining order and preliminary injunction. (Pl.'s Mem. 8-9).

Defendants do not dispute the account of Mr. Kwon's statement or the fact that some of the garments were sold after October 9, 2007, but suggest that the misstatements were innocent and that

---

[1] Plaintiff has not proffered the e-mail, assertedly because it was part of settlement discussions. (See id.). This sensitivity appears misplaced, if for no other reason, because plaintiff is implicitly asserting that the representation in the e-mail is a proper subject for litigation. In any event, its use for appropriate purposes is not barred by Federal Rule of Evidence 408. See Fed. R. Evid. 408(b).

**EXHIBIT 6**
**Page 11 of 16**

plaintiff has not been prejudiced. Thus, defendants states, or at least implies, that Forever 21 arranged to halt all sales by October 9, 2007, and that Mr. Kwon had no reason to believe otherwise when he made the statements. (Defs.' Mem. 9-10). It also notes that the sales records made available to plaintiff reflect the sale of only thirty-six items, with sales of only approximately $260.00, and imply that this simply reflects one or more errors in carrying out a company recall of these garments. (Chen Decl. ¶ 10 & Ex. C).

Defendants' explanation of the apparent anomaly is not facially implausible, especially in view of the small number of garments involved. Furthermore, we see no basis for the plaintiff's contention that if it had known of these sales on a timely basis it would have sought and obtained emergency injunctive relief. The amount involved is clearly de minimus and, if disclosed, would in all likelihood simply have led to an agreement to tighten the procedures for ensuring against future slip-ups of this nature. In any event, plaintiff will be free to use the general counsel's representation and the evidence of later sales at trial, if it so chooses, to impeach the credibility of the defendants' witnesses, and, if appropriate, to evidence defendants' willfulness, although we strongly question the probative value of such evidence if the only later sales are the ones reflected in the sales records

12

**EXHIBIT 6**
**Page 12 of 16**

proffered to the court.[2]


No further relief is warranted on this score.


## 5. Other Redacted Documents


Finally, plaintiff complains that on December 15, 2008, on the eve of depositions, defendants produced in redacted form a set of twenty-five documents, and when questioned about the basis for the redactions, admitted that the deletions were not for privileged materials but rather were done because the redacted portions were not relevant to the case. (Pl.'s Mem. 9-10). Plaintiff further notes that the redactions occur in the midst of a string of e-mail exchanges between Ms. Monica Rao, a Forever 21 employee, and a vendor, defendant Concord Ventures, which supplied one of the infringing garments, known as the Open Work Blue Dress. (Id.; Hew Decl. ¶¶ 21-23 & Ex. G; Hew Reply Decl. ¶ 11 & Ex. F).


Defendants assert that the deletions were permissible to eliminate irrelevant material, and they further observe that they have offered plaintiff the opportunity to review the unredacted documents at their attorney's office. (Chen Decl. ¶ 11 & Ex. D). It

---

[2] We note that defendants have been required to make an additional production of sales documents, and hence the numbers in question may change before trial.

13

**EXHIBIT 6**
**Page 13 of 16**

appears, however, that they have refused to allow plaintiff's counsel to copy them. (Hew Reply Decl. ¶ 14).

The short answer to this issue is that defendants are required to produce the non-privileged documents in unredacted form. This is to be done within seven days.

## CONCLUSION

For the reasons noted, plaintiff's motion for sanctions is granted to the following extent:

1. Plaintiff may question Ms. Chang at her deposition concerning the events surrounding the deletion of her name from the purchase orders, and may use admissible evidence at trial concerning these events for impeachment purposes.

2. Plaintiff may apply, within two weeks, for an award of motion expenses engendered by defendants' unsuccessful application for a protective order precluding the depositions of Mr. and Ms. Chang.

3. Plaintiff may offer at trial competent evidence of the representations by Mr. Kwon regarding the cessation of allegedly

14

**EXHIBIT 6**
**Page 14 of 16**

infringing sales and the falsity of those representations either
for impeachment purposes, and also to demonstrate willfulness, if
the trial court deems that evidence admissible for the latter
purpose.

4. Defendants are to produce to plaintiff in unredacted form
the redacted documents previously provided to plaintiff on December
15, 2008. This production is to be done within seven days.

The parties are to bear their own expenses of this motion.

Dated: New York, New York
       March 13, 2009


_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

15

**EXHIBIT 6**
**Page 15 of 16**

Copies of the foregoing Memorandum and Order have been mailed today to:

Gregory P. Gulia, Esq.
Vanessa C. Hew, Esq.
Duane Morris LLP
1540 Broadway
New York, New York 10036-4086

Robert L. Powley, Esq.
David J. Lorenz, Esq.
Hewson Chen, Esq.
James Martin Gibson, Esq.
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, NY 10013

**EXHIBIT 6**
**Page 16 of 16**

# EXHIBIT 7

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-01196-JVS (MLGx) | Date | March 4, 2009 |
| Title | Trovata, Inc v. Forever 21, Inc. et al | | |

Present: The Honorable    James V. Selna

| | |
|---|---|
| Karla J. Tunis | Sharon Seffens |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Anne Swoboda Cruz | Bruce Brunda |
| Frank Colucci | Lowell Anderson |

**Proceedings:** **Plaintiff's Motions in Limine (Fld 12-30-08)**
1) to Exclude documents doucments and testimony regarding Third Party Garments and Patents not Produced During Discovery
2) to Limit testimony of Donna Hampton, Henry Lee, Connie Huerta, Vonnie Tandra, Heather Choi, Young Min Cho, Robert Rosenfeld, and Lawrence Meyer.

**Defendants' Motions in Limine (fld 2/2/09)**
1) to exclude testimony/doucmants respecting third party actions
2) to exclude testimony/documents respecting any claims for actual damages suffered by plaintiff
3) to exclude testimony/documents respecting allegations of actual confusion
4) to preclude testimony/evidence regarding Forever 21's Womens Tank Top having Horizontal Stripes
5) to excude reference to Torvata's Trademark Registration of Exhibit 141
6) to exclude reference to total retail sales by Trovata's customers
7) to preclude trade dress media exhibits that do not disclose the asserted trade dress features
8) to exclude the testimony and report of plaintiff's media valuation expert, Gregory Matusky
9) to exclude references to copying of anything other than the trade dress at issue
10) to exclude testimony of sales, activities and fame outside the U.S.
11) to exclude testimony of Lisa Smilor
12) to exclude or limit testimony by Paul Birardi
13) to exclude exhibit 195
14) to exclude testimony/documents regarding copying of third party products
15) to exclude Trovata's Blouses that do not have the box dot pattern trade dress feature
16) to exclude references to confusion or infringement or "Line" of trade dresses based on anything other than the trade dress at issue
17) to preclude changes to defined trade dress combinations in the complaint and prior orders
18) to exclude evidence and testimony relating to six garments for which samples do not exist
19) to exclude or otherwise strike defendants' corporate secretary Jin Chang from Plaintiff's Witness list

Cause called and counsel make their appearances   The Court's tentative ruling regarding motions in limine was previously issued on February 23, 2009.   Counsel make their arguments.   The Court GRANTS IN PART;  DENIES IN PART; and RESERVES RULING

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-01196-JVS (MLGx) | Date | March 4, 2009 |
|---|---|---|---|

| Title | Trovata, Inc v. Forever 21, Inc. et al | | |

The Motion is denied.

S. <u>Motion *in Limine* No. 19</u>: <u>Jin Chang</u>

Forever 21 seeks an order to exclude Jin Chang ("Chang"), a Forever 21 officer,[6] from the witness list. Forever 21 asserts that this is simply harassment of a high ranking official, and that she does not have any relevant knowledge. Significantly, Forever 21 makes no evidentiary showing with regard to Chang's asserted lack of knowledge.

However, the record indicates her name appears on one of the purchase orders for allegedly infringing products. That others can testify about the purchase order does not excuse her from testifying. The testimony of Young Min Cho as well as Chang's declaration in a separate New York federal action make clear that she is the head buyer. (Colucci Decl., Ex. 7, pp. 28-29, pagination per deposition; Ex. 8, ¶ 1.) It is clear that she has relevant knowledge regarding Forever 21's design and purchasing practices.

The Court indicated at oral argument that it expects Trovata to accommodate Chang's time requirement as a senior official of Forever 21.

The Motion is denied.

\* \* \* \* \* \* \* \*

**Counsel are directed to inform all parties and witnesses of the Court's *in limine* rulings so that there will be no inadvertent violations of the Court's orders.**

| | 1 | : | 20 |
|---|---|---|---|
| Initials of Preparer | kjt | | |

---

[6]She is identified variously as the president and corporate secretary. (Motion, p. 2.)

**EXHIBIT 7**
Page 2 of 2