1  HOLLAND & KNIGHT LLP
   Theresa W. Middlebrook   (State Bar 89709)
2  theresa.middlebrook@hklaw.com
   Tara L. Cooper (State Bar 239018)
3  tara.cooper@hklaw.com
   633 West Fifth Street, 21st Floor
4  Los Angeles, California  90071-2040
   Tel.  (213) 896-2400
5  Attorneys for Defendant White Owl Clothing, Inc.

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  EXPRESS, LLC,                    )   Case No. CV09-04514 (ODW)(VBKx)
                                     )
12                    Plaintiff,     )   **POINTS & AUTHORITIES IN**
                                     )   **SUPPORT OF DEFENDANT**
13              v.                   )   **WHITE OWL CLOTHING, INC.'S**
                                     )   **MOTION FOR SUMMARY**
14  FOREVER 21, INC.;  FOREVER       )   **JUDGMENT, OR**
    21 LOGISTICS, LLC;               )   **ALTERNATIVELY,**
15  FOREVER 21 RETAIL, INC.;         )   **SUMMARY ADJUDICATION**
    JIN SOOK CHANG;  DO WON          )
16  CHANG;  WHITE OWL                )   [Notice of Motion, Declarations of
    CLOTHING, INC.;  STEPS           )   Isaac Saul and Theresa Middlebrook
17  APPAREL GROUP, INC. dba          )   filed herewith]
    STEPS OF CA;  and DOES 1         )
18  through 10, inclusive,           )   **<u>Hearing</u>**
                                     )
19                   Defendants.     )   **Date: August 16, 2010**
                                     )   **Time:1:30 p.m.**
20                                   )   **Courtroom: 11**
                                     )
21                                   )   Discovery Cut-off: July 5, 2010
                                     )   Pre-Trial Conference: Sept. 13, 2010
22                                   )   Trial: Oct. 5, 2010
                                     )
23                                   )   Complaint Filed:  June 23, 2009
                                     )   First Amended Complaint Naming
24                                   )   This Defendant Filed:   Dec. 7, 2009
                                     )
25                                   )
                                     )
26                                   )
                                     )
27  _____)
                                     
28

                                     i
   DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN
   SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page No.

I.     RELIEF SOUGHT ...............................................................................1

II.    FACTUAL BACKGROUND ................................................................2

III.   THE CONTROLLING SUMMARY JUDGMENT STANDARD ......3

IV.    WHITE OWL IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON THE COPYRIGHT INFRINGEMENT ACTION BECAUSE OF INVALIDITY OF THE COPYRIGHTS ....................4

      1.    Ownership of a Valid Copyright .......................................4

      2.    Rights Held In Derivative Works Under Copyrights .......5

      3.    Michael Tower Admittedly Created the Express Plaid Designs By Copying Preexisting Plaids ...........................5

      4.    The Requirement of Sufficient Creativity In A Contribution To The Derivative Work .............................8

      5.    Neither Mr. Tower Nor Express Know What Changes He Made In The Preexisting Plaids To Create The Express Plaid Designs ....................................................9

      6.    Mr. Oman Does Not Know What Changes Mr. Tower Made In The Preexisting Plaids To Create The Express Plaid Designs ...................................................13

      7.  Express's Copyright Registrations Should Be Held Invalid Because of the Material Omissions of Critical Information Relevant to Whether The Copyright Registrations Should Issue..............................................13

V.     WHITE OWL IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON THE COPYRIGHT INFRINGEMENT ACTION BECAUSE EXPRESS CANNOT CARRY ITS BURDEN OF IDENTIFYING THE APPEARANCE COVERED BY ITS COPYRIGHTS..................................................................................16

VI.    IF SUMMARY JUDGMENT AS REQUESTED ABOVE IS NOT GRANTED, THEN WHITE OWL SEEKS FACTUAL ORDERS AND/OR RESULTING INTERLOCUTORY SUMMARY JUDGMENT ON CERTAIN ISSUES OF LIABILITY ....................18

    A.    Express is Not Entitled to Statutory Damages..........................18

    B.    White Owl Is Not Liable for Copyright Infringement Because Of the Acts of the Other Defendants ..........................19

    C.    There is No Basis for Joint or Several Liability ......................20

VII.   WHITE OWL IS ENTITLED TO SUMMARY JUDGMENT ON THE SECOND, THIRD AND FOURTH CAUSES OF ACTION ....21

VIII.  CONCLUSION .................................................................................22

Table of Authorities

i

                                                                                      **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)..........................................3, 4

*Barnett v. Centoni*,
    31 F.3d 813 (9th Cir.1994) ..........................................................................4

*Celotex v Catrett*,
    477 U.S. 317, 106 S.Ct. 2548 (1986)..................................................3, 4, 17

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) .......................................................................21

*Derek Andrew, Inc. v Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir 2008) .......................................................................19

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) .......................................................................20

*El v Krain*,
    560 F.Supp.2d 932 (C.D. Ca. 2008) ..............................................................4

*Feist Publ'ns, Inc. v Rural Tel. Serve. Co.*,
    499 U.S. 340, 111 S. Ct. 1282 (1991)..........................................................4, 9

*Kuddle Toy, Inc. v Pussycat-Toy, Inc.*,
    183 U.S.P.Q. 642 (E.D.N.Y. 1974).................................................................5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.
    1348, 1356, 89 L.Ed.2d 538 (1986) .................................................................4

*Nelson v City of Davis*,
    571 F.3d 924 (9th Cir. 2009) .......................................................................12

*Novelty Textile Mills v Joan Fabrics Corp.*,
    558 F.2d 1090, at n. 6 (2nd Cir. 1977) ...........................................................11

*powerlineman.com, LLC v. Jackson*,
    2007 U.S. Dist. LEXIS 86261 (N.D.Cal. November 15, 2007)............................21

*R. Ready Prods., Inc. v. Cantrell*,
    85 F.Supp.2d 672 (S.D.Tex. 2000) (emphasis added) ......................................14

*Rice v. Fox. Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) .....................................................................22

*Royal Printex Inc v Unicolors, Inc.*,
    91 USPQ2d 1439 (C.D. Cal. 2009)..................................................................9

*Russ Berrie & Co., v Jerry Elsner Co., Inc.*,
    482 F.Supp. 980 (S.D.N.Y. 1980)............................................................14, 15

ii

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

*Satava v Lowry,*
    323 F.3d 805 (9th Cir. 2003) ..................................................................9

*Smith v Jackson,*
    84 F.3d 1213 (9th Cir. 1996) ...................................................................4

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.,*
    809 F.2d 626 (9th Cir. 1987) ...................................................................4

*The Prince Group, Inc. v MTS Products,*
    43 USPQ2d 1517 (S.D.N.Y. 1997).........................................................9

**STATUTES**

15 U.S.C. § 1125(a) .....................................................................................21

17 U.S.C. § 101 .............................................................................................5

17 U.S.C. § 102(a) .........................................................................................5

17 U.S.C. § 102(b) .........................................................................................3

17 U.S.C. § 103(b) .........................................................................5, 14, 15, 17

17 U.S.C. § 106 ............................................................................................19

17 U.S.C. § 201(a) .........................................................................................5

17 U.S.C. § 201(b) .........................................................................................5

17 U.S.C. § 409 ......................................................................................13, 14

17 U.S.C. § 412(2) .......................................................................................18

Calif B & Prof. § 17200 ..............................................................................21

Fed.R.Civ.Proc. 56(c)(2)......................................................................16, 21, 3

Fed.R.Civ.Proc. 56(d)(1)...........................................................................18, 20

Fed.R.Civ.Proc. 56(d)(2)...........................................................................18, 20

Fed.R.Civ.Proc. 56(e)(1)...............................................................................13

**OTHER AUTHORITIES**

U.S. Copyright Office, Compendium II, Copyright Office Practices, § 503.02(a)
    (1984)...........................................................................................9, 11, 12

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.   **RELIEF SOUGHT**

Defendant White Owl Clothing, Inc. ("White Owl") seeks summary judgment, or alternatively, summary adjudication, as follows:

**On the First Cause of Action**

*Option (1)*

Summary Judgment is granted in favor of White Owl Clothing, Inc. and against Express, Ltd. on two separate grounds, specifically:

(a)   Express's Copyright Registration Nos.  VA 0001668158 ("Bruin"), VA 000168156 ("Ocean"), VA 001668162 ("Jack") and VA 01668155 ("Roth") are all invalid and unenforceable because Express made material omissions of critical information relevant to the claim of copyright in each of these applications filed with the Copyright Office which would or could have caused the applications to be rejected (*Section IV herein*); and

(b)   Express cannot carry its burden of proof with a trier of fact, which requires it to be capable of identifying the material contributed to the respective Express Plaid Designs that are protected by their respective copyright registrations.  (*Section V herein*)

In the alternative:

*Option (2)*

An Order of Summary Adjudication in favor of White Owl Clothing, Inc. and against Express, Ltd. is granted as follows:

(a)   White Owl is not liable for any acts of copyright infringement arising out of the allegedly infringing of the Roth and Bruin copyrights,  as it had no involvement whatsoever with the creation or distribution of the shorts charged with infringing those copyrights;  and

(b)   Express has no right to statutory damages under Section 412(1) of the Copyright Act. (*Section VI herein*)

1

## On the Second, Third and Fourth Causes of Action

Summary Judgment is granted in favor of White Owl Clothing, Inc. and against Express, Ltd. on the Second, Third and Fourth Causes of Action, as White Owl is not liable for any claims arising out of the Forever 21 Jacket. (*Section VII herein.*)

## II.    FACTUAL BACKGROUND

This case is about five articles of clothing sold to the public from mid-May 2009 through July 1, 2009 through stores owned by or related to defendants FOREVER 21, INC., FOREVER 21 LOGISTICS, LLC, and FOREVER 21 RETAIL, INC. (hereafter jointly, "Forever 21") Four of the garments are men's plaid shorts ("the Forever 21 Shorts"), and the fifth garment is a light-weight men's track jacket ("the Forever 21 Jacket").

Express claims that it owns the copyrights in four different plaids ("the Express Plaid Designs") named "Bruin", "Jack", "Ocean" and "Roth." Express claims that its four of these copyrights were violated with the creation and distribution of the Forever 21 Shorts.  On the Forever 21 Jacket, Express claims that this jacket violates its trade dress rights.

Only two of the shorts in issue were supplied to Forever 21 by White Owl, White Owls' Model Nos. SW0046B and SW0048B, charged to infringe the Ocean and Jack copyrights. [Sep. Stmt. 1]  White Owl had nothing to do with the other two shorts, charged to infringe the Roth and Bruin copyrights, or with the jacket that Express accuses of infringing its common law trade dress rights ("the Forever 21 Jacket").  Those three garments were supplied to Forever 21 by co-defendant Steps Apparel Group, Inc. ("Steps").  [Sep. Stmt. 2]

Further, unlike the other separately moving defendants who were aware that Express was using similar plaids in men's shorts, White Owl was not aware of that fact.  It's principal selected these two plaids in Asia, along with many

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

1   other plaids, presented its entire sample line of clothing of around 300 garments

2   to Forever 21, including plaid garments, and Forever 21 chose to order, among

3   other things, private label shorts in two plaids that Express now claims it owns.

4   [Sep. Stmt. 3]

5       Notably, if one just looks at the Express Plaid Designs, [Sep. Stmt. 4]

6   there is nothing immediately discernable as unique or original in their

7   appearance. Like all plaids, they are made up of color bands of varying widths

8   woven to cross at right angles.  The colors of the bands are routine

9   combinations, for example, color bands of red, black and beige for the "Ocean"

10  design, and black, white and grey in the "Jack" design. The various widths and

11  the spacings between the bands of color are not unusual in any manner.  Indeed,

12  these are the quintessential "classic plaids," which is exactly how Express

13  promotes comparable plaids used in comparable men's shorts. [Sep. Stmt. 5]

14  Importantly, copyright law does not provide Express with any exclusive right to

15  the idea of plaids, nor to plaids in certain new colors.  "In no case does

16  copyright protection … extend to any idea [or] concept… regardless of the form

17  in which it was described, explained, illustrated or embodied in such work."

18  17 U.S.C.§102(b).

19

20  **III.    THE CONTROLLING SUMMARY JUDGMENT STANDARD**

21      Fed.R.Civ.Proc.56(c)(2) mandates entry of summary judgment where

22  there is "no genuine issue as to any material fact," since a complete failure of

23  proof concerning an essential element of the nonmoving party's case necessarily

24  renders all other facts immaterial."  *Celotex v Catrett*, 477 U.S. 317, 322-323,

25  106 S.Ct. 2548 (1986).  When addressing a motion for summary judgment, the

26  Court must decide whether "any genuine factual issues that properly can be

27  resolved only by a finder of fact because they may reasonably be resolved in

28  favor of either party" exist.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] moving party is not initially required to *introduce evidence* negating an element on which the non-moving party will bear the burden of proof at trial (although the moving party may, and often does, do so). Rather, the moving party need only point out to the Court that, on at least one such element, no evidence supports the non-moving party's case." *El v Krain*, 560 F.Supp.2d 932 (C.D. Ca. 2008), citing *Celotex,* 477 U.S. at 322-23 and *Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir. 1994).

If the moving party meets this burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*., 809 F.2d 626, 630 (9th Cir. 1987).  To carry this burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.  *Anderson,* 477 U.S. at 252.

## IV.   WHITE OWL IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON THE COPYRIGHT INFRINGEMENT ACTION BECAUSE OF INVALIDITY OF THE COPYRIGHTS

In order to prevail on a copyright infringement claim, a party must establish (1) its ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v Rural Tel. Serve. Co*., 499 U.S. 340, 361, 111 S. Ct. 1282 (1991); *Smith v Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

### 1.   Ownership of a Valid Copyright

An essential element of Express's case hinges on the validity of its claim that it "authored", through the acts of one of its in-house employee designer,

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

4

1   Michael Tower [Sep. Stmt 6], the <u>entire appearance</u> of each of the four Express
2   Plaid Designs, as it claims in its copyright registrations.  Rights in copyright are
3   not created by the act of registration, but by authorship of original works.
4   Copyright protection subsists only in original works of authorship.  17
5   U.S.C.§102(a). Copyright in a work vests initially in either the human creator,
6   called the  "author" in the Copyright Act.  17 U.S.C.§201(a).  If the work has
7   been created by an employee within the course and scope of the employment, in
8   the employer under the "work made for hire" doctrine.   17 U.S.C.§201(b).   "It
9   is authorship that is critical, limiting, and determinative." *Kuddle Toy, Inc. v*
10  *Pussycat-Toy, Inc*., 183 U.S.P.Q. 642, 657 (E.D.N.Y. 1974).

### 2.    <u>Rights Held In Derivative Works Under Copyrights</u>

12         Often original works of authorship are "based upon one or more
13  preexisting works", and such works are classified as "derivative" works.
14  17 U.S.C.§101.  The Copyright Act specifically limited the rights held in
15  derivative works. The copyright in a derivative work extends <u>only to the</u>
16  <u>material contributed by the author of such work</u>, as distinguished from the
17  "preexisting material employed in the work and does not imply any exclusive
18  rights in the preexisting material." 17 U.S.C.§103(b).  The copyright claimant
19  might, of course, own or have an exclusive license to use the underlying
20  copyright in the preexisting material.

### 3.    <u>Michael Tower Admittedly Created the Express Plaid Designs By Copying Preexisting Plaids</u>

23         Michael Tower is identified by Express in its Initial Disclosures as the
24  Designer of the plaid designs that are the subject of Express's copyright
25  registration at issue in this case.   [Sep. Stmt. 6]  Mr. Tower testified how these
26  Express Plaid Designs came to exist, as he worked with another Express
27  employee, a CAD operator:

28

Q.     As far as you're concerned, the CAD designer has to start from scratch?

A.     I'm sorry.  For what?

Q:     To design a plaid.

A.     Yes, we start from scratch. Yeah.  I think you are confused by the process, actually.  Basically, I have - - it doesn't come in my head actually,  I have a – whether it's a picture, whether it's a garment, whether it's a tear sheet, whether it's a photo.  I start with something like that, basically. So there's a visual reference that we begin with."

[Sep. Stmt. 7]

Mr. Tower then testified that when he created the Express Plaid Designs, he started with a single existing "visual reference" which might be a tear sheet, photograph, fabric swatches or garment, he showed the "*swatches and photos or whatever [he] used for inspiration*" for each plaid to the CAD designer [Sep. Stmt. 8], the CAD designer "*takes the pattern that I tell him, that I give him instructions on, and he renders it for us,*" [Sep. Stmt. 9] again, referencing a single preexisting plaid pattern. This testimony directly contradicts the facts set forth in the copyright registrations, as well as provides an explanation for the unremarkable appearance of the Express Plaid Designs. To make sure that he understood this testimony correctly, the deposing attorney immediately reviewed the facts relating to Mr. Tower's use of a preexisting image and interplay with the CAD operator:

Q.     So he takes the pattern that you show him, and he basically creates that on his CAD machine?

A.     Yes. [Sep. Stmt. 10]

With respect to all four of the Express Plaid Designs, Mr. Tower testified that each design was based upon an existing plaid.

1       *Q.     In connection with Exhibit – I think this is 14.["Roth"]  Do you*

2       *remember what you showed the CAD designer, the CAD person, to*

3       *create this particular plaid?*

4       *A.     No.*

5       *Q.     Okay.  You don't remember whether it was a fabric swatch?*

6       *A.     No.*

7       *Q.     You don't remember whether it was an actual pair of shorts?*

8       *A.     No*

9       *Q.     You don't remember if it was a photograph or something?*

10      *A.     No.*

11      *Q.     But you do remember that you did show him something?*

12      *A.     Yes.*

13      [Sep. Stmt. 11]

14      ...

15      *Q.     So you showed Ed something, but you don't remember what it was?*

16      *A.     Yes.*

17      *Q.     And then Ed did a rendering on the CAD?*

18      *A.     Uh-huh.*

19      [Sep. Stmt. 12]

20      ...

21      *Q.     I'm going to ask the same question for all of these shorts.  Let's*

22      *start with Exhibit 12. ["Jack"] I'm assuming you went through the same*

23      *process.  You showed Ed something. You did a rendering on the CAD.*

24      *You told him what you wanted changed.  Right?*

25      *A.     That is correct.*

26      [Sep. Stmt. 13]

27      ...

28

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

*Q.     How about Exhibit 11? ["Ocean"] You showed Ed something that he did a rendering on, and you told him to change something.  Right?*

*A.     Yes.*

[Sep. Stmt. 14]

...

*Q.     How about Exhibit 8?  ["Bruin"] You showed Ed something.  You told him to do a rendering. Right?*

*A.     Yes.*

[Sep. Stmt. 15]

...

*Q.     And you also don't recall specifically where you got whatever it is that you showed him in connection with these four shorts?*

*A.     No.*

[Sep. Stmt. 16]

Later in his deposition, Mr. Tower confirmed, yet again, that he did not provide the CAD designer with any drawings that he created from scratch and that he used <u>preexisting images to create the four plaid designs</u>.  [Sep. Stmt. 17] Thus, the designer of the Express Plaid Designs testified that not one of the Express Plaid Designs is actually wholly original, but all are created by copying and (he presumes) changing a single now unknown preexisting plaid.  Thus, all the Express Plaid Designs are all derivative works, subject to all the limitations and restrictions imposed by law on derivative works.

### 4.     <u>The Requirement of Sufficient Creativity In A Contribution To The Derivative Work</u>

Changes to a preexisting work may, but does not always, create new rights of copyright. In order for copyright to attach to the "material contributed″ to any work in which copyright is claimed, whether derivative or wholly original, that material contributed must possess "at least some minimal degree

of creativity." *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. *Feist* held that "there is nothing remotely creative" in alphabetizing names in a phone book, "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course" Mere changes in colors are insufficient as well. "[I]t is not possible to copyright a new version of a textile design merely because the colors of red and blue appearing in the design have been replaced by green and yellow, respectively. The same is true of a simple combination of a few standard symbols such as a circle, a star, and a triangle, with minor linear or spatial variations."  United States Copyright Office, Compendium II, Copyright Office Practices, Sec. 503.02(a) (1984).

"[T]he requisite level of creativity is extremely low," but "it is not negligible." *Satava v Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). "There must be something more than a 'merely trivial' variation, something recognizably the artist's own." *See, Royal Printex Inc. v Unicolors, Inc.*, 91 USPQ2d 1439 (C.D. Cal. 2009) ("The deletion of the ticking stripe background from the forties flower design, and the insertion of generic polka-dots, does not constitute the requisite originality required for a design to be copyrightable.")  Likewise, generic polka dot patterns are not subject to a claim of copyright as they are a commonplace design, however a  distinctive pattern of irregular and shaded polka dots is protectable. *The Prince Group, Inc. v MTS Products*, 43 USPQ2d 1517, 1519 (S.D.N.Y. 1997).

**5.** **Neither Mr. Tower Nor Express Know What Changes He Made In The Preexisting Plaids To Create The Express Plaid Designs**

Mr. Tower testified for each of the four Express Plaid Designs that he told the CAD designer to make some changes on the design in the CAD machine [Sep. Stmt. 18] but could not recall the changes he asked be made in the preexisting materials.

1    *Q.      Do you remember what specific changes you told Ed to make from*

2    *the original thing [Exhibit 14  ["Roth"]  that you gave him, that you*

3    *showed him?*

4    *...*

5    *A.      No.*

6    *Q.      So you don't remember any specific design changes that you made*

7    *[in Exhibit 14 – "Roth"]?*

8    *A.      For this short, no.*

9    [Sep. Stmt. 19]

10   *...*

11   *Q.      Do you remember with respect to Exhibit 12 ["Jack"] what you*

12   *told him to change?*

13   *A.      No.*

14   [Sep. Stmt. 20]

15   *...*

16   *Q.      Do you remember what you told him to change on Exhibit 11*

17   *["Ocean"]?*

18   *A.      No.*

19   [Sep. Stmt. 21]

20   *...*

21   *Q.      You told him to change something [in Exhibit 8 – "Bruin"].*

22   *Correct?*

23   *A.      Yes.*

24   *Q.      Do you remember what you told him to change?*

25   *A.      No.*

26   [Sep. Stmt. 22]

27   *...*

28

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

*Q.     But in this case with respect to these four shorts I just showed you,
you don't remember specifically what changes you made from the
original items that you showed him?*

*A.     No.*

[Sep. Stmt. 23]

Mr. Tower testified that the <u>one change believes he made</u> in each of the
Express Fabric Designs from the preexisting material was a change in color.
[Sep. Stmt. 24] A change in color alone only does not constitute a copyrightable
contribution.[1] *Compendium II*, *supra*. His testimony indicates that he does not
know whether he just replaced existing colors, or changed the image from black
and white to colors, or perhaps only changed one color in the preexisting plaids.
The end result colors in the Express Plaid Designer, consist, nevertheless, of
classic plaid colorations, for example, of red, blue & beige, and gray, black &
white.

Michael Tower not only had no memory of the changes he made in any
of the preexisting plaids, but he was assuming that he asked the CAD designer
to make changes because "he [the CAD designer] always does [makes
changes]."

*Q.     Are you sure that he did make some changes from whatever it is
that you showed him?*

*A.     He always does.*

*Q.     How do you know?*

*A.     Because I specifically talk to him.  He makes the changes. When I
get it back, I make sure that those changes have been rendered, and we
go from there, basically.*

[Sep. Stmt. 25]

---

[1] This is consistent with the decision in *Novelty Textile Mills v Joan Fabrics Corp.*, that
solely a change in color does not avoid infringement of a valid copyright. 558 F.2d 1090, at
n. 6 (2nd Cir. 1977)

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  SUMMARY JUDGMENT
11

Further, Mr. Tower indicated that he does not _necessarily_ make changes:

Q.      _And you said, I want to use this plaid ... I want to design a short.  I like this fabric. I like the design of this plaid.  Put something like this up on the CAD. Are you with me so far?_

A.      _Kind of. Yeah._

Q.      _And he renders this on the CAD._

A.      _Okay._

Q.       _And suppose you want to change something of his rendering. What do you do?_

A.      _I give him directions **if I change that** before he even starts to design within the CAD._

[Sep. Stmt. 26 (emphasis added)]

As far as Express knows, the Express Plaid Designs may be identical to the preexisting plaids.  The changes may have included only a color change, which might be as minor as change in a variation of one shade of red to another. The changes may include adding or deleting a line or two, or widening or narrowing a band of color.  None of these types of changes in a plaid design would be more that a "minor lineal or spatial variation" of the type that the Copyright Office does not recognize as sufficiently creative to be registerable. _Compendium II, supra._

Furthermore, the "general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." _Nelson v City of Davis_, 571 F.3d 924, 927-928 (9th Cir. 2009) Therefore, there should be no inconsistent evidence or testimony introduced through Mr. Tower, or any other witness on behalf of Express, in opposition to this Motion.

6.    **Mr. Oman Does Not Know What Changes Mr. Tower Made In The Preexisting Plaids To Create The Express Plaid Designs**

Express has solicited the expert statement of Ralph Oman, formerly in a significant management position with the United States Copyright Office, to support its position that Mr. Tower's "creativity is copyrightable authorship."  In Mr. Oman's Second Supplemental Expert Statement, attached to the Middlebrook Declaration as Exhibit F, at Page 2, he states that he has read the testimony of Michael Tower, and then includes a listing of all the changes that *Mr. Oman* thinks Mr. Tower made to the preexisting plaids ("e.g. by adding new lines, removing existing lines, widening or narrowing certain lines, and changing its scale.")  However, there is no issue of fact created by that expert opinion, as ***Mr. Tower did not testify that he added new lines, or removed existed lines, or widened or narrowed certain lines, and/or that he changed its scales***.  Generalizations and assumptions by an expert are not based upon personal knowledge, do not set out facts that would be admissible in evidence, nor do they demonstrate any competence by the expert to testify factually as to Mr. Tower's contributions to any of the Express Plaid Designs. Fed.R.Civ.Proc.56(e)(1) excludes such affidavits. Generalizations and assumptions made by a retained professional after reviewing Mr. Tower's deposition transcript are just that – generalizations and assumptions of a paid professional, and, while Mr. Tower's deposition testimony is relevant and clear, the latter most certainly does not create a triable issue of fact.

7.  **Express's Copyright Registrations Should Be Held Invalid Because of the Material Omissions of Critical Information Relevant to Whether The Copyright Registrations Should Issue**

Section 409 of the Copyright Act, at 17 U.S.C.§409,  states:

*The application for copyright registration shall be made on a form prescribed by the Register of Copyrights <u>and shall include</u> – ...(9) in the case of a ... derivative work, an identification of any preexisting work or works that it is based on or incorporated, and a brief, general statement of the additional material covered by the copyright claim being registered..." (emphasis added)*

This section does not require the applicant to identify each and every change in detail, such as "changed color" or "added two lines" or "narrowed one line." However, the applicant must provide a "brief, general statement" sufficient for the Copyright Office examiner to make a preliminary determination that there was, in fact, a copyrightable contribution made in a derivative work. Further, the resulting copyright registration will provide notice to third parties (such as these defendants) that the copyright being claimed covers only "the material contributed by the author of such work"  and not the "preexisting material  employed in the work" 17 U.S.C.§103(b) and, thus, not the entire appearance of the work.

Identification of the preexisting work or works in the copyright application is not optional; it is required by 17 U.S.C.§409 *("...form...shall include...)*  This requirement makes a great deal of sense. If a copyright applicant is not candid and forthcoming, and does not reveal that its claimed work is actually a derivative work, then the Copyright Office is not informed of "***crucial material*** facts."  *R. Ready Prods., Inc. v. Cantrell*, 85 F.Supp.2d 672, 692 (S.D.Tex. 2000) (emphasis added) The Copyright Office has no opportunity to pass on the claim of copyright, as it is not accurately presented. Knowing failure to advise the Copyright Office of facts that might have occasioned a rejection of an application is grounds for holding a copyright registration invalid and thus incapable of supporting an infringement action. *Russ Berrie & Co., v Jerry Elsner Co., Inc.*, 482 F.Supp. 980, 988 (S.D.N.Y.

1980).  Where a registration does not reflect on its face that the copyright claimed does not cover the entire appearance of the work, the copyright applicant will be manufacturing a false and overly broad claim of copyright ownership.  When such a copyright registrant files suit based upon a copyright registration for an undisclosed derivative work, it is improperly relying upon an overly broad presumption of ownership and validity.

In this case, Express used Copyright Form CO to register the claim of copyright in all four of the Express Plaid Designs.  This form includes a Section 4, entitled "Limitation of Copyright Claim."   Subsection 4a is entitled, "*Material excluded from this claim (Material previously registered, previously published, or not owned by this claimant.)*"  Subsection 4b is entitled "*Previous registration(s).*"  Subsection 4c is entitled "*New material included in this claim (This work contains new, additional, or revised material.)*"  Express filed all four copyright applications without identifying any preexisting work or new, additional or revised  material.  [Sep. Stmt. 27]

A belief by a copyright claimant such as Express that it holds rights to each of the Express Fabric Designs as "wholly original" is disingenuous where contrary evidence, specific the candid testimony of its own designer, Michael Tower, indicates that there were absolutely no grounds for such claims. In this case, there is no dispute that Express never checked the facts surrounding the creation of the Express Plaid Designs with its own employee-designer prior to filing its claims with the Copyright Office. [Sep. Stmt. 28]  Rather, it simply filed the copyright applications claiming that the entirety of the Express Plaid Designs were each wholly original to Express, although the facts were available for the asking from Mr. Tower.

This case is about classic plaids, not, as an example,  a distinctive flower design or a striking abstract print. Keeping oneself in the dark with respect to the facts underlying a claim of authorship, ignoring the fact that the appearance

of each of the Express Plaid Designs are completely non-distinctive, while promoting comparable plaids as "classic," is nothing more than intention willful blindness to facts. This is surely comparable to intentional failure to advise the Copyright Office of known facts, and should result in the same penalty, invalidity of the copyright registrations.

## V.   WHITE OWL IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON THE COPYRIGHT INFRINGEMENT ACTION BECAUSE EXPRESS CANNOT CARRY ITS BURDEN OF IDENTIFYING THE APPEARANCE COVERED BY ITS COPYRIGHTS

As an additional ground, White Owl is entitled to summary judgment on the First Cause of Action for copyright infringement as Express is unable to carry its burden of demonstrating in its case in chief the images protected by the copyrights registration which it claims. Since the prima facie evidentiary showing of a copyright registration extends only to the validity of "the copyright", yet 17 U.S.C.§103(b) states that "the copyright" does not extend to any preexisting works that are included in a derivative work, the only way in which Express and the defendants are able to identify the nature and extent of Express's claim of  "copyright" in each of the Express Plaid Designs is to physically compare the preexisting material with the end result. That would lead, as well, to the first step to determine whether Express's designer even contributed anything copyrightable.

However, the preexisting materials for all four of the Express Plaid Designs have been discarded, and cannot be found. [Sep. Stmt. 29] Fed.R.Civ.Proc.56(c) mandates entry of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

1    proof at trial. In such a situation, there can be "no genuine issue as to any

2    material fact," since a complete failure of proof concerning an essential element

3    of the nonmoving party's case necessarily renders all other facts immaterial."

4    *Celotex*, 477 U.S. at 322-323.

5         In this case, Express is incapable of identifying Mr. Tower's contribution

6    to the Express Plaid Designs; it cannot identify the "preexisting work or works."

7    [Sep. Stmt. 29]  Mr. Tower himself cannot recall or identify any changes he

8    made. [Sep. Stmts. 19, 20, 21, 22, 23] Express's inability in this regard is

9    pivotal, as the rights under those four registrations are <u>statutorily limited</u> to only

10   the "material contributed by the author of such work…" 17 U.S.C.§103(b)

11   and, further, only if the material contributed includes sufficient creativity.

12   Without being able to identify and distinguish Mr. Tower's contribution from

13   the "preexisting material employed in the work", Express is incapable of even

14   identifying the portions of the Express Plaid Designs that are coextensive with

15   its copyrights.  Identification the appearance of the design protected by a

16   copyright registration is an essential element of its claim of copyright

17   infringement. Without that, Express cannot carry its burden of proof.

18        In such a situation, there can be "no genuine issue as to any material

19   fact," since a complete failure of proof concerning an essential element of the

20   nonmoving party's case necessarily renders all other facts immaterial."  *Celotex,*

21   at  322-323. Summary judgment of invalidity of the four copyrights claimed by

22   Express in the Express Plaid Designs is, thus, appropriate.

23

24

25

26

27

28

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  SUMMARY JUDGMENT
17

## VI.   IF SUMMARY JUDGMENT AS REQUESTED ABOVE IS NOT GRANTED, THEN WHITE OWL SEEKS FACTUAL ORDERS AND/OR RESULTING INTERLOCUTORY SUMMARY JUDGMENT ON CERTAIN ISSUES OF LIABILITY

Fed.R.Civ.Proc.56(d)(1) states that if summary judgment is not rendered on a whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts — including items of damages or other relief — are not genuinely at issue. The facts so specified must be treated as established in the action.  Fed.R.Civ.Proc.56(d)(2) states that an interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages. In the event summary judgment as requested above is not granted, White Owl requests that the Court issue factual order and interlocutory summary judgment on liability on the First Cause of Action as follows.

### A.   Express is Not Entitled to Statutory Damages

Express has asserted claims for statutory damages under the Copyright Act.   17 U.S.C.§412(2) mandates that in order to recovery statutory damages for copyright infringement, the copyrighted work must have been registered prior to the commencement of the infringement, unless the registration was made within three months after first publication.  The Express Plaid Designs were first published no later than November 29, 2008.  [Sep. Stmt. 30] Forever 21 began selling the allegedly infringing garments in the first half of May, 2009, the month prior to the registration dates. [Sep. Stmts. 31, 32, 33 & 34].The effective date of the copyright registrations for all four plaids was June 12, 2009, seven months after first publication, and after the alleged infringements commenced.  [Sep. Stmt. 35]  Thus, Express neither registered

1  within three months of first publication, nor prior to the commencement of the

2  alleged infringements.

3       There is no longer any lingering question in the Ninth Circuit whether

4  Section 412 bars an award of statutory damages for post-registration

5  infringements when the initial act of infringement occurred prior to the effective

6  copyright registration has been answered.  "…[T]he first act of infringement in

7  a series of ongoing infringements of the same kind marks the commencement of

8  one continuing infringement under §412." *Derek Andrew, Inc. v Poof Apparel*

9  *Corp.*, 528 F.3d 696, 701 (9th Cir. 2008)   Summary judgment should be granted

10  on the claim for statutory damages.

11      **B.**    **White Owl Is Not Liable for Copyright Infringement Because**

12              **Of the Acts of the Other Defendants**

13       In order to prevail on the First Cause of Action for Copyright

14  Infringement, Express must show that White Owl either (1) "reproduced," (2)

15  "prepared a derivative work," or (3) "distributed copies" of the allegedly

16  infringing item. 17 U.S.C.§106  Only two garments came from White Owl.

17  [Sep. Stmt. 1] White Owl has no connection to Steps, or to the shorts supplied

18  by Steps to Forever 21 and which Express charges violate the Roth and Bruin

19  copyrights.  [Sep. Stmt. 2] Since there is no evidence that White Owl White

20  reproduced, prepared, or distributed the shorts provided by Steps, it cannot be

21  liable for any copyright claims that might arise out of the existence of those

22  shorts. Nevertheless, Express lumped these two new defendants together,

23  treated them as one entity, and has alleged that White Owl is liable for all the

24  allegedly "infringing" garments made by Steps. [2]

25  _____

26  [2] In an attempt to "make weight", Express has made charges that White Owl has distributed another men's short, not to Forever 21, which Express claims infringes the Bruin claimed rights.  Express's evidence consists of a tiny picture found on the internet, where a 40" inch

27  tall garment has been reduced to about a 2" picture, so tiny that the pattern cannot even be perceived.  That garment is not a part of this litigation, and any arguments that the order sought should be granted as to Bruin should be disregarded as beyond the scope of the

28  pleadings

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  SUMMARY JUDGMENT

1

## C.   There is No Basis for Joint or Several Liability

2      During the meet and confer process prior to filing this Motion, Express

3  was, yet again, requested to dismiss White Owl from the claim of violating the

4  Roth and Bruin copyrights. Express refused on the basis that White Owl may be

5  liable for the acts of Forever 21 and/or Steps under as it may have engaged in a

6  corporate or joint venture with those parties, and thus contributory or other

7  liability by White Owl for the acts of Forever 21 or Steps may exist.  Express is

8  precluded from raising these new theories at this stage and is thus precluded

9  from asserting such theories of secondary liability. A plaintiff cannot raise new

10  theories of liability that were not pled in the complaint.  In *Dream Games of*

11  *Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009), the Ninth Circuit

12  refused to consider the plaintiff's new theory of secondary liability in a

13  copyright infringement suit because, inter alia, the plaintiff failed to assert the

14  theory in either the original or amended complaint.  The court's rationale was

15  that the defendant did not receive "fair notice" and that direct infringement

16  requires proof separate and distinct from that of contributory or vicarious

17  infringement.  Express's First Amended Complaint did not plead vicarious

18  liability, joint enterprise liability or contributory liability.  Express is  precluded

19  from raising any of these new theories at this stage of the case.

20      Therefore, on the First Cause of Action, in the event the copyrights

21  asserted by Express are not found to be invalid, then White Owl requests that

22  this Court issue an order under Fed.R.Civ.Proc.56(d)(1) that White Owl was not

23  involved in any manner in the creation or distribution of the shorts provided by

24  Steps to Forever 21, and under Fed.R.Civ.Proc.56(d)(2) that an interlocutory

25  summary judgment is entered in favor of White Owl with respect to the Steps-

26  provided shorts.

27

28

## VII.   WHITE OWL IS ENTITLED TO SUMMARY JUDGMENT ON THE SECOND, THIRD AND FOURTH CAUSES OF ACTION

In order to prevail on the Second Cause of Action, for violation of trade dress rights, Express must show that White Owl  "used in commerce" any trade dress rights Express claims to hold under Section 43(a) of the Lanham Act. 15 U.S.C. §1125(a). White Owl had no connection at all to the Forever 21 Jacket that Express claims violates its trade dress rights. Therefore, it did not "use in commerce any imitation of those allege trade dress rights. [Sep. Stmts. 2, 4] Thus White Owl cannot be liable for any trade dress claims that might arise out of the existence of the Forever 21 Jacket.  On the Second Cause of Action, White Owl is entitled to summary judgment in its favor under Fed.R.Civ.Proc.56(c)(2).

If the Second Cause of Action fails as against White Owl, then the Third and Fourth Causes of Action fail as well.  In Express's Third and Fourth Causes of Action, both unfair competition claims under California Business & Professions Code §17200 and the common law, respectively, no unlawful or deceptive acts other than trade dress infringement are alleged in the complaint, [Sep. Stmts. 37, 38] and therefore those claims rise or fall with the trade dress infringement claim.  For the reasons described above, because Express's trade dress claim fails as against White Owl, Express' unfair competition claims likewise fail.  *See powerlineman.com, LLC v. Jackson*, 2007 U.S. Dist. LEXIS 86261 (N.D.Ca. November 15, 2007) ("state common law claims of unfair competition and actions pursuant to the [UCL] are 'substantially congruent' to claims under the Lanham Act."); *Cleary v. News Corp*., 30 F.3d 1255, 1262-1263 (9th Cir. 1994) ("[The Ninth] Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business & Professions Code § 17200 are substantially congruent' to claims

1  made under the Lanham Act."); *Rice v. Fox. Broad. Co.,* 330 F.3d 1170, 1181-

2  82 (9th Cir. 2003)

3

4  **VIII.  CONCLUSION**

5           For the legal reasons set forth above and as there are no material facts in

6  dispute, it is respectfully requested that this motion should be granted.

7

8  Dated: July 12, 2010                    Respectfully submitted,

9                                          HOLLAND & KNIGHT LLP

10

11                                         By: _____/S/_____
                                           Theresa W. Middlebrook, Attorneys for
12                                         Defendant White Owl Clothing, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 633 West Fifth Street, 21st Floor, Los Angeles, California 90071.

On July 12, 2010, I served the document described as **POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY JUDGMENT,** OR ALTERNATIVELY, SUMMARY ADJUDICATION  on the interested parties in this action as follows:

 [X] (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and General Order 07-08, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date.  It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system.  The transmission was reported as complete and without error.


 X     I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

        Executed on July 12, 2010, Los Angeles, California.



                            _____
                                  /S/
                            Tara L. Cooper

# 9600390_v1