COLUCCI & UMANS
FRANK J. COLUCCI (*Pro Hac Vice*)
fcolucci@colucci-umans.com
DAVID M. DAHAN (*Pro Hac Vice*)
ddahan@colucci-umans.com
218 East 50th Street
New York, New York 10022
Telephone:   212.935.5700
Facsimile:    212.935.5728

BUCHALTER NEMER
Russell L. Allyn (SBN:  143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400

Attorneys for Plaintiff,
EXPRESS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | **Civil Action No.**<br>**2:09-cv-04514-ODW-VBK**<br><br>**PLAINTIFF EXPRESS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY JUDGMENT**<br>**[Declaration of Michael J. Pampalone, III, filed concurrently under seal];**<br>**[Declaration of Frank J. Colucci; Plaintiff's Statement of Disputed Facts and Conclusions of Law in Opposition to White Owl Clothing, Inc.'s Motion for Summary Judgment; and Plaintiff's Separate Statement filed concurrently herewith]**<br><br>Hearing Date: August 16, 2010<br>Time: 1:30 p.m.<br>Discovery Cutoff: July 5, 2010<br>Pretrial Conf.: September 13, 2010<br>Trial: October 5, 2010<br><br>HONORABLE OTIS D. WRIGHT, II |

## TABLE OF CONTENTS

**Page(s)**

I.   **PRELIMINARY STATEMENT**.................................................................. 1

II.  **ARGUMENT**..................................................................................2

    A.   **White Owl's Summary Judgment "Options"**...........................2

        1.   **White Owl's Motion "Option (1)" for Summary
             Judgment**.....................................................2

        2.   **White Owl's Motion "Option (2)" for Summary
             Adjudication**...............................................3

    B.   **White Owl's Motion Under Both Options (1) and (2)
        Should Be Denied**.............................................7

        1.   **The Express Plaid Designs Are Original, Copyrightable
             And the Subject of Valid Copyright Registrations**.............7

        a.   **The Express Plaid Designs Satisfy the Originality
             Requirement of the Copyright Act that the Subject Work
             Be "Independently Created" and Not Copied from
             Other Works *(White Owl "Option"(1)(a))***..................7

        b.   **Mr. Tower Did Not Copy "Preexisting Plaids"
             and the Express Plaid Designs Are Not
             "Derivative Works" *(White Owl "Option" (1)(b))***...............12

        2.   **As a Joint Tortfeasor, Summary Judgment in Favor of
             White Owl as to Select Garments and Claims Would Be
             Premature *(White Owl "Option" (2)(a))***.......................18

        3.   **White Owl Is Implicated in Defendants' Concerted Effort
             To Obtain and Replicate Five of Express's Designs
             *(White Owl "Options" (2)(b) and (2)(c))***...................19

III. **CONCLUSION**.............................................................20

MEMORANDUM IN OPPOSITION TO
DEFENDANT, WHITE OWL CLOTHING,
INC.'S MOTION FOR SUMMARY

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Cerritos Trucking Co., Inc.,*
  79 Cal. App. 3d 957 (Ct. App. 1978) ................................................................. 19

*American Motorcycle Ass'n v. Superior Court,*
  20 Cal.3d 578 (1978) ........................................................................................ 18

*Apple Computer, Inc. v. Microsoft Corp.,*
  759 F. Supp. 1444, 1454 (N.D. Cal. 1991)………………………………………17

*Berg v. Symons,*
  393 F.Supp.2d 525, 541 (S.D.Tex. 2005)…………………………………………...10

*Bouchat v. Baltimore Ravens, Inc.,*
  241 F.3d 350 (4th Cir. 2001)………………………………………….…14

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,*
  122 F.3d 1211 (9th Cir. 1997) .......................................................................... 8

*Ets-Hokin v. Skyy Spirits, Inc.,*
  225 F.3d 1068, 1078 (9th Cir. 2000)………………………………………...13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991)………………………………………...... .8, 9, 10, 11

*Georgia Lee Miller Roulo v. Russ Berrie & Co., Inc.,*
  886 F.2d 931, 939 (7th Cir.1989)………………………………….………11

*Henry v. Superior Court,*
  160 Cal. App. 4th 440 (Ct. App. 2008) ............................................................ 18

*Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.,*
  58 F.3d 1093 (6th Cir. 1995) ............................................................................ 8

*Jin Ching Indus. Inc. v. Wong's Int'l Trading Imp. & Exp. Inc.,*
  47 U.S.P.Q.2d 1509 (C.D. Cal. 1998) ............................................................ 8, 9

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ................................................................ 13

*Mason v. Montgomery Data, Inc.*,
  967 F. 2d 135 (5th Cir. 1992) ................................................................ 11

*North Coast Indus. v. Jason Maxwell, Inc.*,
  972 F.2d 1031 (9th Cir. 1992) ...................................................... 10, 11

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*,
  558 F.2d 1090 (2d Cir. 1977) ................................................................ 12

*Streetwise Maps v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ................................................................. 11

*United States v. Hamilton*,
  583 F.2d 448 (9th Cir. 1978) ................................................................ 14

## <u>Statute</u>

17 U.S.C. § 410(c) (2008) ...................................................................... 8

17 U.S.C. § 412(2) (2008) ...................................................................... 19

## <u>Rules</u>

Fed. R. Civ. P. 56 ............................................................................ 1, 7

MEMORANDUM IN OPPOSITION TO
DEFENDANT, WHITE OWL CLOTHING,
INC.'S MOTION FOR SUMMARY

# I.   **PRELIMINARY STATEMENT**

Plaintiff, Express, LLC, ("Express") respectfully submits this memorandum of law in opposition to Defendant, White Owl Clothing, Inc.'s ("White Owl") Motion for Summary Judgment, or Alternatively, Summary Adjudication ("White Owl's Motion").  As more fully set forth herein, White Owl's Motion is completely without merit and, rather than being based on facts as required by Federal Rule 56, is based almost entirely on speculation and evidence that is not in the record. Consequently, White Owl's Motion should be denied.[1]

Express's First Amended Complaint ("the Complaint") charges all Defendants collectively as having infringed and unfairly competed with Express by manufacturing, causing to be manufactured, offering for sale, and selling of identical copies of five (5) EXPRESS garments (four (4) pieces of men's plaid shorts and one (1) men's track jacket).  The Complaint seeks permanent injunctive relief, damages, attorney's fees and other appropriate relief against Defendants, and each of them, due to the willfulness of all of their acts and conduct.

Following the allegations of the Complaint, Express's motion for summary judgment seeks judgment against Defendants, and each of them, for liability on all of the causes of action of the Complaint (Counts I – IV), excluding damages, attorneys' fees and/or other monetary relief ("Express's Motion").  We respectfully submit that it would be premature at this stage for the Court to summarily adjudicate as a matter of law whether Defendants are jointly and severally liable, or if not, which Defendant(s) is/are severally liable, and for which cause(s) of action. Such adjudication would require the Court to resolve a number of genuine issues of fact not only as exist among the Defendants regarding their contribution to any

---

[1] For the sake of completion, Express incorporates herein by reference Plaintiff Express, LLC's Memorandum in Opposition to Forever 21 Defendants' and Steps' Motion for Summary Judgment ("Opp. to Forever 21 Motion"), at pp. 1 *et seq.*, as its opposition to White Owl's motion for summary judgment with the same force and effect as if herein again set forth.

MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

liability to Express that the Court may find, but also as exist between Plaintiff and Defendants, which we will discuss below at Sections (II)(A)(2), (B)(2) and (B)(3).

## II. ARGUMENT

### A. White Owl's Summary Judgment "Options"

#### 1. *White Owl's Motion "Option (1)" for Summary Judgment*

White Owl now cross moves for summary judgment under its proposed "Option (1)(a)" seeking to invalidate not only Express's two (2) copyright registrations on its Ocean and Jack styles of men's plaid shorts, identical copies of which White Owl admits supplying to Defendant Forever 21, but also Express's two (2) other copyright registrations on its Bruin and Roth styles of men's plaid shorts, despite the fact that it claims to have had nothing to do with these latter two (2) styles.

In any event, White Owl's motion for summary judgment seeks to invalidate all four (4) of Express's copyright registrations on essentially the same alleged grounds as those set forth in Forever 21's motion for summary judgment. That is, Defendants accuse Express[2] of failing to disclose to the Copyright Office, by not completing Section 4 of its applications to register the plaids, Express's Senior Designer and author, Michael Tower's, inspirations (dubbing them "the preexisting plaids") as he started his selection and creation of what ultimately became the final four (4) Express copyrighted plaid designs. (EXP WO SDF 27.)[3]

In addition, White Owl moves for summary judgment under its "Option 1(b)" claiming, without any supporting evidence, that Express cannot carry its burden of identifying the material protected by its copyright registrations. Seizing on the fact

---

[2] The Forever 21 Defendants even went so far as to accuse Express' trial counsel of having committed fraud on the Copyright Office in connection with his filing of Express' copyright applications, but apparently have since backed away from such a charge. (Declaration of Michael J. Pampalone ("Pampalone Decl."), Ex. O.)

[3] Plaintiff Express, LLC's Statement of Disputed Facts and Conclusions of Law in Opposition to White Owl Clothing, Inc.'s Motion for Summary Judgment ("EXP WO SDF"), filed concurrently herewith.

that no record of Mr. Tower's inspirations exists, and without any proof of a single, substantially similar "preexisting plaid" to any of Express's four (4) copyrighted plaids, despite ample opportunity to have acquired and/or identified this so-called "preexisting plaid," Defendants ask this Court to summarily invalidate all four (4) of Express's copyrighted plaid designs, notwithstanding that Defendants copied all four (4) of Express's copyrighted designs identically.  In fact, Steps admitted purchasing two (2) pairs of men's shorts bearing Express's Bruin and Roth copyrighted designs from Express (EXP SOF 46, 47),[4] and Forever 21 has admittted access and substantial similarity as to all four (4) of Express's copyrighted designs (EXP SOF 58-65).

Moreover, there is no legal basis to invalidate Express's copyrighted plaid designs based upon White Owl's counsel's own self-serving statements that "there is nothing…unique or original in their appearance," and that they are "the quintessential classic plaids."  (White Owl Mem., p. 3.)[5]  Not only is counsel's view of Express's plaid designs obviously not proof, but also disingenuous, since if there was nothing "distinctive" or "unique" about Express's plaid designs, then why did White Owl and the other defendants copy them identically?  The fact that none of these defendants sought to create their own "classic plaid" designs, electing to instead copy, line for line and color for color, those of Express, speaks volumes. Thus, at the least, White Owl and the other Defendants considered Express's plaid designs worth copying.

## 2.  *White Owl's Motion "Option (2)" for Summary Adjudication*

By moving for summary judgment under its Option (1) to invalidate all four (4) of Express's plaid copyrights despite the fact that it claims to have had no

---

[4] Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Summary Judgment ("EXP SOF"), previously filed in redacted form on July 13, 2010 (Docket Entry #106) and under seal.
[5] White Owl points out that Express has advertised "other comparable plaids" as "classic plaids." Express has not advertised the Express Plaid Designs as being "classic."

MEMORANDUM IN OPPOSITION TO
DEFENDANT, WHITE OWL CLOTHING,
INC.'S MOTION FOR SUMMARY

involvement with two (2) of Express's other copyrighted styles (Bruin and Roth), White Owl could have joined in with Forever 21, as did Steps, with Forever 21's motion for summary judgment, but chose not to do so even though the grounds of both motions are essentially the same.

It is apparent, however, from White Owl's Motion under Option (2) for Summary Adjudication that it is attempting to disassociate itself from both Forever 21 and Steps based on its following claims:

A.     Unlike Steps, who admits to having purchased two (2) of the Express copyrighted plaid shorts (Bruin and Roth) from Express, White Owl claims to have obtained fabric swatches from a company in China bearing plaid designs identical to Express's copyrighted Ocean and Jack plaid designs;

B.     Unlike Steps, who admits also purchasing two (2) of the Express copyrighted plaid shorts and a genuine Express track jacket from an Express retail store, White Owl claims to have had nothing to do with either garments;

C.     Unlike Forever 21 and Steps, White Owl was unaware that Express was selling similar men's plaid shorts; and

D.     There is no basis for holding White Owl jointly or severally liable for unfair competition under California Business and Professions Code §17200 (Count III) and/or California's common law of unfair competition (Count IV).

Regarding A, White Owl's testimony that it received two swatches of fabric from China, both of which bore the identical plaid designs as those of Express's copyrighted Ocean and Jack plaid designs, is unsupported by any evidence. (EXP SDF 42.) White Owl has not produced the swatches or any other record or documentation showing the swatches, although it did produce some other swatches it claims to have received from China. (EXP SDF 42; Pampalone Decl., ¶¶ 13-14, Ex. G.) None of the swatches produced by White Owl, however, are similar to the Ocean and Jack plaid designs. (EXP SDF 42; Pampalone Decl., ¶ 14.)

Regarding B and C, White Owl made men's plaid shorts from fabric printed according to the two swatches it purportedly received from China, without any indication as to why White Owl chose to make them into men's shorts, rather than women's or boy's. (Colucci Decl. I, Ex. 19 (Isaac Saul Dep., at 21:4-13).) In addition, the White Owl pair of men's shorts that bears a plaid design identical to Express's Jack copyrighted design is called, not coincidentally, "Jackiel". (Pampalone Decl., Ex. I.) We submit that White Owl was clearly aware that Express was selling not only similar but the identical men's plaid shorts. As to the track jacket, see infra regarding "D".

In addition, although Mr. Isaac Saul, President of White Owl, declares under penalty of perjury, that White Owl "had nothing whatsoever to do with the other shorts that are the subject of this litigation and which are claimed to infringe the Express Plaid Designs that Express call[s] 'Roth' and 'Bruin,'" (Saul Decl. ¶ 3), that is inaccurate.[6]

Contrary to Mr. Saul's attempt to limit White Owl to only the 'Ocean' and 'Jack' designs, Express discovered in late April that White Owl was selling an additional pair of men's plaid shorts on the Internet, the design of which appeared to be an infringement of the Express Bruin copyright registration. (EXP WO SDF 43-44.) Accordingly, in May, Express proceeded to serve discovery on White Owl relating to this additional infringement. (Pampalone Decl., at ¶ 5.) However, following receipt of Express's discovery requests, White Owl removed this additional allegedly infringing garment from its website. White Owl's counsel then feigned not to have any knowledge of this additional garment, claiming it no longer appeared on the White Owl website (because it was removed by White Owl),

---

[6] Forever 21's buyer, Derrick Klunchoo, testified that there were several production issues with White Owl relating to their delivery of the "Ocean" and "Jack" shorts, which, we surmise, may have led to the use of Steps, a vendor long used by Forever 21, for the remaining two shorts and the track jacket. (Pampalone Decl., Ex. Q (Klunchoo Dep., at 56:16-23); Id. Ex. N (January 2009 email correspondence, at White Owl 44-46, 52-59).)

MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

despite the fact that she was provided with the style number of the garment. (*Id.* at ¶ 7, Ex. D.) Despite Express's prompt notification to White Owl upon learning of this additional garment, only a handful of days remained in the discovery period, and White Owl "ran out the clock" by refusing to produce any responsive information or documents relating to this additional garment, asserting a panoply of frivolous objections. (*Id.* at ¶¶ 8-12; Colucci Decl. I, Ex. 37 (Defendant White Owl Clothing, Inc.'s Responses to Plaintiff's First Set of Request for Admission, at ¶¶ 1, 2, 3).)[7]

Regarding D, notably, Mr. Saul offers no explanation for the incredible coincidence that White Owl would have this Court believe, one that resulted in two infringing plaids produced by White Owl, at the same time as two other infringing plaids were produced by Steps for Forever 21 – all copied from the same company, Express, and all from a single selling season of Express.[8] Moreover, given the close timing of Defendant Forever 21's purchases of the five (5) Express replica garments, their shipping dates and in-house dates from White Owl and Steps, the fact that the two (2) pairs of plaid shorts allegedly supplied by White Owl and two (2) pairs allegedly supplied by Steps were both from Express's 2009 season, and were sold in Express stores at the same time they were offered by both White Owl and Steps to Forever 21, it is Express's position that Defendants acted in concert with one another in acquiring the five (5) Express garments, replicating them and offering them for sale. Also, it should be noted that Steps' receipt for its purchase of the two (2) Express shorts and track jacket is dated just *one (1) week* prior to the date of Forever 21's purchase orders for these three (3) garments.[9] (Colucci Decl. I,

---

[7] Given the time constraints for discovery motions established by Judge Wright's Scheduling and Case Management Order of October 9, 2009, Express was, unfortunately, precluded from moving the Court to complete this clearly relevant production.

[8] Notably, White Owl's president, Mr. Saul, having failed to produce the mystery swatches, does not even deign to confirm White Owl's claim that it obtained the plaids from China in the declaration he submitted in support of White Owl's motion for summary judgment.

[9] If the Court should find, as Express submits, that Defendants have infringed Express's copyrighted plaids, then because Express's copyright registrations were issued after Defendants'

Ex. 28; Pampalone Decl., Exs. 16-18.)

### B. White Owl's Motion Under Both Options (1) and (2) Should Be Denied

Express respectfully submits that, by virtue of its own simultaneous motion for summary judgment, there are no issues of material fact and that judgment as a matter of law in favor of Express on all of the counts in its complaint is appropriate, including for copyright infringement against White Owl. Turning to White Owl's motion for summary judgment herein, White Owl's motion does not present any basis upon which the Court may grant summary judgment in its favor since it is based, not on facts as required by Rule 56, but on speculation. Consequently, White Owl's Motion presents no "genuine issue for trial" under either of its "options" and should be denied.

### 1. The Express Plaid Designs are Original, Copyrightable And the Subject of Valid Copyright Registrations

#### a. *The Express Plaid Designs Satisfy the Originality Requirement of the Copyright Act that the Subject Work Be "Independently Created" and Not Copied from Other Works (White Owl "Option" (1)(a))*

White Owl has completely failed to set forth any facts that call into question the validity of Express's copyrights in the Express Plaid Designs. In fact, White Owl seemingly predicates its Motion for Summary Judgment on the fallacy that it is Express's burden to demonstrate the validity of its copyrights by producing evidence above and beyond its copyright registrations for the Express Plaid Designs themselves. This is plainly erroneous. Express's proof of originality is the *Copyright registrations themselves*, and it is axiomatic that no further "proof" is required from the copyright holder. Thus, it is *White Owl*, as the party charged with

---

infringement began, statutory damages are not recoverable under the Copyright Act.

09-CV-4514 ODW (VBKx)                                    -7-                    MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

infringement, who bears the burden of proving invalidity, *not Express*, who has established a *prima facie* presumption of valid copyright by virtue of its copyrights in the Express Plaid Designs and without which Express could not have brought the present case for copyright infringement.  17 U.S.C. § 410(c) (2008); *see also Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997); *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

While White Owl discusses the issue of copyright originality at length in its memorandum (White Owl Mem., pp. 4-13), it fails to set forth any basis upon which to conclude that the Express Plaid Designs lack the requisite level of originality to qualify for copyright protection.  White Owl "compares" the Express Plaid Designs to an imagined, hypothetical plaid (one whose appearance dimensions and colors are unspecified and unknown), that White Owl believes was the source for the Express Plaid Designs.  Then White Owl summarily concludes that the Express Plaid Designs do not contain "more that[sic] a 'minor lineal or spatial variation' of the type that the Copyright Office does not recognize as sufficiently creative to be registerable."  (White Owl Mem, p. 12.)  Given the completely hypothetical nature of this analysis, the obvious failure of proof merits rejection of this argument *ipso facto* and without any further consideration. However, White Owl's "conclusion" also fails for numerous other reasons, including the misinterpretation of Mr. Tower's testimony and misstatement of black letter copyright law.

It is axiomatic that "'[o]riginal,' as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991); *see also Jin Ching Indus. Inc. v. Wong's Int'l Trading Imp. & Exp. Inc.*, 47 U.S.P.Q.2d 1509,

1513 (C.D. Cal. 1998). "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude or humble or obvious' it might be." *Feist*, 499 U.S. at 345.

The Express Plaid Designs easily meet this threshold. While White Owl contends that the extensive deposition testimony of Express's designer, Mr. Michael Tower, demonstrates the absence of the "minimal degree of creativity" required to support a copyright, in fact, the opposite is true since his testimony makes it clear the Express Plaid Designs were the result of a design process intended to create new and distinctive plaids to be used exclusively with Express's apparel, in this instance, men's shorts. (EXP SOF 5-13.) Mr. Tower, a trained designer with design experience at several apparel industry giants (Ralph Lauren, Abercrombie & Fitch, American Eagle), created the Express Plaid Designs by relying on several forms of inspiration, including prevailing fashion trends, photographs, swatches, tear sheets, or drawings, in order to create plaid designs that would embody the fashion forward design aesthetic of Express. (Colucci Decl. II, Ex. 5 (Tower Dep., at 47:1-9, 53:9-16).) It was Mr. Tower who selected and arranged the exact color, background, scale, shading and pattern of each of the Express Plaid Designs – this is "classic" copyright authorship.

White Owl's further attempts to undermine the validity of the copyrights in the Express Plaid Designs by claiming that "there is nothing immediately discernable as unique or original in their appearance" and that they are the "quintessential 'classic plaids,'" beg the question. (White Owl Mem., p. 3.) The "originality" inquiry is satisfied by the fact that Mr. Tower did in fact create original plaid designs, since his testimony is unequivocal as to the fact that he independently created the Express Plaid Designs and did not copy them from a "preexisting plaid." (EXP WO SDF 41.)

Yet another fallacy floated by White Owl should be completely rejected,

namely that the fact that these are plaid designs, which feature characteristics similar to all plaids, that they are undeserving of copyright protection. The Supreme Court has held that "originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Feist*, 499 U.S. at 345. Indeed, even a work that is identical to another is original for purposes of copyright protection so long as the author created it independently and did not himself copy his work from another source. *Id*. at 345-46. [10] The necessary level of creativity is extremely low. (*See* Colucci Decl. II, Ex. 1 (Oman Report), at p. 5.) The standard does not require, as White Owl repeatedly intimates, that, in order "for valid copyright protection, the copyright must represent something entirely new under the sun." *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992)[11]; *Berg v. Symons*, 393 F.Supp.2d 525, 541 (S.D.Tex. 2005) ("[I]t is now clearly established, both as a matter of congressional intent and judicial construction, that the originality necessary to support a copyright merely calls for independent creation, not novelty. Thus, a work will not be denied copyright protection simply because it is substantially similar to a work previously produced by others, and hence, is not novel.").

The fact that a plaid design consists of intersecting lines of various scale, width and color is not a bar to protectability since it is a basic axiom of copyright law that original works of authorship may be created from basic elements, since

---

[10] Thus, even assuming that Mr. Saul's fantastical tale of swatches bearing identical designs arriving from foreign shores were true, this would not preclude both the registration of the Express Plaid Designs as copyright, and the suit against Defendants for copyright infringement herein.

[11] Notably, in *North Coast Indus.,* the Ninth Circuit reversed a finding by the District Court that the copyright at issue was invalid because it lacked the required level of originality. The design at issue was a geometric design in the style of painter Piet Mondrian that was featured on a women's pullover top. In rejecting the district court's conclusion of invalidity, the Ninth Circuit noted that the fact that the design consisted of simple, intersecting geometric lines did not preclude the work from being original and thereby copyrightable under the Copyright Act. *Id.* at 1034-35.

MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

copyright is intended to protect the particular expression of an idea (and not the idea itself).  See *Feist Publications*, 499 U.S. at 350; *North Coast Indus.*, 972 F.2d at 1034; *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998) ("We focus on the overall manner in which Streetwise selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content."); *see also Mason v. Montgomery Data, Inc.*, 967 F. 2d 135, 142 (5th Cir. 1992) (plaintiff's maps were original because they possessed sufficient creativity in both the selection, coordination, and arrangement of the facts that they depict, and . . . in the pictorial, graphic nature of the way that they do so); *Georgia Lee Miller Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 939 (7th Cir.1989) ("While it is true that these elements are not individually capable of protection, just as individual words do not deserve copyright protection, it is the unique combination of these common elements which form the copyrighted material.").

Moreover, White Owl's repeated characterization of the Express Plaid Designs as non-distinctive or as "classic plaids" is incorrect since: 1) if they were so "classic," then why, despite all the resources available to all the of the Defendants, did they not find any similar "classic" plaids from their own inventory of plaids, or that of their experts, or from books and publications on plaids; 2) there are virtually a limitless number of original plaids given the various iterations of lines, scale, color and other design elements; and 3) the Express Plaid Designs, having been original creations of Express, are properly the subject of copyright registrations, like *hundreds* of other plaid designs according to the former Registrar of Copyrights:

> … I made a quick online search of the Copyright Office database, which includes all registrations since 1978.  **In that search, I found hundreds of registrations for tartans and plaid designs**. . . .My search confirms that plaid fabric designs are routinely registered in the Copyright Office.  They

1    represent human authorship, and they are copyrightable. **The Express plaids**
2    **are not public domain Scottish plaids. Their designs were all created**
3    **afresh for the Express products and registered without question by the**
4    **Copyright Office**.
5    (Colucci Decl. II, Ex. 2 (Supp. Oman Report), at pp. 2-3) (emphasis added).[12]
6        In summary, White Owl has not overcome Express's presumption of
7    originality. Mr. Tower did not copy from other works when creating the Express
8    Plaid Designs. The Express Plaid Designs are the independent creation of their
9    author and contain substantially more than the minimal degree of creativity needed
10   for copyright originality.
11       b.    *Mr. Tower Did Not Copy "Preexisting Plaids" and the*
12             *Express Plaid Designs Are Not "Derivative Works"*
             *(White Owl "Option" (1)(b))*
13
14       White Owl claims that Michael Tower "admittedly created the Express plaid
15   designs by copying preexisting plaids," but this statement is, at best, a faulty
16   interpretation of Michael Tower's deposition testimony, and has no basis in the
17   record. Mr. Tower's testimony is clear that there were no undisclosed derivative
18   works, of any nature, since he relied on various forms of inspiration to begin his
19   creation of the Express Plaid Designs, including museums, historic archives, tear
20   sheets and photographs. (Colucci Decl. II, Ex. 5 (Tower Dep., at 14:10-15:2, 17:7-
21   18:2).)
22       White Owl futilely attempts to rebut the presumption of copyright validity by
23   parsing and reading into the deposition testimony of Michael Tower (who,
24   ironically, was not questioned by White Owl at his deposition since White Owl did
25   not even attend), concluding, for example, that because he "did not testify" to
26   certain design changes from his inspiration, that his designs must not have been
27
28   ───────────────
     [12] Plaid designs are not only copyrightable, but can plainly serve as the basis for suits alleging
     infringement. *See, e.g.*, *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir.
     1977).

"original."  White Owl continues its speculation by opining that, since Mr. Tower must have used a "preexisting" work, then: 1) the Express Plaid Designs were not original; and/or 2) the failure to identify said "preexisting" work renders the copyright registrations invalid and/or unenforceable.  All of the foregoing arguments are a patently insufficient basis upon which to invalidate the copyrights for the Express Plaid Designs.

Despite the complete absence of any evidence in the record that the Express Plaid Designs are derivative works under the Copyright Act, White Owl repeatedly refers to them as such, in a deliberate attempt to mislead the Court.  (EXP WO SDF 27, 29.)  White Owl's fatally fractured syllogism posits that, since the Express Plaid Designs were based on "preexisting" works (which remain unidentified), that Express's failure to disclose said work(s) would have caused the Copyright Office to reject Express's applications, had such disclosure been made.  There is no evidence in the record to support such conjecture, and such an argument is another vain attempt to distract the Court from White Owl's blatant infringement and implausible explanations.

The Ninth Circuit has clearly stated that a work of authorship can only be considered a "derivative work" under the Copyright Act if it was "substantially copied from the prior work."  *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).  Moreover, only *copyrightable material* need be disclosed as preexisting material in applying for a copyright.  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078 (9th Cir. 2000).

White Owl's claim that Mr. Tower utilized common, preexisting, public domain plaids to create the Express Plaid Designs contradicts their claim that the Express Plaid Designs are derivative works, since original works of authorship that incorporate public domain elements are entitled to copyright protection under the Copyright Act.  *See Bouchat v. Baltimore Ravens, Inc.,* 241 F.3d 350 (4th Cir.

2001); *see also United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978) ("[R]ewarding the cartographer's art requires us to recognize that the elements of authorship embodied in a map consist not only of the depiction of a previously undiscovered landmark or the correction or improvement of scale or placement, but also in selection, design, and synthesis.  The record below establishes that there are elements both of synthesis from public sources and independent observation in the efforts used to create the 1973 map, and we find that, taken together, they support the validity of the 1973 copyright.").

 In fact, Mr. Tower was questioned extensively by Forever 21's counsel at his deposition as to his design process, including how he creates plaids, and his testimony clearly demonstrated that he relied on numerous sources for inspiration and did not copy from any single source (varying sources underlined):

> **Q.** And where would you get the pictures of the plaids from?
>
> **MR. TOWER.** Photographs, tear sheets, archives, garments.
>
> **Q.** What kind of archives would you look at?
>
> **MR. TOWER.** Go to the national history museum, talk to -- I don't know.  Lodges.  If it was in the northwest, I would call up Seattle, old libraries and get photographs.

(Colucci Decl. I, Ex. 21 (Tower Dep., at 14:10 – 15:2), Mr. Tower's Employ at Ralph Lauren).

*  *  *

> **Q.** At Abercrombie, what was the process that you went through to design a bottom, generally?
>
> **MR. TOWER.** Again, inspirations, tear sheets, magazines.  We traveled.  People took pictures.  There's a concept team.  They took pictures.  Kids wearing clothes.  Basically everywhere, newspapers, any kind of media basically, and also garments, too.

MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

1    **Q.**    So you take pictures of things that you saw people wearing?

2    **MR. TOWER.**    Not me.

3    **Q.**    Or somebody would.  Did you do any <u>Internet research</u>?

4    **MR. TOWER.**    Yeah.  Of course.

5    **Q.**    Did you go into any stores, any cool stores that you liked just to

6    kind of get inspiration from that?

7    **MR. TOWER.**    Sometimes.

8    **Q.**    Did you ever buy things in stores?

9    **MR. TOWER.**    Sometimes.

10   (*Id.*, at 17:7 – 18:2, Mr. Tower's employ at Abercrombie & Fitch.)

11                              *        *        *

12   **Q.**    So you do Internet searches.  You occasionally go to Internet

13   stores.  You look at what people are wearing on the streets -- all of

14   those things?

15   **MR. TOWER.**    <u>All -- definitely all medias, whether it's a store,</u>

16   <u>whether it's photographs, pictures, television</u>.

17   **Q.**    Magazines?

18   **MR. TOWER.**    <u>Magazines</u>.

19   (Colucci Decl. II, Ex. 5 (Tower Dep., at 22:1-9), Mr. Tower's Experience

20   Generally.)

21                              *        *        *

22   **Q.**    Would it be fair to say that the same kind of method of getting

23   inspiration for products that you talked about earlier is something

24   that you do for Express?

25   **MR. TOWER.**    I don't understand the question.

26   **Q.**    <u>In other words, when you come up with concepts of things to</u>

27   <u>do, are you relying upon your sense of fashion trends that you see in</u>

28

MEMORANDUM IN OPPOSITION TO
DEFENDANT, WHITE OWL CLOTHING,
INC.'S MOTION FOR SUMMARY

<u>magazines, media, Internet, whatever</u>?

**MR. TOWER.**    <u>Yes</u>.

(Colucci Decl. II, Ex. 5 (Tower Dep., at 34:22-35:6), Mr. Tower at Express.)

As a result, it is clear that Mr. Tower did not rely on any "preexisting work" as that term is defined under the Copyright Act and White Owl's repeated references to the copyrighted Express Plaid Designs as "derivative works" are without any basis in the record and should be completely disregarded.

White Owl's argument that Mr. Tower could not have designed the Express Plaid Designs without a specific "preexisting" source plaid is absurd. On the one hand, they denigrate the creativity required to create the Express Plaid Designs by claiming that they are not "unique" and that there is nothing "distinctive" about them. If this were in fact true, as White Owl urges, then Mr. Tower plainly could have created these designs from scratch without reference to any inspiration, given their "simplicity." Thus, White Owl's contention on the other hand that Mr. Tower could not have created the Express Plaid Designs without modifying them from a preexisting plaid is disingenuous and contradicts their own position that the Express Plaid Designs are "common" and "unoriginal." The fact is Mr. Tower created plaid designs, which, while they all share certain characteristics (horizontal and vertical lines of varying width and scale) may nevertheless be expressed in myriad ways. This type of expression is precisely the type of authorship that the copyright laws are designed to protect.

Moreover, because of the diverse inspirations relied upon by Mr. Tower in creating the Express Plaid Designs, and because Mr. Tower did not copy any of them, including the phantom "preexisting plaid" referred to by White Owl, Express correctly left Section 4 of the copyright application blank;

Screen Four is used to identify a specific pre-existing work on which the new work is based, or is derived from. Screen Four has no relevance to the

MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

Express registration applications for the original plaid designs in this case. Obviously, they incorporate some of the normal attributes of a plaid, with horizontal and vertical lines, but they are not based on an identifiable pre-existing work. They were inspired by multiple sources, as indicated by Mr. Tower. **As a general rule, authors are not expected to list on Screen Four all of the multiple sources of inspiration that resulted in the new work, normally an impossible task. In my opinion, it would have been inaccurate and misleading to have indicated any specific source on Screen Four, when there is no such a source**.

(Colucci Decl. II, Ex. 4 (Second Supp. Oman Report, p. 3)) (emphasis added); *see also, Apple Computer, Inc. v. Microsoft Corp*., 759 F. Supp. 1444, 1454 (N.D. Cal. 1991) (rejecting claim that copyrighted work was "derivative" in absence of evidence of the source work).

Lastly, since Defendants have asserted invalidity as their lone defense to liability to Express for copyright infringement, Express retained the services of Ralph Oman, Esq., who, as the Register of Copyrights from 1985 through 1993, was the "chief government official responsible for administering the U.S. copyright system," and whose duties included making "rulings on the copyrightability of works and supervis[ing] the work of the Registration Specialists who examine the applications.[13] (Colucci Decl. II, Ex. 1 (Oman Report, p. 2).) Mr. Oman, after reviewing the Express Plaid Designs as well as the testimony of Mr. Tower regarding this creative process, concluded that the originality threshold was easily surpassed by the Express Plaid Designs since Mr. Tower took numerous steps and made many decisions to create the original and thereby copyrightable designs.

All of this creativity is copyrightable authorship, and the fact that the

---

[13] White Owl even resorts to trying to conceal Mr. Oman's former position as the *de jure* head of the Copyright Office by referring to him only as having a "significant management position." (White Owl Mem., p. 13.)

1    Copyright Office issued the registration certificate indicates that the expert
2    agency recognized Mr. Tower's (and the rest of the Express design team's)
3    authorship.

4    (Colucci Decl. II, Ex. 4 (Second Supp. Oman Report, pp. 2-3).)[14]

5    Moreover, when the foregoing is considered along with Defendants' failure
6    to provide any evidence of any similar plaids, this underscores the fact that Mr.
7    Tower's design process did not copy from any preexisting work and, instead, was
8    the product of his various different types of inspiration, as he testified.  As a result,
9    the Express Plaid Designs qualify as original works of authorship under the
10   Copyright Act and plainly support Express's copyright registrations.

11        **2.    As a Joint Tortfeasor, Summary Judgment in Favor of White Owl
12             as to Select Garments and Claims Would Be Premature
13             (*White Owl "Option" (2)(a)*)**

14   Following the allegations of the Complaint, Express's motion for summary
15   judgment seeks judgment against Defendants, and each of them, for liability on all
16   of the causes of action of the Complaint (Counts I – IV), excluding damages,
17   attorneys' fees and/or other monetary relief ("Express's Motion").  Unless and until
18   liability has been determined, the issue of damages and/or other monetary relief as
19   among the Defendants does not arise since both the Complaint and Express's
20   motion for summary judgment charge the Defendants with liability as joint
21   tortfeasors.  *Henry v. Superior Court*, 160 Cal. App. 4th 440, 449 (Ct. App. 2008)
22   (quoting *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 582 (1978))
23   (under the joint and several liability doctrine, "each tortfeasor whose negligence is a
24   proximate cause of an indivisible injury remains individually liable for all
25   compensable damages attributable to that injury").  After liability is determined, the

---

[14] While White Owl cherry picks selections from Mr. Oman's deposition in order to assert that he did not know what "changes" Michael Tower made as part of his design process in creating the Express Plaid Designs, Mr. Oman, nevertheless, after reviewing the totality of Mr. Tower's testimony, along with the copyright registrations for the Express Plaid Designs, concluded, in his expert opinion as former Registrar of Copyrights, that the Express Plaid Designs easily surpassed the minimum threshold of creativity in order to sustain valid copyright registrations.

defendants may seek partial indemnity from one another on the basis of their relative levels of fault. *Adams v. Cerritos Trucking Co., Inc.*, 79 Cal. App. 3d 957, 961 (Ct. App. 1978) ("Accordingly, we hold that under the common law equitable indemnity doctrine a concurrent tortfeasor may obtain partial indemnity from cotortfeasors on a comparative fault basis."). Therefore, the Court should decline to issue an order at this stage, which would terminate White Owl from this case with respect to the Roth and Bruin garments and/or the Express Track Jacket that were provided to Forever 21 by Steps of California, where liability among joint tortfeasors is yet to be determined. Moreover, there is a genuine issue of material fact with regard to White Owl's sale of a copy of the Express Bruin Copyright over its website. (See *supra*, Section (II)(A)(2).)

### 3. White Owl Is Implicated in Defendants' Concerted Effort to Obtain and Replicate Five of Express's Designs (*White Owl "Options" (2)(b) and (2)(c)*)

Although Defendants are exonerated from paying statutory damages or attorney's fees under the Copyright Act, 17 U.S.C. § 412(2) (2008), they are nevertheless jointly and severally liable to Express for unfair competition under the Lanham Act, California Business & Professions Code § 17200, and under California common law. Forever 21's "shop and copy" business practices are at issue in this case, which involve not only the Express Track Jacket but each of the infringing shorts. Consequently, White Owl, as supplier to Forever 21 of two (2) of the allegedly infringing shorts and potentially one other, should not be summarily excluded from Express's claims for unfair competition under the Lanham Act, California Business & Professions Code § 17200, and under California common law. (See *supra*, Section (II)(A)(2).) Should White Owl be found to be a participant in this concerted effort, Express is entitled to seek all damages permissible under the Lanham Act, California Business & Professions Code, and California common law. Therefore, at this stage summary judgment in favor of

White Owl excluding it from liability as to Express' third and fourth causes of action would be premature.

## IV.   **CONCLUSION**

For all the foregoing reasons, Express respectfully requests that the Court deny White Owl's motion and/or grant such other further relief as it deems appropriate.

Dated:   July 26, 2010

COLUCCI & UMANS

By:   s/ Frank J. Colucci/
Frank J. Colucci (*Pro Hac Vice*)
David M. Dahan (*Pro Hac Vice*)
COLUCCI & UMANS
218 East 50th Street
New York, New York 10022
Telephone:  212.935.5700
Facsimile:   212.935.5728
Emails: FColucci@colucci-umans.com
              DDahan@colucci-umans.com

Attorneys for Plaintiff Express, LLC

Co-Counsel for Plaintiff Express, LLC:

BUCHALTER NEMER
Russell L. Allyn (SBN:  143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400

MEMORANDUM IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY

# CERTIFICATE OF SERVICE
## STATE OF NEW YORK – COUNTY OF NEW YORK

I declare that I am a citizen of the United States and a resident of New York, New York, or employed in the County of New York, State of New York.  I am, and was at the time of service of the document(s) herein referred to, over the age of 18 years, and not a party to the action.  My business address is Colucci & Umans, 218 East 50th Street, New York, New York 10022.

On the date executed below, I served a true copy of the document(s) described as:

- **PLAINTIFF EXPRESS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT, WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY JUDGMENT**
- **DECLARATION OF FRANK J. COLUCCI IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
- **DECLARATION OF MICHAEL J. PAMPALONE, III, IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
- **EXPRESS'S STATEMENT OF DISPUTED FACTS AND CONCLUSIONS OF LAW IN OPPOSITION TO WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY JUDGMENT; AND**
- **EXPRESS'S SEPARATE STATEMENT RE: OPPOSITION TO WHITE OWL CLOTHING, INC.'S MOTION FOR SUMMARY JUDGMENT**

  x  By causing a true and accurate copy of the document(s) to be filed through this Court's Case Management and Electronic Case Filing (CM/ECF) system.  Notice of this filing is automatically generated to all counsel of record, and such service complies with Federal Rule of Civil Procedure 5(d)(3), Local Rules 5-3.3 and 5-4, and General Order 07-08.  The transmission was reported as complete and without error.

  x  By causing a true and accurate copy of the document(s) to be sent to counsel for defendant(s) at the addresses set forth below via electronic mail.  The parties have stipulated that documents transmitted to counsel via electronic means shall be deemed properly served pursuant to the Federal Rules of Civil Procedure.

1

2
Larry Russ, Esq.
LRuss@raklaw.com
3
Nathan Meyer, Esq.
NMeyer@raklaw.com
4
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
5
Los Angeles, CA 90025

6
Angie Lee, Esq.
alee@laklawyers.com
7
Levinson, Arshonsky, & Kurtz, LLP
15303 Ventura Blvd., #1650
8
Sherman Oaks, CA 91403

9
‒
Theresa Middlebrook, Esq.
10
theresa.middlebrook@hklaw.com
Holland & Knight
11
633 W. Fifth Street, 21st Floor
Los Angeles, California 90071
12
        I declare under penalty of perjury under the laws of the United States
13
that the above is true and correct.
14

15
        Executed on July 26, 2010, at New York, New York.

16

17
_____          _____
        Janice K. Yoon                      /Janice K. Yoon/
18
        Printed Name                           Signature

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO
DEFENDANT, WHITE OWL CLOTHING,
INC.'S MOTION FOR SUMMARY