RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 82768
lruss@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Defendants
Forever 21, Inc., Forever 21 Logistics, Inc., Forever 21 Retail, Inc., Jin Sook Chang, and Do Won Chang

Levinson Arshonsky & Kurtz, LLP
Robert A. Levinson, Esq [SBN 82300]
Angie S. Lee, Esq. [SBN 254018]
alee@laklawyers.com
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Telephone: (818) 382-3434
Facsimile: (818) 382-3433

Attorneys for Defendant
Steps Apparel Group, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EXPRESS LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, INC.; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>Defendants | Case No. CV09-04514 ODW (VBK)<br><br>**FOREVER 21 AND STEPS' DEFENDANTS REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[Evidentiary Objections to F. Colucci's Declaration, Response to Uncontroverted Facts and Third Declaration of Nathan D. Meyer filed concurrently herewith]<br><br>**Hearing**<br>**Date:** August 16, 2010<br>**Time:** 1:30 p.m.<br>**Courtroom:** 11<br><br>**Discovery Cut-off:** July 5, 2010<br>**Pre-Trial Conference:** Sept. 13, 2010<br>**Trial:** Oct. 5, 2010<br><br>Complaint Filed:<br>June 23, 2009 |

2923-03 100802 Reply MSJ.doc

# Table of Contents

| | | Page |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY | 1 |
| | A. The Undisputed Facts Support Summary Judgment | 2 |
| II. | AS EXPRESS CANNOT ESTABLISH SECONDARY MEANING IN ITS TRACK JACKET AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE GRANTED ON THE TRADE DRESS CLAIM | 4 |
| | A. In Product Design Cases, Copying Does Not Create an Inference of Secondary Meaning. | 5 |
| | B. Defendants' Survey is Admissible and Further Supports a Grant of Summary Judgment. | 7 |
| III. | HAVING COPIED THE PLAIDS IN ISSUE FROM THIRD PARTIES AND HAVING FAILED TO DISCLOSE THIS FACT TO THE COPYRIGHT OFFICE, EXPRESS CANNOT, AS A MATTER OF LAW, PREVAIL ON ITS COPYRIGHT CLAIMS | 9 |
| | A. Express' Reliance on its Alleged Copyright Expert Is Misguided. Experts Do Not Create Facts In Dispute And This Court Does Not Need An Attorney Expert To Opine On Matters Of Law. | 10 |
| IV. | EXPRESS'S UNFAIR COMPETITION CLAIM IS CONGRUOUS WITH ITS TRADE DRESS CLAIM | 11 |
| V. | CONCLUSION | 12 |

# Table of Authorities

Page

**Cases**

*Alphaville Design, Inc. v. Knoll, Inc.*
    627 F.Supp.2d 1121 (N.D.Cal. 2009) ............................................................. 9

*Apple Computer, Inc. v. Microsoft Corp.*
    759 F. Supp. 1444 (N.D. Cal. 1991) ............................................................. 12

*Asics Corp. v. Skechers USA*
    2007 U.S. Dist. LEXIS 38048 (C.D.Cal. April 25, 2007) ............................ 8

*Brinson v. Linda Rose Joint Venture*
    53 F.3d 1044 (9th Cir. 1995) ......................................................................... 6

*Carol Cable Co. v. Grant Auto, Inc.,* 4 USPQ2d 1056 (N.D.Cal. 1987) ................. 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
    539 U.S. 23, *123 S. Ct. 2041 (2003)* ..................................................... 14, 15

*Drum v. San Fernando Valley Bar Assn.*
    182 Cal.App.4th 247 (2010) ........................................................................ 14

*Mattel, Inc. v. MGA Ent't, Inc.*
    2009 U.S. App. LEXIS 29187 at *34 (9th Cir. July 22, 2010) .................... 15

*powerlineman.com, LLC v. Jackson*
    2007 U.S. Dist. LEXIS 86261 (N.D.Cal. November 15, 2007) .................. 14

*R. Ready Prods., Inc. v. Cantrell*
    85 F.Supp.2d 672 (S.D.Tex. 2000) .......................................................... 7, 12

*Russ Berrie & Co. v. Jerry Elsner Co.*
    482 F. Supp. 980 (S.D.N.Y. 1980) .............................................................. 12

*Seed Lighting Design Co., Ltd v. Home Depot*
    2005 U.S. Dist. LEXIS 44741 (N.D.Cal. August 3, 2005) ......................... 11

*Trafficschool.com, Inc. v. Edriver, Inc.*
    633 F. Supp. 2d 1063 (C.D. Cal 2008) ........................................................ 12

*Victoria's Secret Brand Management, Inc. v. Sexy Hair Concepts LLC*, 2009 U.S.Dist. LEXIS 30458 at *18 (S.D.N.Y. April 8, 2009) .... 10, 11

*Vision Sports, Inc. v. Melville Corp.*
    888 F.2d 609 (9th Cir. 1989) .................................................................. 10, 11

*Vogue Ring Creations, Inc. v. Hardman*
    410 F.Supp. 609 (D.R.I. 1976) .................................................................... 12

*Walker & Zanger, Inc. v. Paragon Indus*
    465 F.Supp.2d 956 (N.D.Cal. 2006) .............................................................. 6

*Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*
    259 F.3d 25 (1st Cir. 2001) ........................................................................ 6, 7

## I. INTRODUCTION AND SUMMARY

Where there are no material factual issues in dispute, a Court may apply the facts to the law and render judgment without the need of a protracted trial. In this case, the fundamental facts germane to the trade dress claim and copyright claims are not in issue. Express has failed to proffer evidence sufficient to sustain a jury finding that the design associated with the Express Jacket was source identifying. It is thus appropriate to grant summary judgment now rather than go to trial. The evidence will not change and the evidence is not in dispute. The evidence cannot support the required finding of secondary meaning.

With respect to the copyright claims, the evidence is not in dispute. For each of the plaids, Express's designer, Mr. Tower, found an existing plaid that he liked, from a photo, sample or a tear sheet. He had these plaids scanned into a computer and *cannot remember making any specific changes to the source plaids*. Express never disputes these facts with any contrary testimony by Mr. Tower, or a declaration purportedly clarifying or retracting his testimony. Express should have disclosed the source plaids that Mr. Tower copied from in its copyright applications. But the Copyright Office was unaware of the fact that the plaids in question were copies of pre-existing plaids. The copyrights that Express obtained were not based upon truthful and accurate statements to the Copyright Office, so the registration certificates should give Express no advantage here.

Express does not even try to create a factual dispute about Mr. Tower's straightforward testimony that he copied pre-existing plaids. What Express apparently contends is that it is OK for Mr. Tower to have copied from source plaids and it was OK for Mr. Tower to hide this fact from the Copyright Office. According to Express, since it disposed of all the evidence of the plaids that it copied from, the Court must assume that it made some copyright-worthy changes, even though there is no evidence of creativity or originality. What is worse is

RUSS, AUGUST & KABAT

Express' argument that it is Defendants' burden to try to find the plaids that Mr. Tower admittedly copied from, *and Express destroyed*. According to Express, since Defendants have not found the item that Mr. Tower admittedly copied from, the Court should assume they do not exist and *a fortiori,* Mr. Tower must have made some copyrightable changes from the source plaids. As explained in Defendants' moving papers as well as its Opposition to Express' motion, this proposition would turn copyright law on its head. Defendants' Opposition at 6-7; Defendants' Motion at 19-22.

The bottom line is that Express cannot be permitted to prevail on a copyright infringement claim, where it admits that its plaids were derived from source plaids and where it cannot identify any specific[1] changes made to these plaids. If Express' conduct is rewarded, the litigation floodgates will open to professional litigants who will adopt Express' strategy. Copyright law is clear; there must be some originality, and once Defendants show that Express copied someone else's plaids, it has the burden of demonstrating why it is entitled to a copyright.

**A.    The Undisputed Facts Support Summary Judgment**

For the Court's convenience, highlighted below in bullet point fashion is a summary of pivotal facts Express does not dispute:

With respect to the trade dress claim, Express does not dispute the following:

- Express conducted no consumer survey to establish secondary meaning. SOF 1.[2]
- There are no unsolicited press mentions of the Express Jacket. SOF 3
- There are no known instances of actual confusion. SOF 4.
- There are no consumer testimonials relating to the Express Jacket. SOF 5.
- The sole use of the Express Jacket on the Express website was its individual product page. SOF 7.

---

[1] Mr. Tower alleges he changed certain colors, but cannot identify any such change.
[2] Plaintiff's Statement of Disputed Facts and Conclusions of Law in Opposition to Forever 21 and Steps' Motion for Summary Judgment ("SOF"), filed under seal on July 26, 2010.

- Express had placed the Express Jacket on the sale rack by Mid-April 2009, less than three months after it began offering this jacket in its stores. SOF 12, 16
- At its peak, Express sold one jacket every three days, per store. SOF 14.
    - In comparison, a strong selling pair of denim sells *sixty times* **that many units**. SOF 15
    - In comparison, Express may order hundreds of thousands of units of certain other garments offered at its stores. SOF 17
- A plain Express Jacket without the alleged trade dress was a *better seller* than the Express Jacket. SOF 18.

On the basis of analogous undisputed facts, numerous Courts have held that summary judgment should issue for the defendant. *Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*, 259 F.3d 25, 38 (1st Cir. 2001); *Walker & Zanger, Inc. v. Paragon Indus,* 465 F.Supp.2d 956, 960 (N.D.Cal. 2006); *Continental Lab. Prods. v. Medax Int'l*, 114 F. Supp. 2d 992, 1013 (S.D.Cal. 2000). Indeed, the undisputed facts here are more favorable to Defendants than the facts actually found by the Courts in *Yankee, Walker*, *Continental* and *The Jewish Sephardic Yellow Pages, Ltd v. Dag Media, Inc.,* 478 F.Supp.2d 340, 370 (S.D.N.Y. 2006) See discussion of these cases in Defendants' Motion at 10-13. Express never argues that the *Yankee, Continental, Walker* and *Sephardic* decisions were wrongly decided, so this Court has no reason to deviate from the holdings in those cases. Accordingly, summary judgment is highly appropriate in connection with Express' trade dress claims.

With respect to it's copyright claims, Express does not dispute the following:

- The creation of each plaid began with a pre-existing plaid taken from a picture, tear sheet or fabric sample (hereafter "the source plaid").[3] SOF 23, 36, 49, 62.

---

[3] Express describes these facts as disputed, but references no evidence in support. These facts must therefore be considered undisputed. *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995*).* The failure to cite evidence in opposition not only goes against applicable case law, but also against this Court's standing order, which states that "to demonstrate that a fact is disputed, the opposing party must . . . *cite to the relevant exhibit or other piece of*

RUSS, AUGUST & KABAT

- Mr. Tower then caused someone to scan the source plaid into a computer. SOF 24, 37, 50, 63.
- Mr. Tower cannot recall any specific non-color changes made to the source plaid in creating the Express Plaid Designs. SOF 26, 39, 52, 65.
- The source plaids were not retained by Express. SOF 25, 38, 51, 64.
- None of the above facts were disclosed to the Copyright Office. SOF 30-31, 43-44, 56-57, 69-70.
- Express has no record of any differences between the source plaids and the Express Plaid Designs. SOF 28, 41, 54, 67.

On the basis of these undisputed facts, Express did not author anything, but rather copied plaids from public sources and mislead the Copyright Office in order to obtain Certificates of Registration. Highly probative is the fact that Mr. Tower did not submit any declaration in connection with Express's opposition, stating unequivocally, "(1) I did not copy from other plaids, (2) to the extent I did copy from other plaids, I made the following changes." *See R. Ready Prods., Inc. v. Cantrell,* 85 F.Supp.2d 672, 692 (S.D.Tex. 2000) (granting summary judgment to defendants because plaintiff failed to disclose the "crucially material" fact that the work was derivative to the copyright office.)

Finally, on the unfair competition claims, Express fails to rebut that its claims are congruous with the Lanham Act. Because the trade dress claims fail, the unfair competition claims fail.

## II. AS EXPRESS CANNOT ESTABLISH SECONDARY MEANING IN ITS TRACK JACKET AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE GRANTED ON THE TRADE DRESS CLAIM

In *Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*, 259 F.3d 25, 38 (1st Cir. 2001), the plaintiff had (i) limited advertising; (ii) at least

---

*evidence,* and describe what it is in that exhibit or evidence that refutes the asserted fact." Standing order at 6:28-7:1 (emphasis added). Express has failed to cite any evidence to dispute any of the above-cited facts. Indeed, the *only* "evidence" cited at all in the separate statement on the copyright claims is the expert report of Ralph Oman. Express does not cite a single line of deposition testimony or scrap of primary source material. SOF 23-74.

2923-03 100802 Reply MSJ.doc

4

four years of exclusive use of the same alleged elements of trade dress; (iii) high sales figures;[4] (iv) evidence from retailers indicating similarity; (v) testimony from defendant re: distinctiveness; (vi) some evidence of actual confusion; and (vii) evidence of intentional copying. *Id. at* 43. On these facts, as previously highlighted, the Court rejected Yankee's claim that its candle products had secondary meaning and issued summary judgment for the defendant. The undisputed facts Express relies upon here are even flimsier. Express has no evidence that it advertised the track jacket. Express, moreover asks the Court to find that an item that was carried in its stores for a single season (as opposed to four years) can somehow have engendered widespread consumer recognition of the source of its track jacket. Express also has far lower sales figures than Yankee and unlike *Yankee*, here there is absolutely *no* evidence of actual confusion.

The Court in *Yankee* determined that no reasonable jury could find that Yankee established valid trade dress related to its candles, and granted summary judgment in defendant's favor. Similarly, no reasonable jury could find secondary meaning associated with Express' track jacket on a far weaker factual record. Summary judgment is appropriate in connection with Express's trade dress claim.

### A. In Product Design Cases, Copying Does Not Create an Inference of Secondary Meaning.

Express' only argument is that the Express and Forever 21 track jackets look alike and that Forever 21 copied this jacket. But in a product design case, evidence of copying cannot establish secondary meaning. *Continental Lab. Prods. v. Medax Int'l*, 114 F. Supp. 2d 992, 1013 (S.D.Cal. 2000) ("Considering the tenuous evidentiary connection between intentional copying and the views of consumers, and the unique policy considerations that arise in product design trade dress cases,

---

[4] In *Asics Corp. v. Skechers USA,* 2007 U.S. Dist. LEXIS 38048 (C.D.Cal. April 25, 2007), cited by Express, sales of more than 200,000 units were held to weigh against secondary meaning. Furthermore, Express's assertion that the item was a "top 15" item is inconsistent with their own testimony. See Defendants' Statement of Genuine issues ("SGI"), Docket 140-1, Fact 25 (11:11-12:16).

the Court declines to give any weight to Defendants' copying."). The various cases string-cited by Express on this issue do not dispute this point.[5]

Express's reliance on *Carol Cable Co. v. Grant Auto, Inc.,* 4 USPQ2d 1056 (N.D.Cal. 1987) for the proposition that copying creates an inference of secondary meaning in all cases is in error. That case was distinguished on *precisely that point* just last year:

> "[Carol Cable] dealt with packaging, not the product itself. When the trade dress, the mere packaging of a product, copies the packaging of another product, the Carol Cable rationale holds. The instant case, on the other hand, deals with a trademark of a design. The piece of furniture is *both* the trademark and the product. Accordingly, a manufacturer might copy not because there is secondary meaning to capitalize upon, but because consumers desire that particular style in a furniture product."

*Alphaville Design, Inc. v. Knoll, Inc.*, 627 F.Supp.2d 1121, 1130 (N.D.Cal. 2009). What could be more obvious than the fact that if a product design does not have secondary meaning associated with it, copying cannot transform an otherwise unprotectable design into a trademark worth recognizing? As various courts cited in Defendants' pleadings note, if copying alone were sufficient to create secondary meaning, manufacturers would be hampered in their ability to provide desirable styles and features common to many products that have nothing to do with the good will or trademark of any particular manufacturer. As stated in Defendants' opposition at pages 9-15, and its own motion at 17-18, in product design trade dress cases, secondary meaning is *only* found when there is *independent* evidence of secondary meaning. It is only then that the intent to pass off is found, which

---

[5] Most of the cases cited by Express on this point were also cited in the context of their own motion for summary judgment. Defendants addressed these cases in detail in their opposition, at 9-1 (§IV.A.1). With the exception of *Carol Cable,* discussed above, the remainder is consistent with the cases cited by Express in its motion, and rebutted by Defendants in their opposition.

buttresses the finding. *Continental, supra,* 114 F.Supp.2d at 1010. Because this is a product design case, not a product packaging case, copying cannot serve as particularly significant evidence of secondary meaning.

### B. Defendants' Survey is Admissible and Further Supports a Grant of Summary Judgment.

Ultimately, Express's failure to conduct a survey, while not dispositive, is a fact strongly favoring Defendants. *The Jewish Sephardic Yellow Pages, Ltd v. Dag Media, Inc.,* 478 F.Supp.2d 340, 370 (S.D.N.Y. 2006) ("this Court finds it quite significant that plaintiff did not muster any survey evidence."). "Assertions of methodological errors in a survey bear exclusively on the weight to be given the survey rather than bearing on an admissibility determination." *Victoria's Secret Brand Management, Inc. v. Sexy Hair Concepts, LLC*, 2009 U.S.Dist. LEXIS 30458 at *18 (S.D.N.Y. April 8, 2009) (concerning Express's own expert). And because Express does not have a contrary survey, weight issues are of no moment here, as the survey is unrebutted. Indeed, in *Vision Sports,* cited by Express, the Court admitted a survey that *did not survey a single person in the target age group*. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

In any event, Express's argument that the survey was overinclusive is not well taken. Express's complaint is not really that the sample is under or over inclusive – both the survey sample and Forever 21's customer base are broad in terms of age. Express's real complaint is that the sample does not precisely match the age distribution of Forever 21's customer base. At best, this is an argument that the raw data was incorrectly weighted.[6] However, re-weighting the numbers would not have any effect[7] on the results, as 0% of persons viewing the Forever 21 Jacket identified it as coming from Express – any re-weighting of zero is zero.

---

[6] Express has had access to the raw data underlying the survey for several months. If re-weighting the numbers made them favorable to Express, they would have stated as such in their opposition.

[7] There are statistically significant numbers of persons in each age group.

Again, universe issues generally go to weight, not admissibility. *Icon Enters. Int'l v. Am. Prods*. Co., 2004 U.S. Dist. LEXIS 31080 at *89 (C.D. Cal. October 7, 2004) ("courts within the Ninth Circuit are reluctant to exclude survey evidence on the basis of an overinclusive or underinclusive target population . . . selection of an inappropriate universe generally affects the weight of the resulting survey data, not its admissibility").[8]

Express next argues that the survey violates the anonymous source rule. This exact argument was made in *Seed Lighting Design Co., Ltd v. Home Depot,* 2005 U.S. Dist. LEXIS 44741 (N.D.Cal. August 3, 2005), and rejected (with summary judgment issuing in favor of the defendant). In any event, the simple question "do you know who sells this jacket" would incorporate both named and anonymous results. Indeed, in *Victoria's Secret, supra*, in which Express's Dr. Mazis was the survey expert, a survey showed approximately 1/3 of respondents identified a name as being associated with an unknown source, and 1.6% with the plaintiff. *Victoria's Secret*, supra at *16. These numbers are comparable to those found by Dr. Maronick. The Court held those numbers to weigh against secondary meaning; this Court should do the same here.

Third, Express argues that the survey is invalid because any secondary meaning had dissipated by the time the survey was conducted. By that logic, a survey undertaken during the course of litigation would *never* be useful. In order for that argument to have weight, the Ninth Circuit's statement in *Vision* that "An expert survey of purchasers can provide the most persuasive evidence of secondary meaning" must be incorrect. *Vision, supra*, 888 F.2d at 615. Ironically, this argument inadvertently illustrates that even Express does not believe that its jacket had any secondary meaning beyond the three months that the product was featured in its BrandGuides. That being the case, it is again worth noting that the Forever

---

[8] The exclusion of women from the survey was justified because it was a *men's* jacket. Had women been included, Express would no doubt be claiming the survey was overinclusive.

2923-03 100802 Reply MSJ.doc

8

**FOREVER 21 AND STEPS' DEFENDANTS REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

21 track jacket was not offered for sale until Express already put its jackets on the sale rack.[9]

### III. HAVING COPIED THE PLAIDS IN ISSUE FROM THIRD PARTIES AND HAVING FAILED TO DISCLOSE THIS FACT TO THE COPYRIGHT OFFICE, EXPRESS CANNOT, AS A MATTER OF LAW, PREVAIL ON ITS COPYRIGHT CLAIMS

A party cannot obtain a copyright in something it did not create. Here, it is unrebutted that Mr. Tower did not create the plaids in question. They were copied from something else. Express has failed to present any evidence that it created *anything*. Under *R. Ready Prods., Inc. v. Cantrell,* 85 F.Supp.2d 672, 692 (S.D.Tex 2000), *Vogue Ring Creations, Inc. v. Hardman,* 410 F.Supp. 609, 615-16 (D.R.I. 1976) and *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980 (S.D.N.Y. 1980), discussed in detail in Defendants' motion and omitted completely from Express's opposition, Express has not shown any originality, and its copyright is therefore invalid.[10]

In its Opposition, Express makes no meaningful effort to dispute the facts on the copyright claims. It cites no deposition testimony whatsoever in response to Defendants' separate statement. In an improper effort to mislead the court, Express highlights deposition testimony at page 6 of the Opposition regarding the creative process relating to Mr. Tower's work for *different employers* on completely *unrelated products*. And despite having the opportunity to do so by way of declaration, Express offers no evidence of any specific changes by Mr.

---

[9] Express's citation to *Trafficschool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1079 (C.D. Cal 2008) is irrelevant. In that case (1) Dr. Maronick's survey was in fact, admitted and (2) the Court ruled in favor of Dr. Maronick's side. As stated in that case, any methodology issues go to weight

[10] The only new case cited by Express in the opposition, *Apple Computer, Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1454 (N.D. Cal. 1991) is inapposite. That case concerned the copying of ideas, not expression – obviously, ideas need not be disclosed on a copyright form. Here, however, Tower has testified that he copied expressions, namely, actual pictures, tear sheets or sample swatches, which must be disclosed to the copyright office.

2923-03 100802 Reply MSJ.doc

9

Tower, to the plaids he copied from other sources.  SOF 23-76 (containing no deposition citations or evidence citations whatsoever)

Express has made no attempt whatsoever to distinguish testimony that Mr. Tower cannot remember a single specific change made from the Source Plaid:

"Q: So you don't remember any specific changes that you made?

A: For this short, no." SGI 95 (31:17-28)

Because there is no evidence of any change from the source plaid, summary judgment should issue in favor of Defendants.

### A. Express' Reliance on its Alleged Copyright Expert Is Misguided.  Experts Do Not Create Facts In Dispute And This Court Does Not Need An Attorney Expert To Opine On Matters Of Law.

Express' reliance on copyright expert Ralph Oman is particularly bizarre.  First, Mr. Oman is not qualified to testify as to what Mr. Tower did – only Mr. Tower can do that, and as discussed above and in Forever 21's other pleadings, Mr. Tower speaks for himself.  See evidentiary objections, filed concurrently.

Second, Oman contradicts himself even on that point.  In his first supplemental report, Oman states that Mr. Tower may have *"selected patterns"* First Supplemental Report at 4 (Colucci Decl. Exh. 2 p. 23) (emphasis added).  Mr. Oman later agreed that if Mr. Tower did this, the plaids would not be copyrightable.  Oman Depo. at 60:6-9 (Third Meyer Decl. Exh. 23).[11]  This quote shows that Oman *agreed* that there were material misstatements in the registrations.  Realizing this testimony was unhelpful to Express, he then reversed himself in his second supplemental report, cited by Express.  His only explanation for this sudden change was that it was a "growing and nuance[d] appreciation of what Mr. Tower was saying and his method of creativity."  Oman Depo at 70:16-

---

[11] "Q.  If Mr. Tower had simply selected a preexisting plaid after reviewing thousands, would that selection be entitled to copyright? One plaid.  A.  Certainly not."

17. Id. Oman's foundationless interpretation of Mr. Tower's deposition, plus his admission that even he believes Tower may not have created anything, renders his reports insufficient to rebut the showing made by Defendants in support of their motion.

For all of the above reasons, summary judgment should issue on the copyright claims.

## IV. EXPRESS'S UNFAIR COMPETITION CLAIM IS CONGRUOUS WITH ITS TRADE DRESS CLAIM

As stated in the motion, and as completely ignored in Express's opposition, Lanham Act claims are "substantially congruent" with unfair competition claims in California. *powerlineman.com, LLC v. Jackson,* 2007 U.S. Dist. LEXIS 86261 (N.D.Cal. November 15, 2007). For that reason, the unfair competition claim fails.[12]

Express is attempting to save its unfair competition claim with a vague mention of "unfairness" and reference to the broad scope of the UCL. However, unfair competition claims in California require a predicate unfair act. In competitor cases under California law, a practice is not unfair unless it implicates antitrust laws. *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247 (2010). Express does not allege anything approaching antitrust violations in any of its pleadings, and has never alleged that Forever 21's acts are anti-competitive. It therefore does not allege any 'unfair' acts. Express also fails to allege any fraudulent acts, or unlawful acts other than trade dress.

Because Express has no unfair competition predicate other than trade dress, and because the trade dress claims fail as a matter of law, the Court should grant summary judgment on the third and fourth claims for relief.

---

[12] Express also appears to be alleging some form of reverse passing off, which requires proof of secondary meaning. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36, 123 S. Ct. 2041, 2049 (2003).

As the Supreme Court held in *Dastar*, "in general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Dastar, supra,* 539 U.S. at 32. Under *Dastar*, copying *is not unfair unless it is unlawful*. Because Express has not alleged any unlawful acts other than trade dress infringement, any unfair acts other than copying, or any fraudulent acts at all, the unfair competition claim falls with the trade dress claim.

## V. CONCLUSION

For the reasons stated above and in Defendants' other papers, the Court should grant summary judgment to the Defendants on all of Express's claims. Express would have this Court protect it from legitimate competition by Forever 21, yet as the Ninth Circuit has held as recently last week, in the context of a copying case, "America thrives on competition: [plaintiff] will too." *Mattel, Inc. v. MGA Ent't, Inc.,* 2009 U.S. App. LEXIS 29187 at *34 (9th Cir. July 22, 2010).

DATED: August 2, 2010

RUSS, AUGUST & KABAT  
Larry C. Russ  
Nathan D. Meyer

By: /s/ Nathan D. Meyer  
Attorneys for F21 Defendants

DATED: August 2, 2010

LEVINSON ARSHONSKY & KURTZ, LLP  
Robert A. Levinson  
Angie S. Lee

By: /s/ Angie Lee  
Attorneys for Defendants Steps Apparel Group, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2010 the foregoing document described as **FOREVER 21 AND STEPS' DEFENDANTS REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically via the Court's Electronic Case Filing System (ECF). Notice of the filing is being served upon all counsel of record automatically through Notice of Electronic Filing.

/s/ Nathan D. Meyer