COLUCCI & UMANS
FRANK J. COLUCCI (*Pro Hac Vice*)
fcolucci@colucci-umans.com
DAVID M. DAHAN (*Pro Hac Vice*)
ddahan@colucci-umans.com
218 East 50th Street
New York, New York 10022
Telephone:   212.935.5700
Facsimile:    212.935.5728

BUCHALTER NEMER
Russell L. Allyn (SBN:  143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400

Attorneys for Plaintiff,
EXPRESS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Civil Action No.**<br>**2:09-cv-04514-ODW-VBK**<br><br>**PLAINTIFF EXPRESS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES RE: FOREVER 21 DEFENDANTS' AND STEPS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>**[Declaration of Frank J. Colucci in Support of Plaintiff's Reply Memoranda Re: Defendants' Oppositions to Plaintiff's Motion for Summary Judgment; Declaration of Michael Tower in Support of Plaintiff's Motion for Summary Judgment, filed concurrently]**<br><br>Hearing Date: August 16, 2010<br>Time: 1:30 p.m.<br><br>Discovery Cutoff: July 5, 2010<br>Pretrial Conf.: September 13, 2010<br>Trial: October 5, 2010<br>HONORABLE OTIS D. WRIGHT, II |

1
2
# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION .......................................................................... ...........1

II.    SUMMARY OF ARGUMENT……………………………………..1

III.   EXPRESS OWNS VALID AND ENFORCEABLE COPYRIGHTS…....3

IV.   THE EXPRESS TRACK JACKET IS PROTECTABLE………………..8

V.     EXPRESS IS ENTITLED TO SUMMARY JUDGMENT
ON COUNTS 3 AND 4 OF THE COMPLAINT…..………………..10

VI.   CONCLUSION……………..……………………………………..12

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## <u>Cases</u>

4

*Amstar Corp. v. Domino's Pizza, Inc.*,

5
615 F.2d 252 (5th Cir. 1980)……………………………………………………10

6
*Anthropologie, Inc. et al v. Forever 21, Inc.*,

7
1:06-cv-02510-WHP (S.D.N.Y.)……………………………………………....3

8
*Apple Computer, Inc. v. Microsoft Corp.*,

9
759 F. Supp. 1444 (N.D. Cal. 1991)……………………………….......6, 7

10
*Black & Decker Corp. v. Int'l Sales & Marketing*,

11
36 U.S.P.Q.2d 1851, 1853 (C.D. Cal. 1995)…………………………………9

12
*Carol Cable Co. v. Grand Auto, Inc.*,

13
4 U.S.P.Q2d 1056 (N.D. Cal. 1987)…………………………………………..9

14
*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,

15
870 F.2d 512 (9th Cir. 1989)...........................................................10

16
*Cosmos Jewelry Ltd. v. Po Sun Hon Co.*,

17
470 F. Supp. 2d 1072 (C.D. Cal. 2006)………….......................................9

18
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

19
499 U.S. 340 (1991)……………………………………………..................4

20
*Litchfield v. Spielberg*,

21
736 F.2d 1352 (9th Cir. 1984)………………………………….....................7

22
*Salim v. Lee*,

23
202 F. Supp. 2d 1122 (C.D. Cal. 2002)………………………..………...12

24
*United States v. Taxe*,

25
540 F.2d 961, 965 n. 2 (9th Cir. 1976)………………………………………..7

26
*Vision Sports, Inc. v. Melville Corp.*,

27
888 F.2d 609 (9th Cir. 1989)………………….......................................9

28

-iii-

*Wein-Und Sektkellerei Jakob Gerhardt Niersteiner*
*Schlosskellereien GmbH & Co. v. Hopkins*,
  No. 07cv00673 BTM (WMC),
  2007 U.S. Dist. LEXIS 75697 (S.D. Cal. Oct. 11, 2007)…………………………...12

**<u>Statutes</u>**

Cal. Bus. & Prof. Code § 17200 (Deering 2008) ................................................. 3, 12

17 U.S.C. § 410(C) (2008)……………………………………………………….……4

17 U.S.C. § 302(a)………………………………...……………………………………6

**<u>Secondary Source</u>**

J T McCarthy, *McCarthy on Trademarks and*
*Unfair Competition*, (4th Ed 2010) § 32:159...........................................................10

M. Nimmer, 1 *The Law of Copyright* § 3.01 (1990)....................................................7

# I.   **INTRODUCTION**

Plaintiff, Express, LLC, ("Express") respectfully submits this reply memorandum of law in further support of its motion for summary judgment and in response to the opposition to Express's Motion submitted by Defendants, Forever 21, Inc., Forever 21 Logistics, LLC, Forever 21 Retail, Inc., Jin Sook Chang, and Do Won Chang ("Forever 21") and Steps Apparel Group, Inc. ("Steps") ("Forever 21's Opposition" and Forever 21 and Steps collectively referred to as "Forever 21" herein).

# II.   **SUMMARY OF ARGUMENT**

Forever 21's and Steps' Opposition to Express's Motion is long on bluster and short on addressing the facts before the Court.  This approach appears intended to obfuscate the issues implicated by the parties' competing motions for summary judgment.  This case involves clearly defined and straightforward allegations of copyright and trade dress infringement and unfair competition.  Stripped to its essence the relevant facts in this case are as follows:

1)   Defendants copied not one, but five (5) Express garments in one fell swoop (Colucci Decl. I,[1] Exs. 6-11);

2)   Each of these five garments were original creations by the design department at Express (EXP SOF[2] 6, 22);

3)   Four of these garments featured designs, the Express Plaid Designs, that were registered "clean" by the Copyright Office, that is, without question, limitation or qualification (EXP SOF 16-19);

4)   The fifth garment, the Express Track Jacket, was prominently featured

---

[1] Declaration of Frank J. Colucci in Support of Plaintiff's Motion for Summary Judgment, filed under seal, is referred herein as "Colucci Decl. I" (Docket Entry # 125); Declaration of Frank J. Colucci in Opposition to Defendants' Motions for Summary Judgment is referred herein as "Colucci Decl. II" (Docket Entry # 143-1); Declaration of Frank J. Colucci in Support of Plaintiff's Reply Memoranda Re: Defendants' Oppositions to Plaintiff's Motion for Summary Judgment is referred to herein as "Reply Colucci Decl.," filed concurrently.
[2] Plaintiff Express, LLC's Statement of Uncontroverted Facts in Support of Plaintiff's Motion for Summary Judgment ("EXP SOF") (Docket Entry # 132).

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21
AND STEPS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1    in over 500 Express stores nationwide and was a top seller for its

2    category (EXP SOF 25-30);

3    5)    The copying of the shorts was so scrupulous that they not only

4    featured a line for line replication of each of the four Express Plaid

5    Designs (such that Defendants have admitted substantial similarity)

6    (EXP SOF 62-65) (*see* Reply Colucci Decl., Exs. 1-8), but in some

7    instances copied the accessories to the shorts such as their belts and

8    button trim;

9    6)    The Express Track Jacket was copied down to its very details by Steps,

10    who admitted to purchasing the jacket and removing its labels at the

11    direction of Forever 21 (EXP SOF 48, 54);

12    7)    Despite alleging numerous defenses to these claims, Defendants have

13    a) failed to produce *any* plaids or other evidence from any source that

14    in any way call into question the originality and copyrightability of the

15    Express Plaid Designs (EXP SOF 68-71), nor have b) Defendants

16    offered one single explanation as to why, if they were not attempting

17    to appropriate the value, goodwill and appeal inherent in these designs,

18    it was necessary for them to *meticulously* copy all of the Express

19    garments; and

20    8)    Forever 21 is a notorious repeat offender of copying other companies'

21    intellectual property, having received seventy (70) lawsuits and many,

22    many more cease and desist letters for infringement of other

23    companies' intellectual property (EXP SOF 74-75).

24    Express respectfully submits that these facts warrant summary judgment

25    against all Defendants herein.

26    Forever 21 desperately would have the Court believe that their actions in this

27    case represented "business as usual" in the fashion world.[3]  However, this was only

28    
_____
[3] Forever 21 would have the Court review several pieces of curiously extraneous evidence,

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21
AND STEPS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1    Forever 21's "business as usual."  Express is not asking the Court to issue a

2    referendum on "inspiration" in the fashion world, as Forever 21 improperly urges.

3    Express requests that the Court protect its valid intellectual property that it, not

4    Defendants, expended time and investment to create.

5            The defense offered in this case is essentially "If we copied it, it must not be

6    protectable."  This is self delusion, and simply ignores the provisions of the

7    Copyright Act, Lanham Act, California Business & Professions Code § 17200 and

8    the common law, which protect intellectual property.  When Forever 21 cries that a

9    legal review is not possible because there is no legal review for copyrights, what

10   they really are saying is, not that it is not possible, but that it is not necessary since

11   they know they are copying someone else's garments.  A sitting judge of the

12   Southern District of New York states on the record that Forever 21 may be "*a*

13   *business that is predicated in large measure on the systematic infringement of*

14   *competitors' intellectual property*"[4], yet Forever 21 defiantly brushes off this

15   judicial condemnation, and claims with unflinching temerity that Judge Dolinger's

16   ruling was based on "assumptions based upon the bald allegations of counsel."

17   (Forever 21 Mem. at p. 2 n.2.)  This manifest contempt for the judicial process

18   exemplifies Forever 21's attitude as a company that is too big and too busy to be

19   bothered with respecting the intellectual property of other companies.

20   **III.    EXPRESS OWNS VALID AND ENFORCEABLE COPYRIGHTS**

21           Having conceded access and substantial similarity, Forever 21's lone defense

22   to the entry of summary judgment rests on their assertion that Express's copyrights

23   in the Express Plaid Designs are invalid.  Contrary to Forever 21's argument that

24   Express contends that a "challenge to the originality of the Express Plaid Design" is

25   

26   including a newspaper article from the *1930's*, which it offers to prove its "point."  This is
     irrelevant folly.  While Express considered submitting the voluminous results of a Google search
27   for "Forever 21" and "Knockoff," the conclusions drawn therefrom would only be redundant of
     the ample evidence of Forever 21's business "ethos" already of record in this case.
28   [4] *Anthropologie, Inc. v. Forever 21 Inc. et al.*, No. 07 Civ. 7873 (RJS)(MHD), 2009 WL 690239,
     at *4 (S.D.N.Y. Mar. 13, 2009); (Colucci Decl. I, Ex. 40).

1    "foreclosed," Express contends that Defendants have simply failed to carry their

2    burden of demonstrating that Express's copyrights in the Express Plaid Designs are

3    invalid.  Defendants seem to misunderstand the basic nature of copyright law and

4    what a copyright is intended to protect.

5           Forever 21 takes the position that all four of the Express Plaid Designs lack

6    sufficient originality to be copyrightable.  This is just not supported by the record.

7    Mr. Tower's creative efforts, which resulted in the Express Plaid Designs, easily

8    surpass the low threshold of originality:

9           All of [Mr. Tower's] creativity is copyrightable authorship, and the fact that

10          the Copyright Office issued the registration certificate indicates that the

11          expert agency recognized Mr. Tower's (and the rest of the Express design

12          team's) authorship.

13   (*See* EXP White Owl Opp. [5] at Section II(B)(1)(b), pp. 17-18); *see also* Colucci

14   Decl. II, Ex. 4 (Second Supp. Oman Report, pp. 2-3); *Feist Publ'ns, Inc. v. Rural*

15   *Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) ("The vast majority of works make the

16   grade quite easily, as they possess some creative spark, 'no matter how crude,

17   humble or obvious' it might be.").  Given the low threshold for original authorship

18   and since it is only the particular expression of a given idea that is protected by

19   copyright, its scope of protection is limited to that particular expression.  Thus, the

20   Express Plaid Designs are only protectable to the extent that their "expression" has

21   been copied, which they have in their entirety.  (*See* Reply Colucci Decl., Exs. 1-8.)

22          As a matter of plain statutory mandate, it is not, as Forever 21 seemingly

23   contends, Express's burden to "reprove" the validity of its copyrights since Express

24   has already asserted valid copyright registrations.  17 U.S.C. § 410(c) (2008).

25   Thus, while Forever 21 summarily concludes that Express's presumption of validity

26   has been rebutted, the absence of supporting evidence in the record dictates that

27

28   [5] Plaintiff Express, LLC's Memorandum of Points and Authorities in Opposition to White Owl's
     Motion for Summary Judgment ("EXP White Owl Opp.")(Docket Entry # 144).

1   Defendants' defense of invalidity be rejected.

2      Defendants continually assert that Mr. Tower used a "source plaid," but this

3   is not what he testified.  Mr. Tower made it clear that he relied on various forms of

4   inspiration to begin his creation of the Express Plaid Designs, including museums,

5   historic archives, tear sheets and photographs.  (Tower Decl.,[6] ¶¶ 3-6.)  Further, Mr.

6   Tower made it abundantly clear that he did not substantially copy from any of his

7   many inspirations.  (Tower Decl., ¶11; *see* EXP White Owl Opp., at Section

8   II(B)(1)(b), pp. 12-18.)

9      The Copyright Office has registered hundreds of plaids.  (*See*  EXP White

10  Owl Opp. at Section II(B)(1)(a), pp. 11-12; *see also* Colucci Decl. II, Ex. 2 (Supp.

11  Oman Report, pp. 2-3.)  Thus, while Defendants would have the Court believe that

12  the copyright examiner was somehow duped into issuing registrations for the

13  Express Plaid Designs, the fact is that the Visual Arts examiner, who reviews

14  hundreds and hundreds of designs, including plaids, understood and recognized that

15  the Express Plaid Designs were plainly original and need not have been created by

16  their author substantially copying a "preexisting plaid."

17     Acknowledging the complete absence of proof on their part, Defendants take

18  a final desperate swipe at Express, accusing Express of "destroying evidence" —

19  presumably, as Defendants' argument goes, the evidence that would enable them to

20  carry *their burden* of demonstrating invalidity.  This last ditch assertion fails.

21     First, as Forever 21's parenthetical qualifier to their brazen assertion

22  abashedly acknowledges, the alleged "destruction" of evidence occurred *years*

23  *prior* to the infringements at issue ("albeit pre-litigation").  The Express Design

24  Department produces hundreds of garments a year and Mr. Tower himself testified

25  that he designs approximately 200 styles a year.[7]  (Colucci Decl. I, Ex. 21 (Tower

---

26  [6] Declaration of Michael Tower in Support of Plaintiff's Motion for Summary Judgment ("Tower Decl."), filed concurrently herewith.

27  [7] If, however, Forever 21 contends that, given their notorious reputation and litigation history, Express should have known that Forever 21 was going to copy them at some point and therefore

28  should have instituted a blanket anticipatory litigation hold on all design documents, then,

Dep., at 37:12-13).)  For the Express Design Department to hold on for years to every single source of inspiration for each design it creates in order to, years later, convince a caught infringer that they in fact created the design at issue is absurd and not required by the Copyright Act.[8]  Contrary to Forever 21's assertions, in order for a party to claim and register a copyright, it *does not* require the production or identification of every piece of material that may have been relied upon as a source. It is a fundamental purpose of the Copyright Act that all copyright rights are vested at the moment of creation.  17 U.S.C. § 302(a).  Thus, if the subject work is "original," that is, was independently created and not copied from other works, then it is entitled to be registered in the Copyright Office.

Moreover, Defendants' failure to carry their burden to prove invalidity is not the result of failing to find a needle in a forcibly defended haystack, as Forever 21's murdered metaphor claims.  Rather, it simply speaks to the unsupportable nature of the defense since neither Forever 21, a retail colossus with unlimited resources at its disposal as well as a vast domestic and overseas network of manufacturers, vendors and sourcing agents, nor its two vendors, Steps and White Owl, could produce any plaids that could reasonably have served as the elusive "preexisting plaid" as the term is defined under the Copyright Act.  (EXP SOF 68-71.)  This inescapable fact not only corroborates Mr. Tower's authorship but the decision of the copyright examiner to register the Express Plaid Designs without question or qualification.

Thus, the absence of any "preexisting plaid" or any other evidence that calls into question the originality of the Express Plaid Designs, precludes any finding that the Express Plaid Designs were "substantially copied" from any preexisting copyrighted work.  In *Apple Computer, Inc. v. Microsoft Corp.*, the Northern

---

admittedly, perhaps this argument has some merit.
[8] Standing at the pinnacle of hypocrisy and implausibility is White Owl, who, while requesting that the Court discredit Express's evidence of originality, asks the Court to credit its claim that it created the Jack and Ocean copies based on swatches of fabric it received from China, yet failing to produce the apparitional swatches, despite the fact that White Owl only created the infringement mere months prior to receiving notice of Express's claims.

1  District of California recognized that establishing invalidity through the failure to
2  disclose a preexisting work must be strictly proven to invalidate a copyright:

> HP's contention that Apple's copyrighted works are derivative works is
> meritless. A derivative work is one which is substantially copied from a prior
> work. *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir. 1984), *cert.
> denied* 470 U.S. 1052, 84 L. Ed. 2d 817, 105 S. Ct. 1753 (1985). The Ninth
> Circuit has stated that a work will be deemed a derivative work "only if it
> would be considered an infringing work if the material which it has derived
> from a prior work had been taken without the consent of a copyright
> proprietor of such prior work." *Id.* at 1357 (quoting from *United States v.
> Taxe,* 540 F.2d 961, 965 n. 2 (9th Cir. 1976)). All works are derived to a
> certain degree from pre-existing works. A derivative work within the
> meaning of the copyright law, however, is one which substantially borrows
> the expression of ideas from an existing work. M. Nimmer, 1 THE LAW OF
> COPYRIGHT § 3.01 (1990). HP has provided no evidence demonstrating
> that Apple's works in suit could be considered to have infringed Xerox's
> copyrights or that Apple's works substantially borrowed expressions of ideas
> from Xerox's Smalltalk or Star programs.

19  759 F. Supp. 1444, 1454 (N.D. Cal. 1991).[9]

20  Consequently, Forever 21 has failed to carry its burden of demonstrating the
21  invalidity of Express's copyrights in the Express Plaid Designs as a matter of law.
22  Since Express has asserted valid copyrights, and, by virtue of Forever 21's
23  admissions of access and substantial similarity (EXP SOF 58-65), judgment should
24  issue in favor of Express for copyright infringement.

---

[9] Mr. Oman, former Registrar of Copyrights, noted with respect to the Express Plaid Designs: "As a general rule, authors are not expected to list on Screen Four all of the multiple sources of inspiration that resulted in the new work, normally an impossible task. In my opinion, it would have been inaccurate and misleading to have indicated any specific source on Screen Four, when there is no such a source." (Colucci Decl. II, Ex. 4 (Second Supp. Oman Report, at p. 3)) (emphasis added).

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21 AND STEPS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## IV.   THE EXPRESS TRACK JACKET IS PROTECTABLE

Similar to its position with respect to the Express Plaid Designs, Forever 21 persists in its assertion that since it copied the Express Track Jacket, the Express Track Jacket must not have been protectable intellectual property in the first place. While Forever 21 contends that the Express Track Jacket had not acquired secondary meaning at the time it began selling the Infringing Jacket, which was mere months after it first appeared on the market, they simply fail to explain why, if the track jacket was so ordinary and had such a low profile, did they go to the lengths they did to "make it theirs" as their own "coordinator" testified.  (Colucci Decl. I, Ex. 13 (J. Kim Dep., 41:15-18).)

Absent in all of Forever 21's arguments is any explanation of why, when Forever 21 could have simply made its own track jacket or obtained another run of the mill track jacket from their network of vendors, they instead chose to take the original Express Track Jacket and replicate all of the design features that comprise its trade dress.  (*See* Reply Colucci Decl., Ex. 9.)  These were intentional and conscientious decisions made by Forever 21 pursuant to their everyday business practice.  Forever 21 has no compunctions about its copying of the Express Track Jacket—they simply contend that it is acceptable to purchase competitor's products and put their own labels on them, essentially creating counterfeits.  Forever 21 argues that "[c]opying is relevant only where there is concrete evidence that a defendant has attempted to take advantage of or trade on the good will of another company and where good will actually exists."  (Forever 21 Mem. at 1.)

However, this is exactly what Forever 21's actions were intended to do – to take advantage of the good will Express had developed in the Express Track Jacket through its creation of a unique and distinctive design.  This is the motivation for companies like Express who invest substantial sums in creating a design aesthetic by which their brand is recognizable to consumers – this is what brings customers, and apparently Forever 21's vendors, into an Express store.  Further, Forever 21's

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21 AND STEPS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1   claim that it did not know that Steps's sample of the track jacket was from Express
2   is not only disingenuous, but completely implausible given that, while the inside
3   label may have been removed by Steps, there were numerous other EXPRESS
4   marks and logos on the zipper pulls, a metal tag, and Express's trademarked griffin
5   logo that were still plainly visible on the jacket.  (*See* Colucci Decl. I., Ex. 11.)
6   Again, the Express Track Jacket sold so well because its design elements and
7   arrangement exemplified Express's unique brand aesthetic.

8        Thus, while Forever 21 takes great pains to attempt to distinguish the legions
9   of cases in Express's Memorandum that all repeat the basic axiom that intentional
10   copying, at a minimum, "strongly supports" an inference of secondary meaning in
11   the Ninth Circuit[10], the fact is that this is exactly the type of case with exactly the
12   type of fact pattern that this principle is intended to govern.  *See, e.g.*, *Carol Cable*
13   *Co. v. Grand Auto Inc.,* 4 U.S.P.Q.2d 1056, 1060 (N.D. Cal. 1987) ("[T]here is no
14   logical reason for the precise copying save an attempt to realize upon a secondary
15   meaning that is in existence."); *Black & Decker Corp. v. Int'l Sales & Marketing*,
16   36 U.S.P.Q.2d 1851, 1853 (C.D. Cal. 1995) ("[Defendant's] intentional copying of
17   [plaintiff's] trade dress is, in and of itself, strong evidence of secondary meaning.").

18        Further, the Express Plaid Designs are plainly nonfunctional since, in
19   assessing functionality, it is not whether individual design features such as a jacket
20   zipper may have a purposeful role; rather, it is the *overall combination of trade*
21   *dress elements* that is to be evaluated in determining functionality.  *Cosmos Jewelry*
22   *Ltd. v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072, 1085 (C.D. Cal. 2006) (citation
23   omitted) (focus "on individual design elements, but rather on 'the overall visual
24   impression that the combination and arrangement of those elements create.'").
25   Accordingly, the combination of these design features does not and cannot yield a
26   utilitarian advantage, nor are the individual elements essential to the jacket's use or
27   purpose or affect cost or quality of the item.  (Colucci Decl. I, Ex. 27 (Campbell

28
_____
[10] *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21
AND STEPS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1    Decl. at 58:13-15; "What makes this unique is all of these elements specifically in

2    combination to this garment.")

3         The absence of a survey is not a factor since there is no requirement that a

4    party claiming trade dress infringement conduct a consumer survey in order to

5    establish secondary meaning under Section 43(a) of the Lanham Act.  *Clamp Mfg.*

6    *Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989).  While Forever

7    21 claims to offer a consumer "survey" entitled "Consumers' Perceptions of Two

8    Track Jackets" (the "Maronick Study") (Meyer Decl.,[11] Ex. C), it suffers from

9    numerous fatal methodological defects.  (*See* EXP White Owl Opp. at Section

10   III(C)(4), pp. 16-18); (Colucci Decl. II., Ex. 3 (Mazis Report).)

11        Among its deficiencies, the fact that the Maronick Study failed to query the

12   proper survey population[12] is, *ipso facto*, grounds to exclude it altogether.  (*Id.* at ¶¶

13   12-14, 17); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980)

14   (admissible survey requires "a fair sampling of those purchasers most likely to

15   partake of the alleged infringer's goods or services"); J. Thomas McCarthy, 6

16   *McCarthy on Trademarks and Unfair Competition* § 32:159 (4th ed. 2010) ("A

17   survey of the wrong 'universe' will be of little probative value in litigation.").

18        While Forever 21 claims that Express does not contend that the Infringing

19   Jacket causes a likelihood of confusion with the Express Track Jacket, Express

20   does in fact contend that Forever 21's actions create a strong likelihood of

21   confusion by virtue of Forever 21's intentional copying of the Express Track Jacket

22   and selling its Infringing Jacket to overlapping consumers.  (*See* Express Opp. to

23   Forever 21's Motion for Summary Judgment, at Section III(C)(5), pp. 18-19.)

24   **V.    EXPRESS IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS**

25        **3 AND 4 OF THE COMPLAINT**

26   [11] Declaration of Nathan D. Meyer in Support of Defendants' Motion for Summary Judgment
     ("Meyer Decl.") (Docket Entry # 129).

27   [12] 26% of the respondents were over 50 years of age, 41% were over 40 years, well beyond
     Forever 21's and Express's target audience, which is predominantly (65%) under the age of 24.

28   (Colucci Decl. II., Ex. 3 (Mazis Report, at p. 6)

1    Instead of refuting Forever 21's liability under these counts, Forever 21

2    claims that Express did not plead in its First Amended Complaint ("Complaint")

3    that the Express Plaid Designs were part of its Claims 3 and 4 of the Complaint.

4    This is absolutely astonishing.  The Complaint clearly and plainly set forth Forever

5    21's "shop and copy" practices with respect to all five of the Express garments that

6    were copied, and that these practices were the basis of Express's Counts 3 and 4.

7    The following are excerpts from the Complaint (¶¶ 56-60) (Docket Entry # 35):

8         56.     …. Defendants utilize a "shop and copy" practice whereby they

9         acquire products for sale in their own Forever 21 retail stores by purchasing

10        other companies' products through other retail outlets and directing their

11        manufacturers to manufacture the products with little or no design changes.

12        57.     …. Defendants' regular business practice of copying other

13        companies' products and appropriating the intellectual property of others for

14        their own use, gain and profit has led to them being named as a defendant in

15        over 50 intellectual property cases within the past seven years.

16        58.     …… the Changs, together with the Forever 21 Defendants and

17        Supplier Defendants, ordered, directed, authorized and/or caused the

18        manufacture and sale by the Forever 21 Defendants of the items depicted in

19        Exhibits J through M, O, and P [*i.e.*, all of the Infringing Garments].

20        59.     As part of Defendants' intentional copying of the Express Plaid

21        Designs and the Track Jacket Trade Dress, Defendants have painstakingly

22        reproduced the same colorways, scale of design and construction detail found

23        in the original Express garments, such that the Infringing Garments are

24        virtually identical in overall appearance to the original Express garments

25        bearing the Express Plaid Designs and the Track Jacket Trade Dress.

26        60.     Upon information and belief, as a result of Defendants'

27        applications of their own trademarks and house mark names to the Infringing

28        Garments, Defendants have misled customers of Defendants to erroneously

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21
                                                         AND STEPS' OPPOSITION TO PLAINTIFF'S
                                                         MOTION FOR SUMMARY JUDGMENT

1    assume or believe that the unauthorized copies displayed, advertised, offered
2    for sale and sold by Defendants originate with Defendants, when, in fact, said
3    designs originate with Express.

4        As a result, Forever 21 has plainly been on notice that *all* of its conduct was
5    the basis of Counts 3 and 4 and it is simply disingenuous for its counsel,
6    experienced practitioners, to claim otherwise.  It is all the more insincere given that
7    Forever 21 filed *three* motions during the discovery period to curtail Express's
8    discovery regarding Forever 21's "shop and copy" business practices.[13]

9        Moreover, Forever 21's claim that Express has not shown secondary
10   meaning in the shorts that featured the Express Plaid Designs demonstrates that
11   they fail to comprehend Express's claims and simply "lump" them as ancillary to
12   and dependent on Express's trade dress infringement claim under Section 43(a) of
13   the Lanham Act.  This is incorrect, as even the Complaint makes clear, and it is not
14   the intended scope of Section 17200 and California's law of unfair competition to
15   simply fall in line with the federal claim.[14]  They are independent causes of action
16   and, with respect to the Express Plaid Designs, possess the "extra element" required
17   to avoid preemption by the Copyright Act.  (Complaint, ¶ 59 (alleging the full
18   "bodily" copying of the five Express Garments)); *Salim v. Lee,* 202 F. Supp. 2d
19   1122, 1126 (C.D. Cal. 2002) (Baird, J.) ("[S]tate unfair competition laws which
20   seek to prevent reverse palming off are not preempted by federal law.").

21   **VI.   CONCLUSION**

22       For all the foregoing reasons, Forever 21's Motion should be denied in its
23   entirety.

24

25       [13] Two of the motions sought to preclude depositions of Defendants, Do Won and Jin Sook
26   Chang and the third motion sought to curtail numerous avenues of discovery, including, Forever 21's numerous other lawsuits and cease and desist letters.
27   [14] *Wein Und Sektkellerei Jakob Gerhardt Niersteiner Schlosskellereien GmbH & Co., KG v. Hopkins*, No. 07cv00673 BTM (WMC), 2007 U.S. Dist. LEXIS 75697, at *4 (S.D. Cal. Oct. 11,
28   2007) (scope of California's unfair competition law is "sweeping," and allows a court to enjoin "wrongful business conduct in whatever context such activity might occur") (quotation omitted).

1  Dated:   August 2, 2010

2

3

4

5

6

7

8

9

10

11  Co-Counsel for Plaintiff Express, LLC:

12  BUCHALTER NEMER
13  Russell L. Allyn (SBN:  143531)
    rallyn@buchalter.com
14  1000 Wilshire Boulevard, Suite 1500
15  Los Angeles, California 90017-2457
    Telephone: 213.891.0700
16  Facsimile: 213.896.0400

17

18

19

20

21

22

23

24

25

26

27

28

COLUCCI & UMANS

By:   s/ Frank J. Colucci/
Frank J. Colucci (*Pro Hac Vice*)
David M. Dahan (*Pro Hac Vice*)
COLUCCI & UMANS
218 East 50th Street
New York, New York 10022
Telephone:  212.935.5700
Facsimile:   212.935.5728
Emails: FColucci@colucci-umans.com
           DDahan@colucci-umans.com

Attorneys for Plaintiff Express, LLC

1
2

## CERTIFICATE OF SERVICE
## STATE OF NEW YORK – COUNTY OF NEW YORK

3

      I declare that I am a citizen of the United States and a resident of New York,

4

New York, or employed in the County of New York, State of New York.  I am, and

5

was at the time of service of the document(s) herein referred to, over the age of 18
years, and not a party to the action.  My business address is Colucci & Umans, 218

6

East 50th Street, New York, New York 10022.

7

      On the date executed below, I served a true copy of the document(s)

8

described as:

9

- **PLAINTIFF EXPRESS, LLC'S REPLY MEMORANDUM OF**

10

   **POINTS AND AUTHORITIES RE: FOREVER 21**
   **DEFENDANTS AND STEPS' OPPOSITION TO**

11

   **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

12

- **DECLARATION OF MICHAEL TOWER IN SUPPORT OF**
   **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

13

14

- **PLAINTIFF EXPRESS, LLC'S RESPONSES TO FOREVER**

15

   **21 DEFENDANTS AND STEPS' ADDITIONAL**
   **STATEMENT OF UNCONTROVERTED FACTS RE:**

16

   **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
   **AND**

17

18

- **PLAINTIFF EXPRESS, LLC'S ADDITIONAL**

19

   **EVIDENTIARY OBJECTIONS TO FOREVER 21**
   **DEFENDANTS AND STEPS' RESPONSES TO PLAINTIFF'S**

20

   **STATEMENT OF UNCONTROVERTED FACTS.**

21

  x    By causing a true and accurate copy of the document(s) to be filed

22

through this Court's Case Management and Electronic Case Filing

23

(CM/ECF) system.  Notice of this filing is automatically generated to
all counsel of record, and such service complies with Federal Rule of

24

Civil Procedure 5(d)(3), Local Rules 5-3.3 and 5-4, and General Order

25

07-08.  The transmission was reported as complete and without error.

26

27

28

PLAINTIFF'S REPLY BRIEF RE: FOREVER 21
AND STEPS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

1

2          I declare under penalty of perjury under the laws of the United States

3   that the above is true and correct.

4          Executed on August 2, 2010, at New York, New York.

5

6   _____Janice K. Yoon_____              _____/Janice K. Yoon/_____

7         Printed Name                              Signature

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28