COLUCCI & UMANS
FRANK J. COLUCCI (*Pro Hac Vice*)
fcolucci@colucci-umans.com
DAVID M. DAHAN (*Pro Hac Vice*)
ddahan@colucci-umans.com
218 East 50th Street
New York, New York 10022
Telephone: 212.935.5700
Facsimile: 212.935.5728

BUCHALTER NEMER
Russell L. Allyn (SBN: 143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400

Attorneys for Plaintiff,
EXPRESS, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EXPRESS, LLC,

Plaintiff,

v.

FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,

Defendants.

**Civil Action No. 2:09-cv-04514-ODW-VBK**

**PLAINTIFF EXPRESS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES RE: WHITE OWL CLOTHING, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**[Declaration of Frank J. Colucci in Support of Plaintiff's Reply Memoranda Re: Defendants' Oppositions to Plaintiff's Motion for Summary Judgment; Declaration of Michael Tower in Support of Plaintiff's Motion for Summary Judgment, filed concurrently]**

Hearing Date: August 16, 2010
Time: 1:30 p.m.
Discovery Cutoff: July 5, 2010
Pretrial Conf.: September 13, 2010
Trial: October 5, 2010

HONORABLE OTIS D. WRIGHT, II

**TABLE OF CONTENTS**

**Page(s)**

**I. PRELIMINARY STATEMENT........................................................ ..1**

**II. REPLY ARGUMENT………………………………………….…………..1**

**A. White Owl Did In Fact Copy Express's "Garments," Which Featured the Copyrighted Express Plaid Designs………...1**

**B. White Owl Failed to Rebut the Presumption and Evidence Of Originality and Validity of Express's Copyrights in the Express Plaid Designs……………………………………………….2**

**1. The Express Plaid Designs Are Original and Copyrightable……………………………………………….2**

**2. Mr. Tower Did Not Substantially Copy From Any "Preexisting Plaids"; Therefore No Disclosure to the Copyright Office Was Warranted ………..…………5**

**3. White Owl's Access to the Express Plaid Designs Has Been Proven ……………………….…………………..8**

**C. Defendant White Owl's Acts Are Part and Parcel The Acts Of Defendants Forever 21 and Steps. All Defendants Are Jointly And Severally Liable To Express For All Of Its Claims; Therefore, Express Is Entitled To Summary Judgment On Its Second, Third and Fourth Causes of Action……….……………………..9**

**D. Copying Another's Product Without Conducting A Legal Review Constitutes Reckless Disregard or Willful Blindness……………………………………………………11**

**III. CONCLUSION……………………………………………………..……12**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alfred Bell & Co. Ltd. V. Catalda Fine Arts, Inc.*,
191 F.2d 99 (2d Cir. 1951) ........................................ 4

*Apple Computer, Inc. V. Microsoft Corp.*,
759 F. Supp. 1444 (N.D. Cal. 1991) ........................................ 7

*Baxter V. Mca, Inc.*,
812 F.2d 421 (9th Cir. 1987) ........................................ 8

*Ets-Hokin V. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000)........................................2, 7

*Fabrica Inc. V. El Dorado Corp.*,
697 F.2d 890 (9th Cir. 1983) ........................................ 2

*Feist Publ'ns, Inc. V. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)........................................ 4

*Jbj Fabrics Inc. V. Mark Industries Inc.*,
5 U.S.P.Q.2d 1414 (C.D. Cal. 1987) ........................................ 10

*Litchfield V. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) ........................................ 5

*North Coast Indus. V. Jason Maxwell, Inc.*,
972 F.2d 1031 (9th Cir. 1992) ........................................ 4

*Sid And Marty Krofft Television Prods., Inc. V. Mcdonald's Corp.*,
562 F.2d 1157 (9th Cir. 1977) ........................................ 8

*Three Boys Music Corp. V. Bolton*,
212 F.3d 477 (9th Cir. 2000) ........................................ 8

## I. PRELIMINARY STATEMENT

White Owl's eleven (11) page opposition to Express's Motion, while conceding that there are no triable issues herein, fails to set forth any factual or legal basis upon which to preclude the entry of summary judgment against it. With respect to the critical issues before the Court, White Owl offers no evidence that: 1) Express's copyrights in the Express Plaid Designs are invalid for any reason; or 2) the Infringing Garments are not substantially similar to the Express Plaid Designs. Instead, White Owl frantically asserts a variety of defenses that are either not supported by the record, or are simply incredible on their face. Express addresses them in turn herein.

## II. REPLY ARGUMENT

### A. White Owl Did In Fact Copy Express's "Garments," Which Featured the Copyrighted Express Plaid Designs

White Owl opens its opposition to Express's Motion with a discourse on its perceived distinction between "garments" and "fabric designs." This is a distinction without a difference in this case and has no bearing on any of the critical issues at bar.

First, Express contends and the record evidences that White Owl did in fact copy the original Express "garments" since the Express Plaid Designs covered the entirety of the men's shorts at issue. While Forever 21 and Steps have conceded access and substantial similarity to the Express Plaid Designs, which were only published in the form of men's shorts, White Owl takes the completely unbelievable and unsupported position that it did not have access to the original garments bearing the Express Plaid Designs, and would have the Court believe that the appearance at White Owl of at least two of the Express Plaid Designs virtually simultaneously with their appearance at Steps and, later on sale together at Forever

21, was the product of serendipity.[1]

Further, the fact that the Express Plaid Designs were featured on men's shorts does not implicate the provisions of the Copyright Act that preclude the registration of "useful articles" since the "expression" of the copyrighted work at issue, plaid designs, is indisputably completely severable from the useful article itself, men's shorts, and no utilitarian aspects of this useful article (such as pockets, zipper, buttons, waistbands, *etc.*) are implicated by registering and enforcing copyrights in the Express Plaid Designs. *Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 893 (9th Cir. 1983) (copyright protection extends to design aspects of useful articles where they contain "some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of [the] article.").

**B. White Owl Failed to Rebut the Presumption and Evidence of Originality And Validity of <u>Express's Copyrights in the Express Plaid Designs</u>**

As set forth in great detail at pp. 7-18 of Express's Memorandum of Points and Authorities in Opposition to White Owl's Motion for Summary Judgment ("Express Opp.") (Docket Entry # 144), White Owl has not set forth any <u>facts</u> that call into question the validity of Express's copyrights in the Express Plaid Designs. It is black letter law that Express has established a *prima facie* presumption of valid copyright by virtue of its copyrights in the Express Plaid Designs and, thus, White Owl bears the burden of rebutting this presumption. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075-76 (9th Cir. 2000).

***1. The Express Plaid Designs are Original and Copyrightable***

White Owl futilely argues that the Court should invalidate Express's copyrights in the Express Plaid Designs based on their contention that the testimony

---

[1] Despite producing fabric swatches bearing other, dissimilar designs, White Owl never produced the "swatches" bearing the designs from which it claims to have created the Infringing Garments. (Declaration of Michael J. Pampalone, III, in Opposition to Defendants' Motions for Summary Judgment, Docket Entry #152 ("Pampalone Decl.), ¶¶ 13-14.)

of Michael Tower, Express's designer of the Express Plaid Designs, does not support the originality of the Express Plaid Designs. White Owl's argument is contrary to the facts of this case and basic principles of copyright law.

Contrary to White Owl's cherry picking of purportedly favorable excerpts from Mr. Tower's testimony[2], a reading of Mr. Tower's testimony reveals the following:

1) Mr. Tower, a trained and schooled designer with design experience at several apparel industry giants (Ralph Lauren, Abercrombie & Fitch, American Eagle), created the Express Plaid Designs by relying on, not just one, but *several* forms of inspiration (EXP SOF 5-7, 9)[3];

2) In creating the Express Plaid Designs, Mr. Tower relied on his extensive design experience including drawing upon his knowledge of prevailing fashion trends, photographs, swatches, tear sheets, or drawings, in order to create plaid designs that would embody the fashion forward design aesthetic of Express (EXP SOF 9);

3) Mr. Tower selected and arranged the exact color, background, scale, shading and pattern of each of the Express Plaid Designs (EXP SOF 10-12) (Colucci Decl. II,[4] Ex. 4 (Second Supp. Oman Report), pp. 2-3);

4) Mr. Tower did not copy from any single source (EXP SOF 7-12).

(See Express Opp. at Sections II(B)(1)(A) and II(B)(1)(B), pp. 7-18.)

---

[2] Notably, White Owl did not attend the deposition of Mr. Tower, thus they relinquished their opportunity to query him regarding his creative efforts.

[3] Express's Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Summary Judgment (Docket Entry # 132) is referred to herein as "EXP SOF."

[4] The Declaration of Frank J. Colucci in Support of Plaintiff's Motion for Summary Judgment (Docket Entry #125), filed under seal, is referred to herein as "Colucci Decl. I." The Declaration of Frank J. Colucci in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment (Docket Entry #143-1), is referred to herein as "Colucci Decl. II." The Declaration of Frank J. Colucci in Support of Plaintiff's Reply Memoranda Re: Defendants' Oppositions to Plaintiff's Motion for Summary Judgment is referred to herein as "Reply Colucci Decl.," filed concurrently.

In the copyright context, the sole inquiry with respect to originality focuses on whether the author created something of his or her own. The Ninth Circuit has held that "[o]riginality in this context 'means little more than a prohibition of actual copying.'" *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (quoting *Alfred Bell & Co. Ltd. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102-03 (2d Cir. 1951)). In assessing the minimal threshold required to satisfy this requirement, the Supreme Court noted "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991).[5]

All of Mr. Tower's efforts to create the Express Plaid Designs represent indisputable authorship of an original copyrighted work and easily surpass the low threshold of originality. (EXP SOF 6-12); (*see also* Colucci Decl. II, Ex. 4 (Second Supp. Oman Report), at pp. 2-3) ("All of [Mr. Tower's] creativity is copyrightable authorship, and the fact that the Copyright Office issued the registration certificate indicates that the expert agency recognized Mr. Tower's (and the rest of the Express design team's) authorship.")

Moreover, the fact that the Express Plaid Designs bear the features of other plaids is not a bar to originality or copyrightability. *See North Coast Indus.*, 972 F.2d at 1033 (copyrightability does not require that "the copyright must represent something entirely new under the sun."); (Colucci Decl. II, Ex. 2 (Supp. Oman Report), at pp. 2-3) ("I made a quick online search of the Copyright Office database, which includes all registrations since 1978. In that search, I found hundreds of registrations for tartans and plaid designs. . . .").

Given that the copyright laws are meant to protect only the particular

[5] "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Feist*, 499 U.S. at 345.

expression of an idea and not the idea itself, Express's right to protect the Express Plaid Designs is limited to essentially exact copying, which is what occurred in this case and what prompted Express to file this case. Defendants, including Forever 21, a direct competitor of Express (EXP SOF 82-85), were free to design or use any plaid they wished, with the exception of exactly copying the Express Plaid Designs.

Consequently, there is no genuine issue that the Express Plaid Designs are original and support valid copyrights.

***2. Mr. Tower Did Not Substantially Copy From Any "Preexisting Plaids"; Therefore No Disclosure to the Copyright Office Was Warranted***

Despite White Owl's (and Defendants') failure to identify or specify any of the purported "preexisting work(s)" they claim Mr. Tower substantially copied to create the Express Plaid Designs, they nevertheless argue that "[t]he Express Plaid Designs were all based upon preexising plaids and are thus derivative works" (White Owl Mem. at p. 4)[6] in a deliberate attempt to mislead the Court. White Owl then goes on to "compare" the Express Plaid Designs to an imagined, hypothetical plaid (one whose appearance, dimensions and colors are unspecified and unknown), which White Owl believes was the source for the Express Plaid Designs. The hypothetical nature of this analysis is an insufficient basis on which to preclude summary judgment under Rule 56, which requires the opposing party to come forward with "facts," not a "best guess."

The Ninth Circuit has clearly stated that a work of authorship can only be considered a "derivative work" under the Copyright Act if it was "substantially copied from the prior work." *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (citations omitted). There is *no* evidence in the record of any preexisting plaid, but there is evidence that Michael Tower did not substantially borrow from

[6] White Owl's Opposition to Expres's Motion for Summary Judgment (Docket Entry #142) is referred to herein as "White Owl Mem."

any single source. (Declaration of Michael Tower in Support of Plaintiff's Motion for Summary Judgment ("Tower Decl.").)

While White Owl blames Express for a failure to produce this "preexisting plaid," this is a disingenuous and frivolous claim. Defendants include Forever 21, a monolithic retailer of apparel, as well as two companies that supply and source apparel worldwide, yet none of them could identify, locate or produce *any* plaid that looked like any of the Express Plaid Designs that would support this finding. (EXP SOF 68-71); (Pampalone Decl., ¶ 14.) This is a fact. Express did not preclude Defendants from finding the plaid they allege is "preexisting," this is Defendants' failure alone. This failure only reinforces the fact that Michael Tower created original plaid designs that were intended to be original and distinctive.

Mr. Tower's testimony is clear that there were no undisclosed derivative works, of any nature, since he relied on various forms of inspiration to begin his creation of the Express Plaid Designs, including museums, historic archives, tear sheets and photographs. (*See* Express Opp. at Section II(B)(1)(b), pp. 12-18); (Tower Decl., at ¶¶ 3-6, 11.) White Owl nevertheless argues that Mr. Tower could not have designed the Express Plaid Designs without a specific "preexisting" source plaid. This claim is unsupported by the record and, in any event, is absurd. Mr. Tower clearly created these designs from scratch without reference to any inspiration, given his extensive experience designing plaids and his familiarity with the normal attributes of a plaid, such as horizontal and vertical lines of varying scale and width. (Tower Decl., ¶ 11); (Colucci Decl. II, Ex. 4 (Second Supp. Oman Report), pp. 2-3.)

Because of the diverse inspirations relied upon by Mr. Tower in creating the Express Plaid Designs, and because Mr. Tower did not copy any of them, including the phantom "preexisting plaid" referred to by White Owl, Express correctly left Section 4 of the copyright application blank and the Copyright Office correctly

issued registrations for the Express Plaid Designs. *See Apple Computer, Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1454 (N.D. Cal. 1991) (rejecting claim that copyrighted work was "derivative" in absence of evidence of the source work).

Ralph Oman, former Registrar of Copyrights, concurred that, from the Copyright Office's point of view, no disclosure was necessary, since there was nothing "preexisting" to disclose:

> As a general rule, authors are not expected to list on Screen Four all of the multiple sources of inspiration that resulted in the new work, normally an impossible task. In my opinion, it would have been inaccurate and misleading to have indicated any specific source on Screen Four, when there is no such a source.

(Colucci Decl. II, Ex. 4 (Second Supp. Oman Report), p. 3.); *see also Apple Computer*, 759 F. Supp. at 1454 ("All works are derived to a certain degree from pre-existing works. A derivative work within the meaning of the copyright law, however, is one which substantially borrows the expression of ideas from an existing work.").

The tenuous and conflicting nature of White Owl's various arguments is further reflected by its speculation in its own Motion for Summary Judgment that Mr. Tower utilized preexisting "common," "public domain" plaids to create the Express Plaid Designs (White Owl Motion at Section IV(3), pp. 5-8.)[7] However, if this were the case, then Express was under no obligation to identify such works to the Copyright Office since only *copyrightable,* and not public domain material, need be disclosed as "preexisting" material in applying for a copyright. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078 (9th Cir. 2000).

Thus, White Owl's argument that the Express copyrights are invalid for failure to disclose a preexisting work should be summarily rejected.

---

[7] Points and Authorities in Support of White Owl Clothing, Inc.'s Motion for Summary Judgment, or Alternatively Summary Adjudication (Docket Entry #90-1) ("White Owl Motion").

***3. White Owl's Access to the Express Plaid Designs Has Been Proven***

White Owl naively contends that Express has not demonstrated that it had access to the Express Plaid Designs. This is absurd. Since direct proof of access is typically unavailable, copying may be proven by showing that the allegedly infringing work is "strikingly similar" to the copyrighted work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). White Owl's Infringing Garments are clearly strikingly similar to the Express Plaid Designs, and White Owl has presented no evidence whatsoever that they independently created the plaids at issue.

Further, access may be presumed where the copyright holder's work was "widely disseminated." *Three Boys Music*, 212 F.3d at 482. Since the Express Plaid Designs were sold in over 500 Express retail stores nationwide, they were widely disseminated. (Reply Colucci Decl., Ex. 13 (Plaintiff's Responses to Defendant Forever 21, Inc.'s First Set of Interrogatories, No. 8).) White Owl could easily have visited any of the seven (7) EXPRESS retail stores in the San Diego area where White Owl is located to purchase the Express Plaid Designs and, in fact, given that this is what Steps did, is likely what happened (contrary to White Owl's "story"). Notably, White Owl fails to explain how the White Owl pair of men's shorts that bears a plaid design identical to Express's "Jack" copyrighted design came to be called "Jackiel". (Pampalone Decl., Ex. H.) Thus, access is established since White Owl indisputably had at the very least "an opportunity to view or to copy plaintiff's work." *Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977).

Moreover, given that Forever 21 and Steps admitted access to the Express Plaid Designs (EXP SOF 43, 46-48, 58-61), White Owl's argument that it did not have access to the same Express Plaid Designs to create the Infringing Garments, as part of the same season as those created by Steps, strains the outer limits of

credibility.

**C. Defendant White Owl's Acts Are Part and Parcel The Acts Of Defendants Forever 21 and Steps. All Defendants Are Jointly And Severally Liable To Express For All Of Its Claims; Therefore, Express Is Entitled To Summary Judgment On Its Second, Third and Fourth Causes of Action.**

White Owl fails to explain to the Court how it came about that 1) during the same time period that White Owl presented two pairs of men's shorts bearing identical plaid designs to two of Express's copyrighted plaid designs, Steps presented two other pairs of men's shorts also bearing identical plaid designs to two others of Express's copyrighted plaid designs, along with an Express track jacket, to buyers in the same Forever 21 Men's Department; that 2) all five garments were replicas of genuine Express garments sold by Express during the same time period (EXP SOF 37-39, 52-57); and, finally, that 3) all five of the replica garments, now bearing Forever 21's labels and logos, were sold by Forever 21 in its stores, in many of the same malls in which Express stores are located, in direct competition with Express's sales of the genuine garments, only at a fraction of the price. (EXP SOF 85.)

In addition, it is undisputed that no one in the Forever 21 Men's Department, neither the buyers, nor the Vice President of the Men's Department, who Forever 21 claims have been "trained" in intellectual property matters (Colucci Decl. I, Ex. 29 (Second Deposition of Do Won Chang), at 178:3-5), raised any inquiry with Forever 21's in-house legal department regarding Forever 21's proposed purchase of any of the five garments (EXP SOF 89), but simply went about, with what we submit is their everyday "shop and copy" practice of removing the Express labels and logos and replacing them with Forever 21's labels and logos to make them theirs. (EXP SOF 52-57); (Colucci Decl. I, Ex. 13 (J. Kim Dep.), at 41:16-18);

(Colucci Decl. I, Ex. 11 (photographs of Steps' vendor sample).) Considering all of the above, and taking into account further that White Owl was found selling on its Internet website yet another pair of men's plaid shorts substantially similar to Express's copyrighted "Bruin" plaid design (Pampalone Decl., ¶¶ 3-4), we respectfully submit that no reasonable juror could find that White Owl had no involvement with Steps and Forever 21 in connection with their blatant infringement and unfair competition with respect to all five of Express's garments. (Counts I – IV of the Complaint.)[8]

Moreover, we respectfully further submit that no reasonable juror could accept as credible the testimony of White Owl's President, Mr. Isaac Saul Flores, that he received two fabric swatches from a company in China, which were line for line, color for color in all respects identical to the two plaid designs printed on the two pairs of men's shorts that White Owl manufactured and sold to Forever 21, without a shred of any supporting documentary evidence whatsoever. (Colucci Decl. I, Ex. 19 (Flores Dep.), at 17:16-22, 21:4-9.) Also, no reasonable juror could overlook the fact that White Owl called its copy of Express's "Jack" copyrighted plaid, "Jackiel". (Pampalone Decl., Ex. H); *cf. JBJ Fabrics Inc. v. Mark Industries Inc.*, 5 U.S.P.Q.2d 1414, 1416 (C.D. Cal. 1987) ("The story does not wash. The Court is satisfied that [defendant fabric converter] and EnChante [who purchased infringing fabric from defendant] did decide to come up with a material that could be substituted for [plaintiff]'s, and that they carefully did so.").

Thus, all of White Owl's transparent attempts to disassociate itself from the concerted acts of Forever 21 and Steps, and, we suspect, to provide Forever 21 with a "cover" in return for not seeking to hold White Owl to its indemnification agreement with Forever 21, should be rejected by this Court and Summary

---

[8] White Owl's argument that it did not supply the Express track jacket to Forever 21 would not preclude the Court's finding that White Owl's acts were part and parcel the acts of Defendants Forever 21 and Steps. This is similar to a robbery. The person who drives the get away car is also charged with the crime.

Judgment granted against all Defendants jointly and severally, should be granted (Colucci Decl. I, Ex. 19 (Flores Dep.), at 24:12-15); (Reply Colucci Decl.,[9] Ex. 10 (White Owls' Responses to Plaintiff's First Set of Interrogatories), No. 15.)

### D. Copying Another's Product Without Conducting A Legal Review Constitutes Reckless Disregard or Willful Blindness.

White Owl's counsel, who specialize in the practice of intellectual property law, state that "[t]here is no such thing as the 'Legal Review' that Express claims the Defendants should have done." (White Owl Mem. at p. 9.) If that were true, a copyist, here a serial copyist like Forever 21, could never be found guilty of copyright or trade dress infringement merely by claiming it had no way of knowing whether what it is copying is protectable. Moreover, if a copyist like Forever 21 has a history of lawsuits alleging intellectual property violations, which one federal judge referred to as "gargantuan"[10] and another federal judge suggested was its business plan,[11] it should not be heard to claim that they were all just "accidents," if, as in this case, no legal review is ever conducted. Forever 21's Executive Vice President and advisor to the Changs, Mr. Lawrence Meyer, arrogantly testified that a legal review would just be "a waste of money." (Colucci Decl. I, Ex. 14 (Meyer Dep. I), at 21:9-14.)

Here you have two suppliers, White Owl and Steps, who we submit were familiar with Forever 21's "shop and copy" business practice. They present five garments to Forever 21. Three of the garments are admittedly purchased from Express and bore Express's labels and logos. (EXP SOF 45-48); (Colucci Decl. I, Ex. 28.) Two of the others bear strikingly similar plaid designs. (Reply Colucci

---

[9] The Declaration of Frank J. Colucci in Support of Plaintiff's Reply Memorandum Re: Plaintiff's Motion for Summary Judgment ("Reply Colucci Decl."), filed concurrently herewith.

[10] Colucci Decl. I, Ex. 41 (*Anthropologie, Inc. v. Forever 21, Inc. et al.*, 07 Civ. 7873 (RJS) (MHD), March 10, 2009 Memorandum & Order, at p. 3).

[11] Colucci Decl. I, Ex. 40 (*Anthropologie, Inc. v. Forever 21 Inc. et al.*, No. 07 Civ. 7873 (RJS)(MHD), March 12, 2009 Memorandum & Order, at p. 11) (Forever 21 may be "a business that is predicated in large measure on the systematic infringement of competitors' intellectual property").

Decl., Exs. 5-8.) Unsurprisingly, Forever 21's buyers, who Forever 21 claims to have been "trained" in intellectual property matters, raise no concerns. Nor is any concern raised or any request for a review by Forever 21's Legal Department made by Forever 21's Vice President of its Men's Department. They proceed to replace the Express labels and logos with Forever 21's labels and logos "to make them theirs." (Colucci Decl. I, Ex. 13 (J. Kim Dep.), at 41:16-18.)

We submit that any first year law student, if she or he had been asked to opine on the legality of such a practice, would not have condoned such a practice. Such a legal review was not only possible, it was required. If the Changs intend to continue their copying and if they are sincere about not wanting any more "accidents" (which they clearly are not) they could well afford to implement a legal review process. The real reason no legal review is ever conducted is that it would interfere with their "shop and copy" business practice. Lawsuits to the Changs are merely "a cost of doing business." The fact that neither White Owl nor Steps conducted any legal review of their own is further evidence that they were familiar with Forever 21's "shop and copy" business practices and went along with them.

Consequently, it is obvious that the reason no legal review was conducted in this case (or in any of Forever 21's 70 other cases) is not that it cannot be done, as White Owl claims, but that Forever 21 does not want any legal review because it would interfere with their "shop and copy" business practices. Thus, by not conducting any legal review, all of Defendants, jointly and severally, acted in deliberate and intentional disregard of Express's intellectual property rights or were willfully blind to Express's rights.

## III. CONCLUSION

For all the foregoing reasons, Express respectfully requests that the Court grant its motion for summary judgment and/or grant such other further relief as it deems appropriate.

Dated: August 2, 2010

COLUCCI & UMANS

By: s/ Frank J. Colucci/

Frank J. Colucci (*Pro Hac Vice*)
David M. Dahan (*Pro Hac Vice*)
COLUCCI & UMANS
218 East 50th Street
New York, New York 10022
Telephone: 212.935.5700
Facsimile: 212.935.5728
Emails: FColucci@colucci-umans.com
DDahan@colucci-umans.com

Attorneys for Plaintiff Express, LLC

Co-Counsel for Plaintiff Express, LLC:

BUCHALTER NEMER
Russell L. Allyn (SBN: 143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400

**CERTIFICATE OF SERVICE**
**STATE OF NEW YORK – COUNTY OF NEW YORK**

I declare that I am a citizen of the United States and a resident of New York, New York, or employed in the County of New York, State of New York. I am, and was at the time of service of the document(s) herein referred to, over the age of 18 years, and not a party to the action. My business address is Colucci & Umans, 218 East 50th Street, New York, New York 10022.

On the date executed below, I served a true copy of the document(s) described as:

- **PLAINTIFF EXPRESS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES RE: WHITE OWL CLOTHING, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
- **DECLARATION OF MICHAEL TOWER IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
- **PLAINTIFF EXPRESS, LLC'S RESPONSES TO WHITE OWL CLOTHING, INC.'S ADDITIONAL STATEMENT OF UNCONTROVERTED FACTS RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND**
- **PLAINTIFF EXPRESS, LLC'S ADDITIONAL EVIDENTIARY OBJECTIONS TO DEFENDANT WHITE OWL CLOTHING, INC.'S RESPONSES TO PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS.**

x By causing a true and accurate copy of the document(s) to be filed through this Court's Case Management and Electronic Case Filing (CM/ECF) system. Notice of this filing is automatically generated to all counsel of record, and such service complies with Federal Rule of Civil Procedure 5(d)(3), Local Rules 5-3.3 and 5-4, and General Order 07-08. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on August 2, 2010, at New York, New York.

Janice K. Yoon
Printed Name

/Janice K. Yoon/
Signature