1  HOLLAND & KNIGHT LLP
   Theresa W. Middlebrook  (State Bar 89709)
2  theresa.middlebrook@hklaw.com
   Tara L. Cooper (State Bar 239018)
3  tara.cooper@hklaw.com
   633 West Fifth Street, 21st Floor
4  Los Angeles, California  90071-2040
   Tel.  (213) 896-2400
5  Attorneys for Defendant White Owl Clothing, Inc.

6

7

8              UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 | EXPRESS, LLC,                              | Case No. CV09-04514 (ODW)(VBKx)
12 |             Plaintiff,                     | **WHITE OWL CLOTHING CO.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION**
13 |      v.                                    |
14 | FOREVER 21, INC.;  FOREVER 21 LOGISTICS, LLC;  FOREVER 21 RETAIL, INC.;  JIN SOOK CHANG;  DO WON CHANG;  WHITE OWL CLOTHING, INC.;  STEPS APPAREL GROUP, INC. dba STEPS OF CA;  and DOES 1 through 10, inclusive, | [filed with Objections to Evidence; Response To Statement of Issues; Supp. Decl. Middlebrook]
15 |                                            |
16 |                                            |
17 |                                            |
18 |                                            |
19 |             Defendants.                    | **Hearing**
20 |                                            | **Date: August 16, 2010**
   |                                            | **Time: 1:30 p.m.**
   |                                            | **Courtroom: 11**
21 |                                            |
22 |                                            | Discovery Cut-off: July 5, 2010
   |                                            | Pre-Trial Conference: Sept. 13, 2010
23 |                                            | Trial: Oct. 5, 2010
24 |                                            | Complaint Filed:  June 23, 2009
   |                                            | First Amended Complaint Naming This Defendant Filed:   Dec. 7, 2009

25

26

27

28

DEF. WHITE OWL CLOTHING, INC's REPLY IN SUPPORT OF MOTION FOR  SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

# **TABLE OF CONTENTS**

Page No.

I. INTRODUCTION ................................................................................... 1

II. THE COURT SHOULD DISREGARD IRRELEVANT ARGUMENTS BY EXPRESS ............................................................. 1

    A. Attacks On Arguments That White Owl Never Took Are Pointless and Irrelevant. ............................................................. 1

    B. Incorrect and Misleading Arguments Of Facts Are Irrelevant And Do Not Create Triable Issues Of Fact Material To This Motion. .................................................................................... 2

    C. Failure to Locate the Preexisting Plaids Used By Mr. Tower Does Not Create a Triable Issue of Material Fact Given the Burdens of Proof. ................................................................... 4

III. WHITE OWL HAS BOTH REBUTTED THE PRESUMPTION OF THE COPYRIGHT REGISTRATIONS, AND DEMONSTRATED THE INVALIDITY OF THE COPYRIGHTS. .... 5

    A. The Express Plaid Designs Are Not Wholly Original. ............... 5

    B. Other Experience by Tower is Irrelevant. .................................. 7

    C. The Oman Expert Reports Raise No Material Question of Fact. .......................................................................................... 7

    D. A Copyright Registration Is Not Proof of Originality. ............... 8

    E. The Express Copyrights Are Invalid Because No Originality Can Be Proven. ...................................................................... 10

IV. IF SUMMARY JUDGMENT OF INVALIDITY IS NOT GRANTED, THEN WHITE OWL'S ALTERNATE REQUESTS SHOULD BE GRANTED. ............................................................... 11

V. THERE ARE NO GROUNDS SHOWN FOR JOINT TORTFEASOR LIABILITY AND THUS WHITE OWL'S MOTION ON THE SECOND THROUGH FOURTH CAUSES OF ACTION SHOULD BE GRANTED. ........................................... 12

VI. CONCLUSION ................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Entm't Research Group, Inc. v. Genesis Creative Group,*
  122 F.3d 1211 (9th Cir. 1997) .................................................................. 6, 9, 10

*Express, LLC v. Fetish Group, Inc.,*
  424 F.Supp.2d 1211 (C.D. Cal. 2005) ........................................................ 2, 3, 5

*Feist Publ'ns, Inc. .v Rural Tel. Serve. Co.,*
  499 U.S. 340, 111 S. Ct. 1282 (1991) ................................................................. 6

*Folio Impressions, Inc. v Byer California,*
  937 F.2d 759 (2nd Cir 1991) ............................................................................... 2

*In re AirDisaster at Lockerbie Scotland on December 21, 1988,*
  37 F.3d 804 (2d Cir. 1994) .................................................................................. 8

*In re Rezulin Products Liability Litigation,*
  309 F.Supp.2d 531 (S.D.N.Y. 2004) ............................................................. 8, 12

*Masquerade Novelty Inc. v Unique Industries, Inc.,*
  912 F.2d 663 (3rd Cir. 1990) ............................................................................... 9

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha,*
  290 F. Supp.2d 1083 (C.D. Cal. 2003) ............................................................... 8

*McLean v. 988011 Ontario, Ltd.,*
  224 F.3d 797 (6th Cir. 2000) ............................................................................... 8

*Nelson v. City of Davis,*
  571 F.3d 949 (9th Cir. 2009) ............................................................................. 10

*North Coast Indus. v. Jason Maxwell, Inc.,*
  972 F.2d 1031 (9th Cir. 1992) ............................................................................. 6

*Satava v. Lowry,* 323 F.3d 805 (9th Cir. 2003) ........................................................ 6, 7

*Smith & Hawken, Ltd. v. Gardendance, Inc.,*
  2005 WL 1806369 (N.D. Cal. 2005) ................................................................ 11

*Talley v. Danek Med., Inc.,*
  179 F.3d 154 (4th Cir. 1999) ............................................................................... 8

**STATUTES**

17 U.S.C.
   § 103(b) .................................................................................................. 6

**OTHER AUTHORITIES**

Fed. Rules of Evid.
   Rule 703 ................................................................................................ 8

I.  **INTRODUCTION**

Viewed in an overall perspective, Express's Memorandum of Points and Authorities in Opposition to White Owl Clothing, Inc.'s Motion for Summary Judgment, Docket No. 144, ("Express's or Express Oppo.") consists of:

- attacks on arguments never advanced by White Owl (See, Section II.A, below);
- unsupported factual assertions, where the only evidence is to the contrary (See, with respect to White Owl, Section II.B. and with respect to Express, Section II.C, below);
- a discussion of Mr. Tower's practices during other employment and on projects *other than the four Express Plaid Designs* at issue (See, Section III.B, below);
- inadmissible expert hearsay opinion and speculation from Mr. Oman about what Mr. Tower did or did not do (See, Section III.C, below); and
- as expected, irrelevant allegations that White Owl supposedly sold a different (and fifth) infringing short (See, Sections IV and V, below).

II.  **THE COURT SHOULD DISREGARD IRRELEVANT ARGUMENTS BY EXPRESS**

A.  **Attacks On Arguments That White Owl Never Took Are Pointless and Irrelevant.**

Express advances numerous arguments against White Owl's by overstating or misstating the points argued in White Owl's Motion for Summary Judgment ("White Owl Motion").  In its Opposition, Express has not anchored its critical comments to any location in White Owl's Motion.  As will be shown (briefly to avoid excessive focus on distracting points), Express has just set up and then easily refuted straw men arguments.

Specifically, White Owl has not taken the position that "all plaids… are undeserving of copyright protection" (Express Oppo., 9:27-10:13); has never argued that copyright protects only "something entirely new under the sun" (*Id*., at 10:9-18); did not claim that the facts show that that Mr. Tower did in fact utilize "public domain plaids"[1]; did not make the "absurd" argument that Mr. Tower "could not have designed the Express Plaid Designs without a specific 'preexisting' source" (*Id*., at 16:8-21), and never concluded that the Express Plaid Designs actually include only minor variations[2]. (*Id*., at 8:14-17). If, as expected, these "positions" seem unfamiliar to the Court, it is because White Owl never took them. Express's arguments on these positions are pointless and irrelevant.

**B.  Incorrect and Misleading Arguments Of Facts Are Irrelevant And Do Not Create Triable Issues Of Fact Material To This Motion.**

Express repeatedly incorrectly argues facts as well. For example, it states repeatedly, as a foundation fact to its argument relating to originality and distinctiveness, this to validity, that White Owl copied the Express Jack and Ocean Plaids. (Express Oppo., 3:5, 17, 19, 21; 6:12; 11:14-23) Copying by White Owl is not an admitted fact. Copying is not even relevant to the question of copyright validity.

The basis for White Owl's Motion on the First Cause of Action is ***invalidity of Express's claimed copyrights***, not lack of access, nor lack of copying, nor lack of substantial similarity.[3] At Express's Oppo., 4:5-7:1,

---

[1] In White Owl's Opposition to Express's Cross-Motion for Summary Judgment (Docket 142) ("White Owl's or White Owl Oppo."), White Owl did cite one case, *Folio Impressions, Inc. v Byer California*, 937 F.2d 759 (2nd Cir 1991) where the preexisting works were, in fact, public domain (White Owl Oppo., 4:17-23). But citing a case with such facts is a far cry from arguing that those facts exist in this case.

[2] Rather, White Owl's Motion accurately states, at Page 12, lines 13-20, that as far as ***Express*** knows, the preexisting plaids may have been copied exactly, and, as far as anyone knows, there "***may***" only be minor variations between the preexisting plaids and the Express Plaid Designs.

[3] Note, in White Owl's Oppo., it denies both access *and* copying, at 6:6-24. White Owl provides evidentiary support for those denials from the Deposition of Isaac Saul

DEF. WHITE OWL'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
2

Express argues, pointlessly, that it believes that White Owl had access to, copied and there is substantial similarity between, the two White Owl **garments** and Express's **garments**,[4] all disregarding the basic principal the garments are not protectable under copyright. *Express, LLC v. Fetish Group, Inc.*, 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2005).

At Express's Oppo., it also states that White Owl "received two swatches of fabric from China" (*Id.*, at 4:9-10, 20-21; 5:2) which White Owl has not produced in discovery. (*Id.*, 4:23-25)  This implies that White Owl received and retained those swatches. When deposed by Express, the President of White Owl, Mr. Saul, testified that once he selects the patterns "we send all those patterns to only one factory [in China] to make the product.  So for us, it is not important to write down from which factory [the fabric sample came from originally.]" (Saul Depo, at 39:18-40:7 [Supp. Middlebrook Decl., Exh. A, at p.3]) The record shows that White Owl has not had those swatches since White Owl  ordered the alleged infringements, <u>and Express is quite aware of that testimony</u>. Rather, Express has tried to manufacture a material question of fact by ignoring the evidence that exists and misleadingly implying that there is a mystery as to what happened to those swatches.  Further, not only does Express ignore this testimony, there is no evidence that this is not a perfectly normal and common practice with respect to selecting fabric patterns from Asia.

Finally, contrary to Express's statement that the testimony of the President of White Owl did not indicate why he wanted to make men's plaid shorts, the citation to the Saul Deposition identified by Express **actually states that reason**: "I knew I wanted to make plaid shorts, because that summer plaid shorts were very, you know, in in the market."  (Saul Depo., at 21: 4-7 [Colucci

---

(*Middlebrook Decl.*, Docket No. 412-1, at Ex. A, p. 4, at lines 10-16).  Disregarding the overall status of this litigation, Express argues that White Owl's sole defense in the entire case is invalidity of copyrights. (Express Oppo., 17:14-15)
[4] See, Express Oppo.,  1:9-13; 2:8-9; 5:1-8; and 6:14-15.

DEF. WHITE OWL'S REPLY IN SUPPORT OF ITS
MOTION FOR  SUMMARY JUDGMENT
3

Decl., Ex. 19]) White Owl is engaged in the business of casual men's clothing, therefore making popular "in" shorts is no unexplainable, much less heinous, activity.

### C. **Failure to Locate the Preexisting Plaids Used By Mr. Tower Does Not Create a Triable Issue of Material Fact Given the Burdens of Proof.**

Express argues that the fact that **_Defendants_** have been unable to produce the preexisting plaids testified to by Mr. Tower means that Mr. Tower "did not copy from any preexisting work…" Express Oppo., at 18:5-10. This is faulty basic logic.  The absence of this evidence is not evidence they never existed. The last known location of the preexisting plaids was in the hands of the CAD operator who took them from Michael Tower.  (White Owl Stmt. Fact Nos. 9, 10, 12 and 13) Express has not provided those preexisting plaids in discovery, despite White Owl's extensive efforts to obtain those plaids starting on the second business day after their existence was revealed by Mr. Tower at his deposition.[5]  Most importantly, there is no testimony from Mr. Tower that there were no pre-existing plaids.  It also is not relevant as a matter or law given that it remains Express's burden to prove the copyright validity as White Owl has rebutted the presumption of validity with the testimony of Mr. Tower quoted in the moving papers.

In any event, here again, Express is simply trying to place the burden on White Owl conclusively to prove Express has no valid copyrights.  As discussed immediately below, once White Owl raises questions as to the validity of a copyright (which it has done with the testimony of Mr. Tower), any presumption afforded by a registration is lost.  It is not up to the copyright

---

[5] See Docket Nos. 83-85, 87, White Owl's unsuccessful Ex Parte Application for an extension of Discovery for production of the preexisting materials, where White Owl's original request for discovery went out two business days after the existence of these preexisting plaids was first revealed by Mr. Tower.

claimant to prove it has a valid copyright. In other words, it is *Express* that must demonstrate why its designs are copyrightable and not White Owl who must prove they are not.

### III. WHITE OWL HAS BOTH REBUTTED THE PRESUMPTION OF THE COPYRIGHT REGISTRATIONS, AND DEMONSTRATED THE INVALIDITY OF THE COPYRIGHTS.

#### A. The Express Plaid Designs Are Not Wholly Original.

Mr. Tower's deposition testimony was quoted verbatim in White Owl's Separate Statement. (White Owl Stmt. Fact Nos. 7-17, 19-23, 25 and 26). Mr. Tower was asked "so he takes the pattern that you show him, and he basically creates that on his CAD machine?" and he replied, "Yes." (Stmt. Fact No. 10). This was true as to each of the four Express Design Plaids. (Stmt. Fact Nos. 10 – 16). Express cannot and does not dispute that verbatim testimony.[6] Instead, in response to these Statements of Fact, Express responds, identically, "Undisputed as to the quoted testimony, but must be read in context with rest of Mr. Tower's testimony." However, Express does not direct the Court to any conflicting material evidence or testimony that places the meaning and import of Mr. Tower's testimony into question. Thus, the clear meaning of his testimony stands.

Express does not dispute that an obvious prerequisite for a copyright infringement action is a valid copyright. Express concedes at Express Oppo., 8:24-26, that in order for a work to be subject of a valid copyright, a work must have elements that are *original, i.e. "at least some minimal degree of creativity." Feist Publ'ns, Inc. v. Rural Tel. Serve. Co.*, 499 U.S. 340, 361, 111

---

[6] In sum, Mr. Tower testified that his "inspiration" was an existing physical image (White Owl Stmt. Fact Nos. 7-17, 19, 23-26) that he showed to a CAD operator (White Owl Stmt. Fact Nos. 8-15; 17, 19, 23, 25) who took the existing physical image (White Owl Stmt. Fact No. 9, 10, 12, 13 ) and created that on his CAD machine (White Owl Stmt. Fact Nos. 10, 12, 13-15, and 17). Either during the creation of the existing physical image onto the CAD, or after the physical images was on the CAD, Mr. Tower would, he thinks, change the physical images (White Owl Stmt. Fact Nos. 14, 20-23, 25, and 26).

DEF. WHITE OWL'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
5

S. Ct. 1282 (1991). All White Owl need do to rebut the prima facie evidentiary value of the registrations is offer "some evidence or proof to dispute or deny the [copyright holder's] prima facie case of infringement." *Entm't Research Group, Inc. v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997). The presumption of validity is rebutted by showing that 'the [copyright holder's] work is not original. *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992).

White Owl has shown that the Express Plaid Designs are not wholly original, but began by making a copy of a preexisting plaid. Therefore the burden of proof has shifted back to Express to demonstrate validity of the copyrights. *Entm't Research Group,* at 1218. ("Because [the alleged infringer] had offered evidence that [copyright claimant's works] were 'not original' but copied from another's work,' the district court properly held that [the alleged infringer] had rebutted the statutory presumption, and the district court properly shifted the burden of proving validity – the threshold issue for copyright infringement laws – back to [the copyright claimant.")

To carry that burden, Express must show that the "material contributed" by Mr. Tower to make each Express Plaid Design was sufficiently creative and not just a trivial change, so that a separate copyright in the "material contributed" arose under 17 U.S.C. §103(b). *Feist,* at 345; *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Express does not know the differences between the preexisting plaid design and the Express Plaid Designs (White Owl Stmt Fact No. 29),[7] it certainly cannot now, and never can, demonstrate that the changes are sufficiently creative.

---

[7] In Express's Statement of Issues, Express indicates that White Owl's Statement of Fact No. 29 is "Disputed" however it does not reference any evidence upon which it bases that dispute. Express only makes some **non-evidentiary** "objections" that state its disagreement with the meaning of Tower's testimony, and its dislike of the word "discarded." This is not evidence that creates a triable issue of material fact.

DEF. WHITE OWL'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
6

B. **Other Experience by Tower is Irrelevant.**

Faced with this absence of conflicting evidence on the creation of the Express Plaid Designs by copying, Express relies upon Mr. Tower's testimony concerning his prior design *background* and method *at other employers* including Ralph Lauren and Abercrombie & Fitch, and his general experience. (Express Oppo., 14:9-16:3)  From this testimony Express draws the conclusion that "it is clear that Mr. Tower did not rely on any "preexisting work"… "(*Id*., at 16:4-7).  Mr. Tower's actions with other employers, or even generally, are not evidence as to his actions with respect to the Express Plaid Designs, particularly when we have Mr. Tower's detailed testimony on that subject. Whether Mr. Tower knows how to design garments is not an issue here, nor are his actions at his other employers. Nor is the issue what he did *generally* at Express.  All that matter is what Mr. Tower did *precisely as it relates to these four Express Plaid Designs*.  At best it is a red herring; at worst it is an intentional attempt to imply misleadingly (and contrary to direct testimony on the matter) that Mr. Tower's other methods used at other employers must have been used in connection with the Express Plaid Designs.

C. **The Oman Expert Reports Raise No Material Question of Fact.**

Likewise, the statements of Mr. Oman relied upon by Express (Express Oppo., 16:26-18:3) are irrelevant, as Mr. Oman's conclusion is based upon his own interpretation of the testimony of Mr. Tower, and that interpretation is contrary to the plain meaning of Mr. Tower's statements. Mr. Oman's testimony about how he believes Mr. Tower operates generally or what Mr. Oman *himself conjectures* Mr. Tower may have done is wholly irrelevant to the originality of the four Express Plaid Designs at issue.  This should be rejected as not supported by the clear testimony of Mr. Tower. *See, e.g., Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp.2d 1083, 1097 (C.D. Cal.

2003) (rejecting expert reports because they contained opinions devoid of factual basis).

Worse still Mr. Oman frequently injects his own subjective value-leavened factual assertions as to the conduct and motives of Mr. Tower in the guise of expert opinion. For example, in his Supplemental and Rebuttal Expert Report of Ralph Oman the Report Express relied upon by Express (Express Oppo., 17:20-18:4, and footnote 14.) Mr. Oman was not a percipient witness, has no knowledge of such matters, and admits to having never met Mr. Tower or spoken to him (Oman Depo. 62:24-25 [Supp. Decl. Middlebrook, Exh. B, at p. 6]).

It is well settled that "[f]acts or dates in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Rule 703, Fed. R. Evid. Thus, expert opinions may be excluded (here, disregarded) as unhelpful if based on speculative assumptions or unsupported by the record. *In re AirDisaster at Lockerbie Scotland on December 21, 1988*, 37 F.3d 804, 807 (2d Cir. 1994); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000); *Talley v. Danek Med., Inc.*, 179 F.3d 154, 162 (4th Cir. 1999); *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 539 (S.D.N.Y. 2004) (cautioning against trend to use expert witnesses to argue the client's cause instead of bringing specialized knowledge to lawsuit).

**D.     A Copyright Registration Is Not Proof of Originality.**

Express argues that its "proof of originality is the copyright registrations themselves, and is axiomatic that no further "proof" is required from the copyright holder." (Express Oppo., 7:24-8:4) Originality is established if something original is added to a work when it is created; a registration is a document issued by the Copyright Office in response to an application. If the registration reflects the correct facts as to originality, it creates a presumption.

But the registration creates only a *rebuttable* presumption of a valid copyright. A registration is certainly not "proof" of originality at all. This is particularly true where, as here, the registration is itself not complete.

As the very Ninth Circuit case cited by Express, *Entm't Research Group,* states, at 1218, once the accused infringer presents some evidence to dispute the plaintiff's prima facie case of infringement, the *burden shifts back to the holder of the alleged copyright* to prove validity of the copyright. In *Entm't Research Group*, the Ninth Circuit addressed the validity presumption and the degree of originality needed to copyright a derivative work. It affirmed the granting of summary judgment on the infringement claim by ERG on the very basis White Owl moves here, i.e., that ERG failed to establish it had a valid copyright in the costumes. *Id.* at 1217. The alleged infringer presented evidence that raised a serious question "as to whether ERG's costumes based on those copyrighted characters were sufficiently original to merit copyright protection." The Ninth Circuit found that the showing of evidence was "critical" given its prior holding that "the statutory presumption of validity can be rebutted if the alleged infringer demonstrates that the plaintiff's work is not original but copied from another's work." *Id*. See also, Masquerade Novelty v. Unique Industries, Inc., 912 F.2d 663, 668-69 (3rd Cir. 1990) (presumption may be overcome if defendant offers probative evidence as to originality issue.)

Similarly here, White Owl has offered evidence that "raises a serious question" as to whether the Express Design Plaids "were sufficiently original to merit copyright protection," i.e., the testimony of Express's own designer, Mr. Tower, noting that in each case of the four Express Design Plaids he copied a prior pattern and "assumes" he made some changes. But without any evidence of what those changes, there remains the "serious question" whether the so-called new designs are sufficiently original in any respect to merit copyright protection. Express has completely missed this point, despite all references to

what Mr. Tower said about his prior employment and other projects, it offers on evidence as to the four Express Design Plaids at issue here. Conspicuously absent is any declaration by Mr. Tower about he precisely added that is original and how each of the Express Design Plaid merit copyright protection, nor can Mr. Tower provide such a contradictory declaration, as that cannot be used to create an issue of fact. *Nelson v. City of Davis*, 571 F.3d 949, 927-928 (9th Cir. 2009)

Nor are there any photographs or samples to show the differences between what Mr. Tower relied upon, i.e., that "something" he unequivocally testified to giving the CAD operator, which the Court could contrast with each of the four Express Design Plaids to find they each "merit copyright protection."

### E. The Express Copyrights Are Invalid Because No Originality Can Be Proven.

It is incumbent on Express to show that it made an original, material contribution to the preexisting work in order to hold rights of copyright in the Express Plaid Designs. Because Express has no idea what, if anything, Mr. Tower contributed to the preexisting works, it cannot show that the contributions existed at all, or were more than just trivial. The Motion should be granted. *See, e.g., Smith & Hawken, Ltd. v. Gardendance, Inc.*, 2005 WL 1806369 (N.D. Cal. 2005) at *5 *("Because Plaintiff has rebutted the presumption of validity, and because Defendants have failed to demonstrate the [Work] is copyrightable, they cannot establish the first element of action for copyright infringement. Therefore, the Court GRANTS Plaintiff's Motion [for Summary Judgment on its declaratory relief complaint for a declaration of the invalidity of Defendant's copyright in the [Work] and a declaration that Plaintiff does not infringe.]")*

Summary Judgment of invalidity of all the Express Plaid Design copyright registrations, and the claim of copyright laying there under, is, thus, completely appropriate.

### IV. IF SUMMARY JUDGMENT OF INVALIDITY IS NOT GRANTED, THEN WHITE OWL'S ALTERNATE REQUESTS SHOULD BE GRANTED.

In the event the Court does not invalidate the Express Plaid Copyrights as requested above, then White Owl has presented narrower options to the Court, to simply narrow the issues for trial. White Owl seeks Summary Judgment that Express has no right to statutory damages. (White Owl's Memo., 1:27-28, 18:17-19:10) Express does not address this issue at all, although it concedes, at Express's Oppo., Footnote 9, on page 6, that it would not be entitled to statutory damages. Nevertheless, it still, without basis in law or fact, continues to claim that it is entitled to have summary judgment denied on even this point. (Express Oppo., 1:2-8) There is no question that White Owl is entitled to summary judgment as requested.

White Owl seeks summary judgment that it is not liable for copyright infringement of the Roth and Bruin copyrights by reason of the shorts manufactured by Steps. (White Owl Memo, Section VI.B., at p. 19) White Owl's President has declared under penalty of perjury that White Owl had "nothing whatsoever to do with the other shorts that are the subject of this litigation" (Saul Decl., Para. 3). Express states (Express's Oppo., 5:14) "that is inaccurate" referencing its Footnote 6. In that footnote, Express simply surmises that because there were production issues with White Owl, that may have led to Steps being given its contract. That theory does not contradict White Owl's position, nor does it create a genuine issue of fact. Next, Express further argues that it saw something on the internet "the design of which appeared to be an infringement of the Express Bruin copyright." This litigation,

as Express emphasizes, is about four shorts and a jacket sold by Forever 21. These facts, even if true (and here infringement is not conceded), do not create any issue of fact as to whether White Owl was involved with the two Steps shorts and jacket.

### V. THERE ARE NO GROUNDS SHOWN FOR JOINT TORTFEASOR LIABILITY AND THUS WHITE OWL'S MOTION ON THE SECOND THROUGH FOURTH CAUSES OF ACTION SHOULD BE GRANTED.

White Owl has denied any participation whatsoever in the Forever 21 Jacket sued upon by Express. Express's arguments and speculation do not raise any material question of fact in that regard.

As noted above, Express's arguments of White Owl's involvement with the Forever 21 Jacket are the same as its arguments to show that White Owl was involved in the Steps-created shorts. Again, per the argument in Footnote 6, production issues at White Owl certainly does not support liability on any ground by White Owl for any claims arising out of the existence of any of the Steps garments. Second, the alleged existence of another White Owl short sold by White Owl to the public (note even sold to Forever 21) provides no conceivable support for any factual theory that White Owl was involved with the Forever 21 jacket.

The cases cited by Express (Express Oppo., 18:14-19:11) relate to comparative and contributory negligence, and indemnification. They do not stand for any proposition supportive of Express's position that it can continue to keep White Owl in this very expensive litigation even though it had nothing to do with the Steps-produced Forever 21-sold Jacket.

The purpose of a Motion for Summary Judgment is to locate and resolve legal claims where there are no questions of material fact. Now is the time when Express should have demonstrated any evidence that supports White Owl's

involvement. It has none, thus summary judgment on the Second, Third and Fourth Causes of Action are appropriate.

## VI. CONCLUSION

For the foregoing reasons and the lack of any triable issues of material fact, the Court can and should grant summary judgment to White Owl on each of five causes of action.

Dated: August 2, 2010           Respectfully submitted,

                                HOLLAND & KNIGHT LLP

                                By:   s/ Theresa W. Middlebrook
                                Theresa W. Middlebrook, Attorneys for
                                Defendant White Owl Clothing, Inc.

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 633 West Fifth Street, 21st Floor, Los Angeles, California 90071.

On August 2, 2010, I served the document described as **WHITE OWL CLOTHING CO.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION** on the interested parties in this action as follows:

[X] (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and General Order 07-08, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

__X__ I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

    Executed on August 2, 2010, Los Angeles, California.

                                           /S/
                                    Tara L. Cooper

# 9676698_v1