RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 82768
lruss@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Telephone:   (310) 826-7474
Facsimile:    (310) 826-6991

Attorneys for Defendants
Forever 21, Inc., Forever 21
Logistics, Inc., Forever 21
Retail, Inc., Jin Sook Chang,
and Do Won Chang

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, INC.; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>Defendants | Case No. CV09-04514 ODW (VBK)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**<br><br>Complaint Filed:  June 23, 2009 |

2923-003 100929 Mtn Att FeesFinal.doc

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF
LARRY C. RUSS

RUSS, AUGUST & KABAT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 4, 2010 at 1:30 p.m. before the Honorable Otis D. Wright, II, in Courtroom 11 of the United States District Court for the Central District of California, located at 312 N. Spring St. Los Angeles, California, defendants Forever 21, Inc., Forever 21 Logistic, Inc., Forever 21, Retail, Inc., Jin Sook Chang and Do Won Chang (collectively "Forever 21 Defendants") will and hereby do move for an order granting an award of attorneys' fees and other litigation expenses pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, Federal Rule of Civil Procedure 68, and Local Rule 54-12.

This Motion is made on the grounds that defendants are the prevailing parties on plaintiff's claims for copyright infringement and trade dress infringement. As the prevailing party, pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, defendants are entitled to attorneys' fees and related litigation expenses incurred in defending the case.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Larry C. Russ, filed herewith, all documents on file in this action, and such further or additional evidence or argument as may be presented before or at the time of the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 that was initiated by letter on September 20, 2010, and concluded by teleconference on September 22, 2010.

DATED: September 29, 2010

RUSS, AUGUST & KABAT
Larry C. Russ
Nathan D. Meyer


By:  /s/*Nathan D. Meyer*
Nathan D. Meyer
Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

2923-003 100929 Mtn Att FeesFinal.doc

2

## Table of Contents

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................. 3

    A.    Express's Counsel, Having Already Concluded a Prior Case Against Forever 21, Files a Frivolous Case Accompanied by *Zero* Pre-Filing Investigation................................................................. 3

    B.    Express's "Take No Prisoners" Settlement Posture and Case Strategy. ......................................................................................... 4

    C.    Express's Scorched Earth Discovery Tactics....................................... 5

    D.    Forever 21's Discovery Was Narrower and Far More Focused than Express's. ................................................................................. 6

    E.    Defendants Prevail On Cross-Motions for Summary Judgment.......... 7

III.    AN AWARD OF FEES ON ALL CLAIMS SHOULD ISSUE .................... 8

IV.    THE COURT SHOULD AWARD FOREVER 21 FEES UNDER THE COPYRIGHT ACT .......................................................................... 9

V.    FOREVER 21 IS ENTITLED TO AN AWARD OF ITS FEES INCURRED IN DEFENDING AGAINST EXPRESS'S BASELESS TRADE DRESS CLAIMS ................................................................... 13

    A.    As Express Should Have Known From Day One, Its Trade Dress Claim Was Groundless..................................................... 14

    B.    Express Pursued Its Groundless Claim in a Vexatious and Harassing Manner. ........................................................................ 16

VI.    IN THE ALTERNATIVE, FOREVER 21 IS ENTITLED TO FEES UNDER RULE 68 .......................................................................... 17

VII.    ALL FEES REQUESTED SHOULD BE AWARDED ............................. 18

    A.    Apportionment and State Law Claims. ............................................. 18

        1.    Unfair competition. ................................................................. 19

        2.    Specific allocation................................................................. 19

VIII.    FOREVER 21'S FEES WERE REASONABLE .................................... 20

    A.    The Time Spent by Forever 21's Counsel Was Reasonable.............. 20

IX.    DEFENDANTS' COUNSEL'S HOURLY RATES ARE REASONABLE .................................................................................. 23

    A.    Other Expenses of Litigation. ........................................................ 24

X.    CONCLUSION ................................................................................ 25

RUSS, AUGUST & KABAT

## Table of Authorities

**Page**

1

**Cases**

2

3

*Allen v. The Ghoulish Gallery*
2008 U.S. Dist. LEXIS 12238 (S.D. Cal. 2008)..........................................13

4

*Baker v. Urban Outfitters, Inc.*
431 F.Supp.2d 351 (SDNY 2006) .................................................................17

5

6

*Cairns v. Franklin Mint Co.*
292 F.3d 1139 (9th Cir. 2002) ......................................................................14

7

*Continental Lab. Prods. v. Medax Int'l*
114 F.Supp.2d 992 (S.D. Cal. 2000)........................................................7, 16

8

9

*D.S.P.T. Int'l, Inc. v. Nahum*
2008 U.S. Dist. LEXIS 25405 (C.D. Cal. March 17, 2008) .......................14

10

*Fantasy, Inc. v. Fogerty*
94 F.3d 553 (9th Cir. 1886) ..........................................................................10

11

12

*Fogerty v. Fantasy, Inc.*
510 U.S. 517 (U.S. 1994) ..........................................................................9, 13

13

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ......................................................................................20

14

15

*Kourtis v. Cameron*
358 Fed.Appx. 863 (9th Cir. 2009)...............................................................24

16

*Larin Corp. v. Alltrade, Inc.*
2008 U.S. Dist. LEXIS 65193 (C.D. Cal. 2008) .........................................16

17

18

*Love v. Mail on Sunday*
2007 U.S. Dist. LEXIS 97061, 15 (C. D. Cal. 2007) ..........................passim

19

*Maljack Prods. v. Goodtimes Home Video Corp.*
81 F.3d 881 (1996) ........................................................................................13

20

21

*Mattel Inc. v. Walking Mt. Prods.*
353 F.3d 792 (9th Cir. 2003) .....................................................................1, 13

22

*Pythagoras Intellectual Holdings, LLC v. Stegall*
2009 U.S. Dist. LEXIS 97115 (C.D. Cal. 2009).........................................14

23

24

*Screenlife Establishment v. Tower Video, Inc.*
868 F.Supp. 47 (S.D.N.Y. 1994) ..................................................................10

25

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*
429 F.3d 869 (9th Cir. 2005) .........................................................................24

26

27

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*
76 F.2d 1291 (9th Cir. 1982) .........................................................................20

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

RUSS, AUGUST & KABAT

## Table of Authorities

Page

*Walker & Zanger, Inc. v. Paragon Indus*
    465 F.Supp.2d 956 (N.D. Cal. 2006) ........................................................ 7, 16

*Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*
    259 F.3d 25 (1st Cir. 2001) .................................................................. 7, 16

**Statutes**

15 U.S.C. § 1117 .................................................................................. 8, 13

17 U.S.C. § 505 ................................................................................... 8, 9

28 U.S.C. § 1920 .................................................................................. 24

FRCP 54(d) ....................................................................................... 24

Local Rule 54-2.2 ................................................................................ 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

## I.    INTRODUCTION

In a copyright action, an award of attorney fees is appropriate where a defendant succeeds, and where (1) the plaintiff's case was frivolous or; (2) the plaintiff's case was motivated by factors other than success of the merits of the claim at issue; or (3) it was objectively unreasonable for the losing party to make the factual and legal arguments made; or (4) the circumstances are appropriate "to advance consideration of compensation and deterrence." *Love v. Mail on Sunday,* 2007 U.S. Dist. LEXIS 97061, 15 (C. D. Cal. 2007).  Likewise, in a trade dress case, fees are properly awarded to a prevailing defendant "when a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Mattel Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 816 (9th Cir. 2003).  While any one of the above factors may independently warrant an award of attorney fees, here, all of these factors are implicated and therefore compel the award of attorney fees.

From the day Express, LLC ("Express") filed its case, Forever 21 did everything possible to resolve it by offering to narrow the issues early on, and offering its gross profits in settlement once it became clear the case would not be litigated cheaply.  Unfortunately Express had an entirely different agenda.

As the Court may recall, Express' designer copied four plaids and made four different pairs of shorts.  Express also offered a common track jacket among a group of many track jackets.  When someone at Express discovered that Forever 21 was offering identical plaids and a similar track jacket, Express' counsel immediately filed four copyright applications and filed the instant action against Forever 21, the individual founders of the company and its suppliers.

Michael Tower, the Express designer who copied the four plaids, testified that no one from Express or its counsel's office ever called him to ask anything about how he obtained the plaid designs, whether he copied the same from other sources or what specific changes he made to a pre-existing design. Nevertheless,

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

RUSS, AUGUST & KABAT

1   Express, through its current counsel, filed four copyright applications falsely
2   claiming that the plaid designs were the original work of Express.  Ruling on MSJ
3   [Docket No. 168] ("MSJ Ruling") at 10-12.

4   The fact that Express and its counsel filed copyright applications as well as a
5   full fledged lawsuit without ever speaking with Mr. Tower, indicates, among other
6   things, the frivolous nature of Express' claims as well as a motivation by factors
7   other than success on the merits.  Had Express and its counsel performed even the
8   most perfunctory investigation, this case would not have been brought.  Even after
9   Mr. Tower testified that he derived his plaids from other pre-existing plaids,
10  Express did not inform the Copyright Office or withdraw its copyright claims.

11  When Forever 21 became aware of Express' claims, it **immediately**
12  removed the shorts and jacket in issue from store shelves.  Early on in the case, it
13  also offered Express its gross profits from the sale of the accused items under Rule
14  68.  This offer was made not because Forever 21 believed it had committed some
15  wrongdoing (it had not), but rather because it knew that the cost of defense would
16  far exceed these sums.  Express ignored this Rule 68 offer.

17  In order to reduce Express' discovery burden and the issues to be tried,
18  Forever 21 admitted "access" and "substantial similarity" of the accused items.
19  Forever 21 made it clear that the only issues in the case would be legal issues,
20  namely, whether Express had valid copyrights in the four plaid designs and
21  whether there was any way that Express could establish "secondary meaning" in
22  connection with a common track jacket.

23  In spite of Forever 21's diligent efforts to stick to the merits of Express'
24  claims and reduce litigation costs, Express exponentially expanded the litigation to
25  challenge Forever 21's entire "business model" as somehow unfair.  Express took
26  five depositions having nothing to do with who made the plaid shorts or the track
27  jacket.  In fact, the first discovery dispute arose in connection with Express'

28

RUSS, AUGUST & KABAT

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

RUSS, AUGUST & KABAT

1  demand to take the depositions of Forever 21's founders, although the founders
2  had no connection to the plaid shorts or track jacket.  Magistrate Victor B. Kenton
3  had no alternative but to allow these wasteful depositions because Express
4  submitted declarations stating that the founder's intent was significant in this case.
5  More discovery disputes ensued because Express sought wildly overbroad
6  discovery dealing with Forever 21's methods of doing business, buying practices,
7  legal compliance practices, past lawsuits and past cease and desist letters unrelated
8  to Express or any of its claims.  All of this discovery and related motion practice
9  that was entirely unrelated to the plaids and track jacket, and incurred costs and
10 attorney fees in the sum of approximately $217,143.[1]

11       In summary, Forever 21 was compelled to spend $496,641.00 in fees alone
12 through September 28, 2010.[2]  The evidence presented in this application will
13 reveal that Forever 21 is entitled to an award of its attorney fees because (1)
14 Express' case in chief was either frivolous or was motivated by factors other than
15 success of the merits of the claim at issue;  (2) it was objectively unreasonable for
16 the Express to make the factual and legal arguments made;  and (3) advance
17 consideration of compensation and deterrence is particularly appropriate in this
18 matter.

## II.    BACKGROUND

### A.    Express's Counsel, Having Already Concluded a Prior Case Against Forever 21, Files a Frivolous Case Accompanied by *Zero* Pre-Filing Investigation.

Express filed its complaint in this matter on June 23, 2009, and filed an
amended complaint adding the suppliers on December 4, 2009.  Express's counsel,

---

[1] 506 attorney hours for all non-expert discovery and discovery practice.  See Russ Decl. Exh. G for a breakdown.

[2] It will identify fees in incurred in the actual filing and in responding to the opposition in its reply papers.

2923-003 100929 Mtn Att FeesFinal.doc

3

Colucci & Umans, filed this case one month after it had completed trial in another Forever 21 case which ended in a hung jury on May 27, 2009. *Trovata, Inc. v. Forever 21, Inc., et al. USDC 8:07-cv-01196-JVS-MLG ("Trovata")*. Extensive discovery of Forever 21 and the Changs was taken during that case, which ultimately settled out of court.

Prior to filing four copyright registrations and filing suit, neither Express nor its counsel performed any investigation about whether the plaids Express produced were actually designed by Express. In fact, Express' counsel did not speak with Mr. Tower in connection with his alleged design of the four plaids before filing copyright applications or the lawsuit.[3] Express' counsel, Frank Colucci, asserted that the plaids were original with no factual basis whatsoever to believe they were.

With respect to the track jacket, Express claimed the design as trade dress, with no evidence of secondary meaning whatsoever. No survey, no evidence of consumer confusion. No advertising, no independent recognition of the design from outside sources and no evidence of consumer recognition of the design based upon exceptional sales. In fact, due diligence would have revealed dismal sales that were less than jackets without the design, a jacket that went on the sale rack after just three months, a jacket whose design elements were so unpopular, that none of these elements were ever repeated in subsequent Express track jackets. MSJ Ruling at 16:2-13.

**B.     Express's "Take No Prisoners" Settlement Posture and Case Strategy.**

In January 2010, before any depositions in this case, Forever 21 attempted to (1) settle the case based on Express's Forever 21's net profits, and (2) streamline the issues in light of the low dollar value of the case. Russ Decl. Exh. A. When

---

[3] Express Statement of Genuine Issues In Opposition to Forever 21's Motion, Filed Under Seal 7/27/2010, at 12 (Express does not dispute that Mr. Tower cannot recall being consulted prior to filing).

2923-003 100929 Mtn Att FeesFinal.doc

4

RUSS, AUGUST & KABAT

Express continued to make outrageous settlement demands,[4] Forever 21 served a Rule 68 Offer of judgment based upon its gross profits with no set off for permissive sales expenses.  *Id.* Exhs. C and D.  Forever 21 also admitted access and substantial similarity, leaving originality of the plaids, secondary meaning of the track jacket and calculation of profits as the only meaningful issues.  Express did not accept the Rule 68 Offer and proceeded to engage in scorched earth depositions and discovery discussed in greater detail below.

### C.    Express's Scorched Earth Discovery Tactics.

On September 15, 2009, the day of the Rule 26 conference of counsel, Express noticed the depositions of Forever 21 founders Do Won Chang and Jin Sook Chang.  As Express's counsel no doubt knew from the Trovata case, and as he discovered at deposition, the Changs were not involved in the purchase of any of the items in issue and knew nothing about the actual facts giving rise to this litigation.  Forever 21 moved to quash on this ground – that motion was denied.

Initial written discovery proceeded on both sides.  In a case involving $75,000 in maximum potential lost profits and where Forever 21 admitted access and substantial similarity, Express sent out 163 document requests, 110 interrogatories and took eleven depositions!!  Russ Decl. ¶ 9.  Of the eleven individuals deposed by Express, only five had even seen any of the garments at issue before this case began.  Of the remaining *six* depositions, four[5] can be seen as nothing more than an attempt to tag Forever 21 as a 'bad' company – none of them related to the actual *facts* of this case.

Express also engaged in extensive irrelevant written discovery:

---

[4] In one letter, Express (1) admitted it could not recover attorneys' fees and (2) demanded a settlement offer requiring Forever 21 to pay $250,000.00 in attorneys' fees plus crippling injunctive relief.  Russ Decl. ¶ 14.

[5] Mr. Chang, Mrs. Chang and Lawrence Meyer – the most time-consuming of the depositions.  Also Tanya Blair.  The remaining two deponents, Donna Hampton and Ann Cadier Kim, were deposed briefly regarding the damages.

5

RUSS, AUGUST & KABAT

- Extensive discovery was taken regarding Forever 21's prior litigation in unrelated cases, and intellectual property cease and desist letters, on some sort of "intent or plan" theory.

- Express sought extensive documentation of Forever 21's intellectual property training programs, again, for what reason Forever 21 cannot ascertain.

Express also demanded to inspect the Forever 21 premises (for what purposes Express never made clear), demanded information regarding prior Forever 21 litigation and cease and desist letters, and demanded information regarding Forever 21's in-house training.

Somewhat surprisingly, Express spent very little time on witnesses with actual percipient knowledge of the facts at issue. The two buyers were deposed in two very short depositions (less than 2 hours each), and Ms. Cadier Kim's deposition lasted little more than an hour. Russ Decl. ¶ 12.

In light of the low dollar value of the case, Express's refusal to litigate efficiently, the narrow scope of actual material facts in dispute, and the legitimate fear, in light of the Trovata Case, that Express's counsel was trolling for information to use in yet another case, Forever 21 resisted irrelevant discovery, resulting in cross-motions for a protective order and to compel discovery. Although Express was able to take much of the discovery it requested in these motions, it became apparent at summary judgment that none of the discovery requested by Express was relevant.

### D.   Forever 21's Discovery Was Narrower and Far More Focused than Express's.

Forever 21's discovery was aimed at actual facts in dispute. Forever 21 took only four fact depositions (one of which, that of Michael Tower, was quoted

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

Russ, August & Kabat

extensively by the Court in its ruling granting Defendants' motions for summary judgment).

Discovery against Express proved difficult.  For example, Express refused to provide sales figure for the track jacket at issue in this case, and only backed down under threat of a motion to compel.  Express refused, on relevance grounds, to produce information regarding sales of comparable garments (e.g. a plain track jacket).  Russ Decl. ¶ 12.  After it became apparent that no real investigation had been undertaken prior to filing the copyright registrations, Forever 21 attempted discovery on Express's counsel (who had filed the copyright registrations) regarding what he knew.  Forever 21 ultimately backed down once counsel made representations that it did not know the facts that constituted the substance of Mr. Tower's deposition at the time the copyright was filed.  Russ Decl. ¶ 13.

## E. Defendants Prevail On Cross-Motions for Summary Judgment.

After the close of discovery, the parties filed cross motions for summary judgment.  It is apparent from the Court's ruling on that motion, Docket no. 168, that it is deeply familiar with the issues raised in those motions.  Forever 21 therefore will not go into details regarding the motions, on which Forever 21 and the other defendants prevailed.  One point must be made, however.  On the trade dress claim, Forever 21 asserted, successfully, that three cases, *Yankee Candle Company, Inc, Walker & Zanger, Inc.,* and *Continental Lab. Prods* ultimately mandated a grant of summary judgment.  These cases were cited extensively in all of Forever 21's papers.  They did not appear *a single time* in Express's.

After the close of briefing, the parties engaged in mediation (which was unsuccessful), and prepared pre-trial filings.  The Court ruled in favor of Defendants on September 3, 2010.  Judgment was entered on September 20, 2010

RUSS, AUGUST & KABAT

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

1   Although self-apparent here, the Forever 21 Defendants qualify as prevailing

2   parties here.  Under Local Rule 54-2.2, a defendant is a prevailing party when the

3   proceeding is terminated by a court-ordered judgment in its favor.

4   **III.   AN AWARD OF FEES ON ALL CLAIMS SHOULD ISSUE**

5   As the prevailing party, Forever 21 is eligible for an award of fees under

6   both the Copyright Act and the Lanham Act.  See 17 U.S.C. § 505; 15 U.S.C. §

7   1117.  However, where a plaintiff's claims are 'inextricably intertwined,' in that

8   they are all based on common allegations, no apportionment is required.  *See Love,*

9   *supra,* 2007 U.S. Dist. LEXIS 97061 at *3 ("These claims were therefore

10   'inextricably intertwined,' and the Court will not apportion costs between them.").

11   As a result, entitlement to fees under *any* authorizing statute warrants an award of

12   *all* fees reasonably incurred.

13   By its own allegations, all of Express's claims are based on the common

14   theory that Forever 21's business model is somehow an unlawful 'shop and copy'

15   practice.  As the Court noted, "copying" was the constant refrain of Express in this

16   case.  MSJ Ruling at 16:22-28.

17   By its own allegations, all of Express's claims are based on the same

18   theories about Forever 21:

19   "Defendants do not have any in-house design department to create

20   their own garments.  Rather . . .Defendants utilize a 'shop and copy'

21   practice whereby they acquire products for sale in their own Forever

22   21 retail stores  . . . Defendants' regular business practice of copying

23   other companies' products and appropriating the intellectual property

24   of others for their own use, gain and profit has led them being named

25   as a defendants in over 50 intellectual property cases in the past seven

26   years."[6]  FAC [Docket No. 35] at ¶¶ 56-57.

27

28

---

[6] This is the only one of those cases to proceed to final judgment – that judgment was in Forever 21's favor.

8

RUSS, AUGUST & KABAT

As made clear in its complaint, its motion to compel, and its summary judgment papers, this case was (at least from Express's point of view) about Forever 21's business model.  Because all of Express's claims are based on this common theory, Forever 21 is entitled to a full award of fees and expenses under each of the relevant statutes, without any apportionment.  Accordingly, as set forth in greater detail below, Forever 21 seeks a total of $496,641.00 in fees and $34,969.43 in expenses through September 28, 2010.

Notwithstanding the foregoing, Forever 21 acknowledges that there are some differences between Express's copyright and trade dress claims.  In addition, an award of fees is separately mandated under Rule 68.  Accordingly, and in an abundance of caution, Forever 21 has endeavored to apportion its fees among the three claims as set forth below.  Forever 21 respectfully submits that a full award of its fees and expenses is warranted both individually and collectively under the relevant statutes.

## IV.   THE COURT SHOULD AWARD FOREVER 21 FEES UNDER THE COPYRIGHT ACT

Defendants are the prevailing parties on Express's copyright claims – this Court granted summary judgment as to those claims in their entirety.  As prevailing parties, Forever 21 is entitled, in the Court's discretion, to an award of "reasonable attorney's fees."  17 USC § 505.  As set forth in the Russ Declaration, Forever 21 has apportioned $235,805.50 in fees through September 28, 2010 to its successful defense of Express's copyright claims.

In determining whether to award fees to a prevailing defendant, the ultimate question is "whether [the] successful defense of the action furthered the purposes of the Copyright Act."  *Love v. Mail on Sunday,* 2007 U.S. Dist. LEXIS 97061 at *15 (C. D. Cal. 2007).  "The primary objective of copyright is not to reward the labor of authors, but to promote the Progress of Science and useful Arts."  *Fogerty*

RUSS, AUGUST & KABAT

*v. Fantasy, Inc., 510* U.S. 517, 527 (U.S. 1994).  As the Supreme Court explained, "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible," and that defendants be encouraged to advance meritorious defenses.  Accordingly, courts have routinely awarded fees to defendants who have presented successful defenses in copyright infringement cases.  See, e.g. *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558-59 (9th Cir. 1886).

At the outset, it should be noted that Express's failure to register its copyrights in a timely manner[7] does not prevent the Court from awarding attorney's fees here.  Obviously, it is not Forever 21's fault that Express failed to register its copyrights. Nimmer on Copyright at 14.10[D][2][b]("when a late-registered work is at issue, the defendant may recover its fees, notwithstanding that the plaintiff in the very same action may not"); *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47 (S.D.N.Y. 1994).

That aside, courts typically consider five factors in determining whether an award of fees furthers the purposes of the Copyright Act: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance consideration of compensation and deterrence." *Love* at *15. Here, these factors weigh in favor of a full award of fees to Forever 21.

As to factor one, Forever 21 completely prevailed on Express's infringement claims, at the summary judgment stage.  Forever 21's high (indeed, complete) degree of success weighs heavily in favor of an award.  *Love* at *16.  The remaining factors likewise militate strongly in favor of an award.  Indeed, the Court's summary judgment rulings establish that, based on facts known to

---

[7] The alleged infringement began in May of 2009 at the latest, and the registrations were filed in June of 2009.  As such, if Express had prevailed, attorney's fees would not be available.

10

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

Express[8] as of the date the complaint was filed, its infringement claims were utterly lacking in any legal or factual basis.  For example, the court found at the summary judgment stage that Express did not have "even a scintilla of supporting evidence" that the plaids were original.  MSJ Ruling at 12:1.  Simply put, had Express or its counsel bothered to consult Michael Tower prior to filing the copyright applications or the complaint in this matter, there never would have been a lawsuit, and Forever 21 would not have been forced to expend hundreds of thousands of dollars in defense.[9]

These facts and findings alone support an award of fees.  However, additional evidence of frivolousness, improper motive, objective unreasonableness and need for compensation and deterrence comes from Express's conduct during this case.  As this court noted, Express simply ignored facts it didn't like (a common thread as to the entire case), and attempted to distract from its factual failings by repeatedly attacking the Defendants alleged method of doing business.  As the Court noted, "Rather than seriously dispute the content of Tower's testimony, Express argues that the burden falls on Defendants to prove that the Plaid copyrights are invalid."  Ruling at 12:16.

Furthermore, based on Mr. Tower's admission that he copied plaids from open sources, it is difficult to imagine what facts the defendants could have discovered from defendants that would impact Express' claims one way or the other.  Yet Express insisted upon wide-ranging discovery against not only the knowledgeable Forever 21 witnesses, but Forever 21's founders, grilling Mr. and Mrs. Chang for four days of meaningless depositions.  At such depositions, counsel

---

[8] In contrast, Forever 21 did not learn these facts until April 2010, ten months after the complaint was filed.

[9] Express also sought statutory damages as to its copyright claims, even though it was undisputed that Express was statutorily precluded from seeking such relief.  Indeed, Express did not even attempt to oppose defendants' motion for summary judgment on this issue.  Express Statement of Genuine Issues in Opposition to Forever 21's Motion for Summary Judgment, filed under seal 7/27/2010 at 46-47.

2923-003 100929 Mtn Att FeesFinal.doc

11

for Express asked such outrageous questions as "Do you know of any company that has such a gargantuan record of lawsuits such as your company over intellectual property". Russ Decl. Exh. B.

The evidence shows that Express never had any intention of sticking to the narrow facts associated with its copyright and trade dress claims. In this $75,000 case, Express' clear motive was to mount a challenge to the way Forever 21 did business. A great deal of Express' discovery was therefore addressed to Forever 21's business procedures, legal compliance procedures, other lawsuits that Forever 21 settled, cease and desist letters received from unrelated third parties and a host of other discovery completely unrelated to Express' copyrights or trade dress. See Russ Decl. Exh. B (listing business model and litigation questions).

In light of the fact that Forever 21, conceded "access" and "substantial similarity", the objective facts demonstrate that Express was motivated by factors other than the specific merits of its central claims. Indeed, it was objectively unreasonable for Express to prosecute a $75,000 damage case and spend hundreds of thousands doing so under circumstances where it could not recover statutory attorney fees. The only way for Express to recover an amount of money that would warrant the continued prosecution of the case was Express' belief that it would be able to prejudice the jury with the introduction of a host of inadmissible alleged bad acts based upon unrelated lawsuits against Forever 21 and its vendors, all of which were settled out of court. In this regard, Express was apparently hoping for punitive damages and an award of attorney fees. The Court is entitled to assume that Express was aware of the foregoing objective facts. In that Express relied upon a recovery of its attorney fees to have this case make financial sense, it is only fair that Forever 21 be permitted to recover its attorney fees in order to deter such conduct in the future.

RUSS, AUGUST & KABAT

1    Finally, the lack of any factual or legal basis for Express's copyright claims,

2    coupled with its failure to meaningfully respond to the testimony of *its own*

3    *designer*, readily demonstrates that Express brought these claims in bad faith.  Had

4    Express engaged in the most cursory of pre-filing investigations, it would or should

5    not have brought this case.  A fee award is appropriate where, as here, a plaintiff's

6    actions have "forced Defendants to incur substantial cost, time and effort to defend

7    a claim for which Plaintiff had no legitimate basis."  *Maljack Prods. v. Goodtimes*

8    *Home Video Corp.*, 81 F.3d 881, 890 (1996) (awarding fees in part to "deter

9    baseless suits"; see also *Love* at 17, (where Plaintiff has "vastly overpled [his

10   claims], thus unnecessarily expanding Defendants' (and [the] Court's) work …"

11   the court awarded fees to "compensate Defendants for the costs incurred in

12   defending [the] action, and to deter Plaintiff from advancing unsupportable

13   claims"); *Allen v. The Ghoulish Gallery,* 2008 U.S. Dist. LEXIS 12238 (S.D. Cal.

14   2008) (awarding fees where the elements of plaintiff's work were not entitled to

15   copyright protection).

16   The copyright case should never have been filed.  Only Express's failure to

17   interview its own employee (whose identity was known to Express's attorney at all

18   relevant times) led to the case being filed.  Under *Fogerty,* an award of attorneys'

19   fees is more than appropriate.

20   **V.    FOREVER 21 IS ENTITLED TO AN AWARD OF ITS FEES**

21   **INCURRED IN DEFENDING AGAINST EXPRESS'S**

22   **BASELESS TRADE DRESS CLAIMS**

23   The Lanham Act authorizes an award of attorney's fees to the prevailing

24   party on a Lanham Act claim "in exceptional cases."  15 U.S.C. § 1117.  In this

25   regard, Courts have held that attorney fees are properly awarded "when a

26   plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith."

27   *Mattel Inc. v. Walking Mt. Prods.,* 353 F.3d 792 (9th Cir. 2003). A trade dress

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

claim is exceptional if it lacks a reasonable factual basis and a prevailing defendant need not prove bad faith.  See *Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1156 (9th Cir. 2002) (stating that the "exceptional case" requirement is met when the case is "either 'groundless, unreasonable, vexatious, or pursued in bad faith'" and finding fees appropriate for false advertising claim) (emphasis in original). Forever 21 has allocated $243,879.95 to the trade dress claim through September 28, 2010.

The analysis of groundlessness and unreasonableness focuses on the objective merits of the case and Courts generally define "groundless or unreasonable" as the equivalent of raising no colorable issue of law or fact. *Pythagoras Intellectual Holdings, LLC v. Stegall*, 2009 U.S. Dist. LEXIS 97115, 12 (C.D. Cal. 2009) (stating same and that award of fees proper where plaintiff "pursued their trademark infringement claim against Defendants without evidentiary support."); *D.S.P.T. Int'l, Inc. v. Nahum*, 2008 U.S. Dist. LEXIS 25405 (C.D. Cal. March 17, 2008) (finding a trademark case without factual support "exceptional").

### A.   As Express Should Have Known From Day One, Its Trade Dress Claim Was Groundless.

The question addressed in this section is whether Express knew or should have known when it filed its lawsuit, that its trade dress claim was entirely lacking in merit.  First, Express was represented by experienced trademark counsel, quite well versed in trade dress and the objective standards to be applied.  Second, common sense would dictate to Express and its counsel, that a track jacket on the market for under four months is extremely unlikely to have garnered consumer recognition of any sort.  Moreover, where, as here, Express did not advertise the track jacket and did not experience any independent third party recognition of the

RUSS, AUGUST & KABAT

jacket as unique or source identifying, there was no reason to believe that consumers would associate the track jacket in issue with Express.

Even the most perfunctory pre-filing investigation would have confirmed that there were no objective facts to support Express's claim that its track jacket was deserving of trade dress protection. For example, a pre-filing investigation would have revealed all of the following, which were noted by the Court:

"The undisputed record establishes that Express sold the Express Jacket for a period of less than 5 months, the last few weeks of which the Jacket spent on the "sale" rack where it was sold at a discount, . . . Express sold less than 17,000 Express Jackets nationwide, an amount substantially lower than the numbers sold of many other Express garments. . . . In fact, a plain Express track jacket . . . was a better seller than the Express Jacket. . . . Express sold just six or seven Express Jackets per store per month."  MSJ Ruling at 16.

All of the above noted facts, among others were easily known to Express prior to filing suit.  Express and its counsel knew that it would have to prove that the track jacket trade dress had secondary meaning.  As discussed in greater detail below, it appears that Express was aware of the paucity of evidence supporting its Lanham Act claim, but urged the court to ignore a host of legal precedent by finding that evidence of copying alone was sufficient for a finding of secondary meaning.  What makes this case exceptional is that no practitioner, skilled in the field, could believe that copying alone would be sufficient to demonstrate secondary meaning.  If that were the case, any product copied would be conferred with trade dress status despite no other indicia of secondary meaning.  No court in this circuit has ever found that copying alone was sufficient to prove secondary meaning.

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

RUSS, AUGUST & KABAT

1   Express's pleadings in connection with the cross-motions for summary

2   judgment strongly suggest that Express never believed it had a legitimate trade

3   dress claim. Defendants sought summary judgment on the grounds that *Yankee*

4   *Candle Company, Inc. v. Bridgewater Candle Company, LLC*, 259 F.3d 25, 38 (1st

5   Cir. 2001); *Walker & Zanger, Inc. v. Paragon Indus,* 465 F.Supp.2d 956, 960

6   (N.D. Cal. 2006) and *Continental Lab. Prods. v. Medax Int'l*, 114 F.Supp.2d 992,

7   1013 (S.D. Cal. 2000) mandated a grant of summary judgment.  These cases were

8   discussed in detail in Forever 21's moving papers.  Express deliberately ignored

9   these cases in its Opposition as well as its moving papers. In nearly eighty pages of

10   summary judgment oppositions and replies, Express does not even attempt to

11   address the standards clearly articulated in the above referenced decisions. The

12   only logical explanation for this conduct is that Express knew it could not meet the

13   standards articulated but insisted on moving forward with its claims, regardless.

14   Under any objectively reasonable metric, based on the facts *known to*

15   *Express prior to filing the complaint*, the trade dress claims had no merit

16   whatsoever.  As such, this case is extraordinary.

### B.    Express Pursued Its Groundless Claim in a Vexatious and Harassing Manner.

19   Not only were Express's claims groundless, it is also readily apparent that

20   these claims were pursued in bad faith.  *Larin Corp. v. Alltrade, Inc.,* 2008 U.S.

21   Dist. LEXIS 65193 (C.D. Cal. 2008). First Express's failure to conduct any

22   investigation regarding its Lanham Act claim – indeed, its failure to even attempt

23   to obtain any consumer testimony or examine relative sales data – is strong

24   evidence that this claim was brought in bad faith.  Moreover, Express fought to

25   prevent discovery of relevant information regarding the existence of secondary

26   meaning in the track jacket, especially the relative sales of the track jacket

27   compared to other items Express sells.

28

RUSS, AUGUST & KABAT

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS

Third, realizing that it could not make its case for secondary meaning on the merits, Express sought to paint Forever 21 as a bad actor, and took extensive discovery (leading to motions to compel) on every instance in which Forever 21 had been sued, every cease and desist letter it has received, an inspection of its premises, repeated questioning of senior executives who had nothing to do with the facts of the case, and discovery into Forever 21's legal training, all for a claim that was worth less than $20,000.[10]

From day one, Express's strategy has been to harass Defendants (particularly the Changs), rather than to seek information relevant to the merits of the case. Express's vexatious behavior, particularly when weighed against the non-existent merits of the case, support a finding that this is an extraordinary case.

In short, Express's Lanham Act claim was groundless, unreasonable, vexatious and brought in bad faith.  In retrospect, it appears that Express had no intention of even attempting to prove up its affirmative case, and instead took every opportunity to simply harass Forever 21 and its owners and tar Forever 21 as a bad actor in the hopes of a runaway jury or massive settlement.  This case thus presents exceptional circumstances that warrant a full award of Forever 21's fees and expenses.

## VI.   IN THE ALTERNATIVE, FOREVER 21 IS ENTITLED TO FEES UNDER RULE 68

Early in the litigation, before costs had escalated, Forever 21 served a Rule 68 offer on Express in the amount of $75,000.  Express failed to respond to this offer.  Under applicable law, Forever 21 is entitled to its reasonable fees incurred after January 25, 2010.  See, e.g. *Baker v. Urban Outfitters, Inc.,* 431 F.Supp.2d 351 (SDNY 2006) (when defendant prevailed after having made a Rule 68 offer, copyright holder required to pay defendant both costs and attorneys' fees incurred

---

[10] Forever 21's *gross* profits on the track jacket were approximately $17,000.  Its net profits were on the order of $10,000.

RUSS, AUGUST & KABAT

after making offer).  Likewise, the presence of the Rule 68 offer enhances the "exceptional case" analysis under the Lanham Act – after January 25, 2010. Because Forever 21 offered its gross profits in connection with its sales of track jacket, the only reason for Express to continue prosecuting it's trade dress claim after that date was to attack Forever 21's business model in an attempt to harass Forever 21 in the hopes of extorting a greater settlement sum or prejudicing a jury with improper references to unrelated cases settled by Forever 21 in previous years.  It is difficult to imagine a more transparent example of a case pursued in bad faith, after a defendant offered to accept a judgment against it for more than the damages that could be established at trial.  By any metric, the Trade Dress case was extraordinary after January 25.

## VII.  ALL FEES REQUESTED SHOULD BE AWARDED

### A.  Apportionment and State Law Claims.

As Forever 21 is entitled to different fees under the copyright act and Lanham Act, it has carefully apportioned its fees, as discussed below and in the declaration of Larry C. Russ.  Forever 21 has also deducted time spent on Express's state law claims, for which Forever 21 is not seeking fees on an independent theory.  This apportionment leads to Forever 21 having expended $235,805.50 on the Copyright claims and $243,879.95 on the Trade Dress claims. Of these amounts, $190,438.05 and $210,742.39 were incurred after the Rule 68 offer was made.

One challenge in apportionment was the fact that, in Forever 21's eyes (and apparently the Court's as well), large portions of Express's discovery had nothing to do with any of the claims asserted in the complaint (e.g. Forever 21's prior litigation).  Since intent is more relevant to trade dress claims and not to copyright claims, Forever 21 has allocated these issues primarily to trade dress (75%).

RUSS, AUGUST & KABAT

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS

### 1. Unfair competition.

Unfair competition, does not give rise to an independent claims for attorneys' fees.  However, as unfair competition is 'substantially congruent' to trade dress, almost no unique time was spent specifically on unfair competition.  The two sole exceptions were 3.5 hours of work on an initial case memorandum and approximately 5% of the time spent on summary judgment and trial work.  These amounts were deducted from the fees sought to the extent the Court considers allocation necessary.

### 2. Specific allocation.

Generally speaking, casework was divided 50/45/5 among copyright and trade dress and unfair competition, and was allocated accordingly.  However, for certain specific tasks, a different breakdown was used due to the nature of the motion or witness.  Those allocations were as follows:

Depositions of Express witnesses:

- M. Tower – 100% copyright
- R. Vaipana and R. Pyles – 100% trade dress
- C. Campbell – 75% trade dress/25% copyrights

Depositions of Defense witnesses:

- D. Klunchoo, I. Saul – 100% Copyright
- J. Kim, J. Shin, A. Cadier Kim, D. Hampton, K. Chu – 50% trade dress/50% copyright
- L. Meyer, D. Chang, J. Chang – 75% trade dress/25% copyright
- T. Blair – 100% trade dress

Experts reports and depositions:

- B. Dietz, R. Oman – 100% Copyright
- T. Maronick, M.l Mazis – 100% Trade Dress
- I. Metchek – 50% Copyright/50% Trade Dress

RUSS, AUGUST & KABAT

2923-003 100929 Mtn Att FeesFinal.doc

19

RUSS, AUGUST & KABAT

1  Motions to Compel/for a protective order – 75% trade dress/25% copyright;

2  Summary Judgment,[11] mediation and trial preparation – 50% copyright, 45%

3  trade dress, 5% unfair competition;

4  Motions to quash subpoenas – 100% trade dress; and

5  Fee motion – 50% copyright/50% trade dress

6  These allocations reflect the nature of the work, and allowed Forever 21 to

7  divide its fees with some precision.

8  **VIII.  FOREVER 21'S FEES WERE REASONABLE**

9  The amount of fees awarded is subject to the court's discretion.  *Twin City*

10  *Sportservice, Inc. v. Charles O. Finley & Co.*, 76 F.2d 1291, 1312-13 (9th Cir.

11  1982).   As discussed below, the time and efforts undertaken by Forever 21's

12  counsel in defending against Express's claims was reasonable and necessary.

13  **A.     The Time Spent by Forever 21's Counsel Was Reasonable.**

14  The time reasonably expended on a matter includes time spent drafting and

15  revising pleadings, meeting with clients, and preparing the case for trial.  *Hensley*

16  *v. Eckerhart,* 461 U.S. 424, 430 n. 4 (1983).   Forever 21's attorneys[12] devoted

17  significant effort and time to achieve the judgment in favor of defendants, as set

18  forth more fully below and in the Russ Declaration.

19  Some of the time required in defense of this action was driven not by its

20  merits – the outcome speaks volumes on that subject – but instead by the manner in

21  which Express litigated the case.  From the day of the Rule 26 meeting of counsel,

22  at which Express notices the depositions of Do Won Chang and Jin Sook Chang

23  before taking any discovery, Express turned what should have been a simple

24

25  [11] Forever 21's moving papers were more heavily weighted to trade dress, but responding to Express's papers, replying to the opposition, and addressing the late-filed Tower Declaration led to the 50/45/5 ratio above.

26

27  [12] The supplier defendants also expended time and money in defending the claims.  However, Forever 21 expended the lion's share of time, conducting all defendant-side discovery in the case, and taking the lead on summary judgment.  Forever 21 understands that Steps and White Owl are filing their own fee motions.

28

2923-003 100929 Mtn Att FeesFinal.doc                    20

RUSS, AUGUST & KABAT

copyright and trade dress claim (albeit a groundless one that should never have been brought in the first place) into a far-reaching inquiry into Forever 21's business model and litigation history. Express and Express alone – is responsible for the fees required to defend this action.

Overall, as of September 28, 2010, Forever 21 expended 1059.8 attorney hours defending this case. For an aggressive federal case resolved at the summary judgment stage, this is by no means remarkable.[13] A summary of relevant facts justifying the time spent by Forever 21's counsel is as follows:

- Express demanded, and took, the depositions of 11 defense-side individuals, and later re-deposed three of them. Forever 21 expended approximatly 106.4 hours on the 11 depositions, and 27.45 on the re-depositions (all inclusive of paralegal and legal assistant hours). Russ Decl Exh G.

- Forever 21 deposed only four Express witnesses, but as they were all located on the East Coast, it necessitated two cross-country trips. Forever 21 expended approximately 58.6 hours (inclusive of paralegal and legal assistant hours) on these depositions.

- Forever 21 and Express ultimately retained a combined five experts, all of whom had to be deposed. Forever 21 expended 135.25 hours (inclusive of paralegal and legal assistant hours) on these depositions and the preparation of its expert reports.

- Express propounded 163 requests for production, 110 interrogatories and 940 requests for admission. Compliance with discovery and taking written discovery proved costly, involving approximately 211.8 attorney hours (inclusive of paralegal and legal assistant hours).

---

[13] By way of comparison, in *Wyatt Tech. Corp. v. Malvern Instruments, Incorporation,* 07-CV-8298 (C.D.Cal. April 28, 2010) the court awarded $1,964,034.30 in fees in a similar copyright and Lanham Act case. Russ Decl. Exh. W.

RUSS, AUGUST & KABAT

- Express's aggressive discovery posture resulted in several discovery motions.  These motions constituted 237 attorney hours (inclusive of paralegal and legal assistant hours).
- Forever 21 filed a very carefully drafted summary judgment motion, and opposed Express's cross-motion.  This motion was ultimately successful, and lead to the resolution of the case in Forever 21's favor.  These motions constituted 207.6 attorney hours and 133 paralegal and legal assistant hours.
- General case management tasks, including initial case research, the answer, general case management, correspondence with opposing and co-counsel expended 178 attorney hours and 178 paralegal and legal assistant hours.  As no one of these tasks proved particularly time-consuming, this category is not further broken down;
- Trial preparation constituted 11 attorney hours and 12 paralegal and legal assistant hours.
- Forever 21 has so far expended 32.9 attorney hours and 51.1 paralegal and legal assistant hours on the fee motion.[14]

As reflected in the detailed time records attached to the Russ Declaration, Forever 21's counsel endeavored to assign tasks to the attorney with the appropriate background and level of experience and not to duplicate work.  Forever 21 used only a two to three person staff on this case.  A single mid-level associate, Nathan D. Meyer,[15] responded to discovery, defended and took a substantial portion of the depositions, did the primary drafting of all motions and pleadings, and preliminary trial preparation, and supervised paralegal[16] and support staff.  A single senior partner, Larry C. Russ,[17] took and defended major depositions and

---

[14] See Russ Decl. Exh. G for a summary of the numbers underlying this narrative.
[15] Robert Gookin filled this role at the very early levels.
[16] Paralegal support was used only at the summary judgment and trial preparation stage.
[17] Steven M. Goldberg filled this role at the very early levels.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS

RUSS, AUGUST & KABAT

supervised and reviewed the work of Mr. Meyer, and took principal responsibility for case strategy.  A third attorney, partner Michael S. Brophy, also contributed to supervision of drafting and legal analysis.

In comparison, Express appears to have employed four attorneys at most relevant times, Frank Colucci, David Dahan, Michael Pampalone and Janice Yoon. Even when combined with counsel for the supplier defendants, defense staffing on this case was comparable to Express's.

The result of defendants' efforts was that defendants prevailed entirely at summary judgment.  This end result could not have been achieved without extensive legal research, factual investigation, discovery and motion practice undertaken by counsel.

## IX.   DEFENDANTS' COUNSEL'S HOURLY RATES ARE REASONABLE

The rates charged by defendants' counsel are reasonable in light of the nature of the work performed, and are consistent with the prevailing rates charged by attorneys with similar backgrounds and experience in the community.

Larry C. Russ is a founding partner at RAK with nearly 30 years of complex litigation experience, with an emphasis in the areas of trademark and copyright, and was and is the primary partner with overall responsibility for defense of this action. RAK charged defendants $600.00 per hour for Mr. Russ's time. *Id* ¶ 28.

Nathan D. Meyer is an associate at RAK and has 5 years of litigation and intellectual property experience.  RAK charged defendants $295.000 per hour from August 1, 2009 until December 31, 2009 and $320.00 per hour from January 1, 2010 to the present for Mr. Meyer's time.[18]

---

[18] Additional information respecting other lawyers and non-lawyer timekeepers that are the subject of this fee request, including legal assistants and litigation support personnel, is set forth in the Russ Declaration at ¶ 29.

23

RUSS, AUGUST & KABAT

Comparable firms employed by Express charge substantially higher rates. Colucci & Umans, counsel for Express, charges $375.00 - $450.00 for partners and $275.00 for associates.   Buchalter Nemer, Express's local counsel, charges $260.00 - $600.00 for partners and $225.00 - $450.00 for associates.   Kirkland & Ellis, Express's local Los Angeles counsel in a prior case, charges in excess of $700.00 for senior partners and upwards of $400.00 for associates.   (Russ Decl. ¶ 28).  Thus, the hourly rates charged by RAK in connection with this action are well within the range charged by other attorneys of similar experience and reputation.

## A. Other Expenses of Litigation.

Each of the statutes and rules identified above also authorizes an award of the prevailing party's costs.  By this motion, defendant seek recovery of its other expenses of litigation in the amount of $34,969.43, which expenses were reasonable and necessary to RAK's successful defense in this case.[19]

These expenses, which are summarized below, are detailed in ¶ 30-37 of the Russ Declaration, and the expense portion of invoices from RAK and third-party providers to defendants associated therewith are attached as Exhibits O-U to the Russ Declaration.

| | |
|---|---|
| Expert Witness Fees[20] | $19,196.00 |
| Computerized Research costs | $6,567.46 |
| Photocopy and Printing costs | $2,648.50 |
| Messenger and Delivery costs | $2,298.28 |
| Travel costs (including airfare, ground | $4,259.13 |

---

[19] Defendants have separately submitted their cost bill for costs recoverable under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  This motion does not seek costs that are sought in defendants' cost bill.

[20] These fees are limited to those relating in at least some way to copyright, and are thus recoverable.  *See Twentieth Century Fox Film Corp. v. Entm't Distrib.,* 429 F.3d 869, 884-85 (9th Cir. 2005) (costs read broadly); *Kourtis v. Cameron,* 358 Fed.Appx. 863, 868 (9th Cir. 2009) (citing *Twentieth Century* and awarding expert fees under the Copyright Act); *Wyatt Tech. Corp. v. Malvern Instruments, Incorporation,* 07-CV-8298 (C.D.Cal. June 17, 2010) (awarding expert fees under the copyright act for experts who did any copyright work).  Russ Decl. Exh. X.

24

transportation, mileage and parking validations)

Mediator fee                                            $925.00

**TOTAL**                                              **$34,969.43**

## X.      CONCLUSION

In this case, Forever 21 did everything possible to efficiently defend the case and even offered to accept a judgment against it for a damage figure that was greater than Express could have established at trial. Forever 21 did that because it knew that the cost of defense would far exceed any potential damage award. The evidence presented above establishes that Express had an agenda far different than winning $75,000 based upon its copyright and trade dress claims. Forever 21 therefore urges the court to exercise its discretion to award it $496,641.00 in attorneys fees and $34,969.43 in expenses for all of the reasons set forth above.


DATED:  September 29, 2010          RUSS, AUGUST & KABAT
                                    Larry C. Russ
                                    Nathan D. Meyer


                                    By:  /s/*Nathan D. Meyer*
                                         Nathan D. Meyer
                                         Attorneys for Defendants

RUSS, AUGUST & KABAT

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATION OF LARRY C. RUSS**

RUSS, AUGUST & KABAT

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2010 the foregoing document was filed electronically via the Court's Electronic Case Filing System (ECF).  Notice of the filing is being served upon all counsel of record automatically through Notice of Electronic Filing.

/s/ Nathan D. Meyer