RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 82768
lruss@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Defendants
Forever 21, Inc., Forever 21
Logistics, Inc., Forever 21
Retail, Inc., Jin Sook Chang,
and Do Won Chang

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS LLC,<br><br>　　　　Plaintiff,<br>　　v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, INC.; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants | Case No. CV09-04514 ODW (VBK)<br><br>**DECLARATION OF LARRY C. RUSS IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS**<br><br>Complaint Filed: June 23, 2009 |

2923-003 100929 Russ Dec Mtn Att Fees.doc

**DECLARATION OF LARRY C. RUSS**

**Declaration of Larry C. Russ**

I, Larry C. Russ, declare as follows:

1. I am an attorney licensed to practice law in the state of California and before this Court, and am a partner at the law firm of Russ, August & Kabat ("RAK"), counsel for defendants Forever 21, Inc., Forever 21 Logistics, Inc., Forever 21 Retail, Inc., Jin Sook Chang, and Do Won Chang (collectively "defendants") in the above referenced matter. I have personal knowledge of the facts state below or know of such facts from my review of the case file, and if called upon to testify, could and would testify to each of them.

**THE SUCCESSFUL DEFENSE AGAINST EXPRESS'S CLAIMS**

2. I have nearly 32 years of experience in complex litigation. I was admitted to the state board of California and the Ninth Circuit Court of Appeals in 1978. I was admitted to the U.S. Supreme Court in 1989. In 1990 I became the founding partner of RAK. I have handled numerous cases concerning a wide array of issues involving, among other things, complex business and/or contractual disputes, business torts, securities, antitrust and unfair competition matters, intellectual property issues, including patent and trademark disputes, in both state and federal courts. I was and am the partner with the overall responsibility for defense of this action.

3. I personally determined and directed all of the significant steps taken by RAK to defend against Express, LLC's ("Express") claims. In that regard, I put together a team of attorneys to assist with the defense in this action. I assumed primary responsibility for all matters related to the defense of this action, and worked with my colleagues to distribute work to lawyers with particular expertise and/or to more junior lawyers, in an effort to efficiently handle certain tasks and effect costs savings. Our defense team was assisted by paralegals and other litigation support during the course of the case as set forth below.

4. In my judgment, and based on my experience in significant litigation matters, the steps taken and services performed by RAK on behalf of defendants in this matter were reasonable and necessary. Moreover, all of the work performed by RAK on defendants' behalf has been dictated and necessitated by the claims and demands made and pursued by Express. As set forth below in more detail, the amount of time spent by RAK attorneys was reasonable and warranted based on the nature of the case, and was necessary by the successful resolution of this matter in defendants' favor.

5. Express filed its initial complaint on June 23, 2009 asserting causes of actions for 1) Copyright Infringement; 2) Trade Dress Infringement; 3) Unfair Competition in Violation of California Business & Professions § 17200; and 4) Common Law Unfair Competition. Express filed its First Amended Complaint ("FAC") as a matter of right on December 4, 2009

6. Defendants answered the original complaint on August 21, 2009 and the FAC on December 21, 2009.

7. On September 15, 2009, the day of the pre-conference meeting of counsel, Express noticed the depositions of Do Won Chang and Jin Sook Chang. Forever 21 moved to quash – that motion was denied.

8. On January 15, 2010, before any depositions had taken place, Forever 21 admitted access and substantial similarity, thus narrowing the scope of discovery. Attached hereto as Exhibit "A" is a letter from myself to Frank Colucci, dated January 15, 2010, asking to narrow discovery in light of these admissions. Express declined to narrow discovery upon receipt of this letter.

9. Express ultimately propounded 163 requests for production, 110 interrogatories and 940 requests for admission, and deposed 11 individuals.

10. Express's discovery requests included detailed requests for information regarding prior litigation and cease and desist letters unrelated to this case, and a request to inspect Forever 21's premises (the purpose was never made

clear).  Express also requested cost backup out of proportion to the deductions for profits claimed by Forever 21.  This resulted in a discovery dispute and cross-motions to compel and for a protective order in March of 2010.

11.  Attached hereto as Exhibit "B" are representative samples of discovery requests and deposition questions that were asked by Express and that had nothing whatsoever to do with this case.  I have personally confirmed that these quotations are accurate.

12.  The parties collectively took more than twenty fact and expert depositions, eight of which were on the East coast.  Express focused primarily on those witnesses *without* knowledge of the facts of the case.  For example, the two Forever 21 designers, Derrick Klunchoo and Jenny Kim, took less than two hours each, and Ann Cadier Kim, who had knowledge of Forever 21's profits, took approximately an hour.  In contrast, the owners of Forever 21, Do Won Chang and Jin Sook Chang, were deposed for two days each.  Also, Express refused to provide sales figure for the track jacket at issue in this case, and only backed down under threat of a motion to compel.  Express refused, on relevance grounds, to produce information regarding sales of comparable garments (e.g. a plain track jacket).

13.  After the deposition of Michael Tower, it became apparent that the actual facts of the creation of the Express plaids were materially inconsistent with those stated in the copyright applications and registrations.  As such, in order to ascertain whether there had been fraud on the copyright office, we served a deposition notice on Frank Colucci, who was both trial counsel and the person who signed the copyright registrations.  Mr. Colucci resisted this discovery by filing a motion to quash in New York, and in that motion asserted he was unaware of any facts inconsistent with those stated in the copyright applications.  Based on those statements, Forever 21 was satisfied that the scienter requirement of fraud was not

met, and thus there was no claim for copyright fraud. Forever 21 thus withdrew its discovery requests as against Mr. Colucci.

14. Express did not make any settlement demands until January of 2010, at which point it demanded Forever 21's gross profits, plus attorneys' fees, plus certain injunctive relief well beyond the scope of what was theoretically attainable at trial. Forever 21 offered its net profits (approximately $30,000.00-$40,000.00). Express's final offer, in late January 2010, was for $325,000.00, which would have represented Forever 21's gross profits ($75,000.00) plus $250,000.00 in fees. This was well in excess of conceivable attorneys' fees as of that date, and as stated to Express, its failure to timely file copyright registrations barred it from recovering any fees at all. Attached hereto as Exhibit "C" are representative settlement communications from Forever 21.

15. On January 25, 2010, Forever 21 served a Rule 68 offer for $75,000.00, constituting gross profits plus costs. A copy of that offer is attached hereto as Exhibit "D." Forever 21 received no response to this offer. Indeed, it received no settlement communications at all from Express between January 25, 2010, and the required settlement offer made in July of 2010.

16. Defendants jointly filed a motion for summary judgment with Steps Apparel Group, Inc. ("Steps") also a Defendant in this action, against Express. The motion was based on the following: 1) Express's second claim for relief for trade dress infringement fails because Express cannot demonstrate that the Express Track Jacket had attained secondary meaning in the garment's appearance; 2) Express's first claim for relief for copyright infringement fails because Express cannot meet the requirement of originality for the Express Plaid Designs at issue; 3) Express's third and fourth claims for unfair competition cannot succeed because the trade dress claims cannot succeed; 4) Express cannot recover statutory damages on its copyright claims because the alleged infringement pre-dated the registrations; and 5) Express cannot recover against Steps for garments with which

Steps had no involvement. These claims were supported by 97 undisputed material facts. RAK attorneys spent substantial time performing necessary legal research, analyzing deposition testimony and documents obtained in discovery, preparing declarations, and drafting the briefs and supporting materials.

17.     Once RAK received the opposition of Express, we spent extensive time analyzing it's brief, declarations and prepared a reply in support of Defendants motion for summary judgment.

18.     Express filed a motion for summary judgment, that contained a brief, 91 uncontroverted facts, and a declaration with 43 exhibits. RAK attorneys spent substantial time performing necessary legal research, analyzing deposition testimony and documents obtained in discovery, preparing declarations, and drafting briefs and supporting materials in opposition to Express' motion for summary judgment.

19.     This case was originally scheduled for trial in early October. Therefore, in August and September 2010, the parties prepared all of the requisite pretrial filings and exchanges, including joint and disputed jury instructions, joint exhibit lists, contentions of fact and law, joint witness lists, the pretrial conference order, and a joint statement of the case.

## ATTORNEYS' FEES

20.     In managing this litigation, I endeavored to assign tasks to the attorney with the appropriate background and level of experience, and not to duplicate work. As set forth below, associates focused on discovery, legal research, preliminary drafting of documents and supervision of paralegal and litigation support. Partners and senior associates supervised and reviewed the work of the more junior attorneys, and took principal responsibility for case strategy, higher level drafting, legal analysis and deposition preparation and depositions, and trial preparation.

21. Attached hereto as Exhibit "E" are the statements from RAK that reflect the time entries and descriptions for which defendants seek an award of fees. As part of my duties as the partner with overall responsibility for this action, I reviewed and approved each statement prepared by RAK for defendants before it was sent to Defendants.

22. As set forth in Exhibit "F," RAK has also performed work that will be billed at $27,159.02 for the period September 1, 2010 through September 28, 2010.

23. The statements that were issued to the client are based on time recorded by the individual attorneys, paralegals, and other support personnel performing services, including myself. As the person assigning and overseeing the particular tasks involved, as well as reviewing the statements before they are issued, I believe that the statements accurately reflect the time spent by me and others performing the various tasks reflected on the statements.

24. I have apportioned each of the claimed time entries (and resulting fees) among the three claims for which defendants seek their fees: 1) trade dress; 2) copyright infringement; and 3) unfair competition. This apportionment was based upon my knowledge of the work associated with those time entries, and a good faith effort to properly allocate the effort among the three claims. This apportionment with the percentages for each task is listed as follow:

1) Depositions of Express witnesses:
- Michael Tower – 100% copyright
- Renjith Vaipana and Randy Pyles – 100% trade dress
- Colin Campbell – 75% trade dress/25% copyrights

2) Depositions of Defense witnesses:
- Derrick Klunchoo, Isaac Saul – 100% Copyright
- Jenny Kim, Joseph Shin, Ann Cadier Kim, Donna Hampton, Key Chu – 50% trade dress/50% copyright

- Lawrence Meyer, Do Won Chang, Jin Sook Chang – 75% trade dress/25% copyright
- Tanya Blair – 100% trade dress

3) Experts reports and depositions:

- Bernard Dietz, Ralph Oman – 100% Copyright
- Thomas Maronick, Michael Mazis – 100% Trade Dress
- Ilse Metchek – 50% Copyright/50% Trade Dress

4) Motions to Compel/for a protective order – 75% trade dress/25% copyright;

5) Summary Judgment, mediation and trial preparation – 50% copyright, 45% trade dress, 5% unfair competition; and

6) Motions to quash subpoenas – 100% trade dress;

7) Fee motion – 50% copyright/50% trade dress

25. I believe that all of RAK's services billed to defendants in this case have been necessarily incurred and reasonably performed, particularly given the nature and breadth of Express's claims, and its aggressive tactics.

26. The following identifies the attorneys who worked on this matter -for more than ten hours through August 31, 2010, the total hours spent by each attorney that are the subject of defendants' fee request (i.e., in defense of the claims that are subject of the request), and a general description of the work performed by each attorney.

| NAME | HOURS | SCOPE OF TASKS |
|---|---|---|
| Larry C. Russ | 286.30 | General case strategy, preparing for and taking key depositions, supervising and editing all pleadings |
| Michael S. Brophy | 56.0 | Review and revise pleadings at the summary judgment and motion to |

|  |  | compel stages |
|---|---|---|
| Nathan D. Meyer | 580.3 | Initial drafts and and revisions after October 2009.  Took and prepared for depositions.  Initial attorney on all case tasks after October 2009. |
| Robert F. Gookin | 80.1 | Initial attorney on all case tasks prior to mid-October 2009 |

27. The total fees a) billed by RAK to defendants from the commencement of the case through September 28, 2010, for the work described above, and that is being sought by defendants in this motion is $496,641.00. Although all fees stemmed from Express's underlying "shop and copy" theory, I have allocated fees.  As is also set forth in more detail in Exhibit "G," I have apportioned these fees among the claims as follows: $ 235,805.50 to defense of the copyright claims and $ 243,879.95 to defense of trade dress claims, with the remaining amount allocated to unfair competition.  Exhibit G also contains approximations of the amounts spent on each specific category of tasks based on a review of the bills and an assessment of the statements.

28. I believe the rates charged by RAK are reasonable in light of the experience of each of the attorneys who worked on this matter:

- RAK charged defendants $600.00 per hour for my time.  A true and current copy of my biography, which is accurately summarizes my education and experience, is attached hereto as Exhibit "H."
- Michael S. Brophy is a partner at RAK and has over 10 years of litigation, intellectual property, trust and real estate litigation and entertainment law experience.  A true and correct copy of Mr. Brophy's biography which accurately summarizes her education and experience is attached hereto as Exhibit "I"  RAK charged defendants $350.00 per hour for Mr. Brophy's time.

|   |   |
|---|---|
| 1 | • Nathan D. Meyer is an associate at RAK and has over 4 years of litigation and intellectual property experience. A true and correct copy of Mr. Meyer's biography which accurately summarizes his education and experience is attached hereto as Exhibit "J." RAK charged defendants $295.000 per hour from August 1, 2009 until December 31, 2009 and $320.00 per hour from January 1, 2010 to the present for Mr. Meyer's time. |

- Nathan D. Meyer is an associate at RAK and has over 4 years of litigation and intellectual property experience. A true and correct copy of Mr. Meyer's biography which accurately summarizes his education and experience is attached hereto as Exhibit "J." RAK charged defendants $295.000 per hour from August 1, 2009 until December 31, 2009 and $320.00 per hour from January 1, 2010 to the present for Mr. Meyer's time.

- Robert F. Gookin is an associate at RAK and has over 2 years of experience in litigation and intellectual property. A true and correct copy of Mr. Gookin's biography which accurately summarizes his education and experience is attached hereto as Exhibit "K." RAK charges defendants $295.000 per hour from August 1, 2009 until December 31, 2009 and $350.00 per hour from January 1, 2010 to the present for Mr. Gookin's time.

- Steven M. Goldberg is a partner at RAK and has over 30 years of litigation experience. A true and correct copy of Mr. Goldberg's biography which accurately summarizes his education and experience is attached hereto as Exhibit "L." RAK charged defendants $600.00 per hour for Mr. Goldberg's time.

- David R. Gabor is a partner at RAK and has over 20 years of complex commercial litigation, intellectual property and entertainment law experience. A true and correct copy of Mr. Gabor's biography which accurately summarizes his education and experience is attached hereto as Exhibit "M." RAK charged defendants $525.00 per hour for Mr. Gabor's time.

- Judith L. Meadow is a partner at RAK and has over 30 years of litigation experience. A true and correct copy of Ms. Meadow's biography which accurately summarizes her education and experience

is attached hereto as Exhibit "N." RAK charged defendants $350.00 per hour for Ms. Meadow's time.

- I can state with certainty that Express's prior local counsel, Kirkland & Ellis, has rates considerably higher than RAK's.

29. RAK attorneys were assisted by certain paralegal and litigation support personnel (whose assistance on the case varied over time depending on their availability) on various tasks, including: preparing documents for production, retrieving copies of cases and statutes, cite-checking legal authority in briefs, reviewing the case file and production sets for specific documents and factual information, managing and organizing case files, including database management, preparing exhibits for filings (including making appropriate redactions per instructions by the attorneys), assisting in deposition preparation, assisting with the filing and service of pleadings and motions, and assisting with preparation for trial, including preparation of trial exhibits, the exhibit list, and deposition designations. The chart below shows the fees RAK charged defendants for the paralegal and other litigation support personnel who worked on this matter for which defendants are seeking recovery in their Motion for Attorneys' Fees (except those persons who worked less than five hours). These fees are also detailed in Exhibits "E" and "F."

| NAME | HOURS | RATE/HR | SCOPE OF TASKS |
| --- | --- | --- | --- |
| Lee Hutcherson | 104.7 | $130.00-$1185.00 | Case management work and preparation of summary judgment papers |
| Nikeisha Wilson | 11.7 | $135.00-$160.00 | Preparation of fee motion and trial preparation |
| Lupe C. Diaz | 53.9 | $40.00-$135.00 | Case management |
| Erika Arambula | 7.7 | $40.00 | Case management when other |

| | | | assistants out |
|---|---|---|---|
| KeiAna T. Sanderlin | 248.3 | $40.00-$135.00 | Primary legal assistant on the case; processed nearly all filings |

## COSTS

30. The Bill of Costs concurrently filed herewith, to the best of my information and belief, accurately sets forth the costs incurred by defendants in this action that are ordinarily recoverable pursuant to Local Rule 54-4. These costs are not sought in this motion.

31. Rather, by this motion, defendants are requesting other litigation expenses they incurred, as authorized by 17 U.S.C. § 505, 15 U.S.C. § 1117, and Fed. R. Civ. P. 68. These expenses incurred through litigation expenses were reasonable and necessary to RAK's successful defense of defendants in this case. True and correct copies of the invoices submitted to defendants by RAK, which provide the evidentiary support for the expenses described in paragraphs 32-37, are attached collectively as Exhibits "E" and "F."

## EXPERT WITNESS FEES

32. As described above, Defendants and Express combined, designated five individuals as experts in this matter, necessitating the retention and expense of experts and creation of reports and rebuttal experts for which defendants incurred costs. Such costs were reasonably and necessarily incurred in my judgment. The invoices listed below relate only to the three Forever 21 experts that related to the copyright claims: (1) Ilse Metchek, who was an expert in plaids; (2) Bernard Dietz, Forever 21's copyright rebuttal expert, and (3) Chris Sprigman, who was an expert at the motion to compel stage. True and correct copies of the invoices submitted by experts retained on behalf of defendants, are attached as Exhibit "O."

| EXPERT WITNESS | INVOICE DATE | AMOUNT |
|---|---|---|

RUSS, AUGUST & KABAT

| Imagemakers (Expert Ilse Metchek) | December 3, 2009 | $1,200.00 |
|---|---|---|
| Imagemakers (Expert Ilse Metchek) | April 15, 2010 | $2,883.10 |
| Imagemakers (Expert Ilse Metchek) | May 4, 2010 | $900.00 |
| Imagemakers (Expert Ilse Metchek) | May 7, 2010 | $2,400.00 |
| Imagemakers (Expert Ilse Metchek) | June 25, 2010 | $2,100.00 |
| Imagemakers (Expert Ilse Metchek) | June 10, 2010 | $1,464.00 |
| Bernard Dietz | June 1, 2010 | $4,948.90 |
| Chris Sprigman | April 9, 2010 | $3,300.00 |
|  | **GRAND TOTAL** | **$19,196.00** |

## COMPUTERIZED RESEARCH COSTS

33.     Express's claims raised numerous legal issues which, among other things, were the subject of the motion to compel, motion for summary judgment, and practice generally, all of which contributed to the successful resolution of this case in defendants' favor.  Counsel's use of Lexis and Pacer computerized legal research services greatly aided in the preparation of these motions and the evaluation of Express's claims, and permitted far more efficient research than manual research in books.  As set forth in detail in the expense portions of RAK's statements to defendants that are collectively attached as Exhibits P and Q, defendants incurred $6,567.46 in computerized research costs ($6,530.42 for Lexis and $37.04 for Pacer).

## PHOTOCOPY AND PRINTING COSTS

34.     Defendants incurred photocopy costs (totaling $2,648.50) for, among other things, the production of documents, copies of documents produced by Express, documents copied in connection with depositions (both for preparing witnesses and in the taking of depositions), copying of voluminous documents

associated with the motion practice in this action, and copying of necessary sets of the substantial volume of trial exhibits in preparation for trial. As set forth in detail RAK's statements that are collectively attached as Exhibits "E" and "F," defendants incurred a total of $2,648.50 in these photocopying and printing costs.

## MESSENGER AND DELIVERY COSTS

35. As set forth in detail in RAK's messenger invoices attached hereto a Exhibit "R," defendants incurred $2,298.28 in messenger, document delivery, and Federal Express costs. These costs were necessarily incurred in connection with the filing of documents of the Court, delivery of courtesy copies to chambers for those materials that were filed electronically, service of Express's counsel, and transmittal of non-paper physical exhibits to motions (actual shorts and jacket designs).

## TRAVEL COSTS

36. As noted above, this matter involved numerous depositions on the east coast. In addition, travel was required for witness preparation (for depositions), hearings and for an initial client meeting. As set forth in detail in the expense reports are collectively attached as Exhibit "T," defendants incurred $4,259.13 in travel costs (including airfare, car rental and other ground transportation and parking validations)

## MEDIATOR COSTS

37. The parties engaged in unsuccessful private mediation in this case. The Forever 21 Defendants incurred $925.00 as defendants' share of the mediator's fee in this case.

## ADDITIONAL MATERIALS REFERENCED IN THE MOTION

38. Attached hereto as Exhibit "V" is a true and correct copy of an article entitled, "A Nationwide Sampling of Law Firm Billing Rates" from the National Law Journal, dated December 8, 2008.

39. Attached hereto as Exhibit "W" is a true and correct copy of the fee award in *Wyatt Tech. Corp. v. Malvern Instruments, Incorporation,* 07-CV-8298 (C.D.Cal. April 28, 2010).

40. Attached hereto as Exhibit "X" is a true and correct copy of the expense award in *Wyatt Tech. Corp. v. Malvern Instruments, Incorporation,* 07-CV-8298 (C.D.Cal. June 17, 2010).

41. Forever 21 requested the number of Express track jackets sold via interrogatory. Express objected to this request on relevance grounds, and only backed down after a meet and confer on a motion to compel. Attached as Exhibit "Z" is a true and correct copy of the initial discovery response regarding number of track jackets.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of September, 2010 at Los Angeles, CA.


/s/Larry C. Russ
Larry C. Russ

# CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2010 the foregoing document described as **DECLARATION OF LARRY C. RUSS IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS** was filed electronically via the Court's Electronic Case Filing System (ECF). Notice of the filing is being served upon all counsel of record automatically through Notice of Electronic Filing.

/s/ Nathan D. Meyer