1  HOLLAND & KNIGHT LLP
   Theresa W. Middlebrook   (State Bar 89709)
2  E-mail:  theresa.middlebrook@hklaw.com
   James W. Michalski (State Bar 177015)
3  E-mail:  james.michalski @hklaw.com
   Tara L. Cooper (State Bar 239018)
4  E-mail:  tara.cooper @hklaw.com
   633 West Fifth Street, 21st Floor
5  Los Angeles, California  90071-2040
   Tel.   (213) 896-2400
6  Fax.  (213) 896-2450
   Attorneys for White Owl Clothing, Inc.
7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  EXPRESS, LLC,                    )  Case No. CV09-04514 (ODW)(VBKx)
                                     )
12              Plaintiff,           )  **DEFENDANT WHITE OWL**
                                     )  **CLOTHING, INC.'S POINTS &**
13       v.                          )  **AUTHORITIES IN SUPPORT OF**
                                     )  **ITS MOTION FOR ATTORNEYS'**
14  FOREVER 21, INC.;  et al.        )  **FEES AND FULL COSTS**
                                     )
15              Defendants.          )  [Notice of Motion, Declarations of
                                     )  Theresa W. Middlebrook and Isaac
16                                   )  Saul filed herewith; Proposed Order
                                     )  lodged herewith]
17                                   )
                                     )  **Hearing**
18                                   )
                                     )  **Date: November 8,  2010**
19                                   )  **Time: 1:30 p.m.**
                                     )  **Courtroom: 11**
20                                   )
                                     )  Complaint Filed:  June 23, 2009
21                                   )  First Amended Complaint Naming
                                     )  This Defendant Filed:   Dec. 7, 2009
22                                   )
23  _____

24

25

26

27

28

# **TABLE OF CONTENTS**

Page No.

I.      RELIEF SOUGHT AND INTRODUCTION ......................................1

II.     CASE BACKGROUND ......................................................1

III.    ENTITLEMENT TO ATTORNEYS' FEES  USING THE
        LODESTAR CALCULATION, AND FULL COSTS ......................3

        A.    The Lodestar Amount Is the Presumed Correct Amount of
              Attorneys' Fees on Federal Claims ...............................3

        B.    The Lodestar Amount Is the Presumed Correct Amount for
              State Claims ....................................................4

IV.     ENTITLEMENT TO ATTORNEYS FEES.............................................4

        A.    WHITE OWL IS ENTITLED TO ITS ATTORNEYS' FEES
              UNDER THE COPYRIGHT ACT ...............................4

              1.    Factor 1 - The Action Was Frivolous  On The Merits. ....6

              2.    Factor 2 - Express's Bad Faith Motivation In Filing this
                    Suit. .......................................................8

              3.    Factors 3 -  Express's Copyright Claim Of Ownership of
                    Rights in the Express Plaid Designs Was Objectively
                    Unreasonable. ...........................................10

              4.    Factor 4 -  The Need To Deter Baseless Suits Such as
                    This One and Compensate White Owl for Its Fees and
                    Costs ......................................................12

              5.    Factor 5 - Success on the Merits...............................12

        B.    WHITE OWL IS ENTITLED TO ITS ATTORNEYS' FEES
              AND COSTS UNDER THE LANHAM ACT ........................13

              1.    The Exceptional Case Standard.....................................13

              2.    This Is An Exceptional Case Under The Lanham Act. ...13

        C.    THECALIFORNIA UNFAIR COMPETITION LAW CLAIMS
              ARE "INEXTRICABLY INTERTWINED" WITH THE
              LANHAM ACT CLAIM AS PLED BY EXPRESS. ..............16

V.      DETAILED ANALYSIS OF WHITE OWL'S LEGAL BILLINGS..17

        A.    White Owl's  Attorney Hourly Rates Are Reasonable .............17

        B.    The Total Amount Of Hours Expended By White Owl
              Attorneys Through August 31, 2010 Is Reasonable................17

        C.    White Owl Is Entitled To Fees Expended On This Motion as
              Well. ......................................................................17

        D.    White Owl Is Entitled To Full Costs ..............................18

VI.     CONCLUSION .............................................................19

i

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allen v. The Ghoulish Gallery*
    Civil No. 06-CV-371 NLS, 2008 WL 474394 (S.D. Cal. Feb. 19, 2008) ...............................10

*Camacho v. Bridgeport Fin., Inc.*
    523 F.3d 973 (9th Cir. 2008) ........................................................................................4, 17

*e..g., Columbia Pictures Industries, Inc. v. Miramax Films Corp.*
    11 F.Supp.2d 1179 (C.D. Cal., 1998) ...............................................................................9

*Fantasy, Inc. v. Fogerty*
    94 F.3d 553 (9th Cir. 1996) ("*Fogerty II*") .........................................................................5

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*
    499 U.S. 340 (1991).........................................................................................................11

*Fogerty v. Fantasy, Inc.*
    510 U.S. 517 (1994)("*Fogerty I*") ..................................................................................5, 6

*Gracie v. Gracie*
    217 F.3d 1060 (9th Cir. 2000) ....................................................................................16, 17

*Grove v Wells Fargo Financial California, Inc.*
    606 F.3d 577 (9th Cir. 2010) ..........................................................................................18

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)......................................................................................................3, 4

*Lahiri v Universal Music and Video Distribution Corp.*
    606 F.3d 1216 (9th Cir. 2010) ........................................................................................6, 7

*Les Shockley Racing, Inc. v National Hot Rod Ass'n*
    884 F.2d 504 (9th Cir. 1989) ............................................................................................6

*Maljack Productions, Inc. v. GoodTimes Home Video Corp.*
    81 F.3d 881 (9th Cir. 1996) ...........................................................................5, 6, 10, 12

*Mattel, Inc. v. Walking Mtn. Prods.*
    353 F.3d 792 (9th Cir. 2003) ..........................................................................................13

*Morales v. City of San Rafael*
    96 F.3d 359 (9th Cir. 1996), *as amended*, 108 F.3d 981 (9th Cir. 1997) ...................................4

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008) ........................................................................................3

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Twentieth Century Fox Film Corp. v. Entertainment Distributing*
  429 F.3d 869 (9th Cir. 2005) ........................................................5, 18, 19

*United States v. Laerdal Mfg. Co.*
  73 F.3d 852 (9th Cir.1995) ........................................................9

*Vital Pharms., Inc. v. American Body Building Prods.*
  510 F.Supp.2d 1043 (S.D. Fla. 2007) ........................................14

*Wolfe v. Nat'l Lead Co.*
  272 F.2d 867 (9th Cir. 1959) ........................................................13

CALIFORNIA CASES

*Graham v. DaimlerChrysler Corp.*
  34 Cal. 4th 553 (2004) ........................................................4

FEDERAL STATUTES

15 U.S.C 1117(a) ........................................................13

15 U.S.C. §1117 (a) ........................................................15

17 U.S.C §201 ........................................................7

28 U.S.C. §1920 ........................................................18

Lanham Act, 15 U.S.C. §1117 ........................................................1

§ 505 of the Copyright Act, 17 U.S.C. §505 ........................................1, 4

CALIFORNIA STATUTES

California Business & Professions Code §17200 *et seq.* ........................16

OTHER AUTHORITIES

1974 U.S.C.C.A.N. 7132 ........................................................13

Federal Rule of Civil Procedure 68 ........................................................1

Local Rule 7-3 ........................................................1

Local Rule 54-12 ........................................................1

*Love v. The Mail on Sunday*
  No. CV 05-7798 ABC ........................................................10, 11, 12, 16

Rule 11 ........................................................6

iii

DEF. WHITE OWL CLOTHING, INC'S  POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND COSTS

## I.   RELIEF SOUGHT AND INTRODUCTION

Defendant White Owl Clothing, Inc. ("White Owl") seeks an award of its attorneys' and paralegal fees through August 31, 2010, in the total sum of $143,148, and costs in the sum of $4,282.7, as well as the fees being incurred in this motion of an estimated $27,000, plus additional estimated costs of $500, subject to proof, all in light of its status as prevailing party after this Court granted its Motion for Summary Judgment on all counts against it in Plaintiff Express LLC's ("Express") First Amended Complaint (the "Complaint").  This Motion is made under Section 505 of the Copyright Act, 17 U.S.C. §505, and the Lanham Act, 15 U.S.C. §1117, Federal Rule of Civil Procedure 68, and Local Rule 54-12.

This Motion is based upon the Notice of Motion and Motion filed herewith, the accompanying Declarations of Theresa W. Middlebrook and Isaac Saul, all documents on file in this action, and such further or additional evidence or arguments that may be presented before or at the time of the hearing on this Motion.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 22, 2010, at 2:00 p.m., and at which the parties did not reach an agreement to resolve any of the issues presented by this Motion.

## II.   CASE BACKGROUND

Express and Forever 21 are commercial competitors, clothing retailers that sell clothes similar in style and targeted customers.  Defendants White Owl were suppliers to Forever 21. This case concerned five articles of clothing sold at Forever 21 stores for a few months in 2009, four men's shorts in four different plaid fabrics and one jacket ("the Forever 21 Jacket").  Express claimed to owns the copyrights in the four plaids ("the Express Plaid Designs") and trade dress rights in its earlier released version of the jacket ("the Express Jacket").  Express sued Forever 21 on June 23, 2009. Those parties engaged in extensive discovery,

1

---

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

1  including production of thousands of documents, in addition to the production by

2  Forever 21 in its Initial Disclosures of business records reflecting the sources of

3  each of the five garments.  Those documents reflected that White Owl was the

4  source of only two of the five garments, and that its co-defendant, Steps, newly

5  added as well, was the source of the other three garments.

6         Yet, despite having learned of White Owl's limited involvement, on

7  December 7, 2009, Express added White Owl as a named defendant to its First

8  Amended Complaint, asserting that it was liable for the manufacture of and sale by

9  Forever 21 *of all five of these garments*.   White Owl's counsel repeatedly

10  requested that White Owl be dismissed from two copyright charges in the First

11  Cause of Action, and the Second through Fourth Causes of Action in their entirety,

12  and each time Express refused, for no sound legal reason nor any valid facts. [See,

13  IV.B.2. *infra],*   In other words, *even if Express had held four valid copyrights*

14  *and valid trade dress rights it claimed*, White Owl would not and could not be

15  liable to Express for two of the copyright claims in the First Cause of Action or

16  under the Second, Third and Fourth Causes of Actions.  Because of Express's

17  refusal to narrow its case against White Owl to claims consistent with White Owl's

18  uncontested factual involvement, White Owl was constrained to defend against all

19  four copyright claims, the trade dress claim, and the two California state law unfair

20  competition claims, up through and including a significant portion of the

21  preparation for trial.

22         White Owl and its co-defendants each moved for summary judgment

23  arguing that Express:  (1) held no enforceable copyrights (primarily addressed in

24  White Owl's Motion), (2) held no trade dress rights, and (3) given its lack of trade

25  dress rights, and under long standing precedent in this Circuit, that Express held no

26  California State law unfair competition claims (primarily addressed in Forever 21

27  and Steps' Motion).

28
2

**DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS**

1   Although Forever 21 and Steps were able to work in parallel in this litigation

2   because their factual and legal positions were virtually aligned, White Owl's

3   position was significantly different - it needed to conduct its own discovery, and

4   file its own separate Motion for Summary Judgment. As one example of this

5   distinction, Forever 21 and Steps both admitted that they had legal access to the

6   Express Plaid Designs as well as the Express Jacket prior to making the claimed

7   infringements. White Owl, on the other hand, never saw the Express Plaid Designs

8   being sold by Express (and never saw the Express Jacket as well)  Rather, it was

9   offered these plaids in Hong Kong, where the plaids were being treated as public

10  domain fabric designs.  We now know, from the testimony of Michael Tower, that

11  Tower also treated plaids as public domain.

12   On September 3, 2010, the Court issued an Order that granted White Owl's

13  Motion for Summary Judgment, primarily directed to the copyright claim, its co-

14  defendants' Motion for Summary Judgment primarily directed to the trade dress

15  claim ,  and denied Express's Motion for Summary Judgment.  (Docket # 168,

16  hereafter "MSJ Order")  In sum, White Owl prevailed on all claims in this case.

17  **III.   ENTITLEMENT TO ATTORNEYS' FEES  USING THE LODESTAR**

18  **CALCULATION, AND FULL COSTS**

19  **A.   The Lodestar Amount Is the Presumed Correct Amount of**

20  **Attorneys' Fees on Federal Claims**

21   A fee applicant is entitled to fees once it properly establishes an entitlement

22  to an award and then documents the appropriateness of hours expended and the

23  hourly rates charged.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Where, as

24  here, the moving party (White Owl) demonstrates entitlement to fees, the District

25  Court is to determine the reasonable amount of fees by calculating the "lodestar,"

26  which is the number of hours reasonable spent multiplied by a reasonable hourly

27  rate.  *Id.* at 433; *accord, Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th

28

3

1    Cir. 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008).

2    While the lodestar is presumed to provide an amount for reasonable fees, the

3    District Court may make adjustments after considering the following factors:  (1 )

4    the time and labor required; (2) the novelty and difficulty of the questions

5    involved; (3) the skill requisite to perform the legal service properly; (4) the

6    preclusion of other employment by the attorney due to acceptance of the case; (5)

7    the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations

8    imposed by the client r the circumstances; (8 ) the amount involved and the results

9    obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

10   undesirability of the case; (11) the nature and length of the professional

11   relationship with the client; and (12) awards in similar cases." *Morales v. City of*

12   *San Rafael,* 96 F.3d 359, 363-64 & n.8 (9th Cir. 1996), *as amended*, 108 F.3d 981,

13   981 (9th Cir. 1997) (quotation omitted).  This lodestar calculation applies to the

14   federal law claims under the Copyright Act and the Lanham Act.  *Hensley*, 461

15   U.S. at 433.

16        **B.    The Lodestar Amount Is the Presumed Correct Amount for State**

17              **Claims**

18        Similarly, to the extent the court may seek to differentiate work on the state

19   law claims, the lodestar methodology of calculating appropriate attorneys' fees also

20   applies to the California State law claims of unfair competition in this case.

21   *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004).

22   **IV.    ENTITLEMENT TO ATTORNEYS FEES**

23        **A.    WHITE OWL IS ENTITLED TO ITS ATTORNEYS' FEES**

24              **UNDER THE COPYRIGHT ACT**

25        Under §505 of the Copyright Act, "the Court in its discretion, may allow the

26   recovery of full costs by or against any party….[T]he Court may also award a

27   reasonable attorney's fee to the prevailing party as part of the costs."  "An award of

28

4

attorneys' fees to a prevailing party that further the underlying purposes of the Copyright Act is reposed in the sound discretion of the district courts." *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 883 (9th Cir. 2005) (quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996) ("*Fogerty II*")(internal quotations omitted).  In awarding fees, "the district court may consider the following factors:  (1) frivolousness; (2) motivation; (3) objective unreasonableness both in the factual and the legal components of the case; (4) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.*  (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)("*Fogerty I*")).  Besides the *Fogerty I* factors, the court may also consider (5) "the degree of success on the merits."  *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996).  The ultimate issue is whether a successful defense of the action "furthered the purposes of the Copyright Act."  *Fogerty  I,* 510 U.S. at 527.  Where, as here, claims are "if not frivolous, at least factually unreasonable," attorney fees are appropriate.  *Maljack Productions, Inc.,* 81 F.3d  at 890.

As to an award of attorneys' fees under the Copyright Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike[.]"  Fogerty I, 510 U.S. at 534 (rejecting prior dual standard).  District courts routinely award fees to prevailing defendants in copyright cases.  See, e.g., Fogerty II, 94 F.3d at 558-59 (collecting cases).  As the Supreme Court has stated, "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible."  *Fogerty I,* 510 U.S. at 527.  "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement."  *Id.*  "Thus, a successful defendant of a copyright infringement action may further the

5

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright" and be entitled to fees.  *Id*

Turning to each of the five factors identified by *Fogerty I* and *Maljack Productions*, for the court to consider on an attorneys' fees motion, each of those factors weighs in favor of an award to White Owl for the reasons that follow.

### 1.  Factor 1 - The Action Was Frivolous  On The Merits.

A claim is frivolous if it is "subjectively unreasonable", i.e. one where "a competent attorney after reasonable investigation could not have determined that a well-founded basis in fact and in law or a good faith argument for extension of law supported the filing." *Les Shockley Racing, Inc. v National Hot Rod Ass'n*, 884 F.2d 504, 510 (9th Cir. 1989) (defining "frivolous" for Rule 11 purposes).

Just three months ago, in  *Lahiri v Universal Music and Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010), the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") affirmed an award of attorney's fees by this very court, CV 02-8330 ODW Docket # 515, January 14, 2009, at page 5, in which the Ninth Circuit found conduct very similar to that in this case constituted "recklessness" and "bad faith" in pursuing a frivolous copyright claim.   In *Lahiri*, Lahiri's attorney filed an amended complaint that asserted "a contrived United States copyright claim created by registration of a 21-year old composition …" 606 F.3d at 1221.  Focusing on the conduct at issue, the court found "[p]ursuit of a copyright claim without inquiring whether Lahiri composed *Thoda* for hire would be reckless under the laws of either India or the United States."  *Id*. (noting "frivolous" nature of copyright claim asserted without any prior investigation).

Here, as discussed below, Express pursued four contrived United States copyright claims creating by registering fabric designs it did not own - designs that were copied from others and may, or may not, have been changed by its designer.

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

1
2

### a. Express Failed To Conduct Any Investigation of Originality or Authorship

3   More specifically, Express filed its four copyright applications, claiming it

4   owned the copyrights, and then filed this lawsuit, without any investigation as to

5   whether it even owned the copyrights.  The owner of copyright at the outset is, *and*

6   *can only be*, the original author.  17 U.S.C §201.  Express did not bother to engage

7   in any investigation whatsoever to determine whether Express's employee-designer

8   was the original author.   MSJ Order, at 12:n.8.

9   Second, it was *particularly* frivolous for Express not to interview its

10  designer of the Express Plaid Designs to confirm facts underlying ownership when

11  *the sole purpose for Express filing the copyright registrations was to commence*

12  *federal court litigation*.  The claim of originality of the Express Plaid Designs and

13  ownership by Express would obviously be the central defense in the copyright

14  litigation - which indeed it was.  In fact, it was this very issue that proved

15  dispositive in this litigation.  To move right into litigation without even verifying

16  the facts upon which the legal claim was based is inexplicable.  It is also reckless.

17  *Lahiri*, 606 F.3d at 1221 (affirming this court's award of attorneys' fees for

18  recklessness in, *inter alia*, failure to conduct any pre-litigation investigation).

19
20

### b. Express Ignored The Obvious Lack of Distinctive Appearance Of Any Of the Four Plains.

21  In addition to its failure to make any inquiry, Express also chose to ignore a

22  key fact apparent from the appearance of each of the plaid fabrics:  each fabric was

23  nothing more than common plaid weave pattern in a classic color combination.

24  The non-distinctive appearance alone of each of the plaids should have

25  immediately raised questions in the minds of Express and its counsel that

26  confirmation of creation and originality was vital.  Even before the devastating

27  testimony of Mr. Tower, and based solely upon the appearance of the plaids, White

28

7

1  Owl asserted as an affirmative defense that Express's claimed copyrights in the

2  plaids were simply invalid. (White Owl's Answer, Docket No.58, at 9:22-23).

3         **c.      Suing White Owl For Infringement  of Two**

4                  **Copyrights Where Express Knew White Owl Was not**

5                  **the Source was Frivolous.**

6         Even had Express held  valid copyrights, it was frivolous for Express to sue

7  White Owl for copyright infringement of two different copyrights when Express

8  already knew that White Owl was not the source of the infringements.  By the time

9  Express filed its copyright claims against White Owl, it had already seen all the

10 business records produced by Forever 21, and taken nine depositions.  It had been

11 provided ample information in documents and testimony demonstrating that White

12 Owl had no involvement whatsoever in two of the claimed infringing garments.

13        **2.      Factor 2 - Express's Bad Faith Motivation In Filing this**

14                 **Suit.**

15        Express was not attempting to enforce legitimate rights in this litigation but

16 to punish, and perhaps destroy, a vendor to a commercial rival.  Shortly after

17 Express named White Owl, White Owl's counsel, Theresa Middlebrook, attempted

18 to extricate White Owl from the litigation by offering to provide the one item that

19 Express's counsel claimed it wanted - information about Forever 21.   Express

20 refused to even discuss that possibility until after White Owl retained litigation

21 counsel, entered a responsive pleading, and thus White Owl had committed itself

22 to the expense of defending against this lawsuit.   Indeed, Express's counsel

23 repeatedly refused to even discuss the matter even though, prior to filing an

24 Answer,  it was already clear that Express would not be entitled to statutory

25 damages, or to attorneys fees, and any recoverable damages were probably

26 nonexistent.  (After discovery, it was clear that the best recovery Express could

27

28
                                          8
─────────────────────────────────────────────

1  obtain, if it prevailed, would be around $9,000)  Declaration of Theresa W.

2  Middlebrook ("Middlebrook Decl.") at ¶ 5, 6 and **Exhibits A, B and C**.

3       Besides the de minimis nature of the monetary damages Express might be

4  able to recover, Express would not even be able to obtain an injunction this case.

5  Early on, all of White Owl's allegedly infringing product had already passed

6  through commerce, production was over, and would not be resumed.  That clothing

7  season had passed.  There was no possible, much less reasonable, basis upon which

8  a court might even enter an injunction. *See, e..g., Columbia Pictures Industries,*

9  *Inc. v. Miramax Films Corp.*, 11 F.Supp.2d 1179 (C.D. Cal., 1998) (voluntary

10  cessation of allegedly unlawful conduct renders a case moot if there is no

11  reasonable expectation that the wrong will be repeated) (citation omitted); *see also*

12  *United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 854 (9th Cir.1995) ("A district

13  court cannot issue an injunction unless 'there exists some cognizable danger of

14  recurrent violation.' ") (*citing* W.T. Grant, 345 U.S. at 633, 73 S.Ct. 894)).

15       One undeniable result of  Express filing these unfounded claims against

16  White Owl was burdening this former Forever 21 vendor with legal bills.

17  Declaration of Isaac Saul ("Decl. Saul"), at ¶¶s 6, 7 and 8. As the court is certainly

18  aware, legal bills incurred in litigation are often driven by the tactics of the other

19  party, which force expenses to skyrocket.  Such bad faith tactics certainly occurred

20  in this case, with Express's lack of cooperation, failure to appear at a document

21  production,  gamesmanship with evidence, stonewalling (Middlebrook Decl., ¶ 12,

22  **Exhibits I, J, K, and L** thereto) and taking unfounded factual and legal positions,

23  which caused this Court to issue its Order granting Summary Judgment.

24       The only possible and reasonable motive for filing this action was

25  accomplish the deleterious effects it would have on White Owl, a supplier of its

26  rival and competitor, Forever 21 - forcing it to defend a meritless case and incur

27  legal defense costs and fees largely out of its control.  Express, a far larger

28

9

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

1   company, as plaintiff, could control the pace of the litigation and force the legal

2   bills to skyrocket.  Indeed, large legal bills in this litigation pose a significant fiscal

3   threat to the operations of this small company.  Sadly, Express has just filed a

4   Notice of Appeal with the Ninth Circuit, which means that the legal bills will

5   continue to pile onto White Owl.

6          As there can be no legitimate monetary or injunctive relief motivation

7   behind this lawsuit, the only possible motivation was the anti-competitive goals of

8   damaging or bankrupting White Owl with significant legal costs, and deterring

9   potential vendors from doing business with Express's rival, Forever 21, as well.

10  Such non-legitimate motivations, i.e., "using the action to secure a competitive

11  advantage," militates strongly in favor of an award of attorneys fees.  *See, e.g.,*

12  *Maljack Productions*, 81 F.3d at 889 (rejecting appeal of attorneys' fees award and

13  rejecting losing party's claim it was "using only legitimate competitive effort" to

14  reach the marketplace first).

15          **3.**     **Factors 3 -  Express's Copyright Claim Of Ownership of**

16                     **Rights in the Express Plaid Designs Was Objectively**

17                     **Unreasonable.**

18          A claim is objectively unreasonable when the facts necessary to prevail do

19  not exist or the law does not support the result sought by the claimant.  *See, e.g.,*

20  *Love* , 2007 WL 27099775 at *5-6 (copyright claims were not objectively

21  reasonable because facts demonstrated among other things that plaintiff did not

22  own copyrights at issue, and plaintiff presented "no evidence whatsoever" that

23  defendants distributed infringing material); *Allen v. The Ghoulish Gallery,* Civil

24  No. 06-CV-371 NLS, 2008 WL 474394, at *7 (S.D. Cal. Feb. 19, 2008)) (awarding

25  fees to defendant where the individual elements of plaintiff's work were not

26  entitled to copyright protection).

27

28

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

1     Express's entire copyright claim was also objectively unreasonableness, both
2   factually and legally from the outset, for the reasons discussed in the MSJ Order
3   and those identified above at Section IV A.1 above   Moreover, even if the
4   frivolous nature of the copyright claims against White Owl were not clear at the
5   filing of this case, that certainly became clear once Express's designer Michael
6   Tower testified.  As the Court noted in its Order, Designer Tower testified, clearly
7   and unequivocally:  (1) each of the four plaids was based on an identifiable
8   preexisting plaid, (2) Tower had no recollection of what the preexisting designs
9   looked like or in what medium they were represented, (3) Tower is unable to
10   identify a single difference between any plaid and its source, and (4), Express
11   discarded and failed to keep any record of any o the preexisting designs Tower
12   used as a basis for the plaids.   MSJ Order 10:15-11:11.  As this Court found,
13   Express had "no proof whatsoever" that it made any particular changes to the
14   source material, let alone change sufficiently creative to warrant copyright
15   protection.  *Id.*

16     Filing a case with "no proof whatsoever" to prove one's claim is
17   unquestionably objectively unreasonable.  *See, e.g., Love* , 2007 WL 27099775 at
18   *5-6.   It was objectively unreasonable - both factually and legally - for Express to
19   refuse to acknowledge the substance of Tower's clear testimony as this testimony
20   leads to the unavoidable result under that Express (1) held no presumption of
21   validity, and (2) had no way it could ever prove originality of any sort - a critical
22   element of its copyright case under all circumstances.  *Feist Pubs., Inc. v. Rural
23   Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (holding that to prove a claim of
24   copyright infringement, Express must establish "(1) ownership of a valid
25   copyright, and (2) copyright of constituent elements of the work that *are*
26   *original*");  *Id.* at 345 (holding claim to a preexisting work; and holding derivative
27   works must "possess] at *least some minimal degree of creativity*.") (emphasis

28

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

added).  The objective unreasonableness of Express's case also supports an award of attorneys' fees here.

### 4.     Factor 4 -  The Need To Deter Baseless Suits Such as This One and Compensate White Owl for Its Fees and Costs

Where, as here, a plaintiff's litigation conduct has "forced [d]efendants to incur substantial cost, time and effort, to defend a claim for which [p]laintiff has no legitimate basis" a fee award is also appropriate "to deter baseless suits." *Maljack Prods.*, 81 F.3d at 890; accord *Love* , 2007 WL 27099775 at *5-6 (awarding fees because where plaintiff's case was "over pled" and "copyright claims contributed to the bloat of this case.").  It is also appropriate to "compensate [d]efendants for the costs incurred in defending the action."  *Love,* 2007 WL 2709975 at *17.

This case was not properly investigated before it was filed.  The First Amended Complaint was over pled and mis-pled, with plaintiff and its counsel ignoring facts and disregarding controlling law.  This conduct began with the outset of the case and continued throughout the case until the most recent filings by Express.  In sum, Express simply failed to investigate the matter and then ignored the clear testimony of its designer, Michael Tower.

Express also engage in significant litigation misconduct by way of refusing to dismiss as against White Owl, as well as the discovery misconduct, which prolonged this litigation and drove up costs exponentially for White Owl.  Middlebrook Decl., ¶¶ 8, 9, 10 and 12.  This constitutes a case where an award of attorneys' fees and full costs are warranted for their deterrent effect and as compensation to White Owl for costs and fees it needlessly incurred.

### 5.     Factor 5 - Success on the Merits.

White Owl has obtained complete success on the merits.  This also factors strongly in favor of an award of fees and full costs in its favor.

12

1
2

**B.**   **WHITE OWL IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS UNDER THE LANHAM ACT**

3

**1.**   **The Exceptional Case Standard**

4 The Lanham Act permits recovery of attorneys fees for a prevailing

5 defendant in "exceptional cases."  15 U.S.C 1117(a).  Fees are properly awarded to

6 a prevailing defendant where  "a plaintiff's case is groundless, unreasonable,

7 vexatious, *or* pursued in bad faith."  *Mattel, Inc. v. Walking Mtn. Prods.*, 353 F.3d

8 792, 816 (9th Cir. 2003) (emphasis added).  *See also Wolfe v. Nat'l Lead Co.*, 272

9 F.2d 867 (9th Cir. 1959).  One of the express purposes for Congress amending the

10 Lanham Act to provide for attorneys' fees was to protect defendants from

11 unfounded suits brought solely for purposes of harassment.  1974 U.S.C.C.A.N.

12 7132, 7136.  A case is "groundless" or "unreasonable" where, objectively, there is

13 no colorable issue of fact or law raised.  *Pythagoras Intellectual Holdings*, 2009

14 WL 3245000, at *2 (C.D. Cal. Oct. 5, 2009).

15

**2.**   **This Is An Exceptional Case Under The Lanham Act.**

16 Express has admitted that at the time of the filing of the FAC, it was "aware

17 that White Owl had provided Forever 21 with "at least" two of the infringing

18 garments in issue."  Middlebrook Decl., ¶ 7, **Exhibit D**. Looking beyond this artful

19 and careful phrasing,  the converse is true as well. Express had no evidence at the

20 time of filing of the FAC, on December 7, 2009, that White Owl provided any of

21 the remaining three garment, including the Forever 21 Jacket, the gravamen of its

22 Lanham Act claims.  In fact, Express had in its possession Forever 21's Initial

23 Disclosures, which reflected in its documents that *the entire run* of the Forever 21s

24 Jacket came from Steps, and Steps only. Middlebrook Decl., ¶ 7, **Exhibit E**

25 Express had multiple opportunities to dismiss the improperly named White

26 Owl from the Second, Third and Fourth Causes of Action.

27
28

13

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

1    On February 9, 2010, even prior to filing its Answer,  White Owl requested

2    that Express dismiss it from the Second, Third and Fourth Causes of Action which

3    were all grounded solely on the existence of the Forever 21 Jacket.  Express

4    refused. Middlebrook Decl., ¶ 8, **Exhibit F.**

5    On June 29, 2010, White Owl repeated its request for dismissal.  This was

6    after discovery was completed and confirmed that White Owl had no  involvement

7    whatsoever with the Forever 21 Jacket, and was an entity completely unrelated to

8    Steps.  The discovery demonstrated White Owl was nothing more than a former

9    vendor to Forever 2. On June 30, 2010, Express refused this request for illogical

10   and circulate reasons, i.e., "*since the motion for summary judgment only deals with*

11   *liability and not damages*". Middlebrook Decl., ¶ 9, **Exhibit G**.

12   On or about August 30, 2010, during the preparation for trial, and after

13   seeing that certain of Express's pre-trial documents included absolutely no

14   proposed admitted facts that would link White Owl to the Forever 21 Jacket,

15   counsel for White Owl orally asked again for this dismissal.  Express refused

16   again. Middlebrook Decl., ¶ 10, **Exhibit H**.

17   White Owl filed its Motion for Summary Judgment on the Second, Third

18   and Fourth Causes of Action, relying on the fact that it had no involvement in the

19   Forever 21 Jacket.  Docket No. 90-1, at 21:1 to 22:2.  Express's Opposition

20   (Docket No. 144, at 18:11-19:11) did not even dispute White Owl's factual or legal

21   positions, nor cite any law that would justify naming White Owl in those counts.

22   Although the Court dismissed the Second through Fourth Causes of Action for

23   Express's failure to demonstrate any trade dress rights, and thus did not reach the

24   question of whether White Owl should be dismissed, dismissal of White Owl on its

25   asserted grounds would have been the obvious result.  Trademark infringement

26   claims without evidentiary support are "objectively groundless and unreasonable.

27   *See Vital Pharms., Inc. v. American Body Building Prods.*, 510 F.Supp.2d 1043,

28

14

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

1048-49 (S.D. Fla. 2007) (finding bad faith when plaintiff failed to produce sufficient evidence on any element required to prove trademark infringement).  *See also, Pythagoras Intellectual Holdings, Inc.*, 2009 WL 3245000, at *2 (finding no colorable issue of law or fact raised and awarding fees under the Lanham Act. 'Thus, the Court finds that this case is an "exceptional case" that merits the award of reasonable attorneys fees and costs under 15 U.S.C. §1117 (a).")  Likewise, as there are no colorable issues of fact or law raised by Express - which did not dispute White Owl's factual or legal positions - this case qualified as an "exceptional case' warranting an award of attorneys' fees.

During the meet and confer on this Motion with counsel for Express, counsel for Express was asked for the grounds upon which he felt White Owl was not entitled to recover its attorneys fees under the Lanham  Act.  Express took the position that the trade dress portion of this case was simply a routine trade dress commercial dispute, and thus was in no way exceptional  for purposes of Section 1117(a) of the Lanham Act.

It is respectfully submitted that one would be hard pressed to find a more "exceptional" case than one where the plaintiff (1) sues a defendant knowing that the defendant is not the source of the infringements; (2) knows that another party was the sole source of the infringements; (3) knows that there is no relationship or connection between the defendant and the actual source; (4) has not even pled alter ego or any liability shifting claims or theories; and (5) refuses three separate times to dismiss the defendant for varying circular and illogical reasons.   Fees and costs should be awarded under the Lanham Act here.

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

### C.   THE CALIFORNIA UNFAIR COMPETITION LAW CLAIMS ARE "INEXTRICABLY INTERTWINED" WITH THE LANHAM ACT CLAIM AS PLED BY EXPRESS.

The Court should not adjust the fee award downward on the California state law claims of unfair competition.  It is true that there is no independent statutory entitlement for the California law claims of unfair competition under California Business & Professions Code §17200 *et seq*.  But where, as here, the state law claims for unfair competition are so "inextricably intertwined" with the fee-generating claims under the Lanham Act by the manner in which they were pled by Express, the Court can and should decline to make any downward adjustment for time spent on the state law unfair competition claims:

> Defendants also prevailed on Plaintiff's claim for violation of
> California Business  & Professions §17200…. By definition, th[is]
> claim[] [is] predicated on other claims:  specifically, [it] arose out of
> Plaintiff's claims for violations of the right of privacy, copyright
> infringement, and violations of the Lanham Act.  Accordingly, the
> Court finds that Plaintiff's claim for §17200 violations [] [is]
> inextricably intertwined with Plaintiff's claims warranting an award of
> fees.  The Court there will not apportion fees on these claims.

*Love v. The Mail on Sunday,* No. CV 05-7798 ABC (PJWx), 2007 WL 2709975 at *7 (C.D. Cal. Sept. 7 2007) .

Similarly here the §17200 claim and its California state law common law equivalent are "inextricably intertwined" with Express's claims for violation of the Lanham Act.  Thus the Court here should similarly decline to apportion fees on these claims and order a reduced fee award.  "Thus, despite the general rule of apportionment, in a specific case apportionment might not be required 'if it is impossible to differentiate between the work done on claims.'"  *Gracie v. Gracie*,

16

217 F.3d 1060, 1070 (9th Cir. 2000) .  While a district court should make "*some*
attempt" to adjust the fee award to reflect an apportionment of fee-generating and
those not fee-generating, no such attempt is required if the court "finds the claims
are so inextricably intertwined that even an estimated adjustment would be
meaningless." *Id.*  (adopting standard in case involving Lanham Act and non-
Lanham Act claims).

## V.      DETAILED ANALYSIS OF WHITE OWL'S LEGAL BILLINGS

### A.      White Owl's  Attorney Hourly Rates Are Reasonable

White Owl was represented in this case primarily by Senior Counsel Theresa
W. Middlebrook, with significant assistance from Associate Tara Cooper , and
Senior Counsel James Michalski. In addition, targeted research and assistance was
conducted by Senior Counsel Anthony Masciello, Partner Richard E. Lyon, II, and
Associate Kristina Azlin.  The hourly rates of each of the attorneys, which are set
forth in **Exhibit M** to the right of each name, when compared to the market rates
within this district, and particularly Los Angeles, are reasonable.  Middlebrook
Decl. at ¶24 and **Exhibit O**) .

### B.      The Total Amount Of Hours Expended By White Owl Attorneys Through August 31, 2010 Is Reasonable

White Owl's attorneys have expended, through August 31, 2010, 386 hours
in litigating this matter and obtaining summary judgment.  Middlebrook Decl.,
**Exhibit M**. The attorneys working these hours are identified in the Middlebrook
Decl., at ¶21. The calculation showing the fees charged to White Owl is at Decl.
Middlebrook Decl. at ¶ 22

### C.      White Owl Is Entitled To Fees Expended On This Motion as Well.

A prevailing party is also entitled to recovery for attorneys' fees incurred in
seeking fees. *Camacho*, 523 F.3d at 981.  Preparation a competent Motion for
Attorneys Fees is tremendously complex and time consuming,.  Here, White Owl

17

1   will be billed an additional approximately $22,000 in fees for time expended on

2   this initial fee Motion and anticipates $5,000 for its reply.  Middlebrook  Decl. ¶22,

3   **Exhibit M**.  Given that these fees are also recoverable, the Court should include

4   the amount of $27,000 in the total of attorneys' fees awarded, subject to proof

5   when billings are finalized.

6        **D.    White Owl Is Entitled To Full Costs**

7        Reasonable out-of-pocket expenses normally charged to a client may be

8   recoverable even if not covered by 28 U.S.C. §1920, which provides the basis for

9   the costs awarded by the Court Clerk.  The term "reasonable attorneys fees"

10  includes separately billed litigation expenses following the prevailing practice in

11  that legal community.  *Grove v Wells Fargo Financial California, Inc*., 606 F.3d

12  577 (9th Cir. 2010);  *See also Twentieth Century Fox Film Corp. v. Entertainment*

13  *Distribution,* 429 F.3d 869, 885 (9th Cir. 2005) ("Thus, we hold that district courts

14  may award otherwise non-taxable costs, including those that lie outside the scope

15  of §1920, under §505 [of the Copyright Act].").

16       Here, the costs incurred by White Owl through August 31, 2010 beyond the

17  scope of §1920 include the following in litigating this matter, total **$4,282.73**, as

18  reflected on Decl. Middlebrook, **Exhibit P**:

19       $1,703.28 in computerized research

20       $ 808.15 in photocopying and document processing costs

21       $ 237.30 in messenger and delivery costs

22       $ 609.00 in telephone and facsimile charges

23       $ 925 in mediator fees

24       Costs incurred after that date have not yet been received but are expected to

25  total **$500.00**, made up of the following:

26       $ 348.96 in computerized research

27       $ 60.00  in photocopying and document processing costs

28

18

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

$ 40.00  in messenger and delivery costs

Middlebrook  Decl. at ¶ 26.  The prevailing practice in the legal community is to charge each of these costs.  They therefore can and should awarded as part of the Order awarding fees and full costs in this matter.  *Twentieth Century Fox Film Corp.*, 429 F.3d at 885.

## VI.    CONCLUSION

For the foregoing reasons, it is respectfully requested that this motion should be granted in its entirety and the Court should award attorneys fees in the amount of $143,148, plus $27, 000 for a total of $170,148, and costs in the amount of $4,731.69.

Dated: October 1, 2010                       Respectfully submitted,

                                             HOLLAND & KNIGHT LLP


                                             By:_____/s/_____
                                                  Theresa W. Middlebrook, Attorneys for
                                                  Defendant White Owl Clothing, Inc.

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN
SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 633 West Fifth Street, 21st Floor, Los Angeles, California 90071.

On October 1, 2010, I served the document described as DEFENDANT WHITE OWL CLOTHING, INC.'S POINTS & AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND FULL COSTS on the interested parties in this action as follows:

[X] (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and General MSJ Order 07-08, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date.  It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system.  The transmission was reported as complete and without error.

 X    I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 1, 2010, Los Angeles, California.

/S/
Tara L. Cooper

#9810027_v2

# 9810027_v2.

20

DEF. WHITE OWL CLOTHING, INC'S POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES AND FULL COSTS