COLUCCI & UMANS
FRANK J. COLUCCI (*Pro Hac Vice*)
fcolucci@colucci-umans.com
DAVID M. DAHAN (*Pro Hac Vice*)
ddahan@colucci-umans.com
218 East 50th Street
New York, New York 10022
Telephone:   212.935.5700
Facsimile:    212.935.5728

BUCHALTER NEMER
Russell L. Allyn (SBN:  143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400


Attorneys for Plaintiff,
EXPRESS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive, <br><br> Defendants. | **Civil Action No. 2:09-cv-04514-ODW-VBK** <br><br> **PLAINTIFF EXPRESS, LLC'S OPPOSITION MEMORANDUM TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES** <br><br> [Declaration of Frank J. Colucci in Support of Plaintiff's Opposition to Defendants' Motions for Attorneys' Fees filed concurrently herewith] <br><br> Hearing Date: November 8, 2010 <br> Time: 1:30 p.m. <br> Courtroom: 11 <br><br> HONORABLE OTIS D. WRIGHT, II |

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 2

III.  DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS'
      FEES UNDER THE COPYRIGHT ACT ................................................... 4

      A.   A Grant of Summary Judgment to Defendants Does Not by
           Itself Warrant a Grant of Attorneys' Fees ....................................... 5

      B.   Express's Claims Were Neither Frivolous Nor Objectively
           Unreasonable……………………………………………….............5

           1.   Access and Substantial Similarity Were
                Admitted In This Case. ........................................................ 6

           2.   Plaintiff's Copyrightability Argument Was Not
                Groundless.……………………………………………..7

                a.   Only "Pre-existing Works" as Defined Under the
                     Copyright Act Must Be Identified, Not Inspiration,
                     Therefore Express Reasonably Believed Its
                     Copyright Registrations Would Be Entitled to a
                     Presumption of Validity..............................................7

                b.   The Evidence of Copyrightability Presented Was
                     Sufficient to Support a Finding of Copyrightability
                     Without a Presumption…………………………..12

                c.   The Evidence of Copyrightability Presented Was
                     Sufficient to Support a Finding of
                     Infringement…………………………………………..15

      C.   Express's Motivations Were Proper ................................................ 16

      D.   An Award of Fees Will Not Further the Goals of the
           Copyright Act. ................................................................................. 16

**IV.    ATTORNEYS' FEES SHOULD NOT BE AWARDED UNDER
THE LANHAM ACT BECAUSE EXPRESS'S TRADE DRESS
CLAIM WAS REASONABLE AND PROPER ....................................... 17**

**V.    EXPRESS'S CLAIMS ARE NOT 'INEXTRICABLY INTERTWIND'
AND ANY AWARD OF FEES SHOULD BE
APPORTIONED.………………………………………………..........21**

**VI.    RULE 68 IS INAPPLICABLE TO THIS CASE..................................... 22**

**VII.   ALTERNATLY, DEFENDANTS' ATTORNEYS' FEES ARE
UNREASONABLE AND SHOULD BE REDUCED IN VIEW OF
THEIR ABUSIVE DISCOVERY PRACTICE INCLUDING
SEVERAL UNSUCCESSFUL MOTIONS……………………………23**

**A.    Forever 21's Costs Should Be Denied as Overhead And/Or
Inconsequential Establishing Its Defense………………………..24**

**VIII.  CONCLUSION ………………………………………..…………25**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*America, Inc. v. Darwin*,
   No. SA CV 04-1346 AHS (ANx),
   2006 U.S. Dist. LEXIS 96069 (C.D. Cal. Apr. 17, 2006) ...................................... 5

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979 ...........................................................................20

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009)………………………………………..........18

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006)…………………………………......23

*Berry v. Deutsche Bank Trust Co. Ams.*,
   632 F. Supp. 2d 300 (S.D.N.Y. 2009)…………………………………......6

*Bibbero Systems, Inc. v. Colwell Systems, Inc.*,
   893 F.2d (9th Cir. 1990) ............................................................................ 5, 6

*B & H Mfg. Co., Inc. v. Bright*,
   No. CV F 01-6619 AWI LJO,
   2006 U.S. Dist. LEXIS 12249 (E.D. Cal. Mar. 3, 2006)…………......................25

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
   376 F.3d 615 (6th Cir. 2004)…………………………………………………17

*Boisson v. Banian, Ltd.*,
   273 F.3d 262 (2d Cir. 2001)…………………………………......................15

*Chirco v. Gateway Oaks, LLC*, 2007
   U.S. Dist. LEXIS 20229, at (E.D. Mich. Mar. 22, 2007)........................................ 5

*CG Roxane LLC v. Fiji Water Company LLC*,
   No. C-07-02258 RMW, 2008 U.S. Dist. LEXIS 84919
   (N.D. Cal. Oct., 2008)…………………………………………………......21

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,
  870 F.2d 512 (9th Cir. 1989) ................................................................................ 19

*Classic Media, Inc. v. Mewborn*,
  532 F.3d 978 (9th Cir. 2008)…………………………………………...........17

*Clicks Billiards Inc. v. Sixshooters Inc.*,
  251 F.3d 1252 (9th Cir. 2001) ..................................................................... 18, 20

*Delta Air Lines, Inc. v. August*,
  450 U.S. 346 (1981)…………………………………………………………...22

*Eicher v. National Accident Ins. Underwriters, Inc.*,
  No. 97-16132, No. 97-16262, 1999 U.S. App. LEXIS 5407
  (9th Cir. Mar. 25, 1999)…………………………………………………………22

*Ets-Hokin v. Skyy Spirits Inc.*,
  323 F. 3d. 763 (9th Cir. 2003)…………………………………………………..15

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996)…………………………………………...........17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)................................................................................ 7, 12, 13

*Fogerty v. Fantasy, Inc*.,
  510 U.S. 517 (1994)…………………………………………………………….5

*Gibson Tex, Inc. v. Sears Roebuck & Co*
  11 F. Supp. 2d 439 (S.D.N.Y. 1998) .......................................................... 8

*Gracie v. Gracie*,
  217 F.3d 1060 (9th Cir. 2000)…………………………………………...21

*Harajuku Lovers, LLC v. Forever 21, Inc.*,
  No. 07-cv-03881-ODW-SS (C.D. Cal.)…………………………………………16

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d (9th Cir. 2008), ................................................................................. 5

*Invision Media Servs., Inc. v. Glen J. Lerner, P.C.*,
175 Fed. Appx. 904 (9th Cir. 2006)………………………………………...21

*Kerr v. Screen Extra's Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975),
91 F.3d 1275 (9th Cir. 1996) ........................................................................ 23, 24

*L.A. Printex, Inc.*,
No. CV 08-1836 ODW (PJWX),
2009 U.S. Dist. LEXIS 28477 (C.D. Cal. Mar. 23, 2009) ..................................... 7

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
345 F.3d (9th Cir. 2003)……………………………………………….......11, 12

*Langman Fabrics v. Samsung America, Inc.*,
997 F. Supp. 479 (S.D.N.Y. 1998)...…………………………………………6

*Levi Strauss & Co. v. Blue Bell, Inc.*,
778 F.2d 1352 (9th Cir. 1985)……………………………………………………19

*Littel v. Twentieth Century-Fox Film Corp.*,
37 U.S.P.Q. 2d 1796 (S.D.N.Y. 1996) ................................................................ 6

*Love v. Mail on Sunday.*,
No. CV 05-7798 ABC (PJWx),
2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept. 7, 2007) ............................... 21, 22

*Masquerade Novelty v. Unique Industry*
912 F.2d 663 (3d Cir. 1990)……………………………………….......................11

*Modular Arts, Inc. v. Interlam Corp.*,
2009 U.S. Dist. LEXIS 6671
(W.D. Wash. Jan. 20, 2009)...……………………………………………… 17

*Morris v. Business Concepts, Inc.*,
No. 99 Civ. 59, 2001 U.S. Dist. LEXIS 17760
(S.D.N.Y. Oct. 30, 2001)……………………………………………...........23

*Newborn v. Yahoo! Inc.*,
37 F. Supp. 2d 1 (D.C. Cir. 2006)………………………………………..21

*Optistreams, Inc. v. Gahan*,
  No. CV-F-05-0117 REC SMS,
  2006 U.S. Dist. LEXIS 21680 (E.D. Cal. Mar. 28, 2006)……………............ 22

*Pyatt v. Jean*,
  No. 04-CV-3098 (TCP) (AKT),
  2010 U.S. Dist. LEXIS 85920 (E.D.N.Y. Aug. 17, 2010). .................................... 6

*Ray v. Hapgood*,
  No. 98-726-AS,
  2000 U.S. Dist. LEXIS 2116 (D. Or. Jun. 6, 2000)…………………………… 21

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
  No. C 08-5016 SBA,
  2010 U.S. Dist. LEXIS 97011 (N.D. Cal. Sept. 16, 2010)....................... 17, 18, 21

*Screenlife Establishment v. Tower Video, Inc*.,
  868 F. Supp. 47 (S.D.N.Y. 1994)……………………………………..............23

*Stephen W. Boney, Inc. v. Boney Servs., Inc.,*
  127 F.3d 821 (9th Cir. 1997)……………………………………………….....17

*Sousa v. Miguel*,
  32 F.3d 1370 (9th Cir. 1994)……………………………………….........25

*Susan Wakeen Doll Co., Inc. v. Ashton-Drake Galleries*,
  272 F.3d 441 (7th Cir. 2001)……………………………………….. 24-25

*Sunham Home Fashions, LLC v. Pem-America, Inc.*,
  No. 02 Civ. 6284,
  2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. Dec. 17, 2002).................................... 12

*United States v. Twin Falls*,
  806 F.2d 862 (9th Cir. 1986) ................................................................................ 25

*Virgin Records America, Inc. v. Darwin*,
  No. SA CV 04-1346 AHS (ANx),
  2006 U.S. Dist. LEXIS 96069 (C.D. Cal. Apr. 17, 2006)................................5, 16

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

*Wallace v. Full Spectrum Lending, Inc.*,
  No. SA CV 05-560 AHS (RNBX),
  2006 U.S. Dist. LEXIS 88582 (C.D. Cal. Nov. 28, 2006) .................................. 24

*Wood v. Cendant Corp.*,
  504 F. Supp. 2d 1174 (N.D. Okla. 2007) ............................................... 11

*Woodhaven Homes & Realty, Inc. v. Hotz*,
  No. 01-C-778,
  2007 U.S. Dist. LEXIS 609 (E.D. Wis. Jan. 4, 2007) .......................................... 24

## Statutes

15 U.S.C. § 1117(a)…………………………………………………… 17

17 U.S.C. §§ 101, 103…………………………………………………...8

17 U.S.C. § 410(b)…………………………………………………........11

17 U.S.C. § 410(c)…………………………………………………….......4

28 U.S.C. § 1920…………………………………………………....24, 25

Cal. Bus. & Prof. Code § 17200 ....................................................................... 21, 22

## Rules

Fed. R. Civ. P 68.……………………………………………………...1, 2, 22, 23

Local Rule 5-4 ......................................................................................................25

## Secondary Sources

2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*
  § 15:53 (4th ed. 2010) …………………………………………………........19

4 *Nimmer on Copyright* §14.10…………………………………………….....5

## I. **INTRODUCTION**

While this Court granted summary judgment in favor of Defendants, that determination does not require this Court to award Defendants attorneys' fees. Instead, this Court should assess the circumstances surrounding Express's filing of this lawsuit and, recognizing that attorneys' fees are only awarded based on copyright claims that are "clearly without merit" and trade dress claims that are "exceptional," find that Defendants are not entitled to attorneys' fees. It cannot be forgotten that this case started when a competitor, who admittedly had access to Express's works, made slavish copies of them. After conducting a thorough investigation, Express determined it had grounds to bring a copyright infringement claim based on Defendants' access, the substantial similarity of the works, and its copyright registrations, all the while mindful that plaids are routinely protected by copyright and the copyrightability standard is minimal. Moreover, Express determined that based on Defendants' intentional copying and the substantial sales of its Express Track Jacket, it also had grounds to bring a trade dress infringement claim. This is not a context where Express should be punished for attempting to protect its intellectual property rights. Fees are not awarded merely because a party won or lost; they are rarely granted and the tests applied are difficult to satisfy.

Plaintiff Express, LLC ("Express" or "Plaintiff") submits this memorandum in opposition to the motions for attorneys' fees based on the Copyright Act, the Lanham Act, and Rule 68 filed by Defendants, Forever 21, Inc., Forever 21 Logistics, LLC, Forever 21 Retail, Inc., Jin Sook Chang and Do Won Chang (collectively "Forever 21"), White Owl Clothing, Inc. ("White Owl"), and Steps Apparel Group, Inc. dba Steps of CA ("Steps") (Forever 21, White Owl Clothing, Inc., and Steps Apparel Group referred to collectively herein as "Defendants"). For the reasons below, an award of attorneys' fees would not be appropriate in this case based on the Court's Opinion and Order dated September 2, 2010 ("the Court's

Opinion" or "Order"), as Rule 68 is inapplicable, the *Fogerty* factors favor Plaintiff, and this is not an "exceptional" case under the Lanham Act.

## II.   BACKGROUND

While the Court ultimately entered summary judgment dismissing Express's copyright and trade dress claims, this does not mean that Express's claims were "frivolous" or "should never have been brought."  Express and Forever 21 are nationwide competitors in the retail clothing market who have numerous stores located in many of the same malls and in close proximity to one another.  From the moment Express learned that Forever 21 was selling not one, but five, virtually identical copies of EXPRESS garments taken from Express's then current Spring/Summer '09 collection, Express reasonably sought to protect its designs by enforcing its rights, as any company would discovering that a competitor had cloned its products.[1]  There is no dispute that Forever 21 is generally known to both the public and the trade as employing a "shop and copy" business, whereby their buyers or vendors purchase competitors' products at retail for replication and sale in Forever 21 stores.  This is precisely what occurred in this case, and Express is understandably alarmed at seeing products that it has invested time and money in designing appropriated by its competitors.

Express acknowledges Defendants' right to seek their fees in the wake of the Court's Opinion, but rather than rely on the Court's findings and conclusions in granting them summary judgment, Defendants urge the Court to award attorneys' fees based on unwarranted conclusions that were not part of the Court's Opinion.  First, Defendants repeatedly assert that Express conducted "zero" pre-filing investigation.  This is an intentional and absolute falsehood that is not part of the Court's Opinion.  While the Court noted that Express's Senior Designer, Michael

---

[1]   A belief that was corroborated during discovery when it was admitted that Forever 21's supplier Steps had simply walked into an Express retail store and purchased three of the garments at issue, which Forever 21 copied identically.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

Tower, *did not recall* at his deposition being contacted with respect to the Express

Plaids prior to this litigation, Express did, in fact, conduct a thorough investigation.

(Declaration of Frank J. Colucci in Support of Plaintiff's Opposition to Defendants'

Motions for Attorney's fees (filed concurrently with this memorandum, hereinafter

"Colucci Decl."), ¶¶ 2-5, Exs. 1–4.)[2]  Prior to its filing copyright applications with

the Copyright Office and prior to filing the Complaint in this case, Express

conducted an investigation to confirm that the plaid designs at issue ("Express

Plaids") were Mr. Tower's original designs and were proper copyrightable subject

matter.  (*Id.*)  Express even produced a privilege log evidencing *substantial*

correspondence *prior to the filing of the Complaint* between the undersigned

counsel's office and the members of Express's Design Studio, including Mr. Tower

and Mr. Ed Field, the CAD operator, regarding the copyrightability of the Express

Plaids.[3]  (*Id.*, ¶2, Ex. 1.)

Second, based on their investigations, Express; its Design Studio, including

Mr. Tower; and its attorneys, reasonably believed and concluded:

    1)    That the Express Plaids were original creations of the Express Design

           Studio;

    2)    That Mr. Tower, consistent with his prior practices and training, made

---

[2]    The Declaration of Frank J. Colucci in Support of Plaintiff's Motion for Summary Judgment, filed on July 12, 2010 (Docket Entry #94), is referred to herein as "MSJ Colucci Decl. I."  The Declaration of Frank J. Colucci in Opposition to Defendants' Motions for Summary Judgment (Docket Entry #143), filed on July 26, 2010, is referred to herein as "MSJ Colucci Decl. II."  The Declaration of Frank J. Colucci in Support of Plaintiff's Reply Memorandum Re: Defendants' Oppositions to Plaintiff's Motion for Summary Judgment, filed on August 2, 2010 (Docket Entry #155), is referred to herein as "MSJ Colucci Decl. III."  A complete copy of the docket in this case is attached to the Colucci Declaration as Exhibit 10.

[3]    Defendants well know that Express conducted *extensive* pre-complaint investigations of both its copyright and trade dress claims as those investigations were the subject of a prolonged attempt by Defendants to take the deposition of the undersigned counsel, which Defendants later hastily withdrew after Express's counsel moved to quash Defendants' subpoena.  The *entire issue* during this extended exchange was the fact that Express's counsel's investigations conducted prior to the copyright applications and prior to the filing of the complaint were subject to the attorney-client privilege.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1    changes to the sources of inspiration he used; and

2    3)    That given the nature of the works, namely that they were plaid

3          designs, the changes made by Mr. Tower produced original works of

4          authorship that would be enforceable against identical copies, such as

5          those produced by Defendants.

6    In reaching these conclusions and then seeking to protect the Express Plaids,

7    Express complied with the statutory requirements of the Copyright Act by

8    investigating its claim of copyright infringement and registering the Express Plaids,

9    which permits a claim to copyright to be filed within *5 years* of first publication of

10   a work.  17 U.S.C. § 410(c).  In so doing, the Copyright Office registered the

11   Express Plaids "clean," that is, without objection despite having the discretion to do

12   so, and the expert testimony of Ralph Oman, former Registrar of the U.S.

13   Copyright Office, confirms that Express acted properly.  (MSJ Colucci Decl. II, Ex.

14   1 (Oman Rep.), at 7-8; Ex. 4 (Second Supp. Oman Rep.), at 2-4.)

15   Moreover, Express determined that among Express's many products, the

16   Express Track Jacket had achieved significant sales.  Moreover, as it was clear that

17   Defendants had intentionally copied Express's product and that such copying could

18   reasonably lead to inferences of secondary meaning and likelihood of confusion,

19   Express believed that it had sufficient grounds to bring a claim of trade dress

20   infringement against Defendants.

21   **III.   DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES**

22   **UNDER THE COPYRIGHT ACT**

23   Section 505 of the Copyright Act permits a court to exercise discretion in

24   awarding attorneys' fees to a prevailing party.  However, courts use an

25   "evenhanded" or equitable approach by considering the following factors (the

26   "*Fogerty* Factors"): (1) degree of success obtained; (2) frivolousness; (3)

27   motivation of losing party; (4) objective unreasonableness (factual and legal) of

28   losing party's claim; and (5) need in particular circumstances to advance

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

considerations of compensation and deterrence.  *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 535 n.19 (1994).

Here, although Defendants were granted summary judgment, that alone is insufficient to grant attorneys' fees.  Moreover, the other *Fogerty* factors favor a denial of attorneys' fees: Plaintiff's claims were neither frivolous nor objectively unreasonable, they were motivated by an earnest desire to protect an interest Plaintiff believed it held, and the goals of the Copyright Act will not be served by such an award.

## A.   A Grant of Summary Judgment to Defendants Does Not by Itself Warrant a Grant of Attorneys' Fees

Plaintiff acknowledges that Defendants were successful in obtaining summary judgment.  However, a prevailing party is not granted attorneys' fees as a matter of course, *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230-1231 (9th Cir. 2008), and a grant of summary judgment alone is not sufficient to support a grant of attorneys' fees.  See *Chirco v. Gateway Oaks, LLC*, 2007 U.S. Dist. LEXIS 20229, at * 24-25 (E.D. Mich. Mar. 22, 2007); *see also Virgin Records America, Inc. v. Darwin*, No. SA CV 04-1346 AHS (ANx), 2006 U.S. Dist. LEXIS 96069, at *11-13 (C.D. Cal. Apr. 17, 2006) (attorneys' fees should not be awarded to Defendants "simply because they were granted a summary judgment" (citation omitted)).  Consequently, Defendants must demonstrate that the *Fogerty* Factors weigh in favor of an award of attorneys' fees.

## B.   Express's Claims Were Neither Frivolous Nor Objectively Unreasonable

Despite the Court's ruling in favor of Defendants, granting attorneys' fees would be inappropriate because Plaintiff presented "colorable" claims for copyright infringement that were objectively reasonable.  *Bibbero Systems, Inc. v. Colwell Systems, Inc.*, 893 F.2d 1104, 1109 (9th Cir. 1990); *see also* 4 *Nimmer on Copyright* §14.10[D][3][b] ("[T]here is typically no award of fees in cases…advancing claims that were neither frivolous nor objectively

1   unreasonable.").  In other words, whether a party's claim was frivolous or

2   objectionably unreasonable goes beyond merely looking at the fact that it was

3   subject to an adverse summary judgment ruling.  *See Pyatt v. Jean*, No. 04-CV-

4   3098 (TCP) (AKT), 2010 U.S. Dist. LEXIS 85920, at *6-7 (E.D.N.Y. Aug. 17,

5   2010).[4]  Rather, this Court must determine whether Plaintiff's copyright claim was

6   "clearly without merit or otherwise patently devoid of legal or factual basis."  *Berry*

7   *v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y. 2009).

8        Here, Plaintiff brought a claim for copyright infringement in which both

9   access and substantial similarity were admitted, and Plaintiff was in possession of

10  copyright registrations for all the copyrighted words, which Plaintiff reasonably

11  believed would establish a presumption in favor of validity.  Defendants have not

12  argued nor has this Court held that Plaintiff knowingly made false representations

13  to the Copyright Office, and based on Ninth Circuit precedent, Plaintiff believed

14  this Court would have given its registrations presumptive effect absent evidence of

15  intentional fraud.[5]  Moreover, Plaintiff believed that there was sufficient evidence

16  to support a finding of copyrightability, particularly given that plaids are routinely

17  given copyright protection and the standard for copyrightability is minimal.  (MSJ

18  Colucci Decl. II, Ex. 2 (Supp. Oman Rep.), at 2-3; Ex. 4 (Second Supp. Oman

19  Rep.), at 3-4) (Colucci Decl., ¶ 7, Ex. 6.)  Therefore, Plaintiff urges this Court to

20  find that its copyright claim was neither frivolous nor objectively unreasonable.

21        *1.    Access and Substantial Similarity Were Admitted In This Case.*

22        To prove copyright infringement, Plaintiff was required to establish both

23

24   _____

    [4]     *See also*, *Littel v. Twentieth Century-Fox Film Corp.*, 37 U.S.P.Q. 2d 1796, 1798

25   (S.D.N.Y. 1996) (Summary judgment "is not the equivalent of a finding that plaintiff's claims are
    objectively unreasonable.").

26   [5]     Even an invalidation of a copyright does not automatically mean a plaintiff's copyright
    claim was unreasonable or frivolous.  *Bibbero Systems.*, 893 F.2d at 1109 ("The fact that a court

27   determines that a claimed copyright is invalid does not mean that the plaintiff has not presented a
    colorable claim."); *see also Langman Fabrics v. Samsung America, Inc.*, 997 F. Supp. 479, 481

28   (S.D.N.Y. 1998).

ownership of a valid copyright, and unauthorized copying of protectable material. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345-46, 361 (1991).  Unauthorized copying is often proved by showing that a defendant had access to the infringed work and that the two works were substantially similar.  *See L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, No. CV 08-1836 ODW (PJWX), 2009 U.S. Dist. LEXIS 28477, at *8 (C.D. Cal. Mar. 23, 2009).  However, in this case, access and "substantial similarity" were not in dispute; Defendants admitted both and thereby admitted the second prong of *Feist* (unauthorized copying).[6] Therefore, liability would have followed as a matter of course had the Court found that Plaintiff's copyrights were valid.

### 2.  *Plaintiff's Copyrightability Argument Was Not Groundless*

Although this Court determined that the Express Plaids were not copyrightable, Express had grounds to believe that they were.  First, Express believed it was entitled to a presumption based on its copyright registrations.  Second, the legal requirement for copyrightability under *Feist* is minimal, and Express did not interpret Mr. Tower's testimony to suggest "substantial copying" of a preexisting work, as he confirmed in his clarifying declaration.  Third, Express believed in good faith that the evidence it presented was sufficient to establish the copyrightability of Mr. Tower's work regardless of a presumption of validity.

### a.  *Only "Pre-existing Works" as Defined Under the Copyright Act Must Be Identified, Not Inspiration, Therefore Express Reasonably Believed Its Copyright Registrations Would Be Entitled to a Presumption of Validity*

Despite Defendants' ongoing accusations of malfeasance on Express's part,

---

[6]    Defendants turn logic on its head by arguing that the fact that they conceded access and substantial similarity militates *in favor* of an award of attorneys' fees.  However, Defendants do not cite any concrete example of how these admissions streamlined these proceedings at all, particularly in light of the numerous frivolous positions Defendants adopted with respect to discovery.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1    this Court *did not hold* that Express knowingly made false representations to the

2    Copyright Office, but rather that there was an insufficient basis for proving

3    originality at trial.  Express fully acknowledges that, at the time Express considered

4    registering the Express Plaids for copyright, the inspiration that was used to begin

5    the design process was simply no longer available due to the passage of time.

6    However, Express had a good faith belief that the Express Plaids were

7    copyrightable because the Copyright Act only requires derivatives of preexisting

8    works to be identified—not inspiration.  17 U.S.C. §§ 101, 103.

9        Express had a good faith belief that the Express Plaids were not derivatives

10   based on the pertinent standard, which is set out in *Gibson Tex, Inc. v. Sears*

11   *Roebuck & Co.*, a case cited by Defendants and adopted by the Court:

12           For a derivative work to have sufficient originality, its variation from

13           the work from which it is derived must be **"substantial" in nature,**

14           **not "merely trivial."** .... the requirement of substantial change is **not**

15           **much more than a "prohibition of mechanical copying**." ... **All that**

16           **is required is a "distinguishable variation" from the original**. ... In

17           the context of textile copyrights, the standard applied by the United

18           States Court of Appeals for the Second Circuit for originality of

19           derivative works **is particularly easy to satisfy**.

20   11 F. Supp. 2d 439, 442 (S.D.N.Y. 1998) (citations omitted) (emphasis added).[7]

21        Based on the *Gibson Tex* standard, it is apparent that Express was justified in

22   its good faith belief that the Express Plaids were themselves not derivative works

23   under the Copyright Act and copyrightable on their own merits without disclosure

24   of any sources in their copyright applications.  A plaid is "**a pattern of unevenly**

---

7        By way of example, the *Gibson Tex* court goes on to state that the "embellishment" or "expansion" of an original textile design "in repeat," "together with beginning the pattern in a particular way so as to avoid showing an unsightly joint when the pattern is printed…constitutes modest but sufficient originality so as to support a copyright."  *Id.*

**spaced repeated stripes crossing at right angles**."[8]  Given the infinite

permutations of possible plaids, they clearly are susceptible to authorship and are

copyrightable subject matter.  (MSJ Colucci Decl. II, Ex. 2 (Supp. Oman Rep.), at

pp. 2-3) ("I found hundreds of registrations for tartans and plaid designs. . . .").

However, as a pattern consisting of nothing more than horizontal and vertical lines

of varying widths and intersecting at right angles, all plaids are arguably all derived

from one another with these basic attributes.  For example, compare the pattern of

the famous Burberry plaid, which is not only copyrighted but also the subject of

numerous trademark registrations, to one of the Express Plaids (the "New Bruin").

Assuming, *arguendo*, that Tower utilized the Burberry plaid in his design process

of creating the New Bruin:



(Burberry on Left, Express's New Bruin at right).[9]

Segregating the idea of a plaid (as defined above) from its expression, is the

New Bruin a derivative work of the Burberry Plaid?  We submit that a colorable

argument could be made both in the affirmative and negative.  This hypothetical

illustrates that to the extent Tower utilized any plaid as a source, the changes that

were implemented could only pertain to the *arrangement, color and width of stripes*

---

[8] Merriam Webster Dictionary Home Page, http://www.merriam-webster.com/dictionary/plaid (last visited Oct. 13, 2010).

[9] Disclaimer: The images are for illustrative purposes only and are not to exact scale.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

*intersecting as right angles.*  Consequently: 1) it was *not unreasonable* to believe that the Express Plaids, in final form, did not "substantially copy" any "inspiration" (the term used by Tower) so as to require identification of a 'preexisting work' as defined under the Copyright Act; and 2) each plaid is to a large extent *sui generis* in design and constitutes varying degrees of "distinguishing variations", while sharing characteristics with all plaids—even those indisputably recognized as distinct.

The following colloquy during Defendants' deposition of the former Registrar of Copyrights, Mr. Ralph Oman, further illustrates this principle:

**Forever 21's counsel**: If those changes had been made *[to a hypothetical source plaid]*, and I wanted to try to register a copyright, would I have an obligation to check to fill out Box 4 *[on the copyright application form]*?

**Mr. Oman**: Again, I mentioned this earlier, that plaid designs are not your traditional fabric designs. **The Copyright Office has experienced examiners now called registration specialists. They realize that there's a certain familial resemblance amongst all plaid designs. And whether or not any of them are created out of, so to speak, whole cloth or whether they all owe their origin to plaids that existed over the past 100 years, thousand years, going back to the Battle of Culloden. I'm not sure that a Copyright Office registration specialist would have seen anything more than an idea with the original pattern, and that what was being submitted for a new copyright was an expression of an old idea or a new idea. And I'm not sure they would have expected Box 4 to be filled in**. (Colucci Decl., Ex. 8, Deposition of Ralph Oman), at 41:6-25) (emphasis added).[10]

Thus, Express had a good faith belief that: (1) the Express Plaid Designs

---

[10]  Mr. Oman addressed this issue in his Expert Report, which Express submitted in connection with the parties' motions for summary judgment: "**As a general rule, authors are not expected to list on Screen Four all of the multiple sources of inspiration that resulted in the new work, normally an impossible task**."  (MSJ Colucci Decl. II, Ex. 4 (Second Supp. Oman Rep.), at 3.)

1  were not derivative works; (2) there was no preexisting work to be disclosed to the

2  Copyright Office; and (3) the Express Plaids were sufficiently original plaids to

3  support a claim to copyright in the Copyright Office.  *Wood v. Cendant Corp.*, 504

4  F. Supp. 2d 1174, 1178-79 (N.D. Okla. 2007) (citing qualified expert's support as

5  evidence that plaintiff's claims were brought in good faith).

6        In fact, the Copyright Office, having registered hundreds of plaid designs,

7  confirmed Express's assessment by registering the Express Plaids without

8  questioning whether the intersecting stripes of the Express Plaids were "derivative"

9  of a preexisting plaid design.  The office's action strongly supports the idea that

10  Express's copyright claim was made in good faith or was, at the least, colorable. [11]

11  Moreover, even if Express made an inadvertent mistake in its registration

12  application, based on Ninth Circuit precedent it reasonably believed that its

13  registrations would be given a presumption of validity.  *Lamps Plus, Inc. v. Seattle*

14  *Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003).  This Court relied on the

15  Third Circuit case of *Masquerade Novelty v. Unique Industry* for the proposition

16  that it should disregard the presumption provided by Express's copyright

17  registrations.  (Order at 12-13) (Docket Entry #168.)  However, the *Masquerade*

18  *Novelty* footnote cited by the Court was mere *dictum*.  912 F.2d 663, 668 (3d Cir.

19  1990) (stating that the court could decide the case without deciding the effect of an

20  inadvertent omission); 2-7 *Nimmer on Copyright* § 7.20[B][1] ("the Third Circuit

21  suggested in *dictum*").  Furthermore, that approach has never been adopted in the

22  Ninth Circuit.  Instead, "inadvertent mistakes on registration certificates do not

23  invalidate a copyright and thus do not bar infringement actions, unless . . . the

24  claimant intended to defraud the Copyright Office by making the misstatement,"

25

26  [11]    17 U.S.C. §410(b) provides (emphasis added): "In any case in which the Register of
Copyrights determines that, in accordance with the provisions of this title, **the material**
27  **deposited does not constitute copyrightable subject matter or that the claim is invalid for**
**any other reason**, **the Register shall refuse registration** and shall notify the applicant in writing
28  of the reasons for such refusal."

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

which was not alleged here.  *Lamps Plus, Inc.*, 345 F.3d at 1145 (citation omitted).

### b.  The Evidence of Copyrightability Presented Was Sufficient to Support a Finding of Copyrightability Without a Presumption

This case bears striking similarities to a case involving plaid and floral fabric designs in the Southern District of New York.  *Sunham Home Fashions, LLC v. Pem-America, Inc.*, No. 02 Civ. 6284, 2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. Dec. 17, 2002).  In *Sunham*, the plaintiff filed suit alleging copyright infringement of its designs.[12]  As here, the defendants argued that the designs were derivative works and that the plaintiff failed to inform the Copyright Office that its designs were derivative works.  *Id*. at *16 n.6.  In assessing the defendants' argument, the Court assessed the validity of the alleged copyrights under the originality standards set forth in *Feist* and its progeny, ultimately holding that because "careful thought went into the colors used, the size of the shapes in the designs and the spacing of the designs' patterns" the designs were original and copyrightable.  *Id*. at *19.  As the *Sunham* Court concluded: "[T]he Court believes that the designs are original and not derivative works.  As such, there was no need for [the plaintiff] to label the designs as derivative works."[13]  To support this proposition, the court looked to the evidence of the plaintiff's designer who had testified that he requested a "summer/spring kind of feeling with pink and blue colors . . . . It has to be fresh looking . . . and the flower has to be in a medium scale size."  *Id.* (omissions in original).

The testimony that the *Sunham* court credited echoes Mr. Tower's testimony

---

[12]     The Court also acknowledged the basic principle that "[a]lthough the idea of a plaid or floral pattern may not of its own be original, the patterns' sizes, shapes, arrangements and colors taken together are original and copyrightable."  *Sunham,* 2002 U.S. Dist. LEXIS 24185, at *18.

[13]     Mr. Oman's later testimony confirmed that this belief was reasonable, if not at a minimum colorable.  (*See also* MSJ Colucci Decl. II, Ex. 4 (Second Supp. Oman Report), at pp. 2-3 ("All of [Mr. Tower's] creativity is copyrightable authorship, and the fact that the Copyright Office issued the registration certificate indicates that the expert agency recognized Mr. Tower's (and the rest of the Express design team's) authorship.").)

1     in this case regarding his process of creating the Express Plaids.  It also shows that

2     Plaintiff's arguments were not clearly baseless, as it tends to suggest that the

3     Express Plaids had sufficient authorship to meet the *Feist* copyrightability standard.

4     499 U.S. at 349–50 (1991) ("The vast majority of works make the grade quite

5     easily, as they possess some creative spark, 'no matter how crude or humble or

6     obvious' it might be.").  Although the Court did not find that Mr. Tower's

7     testimony supported sufficient "creative alteration original to Express," (Order at

8     10), Express respectfully interprets his testimony differently.  Although Mr. Tower

9     repeatedly used the word "*inspiration*" at his deposition to describe the sources he

10     relied on, he is not an attorney, and the legal conclusion that he somehow relied on

11     a "derivative" work was not raised or discussed at Mr. Tower's deposition—in fact

12     the words "derivative" and "pre-existing" *were never used at all*.  (Colucci Decl.,

13     Ex. 7; see also Exs. 2-4 (objecting to Defendants' subsequent use of "pre-

14     existing")).  In addition, Mr. Tower's deposition testimony provided evidence that

15     Plaintiff reasonably relied upon for the argument that ***he had made changes*** to

16     these sources of inspiration:

17          A.     It's very easy actually.  We start – This is how the process works: We

18                 start.  We come up with __inspiration__, whether it's a tear sheet, whether

19                 it's a photograph, whether it's a garment. ... I start with that.  I use it

20                 for __inspiration__.  I like it.  **I meet with my CAD designer.  We talk**

21                 **about a couple of things, how we want to reengineer it, redesign it**,

22                 and basically, that's how the process begins, basically….

23          **Q.**     **You told him to change something, correct?**

24          **A.**     **Yes.**

25     (Order at 2-3, 5.)

26        Thus, Mr. Tower testified that his focus was to "**reengineer**" and "**redesign**"

27     his sources of **inspiration**.  Mr. Tower also testified that he had *always*

28     communicated his design changes orally to the CAD designer:

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1  Q.  **Are you sure that [Ed Field] did make some changes from**
2      **whatever it is that you showed him?**
3  A.  **He always does.**
4  Q.  **How do you know?**
5  A.  **Because I specifically talk to him.  He makes the changes.  When I**
6      **get it back, I make sure that those changes have been rendered, and we**
7      **go from there, basically.**
8  (Colucci Decl., Ex. 7 (Deposition of Michael Tower), at 65:7-14.)
9  Q.  So if you had a short like this, you would say, **I want you to do a**
10     **rendering of this, but I want you to move the boxes.  I want the**
11     **boxes wider or the lines narrower.  I want this line over here, that**
12     **line over there**?
13 A.  **I design into any <u>inspiration</u> that I'm using for that CAD, and I**
14     **pass that on to him.**
15 Q.  You've got a fabric swatch or a picture or an actual sample of
16     something, and **you say, I want to do a rendering of this, but I want**
17     **you to do this and that differently.  And you're telling him orally**
18     **while he's putting it up on the CAD?**
19 A.  **Yes.**
20 Q.  Is that the way you always do it?
21 A.  **I've always done it that way.**
22 (*Id.*, at 61:12-62:11) (emphasis added).
23     Further, while the Court disregarded Mr. Tower's declaration because it was
24 perceived to contradict his sworn deposition testimony, Express reasonably
25 interpreted the declaration not as a contradiction of Mr. Tower's testimony, but
26 rather as a permissible clarification.  In his declaration, Mr. Tower confirmed that
27 he "*did not copy any prior or pre-existing plaid designs.*"  (Tower Decl., ¶ 11)
28 (Docket Entry #158.)  This statement *does not* contradict what he recalled in his

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1   deposition testimony, and is consistent with his regular design practice (in his

2   words, he "*always does it that way*").  His declaration did not cure his lack of recall

3   by, for example, specifically describing any of the actual changes in redesigning the

4   inspiration (*e.g.*, "I took this line made it much thinner and colored it brown"),

5   which would have been an obvious contradiction of his deposition.  Thus, Tower's

6   statements were intended to confirm not only that he did <u>not</u> copy a preexisting

7   source, but that, consistent with his design practice, he made changes to the various

8   sources of inspiration he had on hand.  (Tower Decl., ¶¶ 6, 9.)

9          Simply because color was the only *specific* element Tower testified to

10   changing, however, does not mean that this was the *only* change he made.  Tower's

11   deposition testimony confirms that this was only one of several changes he made.

12   Thus, while the Court correctly noted that color changes *alone* do not represent

13   copyrightable authorship, Express's claim to copyright in the Express Plaids was

14   not predicated on merely "recoloring" a pre-existing source.  Rather, Express based

15   its claim on color changes *along with other design changes*, which can and do

16   represent copyrightable authorship.  *Boisson v. Banian, Ltd.*, 273 F.3d 262, 271 (2d

17   Cir. 2001) ("Even though a particular color is not copyrightable, the author's choice

18   in incorporating color with other elements may be copyrighted.").

19          Thus, Express acted in good faith and its claims of copyright were, at a

20   minimum, colorable.

21                  ***c.  The Evidence of Copyrightability Presented Was Sufficient to***

22                       ***Support a Finding of Infringement***

23          The precise changes that Express made to the inspiration were not significant

24   because plaids are clearly copyrightable, and Defendants had made literal copies of

25   the Express Plaids *with no variation or change whatsoever*, which prompted

26   Defendants' concession on the issue of substantial similarity.  Thus, infringement

27   would be found under the Copyright Act no matter how thin Express's copyright

28   might have been.  *Ets-Hokin v. Skyy Spirits Inc.*, 323 F. 3d. 763, 766 (9th Cir. 2003)

1  ("When the range of protectable expression is narrow, the appropriate standard for

2  illicit copying is virtual identity.") (citation omitted).

3  **C.     Express's Motivations Were Proper**

4      Defendants unpersuasively and falsely argue that as Express conducted no

5  investigation prior to the complaint, Plaintiff must have had some improper

6  motivation, though Defendants fail to articulate what that motivation was.  Express

7  has never been involved in any litigation with Defendants prior to this case, nor is

8  there any evidence suggesting improper motive on Express's part.  Express's

9  motivation in this case was clear and unassailable.  Express has invested

10  significantly in its in-house designers at its Design Studios located in New York

11  and Ohio to help ensure that unique and exclusive designs would be created under

12  its well-known house label.  Express's claims were motivated by a desire to protect

13  these valuable investments and reputation, and given Defendants' reputation for

14  copying without regard to intellectual property rights in the industry, Express's

15  concerns were justified.  *See Virgin Records America, Inc. v. Darwin*, No. SA CV

16  04-1346 AHS (ANx), 2006 U.S. Dist. LEXIS 96069, at *13 (C.D. Cal. Apr. 17,

17  2006) (noting proper motivation of protecting their copyrights).[14]

18      Thus, while Express pursued its copyright claims in good faith, Defendants

19  have clearly acted at their own peril with no legal measures in place to protect

20  themselves from claims of infringement.

21  **D.     An Award of Fees Will Not Further the Goals of the Copyright Act**

22      The Ninth Circuit has observed that "the policies served by the Copyright

23  Act are more complex, more measured, than simply maximizing the number of

24

25  [14]    Defendants concede the paucity of evidence to suggest any ill-motivation on Express's part by launching into an *ad hominem* attack on Express's counsel, claiming that somehow the

26  fact that the undersigned firm was involved in another recent case with Forever 21 suggests an improper motive on Express's part.  This claim is insulting, ridiculous and evidences Forever 21's

27  own spiteful motives in seeking to recover its attorneys' fees.  Given Forever 21's extensive history as defendant in intellectual property cases, it is unsurprising that an intellectual property

28  firm or court would encounter them in litigation on more than one occasion.  *See, e.g., Harajuku Lovers, LLC v. Forever 21, Inc.*, No. 07-cv-03881-ODW-SS (C.D. Cal.).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

meritorious suits for copyright infringement." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559 (9th Cir. 1996) (citation omitted).  Where, as here, the copyright claimant pursued its copyright claims in good faith, and Defendants failed to demonstrate any creativity or design process of their own, an award of attorney's fees would not serve the purposes of the Copyright Act.  *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004) ("[I]t generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." (citation omitted)); *Modular Arts, Inc. v. Interlam Corp*., 2009 U.S. Dist. LEXIS 6671, at * 7 (W.D. Wash. Jan. 20, 2009) (denying attorneys' fees in part because Defendant's act of copying did not serve the Copyright Act's purpose of promoting creativity for the public good).

**IV.   ATTORNEYS' FEES SHOULD NOT BE AWARDED UNDER THE LANHAM ACT BECAUSE EXPRESS'S TRADE DRESS CLAIM WAS REASONABLE AND PROPER**

The Lanham Act specifies that attorneys' fees may be awarded only in "exceptional cases."  15 U.S.C. § 1117(a).  A case is exceptional "where a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 827 (9th Cir. 1997). The party seeking attorneys' fees under the Lanham Act bears the burden of proving exceptional circumstances by "compelling" proof.[15]  *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, No. C 08-5016 SBA, 2010 U.S. Dist. LEXIS 97011, at *7 (N.D. Cal. Sept. 16, 2010) (citation omitted).  Further, the Ninth Circuit construes the "exceptional circumstances" requirement "narrowly." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008).  "Not surprisingly,

---

[15]   The *Fogerty* mandate to apply an evenhanded standard (*i.e.* to both plaintiff and defendant) for an award of attorneys' fees also applies in the Lanham Act context.  *Boney*, 127 F.3d at 826.

1    under this standard, defendants are 'rarely' awarded attorney fees in trademark

2    infringement cases." *Sand Hill Advisors*, 2010 U.S. Dist. LEXIS 97011, at *7.

3    While Defendants essentially argue that Express should have known that its claim

4    would be dismissed at the summary judgment stage, this is a deficient basis upon

5    which to conclude that this case is "exceptional," as a "case is not exceptional

6    simply because the court granted summary judgment." *Id.*, at *6.

7         Although the Court entered summary judgment for Defendants on the

8    grounds that the trier of fact could not conclude that the Express Track Jacket had

9    acquired secondary meaning, and noted the absence of either circumstantial and/or

10   direct evidence of secondary meaning, specifically citing the truncated period of

11   time that the Express Track Jacket was sold and lack of direct evidence of

12   consumer testimony, such as a survey.[16]  However, there are a multitude of ways

13   that secondary meaning may be established and, typically, "[w]hether a particular

14   trade dress has acquired secondary meaning is a question of fact." *Clicks Billiards*

15   *Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) (citation omitted).

16   Although ultimately the Court held in favor of Defendants, Express submitted

17   sufficient grounds for its trade dress claim to avoid an award of attorneys' fees.

18   Specifically, Express submitted evidence of its Express Track Jacket's sales and of

19   Defendants' intentional copying, which supports an inference of secondary

20   meaning.

21        Sales of the Express Track Jacket Were Arguably Substantial.  The Court, in

22   rejecting Express's evidence of sales as supporting secondary meaning, stated that

23   "it would have to conclude in future cases that virtually every garment Express sells

24   has secondary meaning." (Order, at 17.)  Express, however, sells *several hundred*

25   *products* at any given time.  (*See* www.express.com.)  Consequently, the fact that

26   the Express Track Jacket was designated a "*Top 15*" seller was evidence of its

27

28   ---
     [16]    Though absence of a survey is not dispositive of the absence of secondary meaning. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145–46 (9th Cir. 2009).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

magnified profile and exposure to the public.[17]  Moreover, Express reasonably considered it a significant item.  (C. Campbell Dep. 90:9-13.)   Further, the Court's choice to compare the Express Trade Jacket to a jacket in a completely different product category (*i.e.* Express's biggest seller: denim) should not be held against Express as it was reasonable to believe such a comparison would not be probative of secondary meaning, as it would mean that only a company's best selling product would be eligible for trade dress protection.

Further, despite Defendants' claims that the Express Track Jacket was "common" they failed to produce any evidence of third party usage of the Express Track Jacket Trade Dress, which was impossible, as the Express Track Jacket trade dress was exclusive to Express.  *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989) (exclusivity supports secondary meaning).

Moreover, since the absence or presence of any single factor is not dispositive or controlling on the issue of secondary meaning and, given the Express Track Jacket's sales during the short amount of time it was on sale prior to being copied, it was not unreasonable for Express to believe there was a question as to whether secondary meaning existed *at the time* Defendants copied the Express Track Jacket.  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 15:53 (4th ed. 2010) (length of time of use of trade dress does not carry any more weight than other factors; "merely one additional piece of evidence to be weighed with all others …."). Thus, Express had reasonable grounds to believe that the aggregate of its efforts (together with Defendants' copying) was sufficient to establish secondary meaning in Spring and Summer 2009, when the

---

[17]     According to Mr. Campbell: "A. It means that it is a top 15 item. In other words, of all the styles offered for sale in this time period these are **amongst the top selling items** or we intend them to be amongst the top selling items in the floor set."  (MSJ Colucci Decl. I, Ex. 27 (Campbell Dep.), at 72:4-9) (emphasis added).

1   Express Track Jacket was in season, when its sales were strong, and when it was on

2   the Express website.

3       <u>Defendants' Intentional Copying Created An Inference of Secondary</u>

4   <u>Meaning</u>.  The fact that the Express Track Jacket was admittedly copied

5   intentionally precludes an award of fees.  While the Court concluded that the

6   evidence of copying was not sufficient to establish secondary meaning, this factor

7   should not be discounted in evaluating Defendants' application for fees as

8   intentional copying "strongly supports" an inference of secondary meaning in the

9   Ninth Circuit.  *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1264 (9th

10  Cir. 2001) ("Our cases recognize that evidence of deliberate copying is relevant to a

11  determination of secondary meaning.") (citations omitted).  Moreover, not only

12  does intentional copying create an inference of secondary meaning, but it also tends

13  to demonstrate likelihood of confusion under the "*Sleekcraft* Factors" since

14  intentional copying is also a factor.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341,

15  354 (9th Cir. 1979).

16      When the foregoing facts are considered in the context of the wide variety of

17  evidence Courts may look to in determining secondary meaning, it is clear that

18  since neither the presence of one factor, nor the absence of one factor is controlling,

19  Express possessed a sufficient basis upon which to assert a trade dress claim against

20  Defendants.  For Express to have summarily decided in the face of Defendants'

21  actions to not assert its trade dress rights would have been tantamount to extending

22  unbridled and unlimited permission to a direct competitor and its vendors to utilize

23  Express's designs at will, at any time and without compensation to Express.

24      Thus, given that, at the time the complaint was filed, there was already not

25  only a strong inference of secondary meaning, but evidence supporting likelihood

26  of confusion under the *Sleekcraft* Factors, Express urges this Court to find that this

27  case was not "exceptional."  Given the high threshold for establishing that a case is

28  "exceptional," courts in this Circuit routinely deny attorneys' fees to the prevailing

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1  defendants even where the evidence was ultimately deemed insufficient for

2  establishing secondary meaning and/or a likelihood of confusion.[18]

3  **V.     EXPRESS'S CLAIMS ARE NOT 'INEXTRICABLY INTERTWINED'**

4  **AND ANY AWARD OF FEES SHOULD BE APPORTIONED**

5       Although Express submits that Defendants are not entitled to any award of

6  attorneys' fees under either the Copyright Act or Lanham Act, Express further

7  disagrees with Defendants' position that Express's claims are so "inextricably

8  intertwined" that full fees and costs are warranted across the board regardless of

9  which statute, if any, applies.  Rather, Express's copyright, trade dress, and unfair

10  competition claims are clearly distinguishable by virtue of their differing

11  allegations asserted in connection with the designs at issue.  Therefore, an

12  apportionment of fees must be made, and indeed has been made by Defendants,

13  under each appropriate statute prior to any analysis regarding the reasonableness of

14  the amount of fees requested.  *Newborn v. Yahoo! Inc.*, 437 F. Supp. 2d 1, 12 (D.C.

15  Cir. 2006) (quoting *Invision Media Servs., Inc. v. Glen J. Lerner, P.C.*, 175 Fed.

16  Appx. 904, 907 (9th Cir. 2006)).  Moreover, Express's unfair competition claims

17  under California's Business and Professions Code §17200 and common law for

18  'passing off' and unfair "shop and copy business practices" also provided

19  independent bases for recovery, separate and distinct from Express's copyright

20  and/or trade dress claims.  *See Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir.

21  2000) ("[A]s a general matter, a prevailing party in a case involving Lanham Act

22  and non-Lanham Act claims can recover attorneys' fees only for work related to the

23  Lanham Act claims.").

24       Forever 21's reliance on *Love v. Mail on Sunday* as support for the

25  proposition that its fees should not be apportioned is misplaced.  In fact, the *Love*

26  ───────────────

[18]     *See e.g.*, *CG Roxane LLC v. Fiji Water Company LLC*, No. C-07-02258 RMW, 2008 U.S.

27  Dist. LEXIS 84919, at * 7 (N.D. Cal. Oct., 2008); *Sand Hill Advisors, LLC*, 2010 U.S. Dist.
LEXIS 97011, at *15-16; *Ray v. Hapgood*, No. 98-726-AS, 2000 U.S. Dist. LEXIS 2116, at *6-7

28  (D. Or. Jun. 6, 2000).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

court emphasized that there was an *independent* statutory or contractual basis for awarding Defendants their fees and addressed the plaintiff's copyright and trademark claims as *separate* matters.  No. CV 05-7798 ABC (PJWx), 2007 U.S. Dist. LEXIS 97061, at *8 (C.D. Cal. Sept. 7, 2007).  Thus, the *Love* court only considered whether apportionment was necessary in the context of claims that *lacked an independent basis* for a fee award—common law right of publicity claim, Cal. Bus. & Prof. Code § 17200 claim, civil conspiracy claim, and interference claims.  With respect to *these claims only*, the Court held that apportionment was unnecessary (with the exception of one[19]) since they were clearly inextricably intertwined with those claims where the court already found a basis, either statutory or contractual.  2007 U.S. Dist. LEXIS 97061, at *8-10.  Accordingly, *Love* does not apply here.

Consequently, Defendants' requested attorneys' fees in connection with the defense of Express's copyright and trade dress claims must be separately analyzed under the governing provision and corresponding standard for such fees.

## VI.   RULE 68 IS INAPPLICABLE TO THIS CASE

Defendants' claim that Rule 68 serves as a basis for awarding attorneys' fees in this case is a blatant misrepresentation of the law of this Circuit.  The Supreme Court explicitly held that Rule 68 "applies only to offers made by the defendant and **only to judgments obtained by the plaintiff**;" it is inapplicable where it is the defendant that obtained the judgment.  *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981); *Eicher v. National Accident Ins. Underwriters, Inc.*, No. 97-16132, No. 97-16262, 1999 U.S. App. LEXIS 5407 (9th Cir. Mar. 25, 1999) (holding that *Delta Air Lines* did not prevent application of Rule 68 because *plaintiff* had obtained a $3,000 judgment); *Optistreams, Inc. v. Gahan*, No. CV-F-

---

[19]     Where the defendants in *Love v. The Mail on Sunday* failed to present an independent basis for fees for a claim that was based on facts and legal theories different from that of plaintiff's contract-based claim, the *Love* court deducted the fees incurred in defense of that claim from the total award.  2007 U.S. Dist. LEXIS 97061, at *14-15.

05-0117 REC SMS, 2006 U.S. Dist. LEXIS 21680, at *29 (E.D. Cal. Mar. 28, 2006) ("Here, [Plaintiff] did not obtain a judgment in its favor on the claims in its complaint.  Therefore, *Rule 68* is inapplicable.").[20]

## VII.  ALTERNATIVELY, DEFENDANTS' ATTORNEYS' FEES ARE UNREASONABLE AND SHOULD BE REDUCED IN VIEW OF THEIR ABUSIVE DISCOVERY PRACTICE INCLUDING SEVERAL UNSUCCESSFUL MOTIONS

Defendants assert that Express's discovery efforts amounted to harassment as support for attorneys' fees under the Copyright Act, or evidence of 'exceptionality' under the Lanham Act.  In fact it is quite the opposite.  Not only is this assertion unsupported by any compelling evidence, but it is wholly disingenuous in light of Judge Kenton's rulings denying Forever 21's multiple motions for a protective order to either prohibit or limit Express's discovery and Forever 21's failure to abide such rulings.  A synopsis of the discovery tactics, disputes, and motions, to provide a context for the "reasonableness" of the fees that Defendants now request, is set forth in the supporting Colucci Declaration at ¶¶10–25.  In short, Forever 21's dilatory tactics have been the catalyst to all six of the discovery motions that were filed between Express and Forever 21 alone.  *All three* of Forever 21's motions, which were largely repetitive and duplicative, *were denied*, and conversely, Express's motions were virtually *all granted*.

In the Ninth Circuit, district courts analyze the reasonableness of attorneys' fees requests under the twelve factors identified in *Kerr v. Screen Extra's Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S. Ct. 1726, 48 L.

---

[20]     Defendants' purported supporting authority, *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006), is not even followed in the Second Circuit.  *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 n.1 (S.D.N.Y. 1994) ("Rule 68... is inapplicable where judgment is entered against the plaintiff-offeree and in favor of the defendant."); *see also Morris v. Business Concepts, Inc.*, No. 99 Civ. 59, 2001 U.S. Dist. LEXIS 17760, at *10 (S.D.N.Y. Oct. 30, 2001) ("Because defendants here obtained a judgment in their favor, *Rule 68* is wholly inapplicable.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1   Ed. 2d 195 (1976).[21]

2          In the event that this Court determines that any attorneys' fees are warranted,

3   Express respectfully requests that this Court reduce Defendants' attorneys' fees,

4   collectively totaling over $650,000 (and $40,000 in costs),[22] as excessive and

5   wholly disproportionate in light of Defendants' aggressive and overzealous conduct

6   throughout this litigation.  (Colucci Decl., ¶¶ 10-25.)  Consequently, Defendants

7   should not be awarded for unnecessary motion practice and behavior that Judge

8   Kenton reprimanded as "obstreperous."  *Woodhaven Homes & Realty, Inc. v. Hotz*,

9   No. 01-C-778, 2007 U.S. Dist. LEXIS 609, at *22 (E.D. Wis. Jan. 4, 2007)

10   (adjustment proper where court concludes "that the amount of fees incurred by

11   [prevailing party] is a direct result of overzealous litigation").  Given that this Court

12   has denied virtually all of Defendants' discovery motions, a downward adjustment

13   is further warranted.  *Wallace v. Full Spectrum Lending, Inc.*, No. SA CV 05-560

14   AHS (RNBX), 2006 U.S. Dist. LEXIS 88582, at *16-17 (C.D. Cal. Nov. 28, 2006)

15   (time spent "drafting procedurally incorrect motions . . .  should be reduced

16   accordingly").

17   **A.   Forever 21's Costs Should Be Denied as Overhead And/Or**

18   **      Inconsequential in Establishing Its Defense**

19          The Court also has discretion to grant non-taxable costs.  In a copyright

20   action, an award of non-taxable costs is also governed by 17 U.S.C. § 505, and not

21   through the general costs provisions of 28 U.S.C. § 1920.  *Susan Wakeen Doll Co.,*

22   *Inc. v. Ashton-Drake Galleries*, 272 F.3d 441, 458 (7th Cir. 2001).  Forever 21

23

24   [21]   These factors are: (1) the time and labor required; (2) the novelty and difficulty of the
25   questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6)
26   whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the
27   professional relationship with the client; and (12) awards in similar cases.  *Kerr,* 526 F.2d at 70.
     [22]   *See also* Express's Opposition Memoranda regarding Steps and White Owl's motions for
28   attorneys' fees, filed concurrently.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

seeks reimbursement of its costs incurred beyond those explicitly permitted under 28 U.S.C. § 1920 in the amount of $34,969.34.  In the event that this Court ultimately determines that any attorneys' fees are warranted under the Copyright Act or Lanham Act, Express further disagrees that Forever 21 is entitled to any costs in this action beyond those identified in its timely filed Application to the Clerk to Tax Costs pursuant to Local Rule 54-4, to which Express did not object.

Forever 21's non-taxable costs include items such as photocopying and printing, which we submit are generated as overhead through the normal business practice.  Express further submits that Forever 21's expert witness fees should not be granted because Forever 21's experts had no bearing on the Court's Opinion, and with respect to Ilse Metchek, in particular, none of the Defendants relied on or even cited her expert report and opinion in their motions for summary judgment. *United States v. Twin Falls*, 806 F.2d 862, 878 (9th Cir. 1986) (holding that district courts' discretionary award of additional expert witness fees must be based upon a finding that the expert testimony was crucial or indispensable in establishing the prevailing party's case or defense).  As for messenger and delivery costs, the Ninth Circuit has held that routine messenger services are a part of overhead expenses, and, as such, are not recoverable.  *See Sousa v. Miguel*, 32 F.3d 1370, 1375 (9th Cir. 1994).  In addition, courts have held that not all research costs are recoverable. *B & H Mfg. Co., Inc. v. Bright*, No. CV F 01-6619 AWI LJO, 2006 U.S. Dist. LEXIS 12249, at *45 (E.D. Cal. Mar. 3, 2006) ("Some part of Westlaw's and Lexis's charges must be considered overhead, if for no other reason than law firms normally do not charge clients for law books.").  Thus, Forever 21's costs should be denied, or alternatively, greatly reduced.

## VIII.  CONCLUSION

In light of the foregoing, Express respectfully requests this Court to deny Forever 21's motion for attorneys' fees in its entirety.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

1

2

Dated: October 18, 2010

COLUCCI & UMANS

3

By:____s/Frank J. Colucci/_____

Frank J. Colucci (*Pro Hac Vice*)

4

David M. Dahan (*Pro Hac Vice*)

5

COLUCCI & UMANS

218 East 50th Street

6

New York, New York 10022

Telephone:  212.935.5700

7

Facsimile:   212.935.5728

8

Emails: FColucci@colucci-umans.com

DDahan@colucci-umans.com

9

10

Attorneys for Plaintiff Express, LLC

11

Co-Counsel for Plaintiff Express, LLC:

12

BUCHALTER NEMER

Russell L. Allyn (SBN:  143531)

13

rallyn@buchalter.com

14

1000 Wilshire Boulevard, Suite 1500

Los Angeles, California 90017-2457

15

Telephone: 213.891.0700

16

Facsimile: 213.896.0400

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

**CERTIFICATE OF SERVICE**
**STATE OF NEW YORK – COUNTY OF NEW YORK**

I declare that I am a citizen of the United States and a resident of New York, New York, or employed in the County of New York, State of New York. I am, and was at the time of service of the document(s) herein referred to, over the age of 18 years, and not a party to the action. My business address is Colucci & Umans, 218 East 50th Street, New York, New York 10022.

On the date executed below, I served a true copy of the document(s) described as:

**PLAINTIFF EXPRESS, LLC'S OPPOSITION MEMORANDUM TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

**DECLARATION OF FRANK J. COLUCCI IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**

x   By causing a true and accurate copy of the document(s) to be filed through this Court's Case Management and Electronic Case Filing (CM/ECF) system. Notice of this filing is automatically generated to all counsel of record, and such service complies with Federal Rule of Civil Procedure 5(d)(3), Local Rules 5-3.3 and 5-4, and General Order 07-08.

x   By causing a true and accurate copy of the document(s) to be sent to counsel for defendant(s) at the addresses set forth below via electronic mail. The parties have stipulated that documents transmitted to counsel via electronic means shall be deemed properly served pursuant to the Federal Rules of Civil Procedure.

Larry Russ, Esq.
LRuss@raklaw.com
Nathan Meyer, Esq.
NMeyer@raklaw.com
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

Angie Lee, Esq.
alee@laklawyers.com
Levinson, Arshonsky, & Kurtz, LLP
15303 Ventura Blvd., #1650
Sherman Oaks, CA 91403

–

Theresa Middlebrook, Esq.
theresa.middlebrook@hklaw.com
Holland & Knight
633 W. Fifth Street, 21st Floor
Los Angeles, California 90071

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on October 18, 2010, at New York, New York.

_____Janice K. Yoon_____               _____s/Janice K. Yoon/_____
Printed Name                                         Signature

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)