| | |
|---|---|
| 1 | COLUCCI & UMANS<br>FRANK J. COLUCCI (*Pro Hac Vice*) |
| 2 | fcolucci@colucci-umans.com<br>DAVID M. DAHAN (*Pro Hac Vice*) |
| 3 | ddahan@colucci-umans.com<br>218 East 50th Street |
| 4 | New York, New York 10022<br>Telephone:   212.935.5700 |
| 5 | Facsimile:   212.935.5728 |
| 6 | BUCHALTER NEMER<br>Russell L. Allyn (SBN:  143531) |
| 7 | rallyn@buchalter.com<br>1000 Wilshire Boulevard, Suite 1500 |
| 8 | Los Angeles, California 90017-2457<br>Telephone: 213.891.0700 |
| 9 | Facsimile: 213.896.0400 |
| 10 | |
| 11 | Attorneys for Plaintiff,<br>EXPRESS, LLC |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EXPRESS, LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>            Defendants. | **Civil Action No.**<br>**2:09-cv-04514-ODW-VBK**<br><br>**PLAINTIFF EXPRESS, LLC'S OPPOSITION MEMORANDUM TO DEFENDANT WHITE OWL CLOTHING, INC.'S MOTION FOR ATTORNEY'S FEES**<br><br>[Declaration of Frank J. Colucci in Support of Plaintiff's Opposition to Defendants' Motions for Attorneys' Fees filed concurrently herewith]<br><br>Hearing Date: November 8, 2010<br>Time: 1:30 p.m.<br>Courtroom: 11<br><br><br><br>HONORABLE OTIS D. WRIGHT, II |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................... 1

II. SUMMARY OF ARGUMENT ................................................................. 1

    A. White Owl Is Not Entitled to Its Attorney's Fees Under the Copyright Act Based Upon a Consideration of the *Fogarty* Factors……………………………..1

        1. Express Was Entitled to Include White Owl in All of Its Claims Given the Facts and Circumstances Leading Up to This Case And Learned Through Discovery…………………………………2

        2. White Owl's Unsupported Opinion that the Express Plaids Were "Common" and "Non-Distinctive" Is Not Evidence of Frivolousness……….4

        3. White Owl's Legal Fees and Conjecture Do Not Constitute Evidence of Bad Faith Motivation…………4

    B. This Is Not an "Exceptional Case"; Therefore Attorneys' Fees Should Not Be Awarded Under the Lanham Act………………………………………………….6

III. Express's California Unfair Competition Claims Are Not Inextricably Intertwined with Its Lanham Act Claim and Should Be Apportioned Accordingly…………………7

IV. White Owl's Fees Are Unreasonable Given Its Minimal Participation and Untimely and Unsuccessful Discovery Motions Practice……………………………………..8

    A. White Owl's Fees Are Excessive and Unreasonable Given White Owl's Financial Means………………8

  **B.  White Owl's Failure to Make an Application to the Clerk to Tax Costs Is Further Evidence of Its Minimal Involvement and the Unreasonableness of Its Fees and White Owl Should Not Be Awarded Any Costs**……………………………………………………...11

**V. Conclusion**……………………………………………………………11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Gillen v. Gates*,
  847 F. Supp 1475, 1480 (C.D. Cal. 1994)……………………………………....8

*L.A. Printex Indus., Inc. v. Lia Lee, Inc.*,
  No. CV 08-1836 ODW (PJWx),
  2009 U.S. Dist. LEXIS 28477 (C.D. Cal. Mar. 23, 2009…………………….....10

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir.2000)…………………………………………………....10

*Wallace v. Full Spectrum Lending, Inc.*,
  No. SA CV 05-560,
  2006 U.S. Dist. LEXIS 88582 (C.D. Cal. Nov. 28, 2006)…………………….....9

*Woodhaven Homes & Realty, Inc. v. Hotz*,
  No. 01-C-778,
  2007 U.S. Dist. LEXIS 609 (E.D. Wis. Jan. 4, 2007)……………………….…..9

## Statutes

28 U.S.C. § 1920……………………………………………………………………..11

Cal. Bus. & Prof. Code § 17200……..……………………………………………...1

Plaintiff, Express, LLC ("Express" or "Plaintiff") submits this memorandum in opposition to Defendant White Owl Clothing, Inc.'s ("White Owl") motion for attorneys' fees.

I.  **Introduction**

This civil action involves five garments, four pairs of plaid shorts alleged to be an infringement of Express's copyrights in violation of the Copyright Act, and one track jacket alleged to be an infringement of Express's trade dress in violation of the Lanham Act. In addition, Express's claims allege violation of California's Business & Professions Code §17200 and unfair competition under California's common law.

Defendant White Owl is a clothing supplier that supplied two of the five garments to Defendant Forever 21, namely two pairs of men's plaid shorts (the "Ocean" and "Jack" styles). Following this Court's Opinion and Order of September 2, 2010 granting Defendants' motion for summary judgment ("the Court's Opinion"), White Owl, simultaneously with the other defendants, moves the Court to award it its attorneys' fees in the amount of $143,148, as well as costs in the sum of $4282.70.[1]  For the reasons set forth below, we respectfully submit that an award of attorneys' fees to Defendants, including White Owl, is appropriate under neither the Copyright Act nor the Lanham Act.

II.  **Summary of Argument**

A.  **White Owl Is Not Entitled to Its Attorney's Fees Under the Copyright Act Based Upon a Consideration of the *Fogerty* Factors**

As much of White Owl's memorandum in support of its motion for attorneys' fees raises the same issues as Forever 21's motion, Express hereby

---

[1] While White Owl notes that its motion is based in part on Federal Rule of Civil Procedure 68 regarding offers of judgment, there is no discussion in its memorandum explaining this basis as White Owl has never made a Rule 68 Offer of Judgment in this case. In any event, Express refers the Court to Section V of its Opposition Memorandum to Forever 21's motion regarding the inapplicability of Rule 68 as a basis for recovering attorneys' fees.

incorporates herein by reference its response, including its discussion of attorneys' fees under section 505 of the Copyright Act from its Opposition Memorandum to Forever 21's motion for attorneys' fees. (Opp. Mem., at pp. 4-17.) However, to the extent that White Owl's motion raises certain points and arguments that require additional response, Express addresses them below.

### 1. *Express Was Entitled to Include White Owl in All of Its Claims Given the Facts and Circumstances Leading Up to This Case and Learned Through Discovery*

While White Owl attempts to portray itself as having "limited involvement" in the activities at issue in this case, Express had every reason to believe that White Owl actively and knowingly participated in its Co-Defendants' "shop and copy" business practice. This allegation is set forth under Express's third and fourth claims regarding unfair competition under California state law. It is undisputed that White Owl is the source of at least two of the four Express Plaids, *at the same time* that another allegedly "unknown" and separate vendor, Steps, offered at least two of the other four Express Plaids and a track jacket, all of which were virtually identical to Express's garments from its prior Spring/Summer '09 collection, to Forever 21. These garments were subsequently and simultaneously offered for sale in Forever 21's stores and on its website. By virtue of these facts alone, Express was entitled to join White Owl as a defendant jointly and severally liable for all of Express's claims. No prudent legal counsel would have simply released White Owl from Express's claims prior to any discovery merely because it claimed to be a "small" company that "made no profits."

As discovery confirms, White Owl was less than forthcoming about the extent of its knowledge and involvement with the Express Plaids. Express later discovered on White Owl's website and catalog that White Owl was offering a pair of men's shorts that bore a plaid design substantially similar to a third Express Plaid ("New Bruin Plaid"), in addition to the "Ocean" and "Jack" Plaids, that were

previously attributed to Steps alone. (Declaration of Frank J. Colucci in Support of Express's Opposition to Defendants' Motions for Attorneys' Fees ("Colucci Decl."), ¶ 25, Ex. 9.) White Owl's website included an image of the men's shorts, along with the style number MW9107, and a magnifying feature to zoom in on the plaid pattern. Upon closer review and consultation with Express's Design Studio, Express reasonably believed that White Owl had also copied the New Bruin Plaid. However, when confronted by Express, White Owl claimed to have no knowledge of these shorts—despite being provided with the style number and images of its own website—and stalled Express's discovery attempts by repeatedly asking *Express* to send samples of the White Owl garment in question. (Colucci Decl., ¶ 25, Ex. 9; Declaration of Michael J. Pampalone, III, in Opposition to Defendants' Motions for Summary Judgment ("MSJ Pampalone Decl."), ¶¶ 3-7; Declaration of Theresa W. Middlebrook in Support of White Owl Clothing, Inc.'s Points and Authorities in Support of Its Motion for Attorneys' Fees and Full Costs ("Middlebrook Decl."), Ex. J, at pp. 48-51 (email correspondence).) Moreover, the claim that the website images of the garment are unclear does not excuse White Owl's resistance to this discovery. Coincidentally, soon after Express's inquiry, the shorts representing style MW9107 disappeared from White Owl's website, leaving a black, empty space where the shorts were once featured on the website after Express first contacted White Owl's counsel regarding the shorts. (Colucci Decl., ¶ 25, Ex. 9; MSJ Pampalone Decl., ¶ 6.)

Further, White Owl was never able to credibly establish how it obtained its plaid patterns that were identical to the Express Plaids. According to the deposition testimony and declarations of White Owl's President, White Owl obtained its plaid designs from Hong Kong "where the plaids were being treated as public domain fabric designs." (White Owl Mem., at p. 3.) Yet, no samples of these "public domain" plaids, or any other documentary evidence, were ever produced to corroborate White Owl's story, nor does it appear that any diligent inquiry was

made to its Hong Kong supplier to understand how this situation arose. White Owl's claim is even more questionable because, as Steps simply conceded, it could have purchased them from an Express retail store. Moreover, despite its alleged fear of insolvency, there is no evidence that White Owl even intended to seek indemnification from its supposed source although it has done "absolutely nothing wrong in this case." (Saul Decl., ¶ 5.)

### 2. White Owl's Unsupported Opinion that the Express Plaids Were "Common" and "Non-Distinctive" Is Not Evidence of Frivolousness

As "evidence" of Express's "frivolousness," White Owl contends that Express should have realized that its Express Plaids were "non-distinctive" and nothing more than a "common plaid weave pattern in a classic color combination." (White Owl Mem., p. 7.) However, this Court never based its Opinion on a finding that the Express Plaids were "non-distinctive" or "common." White Owl's subjective opinion—with nothing more—regarding the creative value of the Express Plaids is clearly not a legally recognized basis for an affirmative defense to a copyright claim, let alone an argument for frivolousness for purposes of seeking attorneys' fees. (White Owl. Mem., pp. 7-8.) In fact, none of the Defendants were able to identify any plaid designs that were substantially similar to the Express Plaids, even with their significant experience in the clothing industry. Moreover, this Court does not state anywhere in its Opinion that plaids are not copyrightable, as such a conclusion would fly in the face of the thousands of plaid designs that have been registered with the Copyright Office.

### 3. White Owl's Legal Fees and Conjecture Do Not Constitute Evidence of Bad Faith Motivation

White Owl's examples of Express's "bad faith" in filing this civil action also defy logic and fail to acknowledge its role in this matter. As evidence of "bad faith," White Owl argues that Express was solely motivated by a desire to "destroy"

White Owl, a company that claims to have "no resources" and "made no profits last year," with mounting legal fees through this civil action. (Middlebrook Decl., Ex. A.) If White Owl is to be believed, one must ask how White Owl is paying its attorneys' fees of over $100,000 at all, and was it reasonable to retain attorneys with rates of over $400 per hour.[2]

Express should not be held accountable for the billing practices, strategic decisions, and work distribution by White Owl's counsel of choice, Holland & Knight. Unfortunately for White Owl, the vast majority of its attorneys' fees have been generated primarily by two of Holland & Knight's Senior Counsel, Theresa Middlebrook and James Michalski, who billed at rates between $415-425 an hour. That is, of the approximately 395.5 total hours billed, Senior Counsel's time accounts for over 309.6 hours, as opposed to 59.4 hours by associates.[3] (Middlebrook Decl., Ex. M.) Put another way, over 78% of the total hours expended by White Owl's counsel was billed by a Senior Counsel at a higher rate. White Owl could have no doubt chosen more economically reasonable legal counsel, especially once it became clear that a settlement would not be reached early on. Moreover, White Owl makes no attempt to justify or explain why this distorted ratio of senior counsel work was necessary.

Interestingly, White Owl makes no mention of Forever 21 seeking, or White Owl having to honor, its alleged indemnification of Forever 21 as a further basis for escalating legal fees in this litigation—which lends further credence to Express's claim that all the Defendants were part and parcel acting with one another under a shared "shop and copy" business practice. Regardless, White Owl's financial situation does not constitute a legitimate basis for escaping liability for

---

[2] Certainly Holland & Knight deemed White Owl solvent enough to agree to represent them and to expend such exorbitant amounts of time in their defense, despite the fact that Forever 21 willingly assumed the lead in defending against Express's claims.

[3] In addition, Andre Sosnowki, a paralegal, billed 19.5 hours at a *rate of $240 per hour* for general litigation support such as "preparing documents for production, managing and organizing the case file, etc." (Middlebrook Decl., ¶ 25.)

infringement, if infringement were to be found.

Similarly, White Owl's speculation that Express would not have been able to obtain an injunction in this case does not and cannot support a finding of bad faith. The mere representation that White Owl has finished production of the plaids at issue and would not resume such production provides little assurance that they, in fact, would never do so as certain styles and looks may be cycled back in fashion. Regardless of what "would have" or "could have" resulted if Express were to prevail on one or more of its claims, such conjecture does not rise to the level of concrete evidence of bad faith that is contemplated under the *Fogerty* factors. Nor does the act of filing an appeal constitute further evidence of bad faith, as White Owl implies.

As indicated in Express's opposition to Forever 21's motion (pp. 2, 16), Express owns and operates its own Design Studios to produce unique and exclusive designs, and given such investments, Express is motivated by a desire to protect those creations that it reasonably believes are original and protectable. White Owl's assertion to the contrary that Express has pursued this case against it for a "competitive" advantage, with a goal of deterring vendors, is implausible and demonstrates its disregard of the value of intellectual property, generally. Seeing that Forever 21 is a privately-held company with sales of over $2 billion, there is no shortage of vendors who are willing to fulfill its needs.

**B.   This Is Not an "Exceptional Case"; Therefore Attorneys' Fees Should Not Be Awarded Under the Lanham Act**

With only 10% of its fees purportedly attributable to the defense of Express's trade dress claim, White Owl fails to identify exactly how its claim of over $14,000 is justified since its only defense has simply been that White Owl did not make Forever 21's copy of the Express Track jacket, and adopts Forever 21 and Steps's position in its papers. Moreover, White Owl's argument that Express's refusal to release White Owl from potential liability on the basis that Express "knew" or

should have known White Owl's position at the beginning of this case is absurd and belies all credibility. Again, White Owl refuses to acknowledge the facts and circumstances that gave rise to this litigation, including its own active participation and failure to implement any legal review or even to investigate its Hong Kong supplier. The undisputed record demonstrates that Express had an ample basis for declining to dismiss certain claims against White Owl, particularly since White Owl's main argument for doing so revolved around its status as a "small" company and the uncorroborated testimony of its President regarding the source of the plaid designs at issue.

Indeed, the only basis White Owl cites for a finding of an "exceptional" case is Express's refusal to dismiss it from its Second through Fourth causes of action. (White Owl Mem., at 12) ("Express also engage [sic] in significant litigation misconduct by way of refusing to dismiss as against White Owl, as well as the discovery misconduct, which prolonged this litigation and drove up costs exponentially for White Owl."). Further, White Owl's premature conclusion that this Court would have "obviously" dismissed White Owl with respect to the trade dress claim, even though this Court did not actually do so in its Opinion or even address this issue, is nothing but pure speculation, and does not support a finding of exceptionality.

As set forth in Express's opposition to Forever 21's motion for attorneys' fees, Express had presented multiple factors, in addition to intentional copying, that altogether constituted at least a colorable trade dress claim. Thus, this case does not qualify as "exceptional" under the Lanham Act.

### III. Express's California Unfair Competition Claims Are Not Inextricably Intertwined with Its Lanham Act Claim and Should Be Apportioned Accordingly

Express hereby incorporates by reference its discussion regarding the

propriety of apportionment of claims in its Opposition Memorandum to Forever 21's motion for attorneys' fees (at pp. 21-22). Specifically, Express submits that its unfair competition claims constitute separate causes of action that are not "inextricably intertwined" with either of its copyright or trade dress claims, and that a downward adjustment should be applied accordingly.

### IV. White Owl's Fees Are Unreasonable Given Its Minimal Participation and Untimely and Unsuccessful Discovery Motions Practice

#### A. White Owl's Fees Are Excessive and Unreasonable Given White Owl's Financial Means

While Express disagrees that White Owl is entitled to any award of attorneys' fees under the Copyright Act or Lanham Act, White Owl's requested fees and costs in the amount of $143,148 (approximately $100,000 more than Steps' purported fees) are completely unwarranted given the minimal scope of its involvement throughout this litigation. As the record shows, although White Owl was a named Defendant in this civil action since December 7, 2009, White Owl served a total of *one* set of discovery requests for production of documents on April 27, 2010, nearly five months later. Out of the 21 depositions that were taken in this case, White Owl's counsel attended only one deposition of Isaac Saul (President of White Owl) and took no depositions of its own. Nor did White Owl separately retain any experts to support its "unique" defenses. Thus, not only are White Owl's fees unreasonable due to the disproportionate amount of work performed by Senior Counsel at rates of over $400 an hour, but White Owl's passive participation in this case also fails to justify the amounts it now seeks. *See Gillen v. Gates*, 847 F. Supp 1475, 1480 (C.D. Cal. 1994), *aff'd as to attorneys' fees, rev'd as to sanctions*, 1995 U.S. App. LEXIS 13598 (9th Cir. June 1, 1995) (reducing the lodestar hourly rate from $400 to $125 because counsel did not employ associates and much of the

work was associate-level work).

Yet, inexplicably, as late as June 24, 2010 (less than 2 weeks from the close of discovery on July 5, 2010), White Owl informed Express of its intention to file a motion to compel, despite the untimeliness of such a motion under the plain language of the local rules of this District, as well as this Court's Scheduling Order. Although Express attempted to dissuade White Owl from doing so, White Owl served its portions to a joint stipulation for a motion to compel, forcing Express to prepare its responses to an untimely motion. Later, on June 29, 2010, White Owl changed its strategy and advised that it would seek an extension of discovery on an *ex parte* basis. White Owl's *ex parte* motion, filed on June 30, 2010, was subsequently denied on its face by this Court on July 9, 2010. (Colucci Decl., ¶¶ 23, 24.) Altogether, according to White Owl's timesheets, fees for this untimely motions practice alone exceeded $25,000. *See Wallace v. Full Spectrum Lending, Inc.*, No. SA CV 05-560, 2006 U.S. Dist. LEXIS 88582, at *16-17 (C.D. Cal. Nov. 28, 2006) ("The hours spent by [plaintiff's attorney] in researching and drafting procedurally incorrect motions and complaints were not reasonably expended, and the total hours for which he is compensated should be reduced accordingly."); *Woodhaven Homes & Realty, Inc. v. Hotz*, No. 01-C-778, 2007 U.S. Dist. LEXIS 609, at *22 (E.D. Wis. Jan. 4, 2007) ("[T]he Court is quite familiar with the course of this litigation and Robbins' litigiousness therein. The Court has no choice but to conclude, in some degree, that the amount of fees incurred by Robbins is a direct result of overzealous litigation.").

While White Owl insists that its position was so different from that of Forever 21 and Steps that a separate motion for summary judgment was necessary, the only "substantial difference" it articulated in its memorandum was that White Owl did not admit access to Express's Plaid Designs, whereas Steps and Forever 21 did. This alleged "difference" in and of itself is a prime example of the stubborn and costly manner in which White Owl conducted its defense in this case.

"Access," as a matter of law, is established by virtue of Express's sales of the five garments at issue throughout its stores located nationwide and through its online retail website, during which time White Owl knew or could have known about the garments. *L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, No. CV 08-1836 ODW (PJWx), 2009 U.S. Dist. LEXIS 28477, at *12 (C.D. Cal. Mar. 23, 2009) (access is shown where a defendant had a reasonable opportunity to view or copy the plaintiff's work). Therefore, "access" under the Copyright Act is not literal—it does not mean that the President of White Owl, or any other employee or affiliate, must have actually seen the Express Plaids or the Express Track Jacket being sold by Express, just that White Owl *could have had the opportunity to see* them. Moreover, the striking similarity, *i.e.*, identical nature, between the plaids at issue is itself compelling evidence of access though White Owl steadfastly maintained its denial. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

As previously discussed, White Owl was never able to provide a credible explanation for the source of its garments, nor has White Owl produced any support for its general contention that the Express Plaid Designs were "common" plaid in a "classic" color combination.[4] Accordingly, there is absolutely no reason why White Owl could not have streamlined its litigation fees and costs by joining Forever 21's motion for summary judgment. In fact, a plain review of Defendants' defenses and positions throughout this action demonstrates that White Owl's position differed little, and its purported "differences" were, in the final analysis, merely superficial in the absence of any further evidence.

---

[4] Of course, given the fact that, by definition, a plaid is "a pattern of unevenly spaced repeated stripes crossing at right angles" with color, it is unclear what an "uncommon" plaid would look like. (See Express Mem. In Opposition to Forever 21 at pp. 8-11.)

**B.  White Owl's Failure to Make an Application to the Clerk to Tax Costs Is Further Evidence of Its Minimal Involvement and the Unreasonableness of Its Fees And White Owl Should Not Be Awarded Any Costs**

White Owl also seeks reimbursement of its non-taxable costs incurred beyond those explicitly permitted as a matter of course under 28 U.S.C. § 1920.  In the event that this Court ultimately determines that any attorneys' fees are warranted under the Copyright Act or Lanham Act, Express disagrees that White Owl is further entitled to any costs in this action beyond those provided under § 1920.   While Forever 21 and Steps each made applications to the Clerk to tax costs that are typically expended as a participating litigant, White Owl failed to make any such application pursuant to Local Rule 54 and Fed. R. Civ. P. 54(d).  Express submits that any additional non-taxable costs would be simply duplicative of Forever 21 and Steps' efforts, and wholly unjustified in light of its minimal involvement and unidentifiable contribution to Defendants' asserted defenses.

**V.     Conclusion**

In light of the foregoing, as well as Express's factual and legal positions described in further detail in its Opposition Memorandum to Forever 21's motion for attorneys' fees, Express respectfully requests this Court to deny White Owl's motion for an award of attorneys' fees in its entirety, or alternatively, reduce White Owl's requested fees in the event that fees are granted to reflect a reasonable amount.

| | |
|---|---|
| Dated: October 18, 2010 | COLUCCI & UMANS<br><br>By:   s/Frank J. Colucci/<br>Frank J. Colucci (*Pro Hac Vice*)<br>David M. Dahan (*Pro Hac Vice*)<br>COLUCCI & UMANS<br>218 East 50th Street<br>New York, New York 10022<br>Telephone:  212.935.5700<br>Facsimile:   212.935.5728<br>Emails: FColucci@colucci-umans.com<br>            DDahan@colucci-umans.com<br><br>Attorneys for Plaintiff Express, LLC |

Co-Counsel for Plaintiff Express, LLC:

BUCHALTER NEMER
Russell L. Allyn (SBN: 143531)
rallyn@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: 213.891.0700
Facsimile: 213.896.0400

Case 2:09-cv-04514-ODW-VBK   Document 189   Filed 10/18/10   Page 17 of 18   Page ID
 #:4534

# CERTIFICATE OF SERVICE
## STATE OF NEW YORK – COUNTY OF NEW YORK

I declare that I am a citizen of the United States and a resident of New York, New York, or employed in the County of New York, State of New York.  I am, and was at the time of service of the document(s) herein referred to, over the age of 18 years, and not a party to the action.  My business address is Colucci & Umans, 218 East 50th Street, New York, New York 10022.

On the date executed below, I served a true copy of the document(s) described as:

**PLAINTIFF EXPRESS, LLC'S OPPOSITION MEMORANDUM TO DEFENDANT WHITE OWL CLOTHING, INC.'S MOTION FOR ATTORNEYS' FEES**

**DECLARATION OF FRANK J. COLUCCI IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**

<u>x</u>   By causing a true and accurate copy of the document(s) to be filed through this Court's Case Management and Electronic Case Filing (CM/ECF) system.  Notice of this filing is automatically generated to all counsel of record, and such service complies with Federal Rule of Civil Procedure 5(d)(3), Local Rules 5-3.3 and 5-4, and General Order 07-08.

<u>x</u>   By causing a true and accurate copy of the document(s) to be sent to counsel for defendant(s) at the addresses set forth below via electronic mail.  The parties have stipulated that documents transmitted to counsel via electronic means shall be deemed properly served pursuant to the Federal Rules of Civil Procedure.

Larry Russ, Esq.
LRuss@raklaw.com
Nathan Meyer, Esq.
NMeyer@raklaw.com
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

-13-   PLAINTIFF'S OPPOSITION TO WHITE OWL'S MOTION FOR ATTORNEYS' FEES
CV09-4514 (ODW)(VBKx)

| | |
|---|---|
| 1 | Angie Lee, Esq. |
| 2 | alee@laklawyers.com<br>Levinson, Arshonsky, & Kurtz, LLP |
| 3 | 15303 Ventura Blvd., #1650<br>Sherman Oaks, CA 91403 |
| 4 | – |
| 5 | Theresa Middlebrook, Esq. |
| 6 | theresa.middlebrook@hklaw.com<br>Holland & Knight |
| 7 | 633 W. Fifth Street, 21st Floor<br>Los Angeles, California 90071 |

      I declare under penalty of perjury under the laws of the United States that the above is true and correct.

      Executed on October 18, 2010, at New York, New York.

| | |
|---|---|
|    Janice K. Yoon    |    s/Janice K. Yoon/    |
| Printed Name | Signature |