Robert A. Levinson, Esq. [SBN 82300]
Angie S. Lee, Esq. [SBN 254018]
Levinson Arshonsky & Kurtz, LLP
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Telephone: (818) 382-3434
Facsimile: (818) 382-3433

Attorneys for Defendant Steps Apparel Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>FOREVER 21, INC.; FOREVER 21 LOGISTICS, LLC; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. CV09-04514 (ODW) (VBKx)<br><br>**DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**<br><br>Date: November 8, 2010<br>Time: 1:30 p.m.<br>Ctrm.: 11 (Honorable Otis D. Wright, II)<br><br>Complaint Filed: June 23, 2009 |

1815-001/89795

Case No. 2:09-cv-04514 ODW (VBKx)      DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

# **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ........................................................................................... 1

II. STEPS IS ENTITLED TO FEES UNDER THE COPYRIGHT ACT ........... 1

    A. Filing and Continuing to Pursue Copyright Infringement Claims On the Basis of Copying Alone Is Objectively Unreasonable. ............................. 1

        1. Plaintiff's position that the Express Plaids were not derivative works for which preexisting works need not to have been disclosed on the copyright registrations is objectively unreasonable and frivolous in light of Mr. Tower's deposition testimony. ........................... 2

        2. Express's position that the Express Plaids are sufficiently distinguishable from the preexisting works to warrant copyright protection is objectively unreasonable and frivolous because Express does not recall what the preexisting works even look like. ... 3

    B. Express's Pre-Trial Investigation Of Its Claims Were Wholly Insufficient. 4

    C. Express Had Improper Motives. ............................................................... 5

    D. An Award of Attorney's Fees For Steps Would Further the Goals of the Copyright Act. ........................................................................................... 5

III. STEPS IS ENTITLED TO FEES UNDER THE LANHAM ACT .................. 6

    A. Filing and continuing to pursue a trade dress infringement claim on the basis of copying alone is unreasonable and groundless. ............................ 6

    B. Express's designation of the Express Track Jacket as a "Top 15" seller is not probative of secondary meaning. .......................................................... 6

IV. APPORTIONMENT ......................................................................................... 7

V. FOR STEPS TO SEEK RECOVERY OF FOREVER 21'S ATTORNEY'S FEES WOULD BE IMPROPER AND PREMATURE ..................................... 7

/ / /

1815-001/89795

i

Case No. 2:09-cv-04514 ODW (VBKx)    DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

LEVINSON ARSHONSKY & KURTZ, LLP

VI. STEPS' $48,762.50 OF ATTORNEY'S FEES AND $2,124.20 OF EXPENSES IS CERTAINLY REASONABLE IN LIGHT OF STEPS' PARTICIPATION IN THE CASE ...................................................................................................... 8
    A. Express's refusal to stipulate that Steps was in no manner involved with the plaid shorts that allegedly infringed upon the "Ocean" and "Jack" designs caused Steps to incur attorney's fees that could have been avoided. ...................................................................................................... 8
    B. Steps' attendance of depositions was reasonable and necessary. ................. 9
    C. The manner in which Steps' crafted its affirmative defenses was efficient and effective. ............................................................................................. 9

VII. STEPS SEEKS ALL ADDITIONAL FEES AND COSTS INCURRED IN CONNECTION WITH THE MOTION, REPLY, AND THE HEARING ON THE MOTION ............................................................................................... 10

VIII. CONCLUSION ............................................................................................... 10

1815-001/89795

ii

Case No. 2:09-cv-04514 ODW (VBKx)   DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

LEVINSON ARSHONSKY & KURTZ, LLP

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Dream Games of Arizona, Inc. v. PC Onsite*
    561 F.3d 983, 998 (9th Cir. 2009) .................................................................. 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*
    499 U.S. 340 ..................................................................................................... 2

*Fogerty*
    510 U.S. 527 ..................................................................................................... 5

*Fuddruckers, Inc. v. Doc's B. R. Others, Inc.*
    826 F.2d 837, 844-45 (9th Cir. 1987) .............................................................. 6

*Gibson Tex, Inc. v. Sears Roebuck & Co.*
    11 F.Supp.2d 439 (S.D.N.Y. 1998) .................................................................. 2

*Sunham Home Fashions, LLC v. Pem-America, Inc.*
    No. 02 Civ. 6284, 2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. Dec. 17, 2002) ......... 3

*Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*
    259 F.3d 25, 38 (1st Cir. 2001) ......................................................................... 6

**STATUTES**

17 U.S.C. §101 ......................................................................................................... 2

LEVINSON ARSHONSKY & KURTZ, LLP

1815-001/89795

iii

Case No. 2:09-cv-04514 ODW (VBKx)       DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

## I. INTRODUCTION

A close review of Express's Opposition shows that Express did not have any basis to bring its claims other than evidence of copying. Evidence of copying alone is insufficient to establish either copyright or trade dress infringement. However, in its Opposition, Express relies, almost entirely, on evidence of copying as justification for bringing and pursuing its claims, just as it unsuccessfully did throughout this litigation. In support of its copyright claims, Express misapplies the law in an attempt to show that the Express Plaids were not derivative works and that the changes from the preexisting works were sufficient to establish the required originality, *despite not knowing, itself, what the preexisting works look like.* As for its trade dress claims, Express relies on its designation of the Express Track Jacket as a "Top 15" item as evidence of its "arguably substantial" sales. However, the "Top 15" designation is assigned prior to the item even being offered for sale and is not related to actual sales. Other than its meaningless "Top 15" designation, all that Express can offer in support of its trade dress infringement claim is of course—evidence of copying.

Steps is entitled to a full award of its fees and costs that were reasonably incurred to defend Express's baseless claims. Steps's fees were certainly reasonable and much of the fees were incurred as a result of Express's unnecessary discovery and staunch refusal to streamline the litigation.

## II. STEPS IS ENTITLED TO FEES UNDER THE COPYRIGHT ACT

### A. Filing and Continuing to Pursue Copyright Infringement Claims On the Basis of Copying Alone Is Objectively Unreasonable.

As stated in Express's Opposition[1], there is a two-prong test for copyright infringement: (1) ownership of a valid copyright; and (2) copying of constituent

---

[1] Express Opposition to the Forever 21 Defendants' Motion for Attorneys' Fees, pages 4-21 of which Express incorporated in its Opposition to Steps' Motion for Attorneys' Fees by reference, will be referred to as "Opposition". Express's Opposition to Steps' Motion for Attorneys' Fees will be referred to as "Opposition II".

1815-001/89795                                           1

elements of the work that are original. *See, Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361. Although copying (i.e., access and substantial similarity) was admitted in this case, there was no evidence to establish the first prong, ownership of a valid copyright, or the second half of the second prong, copying of *constituent elements of the work that are original.* Filing a claim and continuing to pursue a claim when it is apparent that neither of the required prongs can ever be established is objectively unreasonable. Accordingly, Steps should be compensated for the expense it incurred to defend the warrantless claims.

    1.    <u>Plaintiff's position that the Express Plaids were not derivative works for which preexisting works need not to have been disclosed on the copyright registrations is objectively unreasonable and frivolous in light of Mr. Tower's deposition testimony.</u>

Express's reliance on *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F.Supp.2d 439 (S.D.N.Y. 1998) to support its position that the Express Plaids were not derivatives and were copyrightable without disclosure of any sources in their copyright applications is misplaced. The issue in *Gibson Tex* was whether the derivative work was sufficiently original to warrant copyright protection. *Id.* at 441. Whether the plaintiff's design was a derivative work was not at issue; the fact that the plaintiff's design was a derivative work was known and accepted. *Id.* at 440[2]. The test that Express sets out on page 8 of its Opposition does not apply to whether the Express Plaids were derivatives for which the preexisting works needed to be disclosed. (However, the test is applicable to the issue of whether the derivative work is substantially distinguishable from the preexisting work to warrant protection, an issue that will be addressed in subsection (ii).)

To determine whether the Express Plaids were derivative works, 17 U.S.C. §101 is the more appropriate source of law. 17 U.S.C. §101 defines derivative work as "a

---

[2] In the "background" section of the *Gibson Tex* opinion, the court states "…Gibson failed in the application for Registration of Copyright to indicate that Pattern #3602 is a derivative work."

1815-001/89795

2

Case No. 2:09-cv-04514 ODW (VBKx)      DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

work based upon one or more preexisting works". The fact that the plaid designs are based on one or more preexisting works is clear. Mr. Tower unequivocally testified that he utilized preexisting works to design the Express Plaids. *See,* Tower Deposition (Exhibit 7 to Opposition), 62:12-63:3 ("Q: In connection with Exhibit—I think this is 14. Do you remember what you showed the CAD designer, the CAD person, to create this particular plaid? A: No…Q: But you do remember that you did show him something? A: Yes."). In light of Mr. Tower's testimony, Express's position that the Express Plaids are not derivative works is frivolous. Steps should be awarded the fees and expenses incurred to defend itself against Express's frivolous and unreasonable claims.

> 2. Express's position that the Express Plaids are sufficiently distinguishable from the preexisting works to warrant copyright protection is objectively unreasonable and frivolous because Express does not recall what the preexisting works even look like.

Express's reliance on *Sunham Home Fashions, LLC v. Pem-America, Inc.,* No. 02 Civ. 6284, 2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. Dec. 17, 2002) is misplaced because *Sunham* does not involve preexisting works. In *Sunham,* the defendant contended that the plaintiff's works at issue were derivative works because "there is nothing original about plaid and floral designs." *Id.* at 5. There were no allegations that the *Sunham* designers relied on preexisting works. The issue in *Sunham* was whether plaids and floral designs, in general, are entitled to protection. *Id.* at 6 ("Although the idea of a plaid or floral pattern may not of its own be original, the patterns' sizes, shapes, arrangements and colors taken together are original and copyrightable."). In this case, *Sunham* is not on point because Steps' position was not that plaids in general are not copyrightable, but that Express cannot prove that the Express Plaids were sufficiently distinguishable from the preexisting designs without any evidence of what the preexisting designs looked like.

1815-001/89795

3

Case No. 2:09-cv-04514 ODW (VBKx)   DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

The *Gibson Tex* case is more on point, as it involves a preexisting work. In *Gibson Tex,* the defendant purchased a sample of a particular pattern from the plaintiff. *Gibson Tex,* at 441. About one year later, the defendant offered for sale a design that was quite similar to that of the sample pattern purchased from the plaintiff. *Id.* Defendant moved for summary judgment on the basis that the plaintiff's design lacked sufficient originality to warrant copyrightability. *Id.* The court in *Gibson Tex,* after comparing the plaintiff's design with the preexisting work, held that the plaintiff's design entailed "sufficient modification to support a copyright." *Id.* at 443.

In this case, because Express no longer had in its possession the preexisting works and could not recall what the preexisting works looked like, an analysis of whether there was "sufficient modification" is and was impossible. Because of the impossibility to conduct the required analysis to establish its claims, Express's copyright claims are objectively unreasonable and warrant the award of attorney's fees.

**B.  Express's Pre-Trial Investigation Of Its Claims Were Wholly Insufficient.**

Express contends that there was "substantial correspondence" to establish that Express conducted a "thorough investigation" prior to filing this action. However, a closer look at the privilege log upon which Express relies shows that there was only a *single email* to the designer of the Express Plaids, Michael Tower, and a *single email* in response from Mr. Tower. One would tend to believe that further communication with the purported designer would be necessary to establish that its own designs were copyrightable before filing its copyright applications and commencing this action that caused Defendants to hundreds of thousand dollars to defend. The insufficiency of the communications is apparent when considering the utter lack of evidence establishing originality of the Express Plaids. Even a cursory investigation would have shown that Mr. Tower had relied on preexisting works and that the preexisting works were no longer in Express's possession, thereby rendering the establishment of a copyright

1815-001/89795

4

Case No. 2:09-cv-04514 ODW (VBKx)   DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

infringement claim impossible. Express's contention that it conducted a "thorough investigation" is unfounded.

### C. Express Had Improper Motives.

Express contends that its motives in filing its claims were to protect its "unique and exclusive designs" and "given Defendants' reputation for copying without regard to intellectual property rights in the industry, Express's concerns were justified." Opposition, pg. 16, lines 9-15. Express's own statements regarding its motives speak volumes. First, Express's statement that its intentions were to protect its "unique and exclusive designs" is disingenuous in light of the fact that Express had no evidence that the Express Plaids were in fact "unique and exclusive". Second, filing the action based on Defendants' so-called "reputation for copying" without first determining the originality of its own designs shows Express's improper motive of inflicting punishment rather than making itself whole.

Express's disdain for Forever 21 together with the objective unreasonableness of its copyright claims indicate that Express's motives were improper and brought in bad faith.

### D. An Award of Attorney's Fees For Steps Would Further the Goals of the Copyright Act.

"Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty,* 510 U.S. at 527.

In order to further the policies of the Copyright Act, the public needs certainty as to which works are protected and which are not protected. The Copyright Act only protects works that are sufficiently original. Therefore, the public is free to copy

1815-001/89795

5

Case No. 2:09-cv-04514 ODW (VBKx)   DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

unprotected works. A reward of fees to Steps would deter Express and other potential plaintiffs who may hastily register copyrights and file infringement claims without sufficient basis of originality or with the motive to punish those who they believe to have a bad reputation.

### III. STEPS IS ENTITLED TO FEES UNDER THE LANHAM ACT

#### A. Filing and continuing to pursue a trade dress infringement claim on the basis of copying alone is unreasonable and groundless.

Evidence of copying alone does not establish secondary meaning. *See, Fuddruckers, Inc. v. Doc's B. R. Others, Inc.,* 826 F.2d 837, 844-45 (9th Cir. 1987). Filing and pursuing its trade dress infringement claim based on evidence of copying alone is unreasonable in light of: (1) the Express Track Jacket having been introduced for only one season before the case was filed; (2) the Express Track Jacket having been offered for sale for about only four months before it was put on the sale rack; (3) the Express Track Jacket was not specially advertised or promoted; (4) there was not special editorial comment on the Express Track Jacket; (5) the Express Track Jacket suffered lackluster sales; (6) there was no evidence of customer confusion; and (7) there was no direct evidence of secondary meaning by way of customer surveys.

#### B. Express's designation of the Express Track Jacket as a "Top 15" seller is not probative of secondary meaning.

Express's "Top 15" designation is not probative of secondary meaning. The designation simply means that Express *intended* for the item to be amongst the top selling items in the floor set. *See,* Exhibit 27 to the declaration of Frank Colucci in support of Express's motion for summary judgment, 72:4-12 ("A: …we intend them to be amongst the top selling items in the floor set…Q: You intend or they are? A: We don't know until they sell, we haven't sold them yet.") In the context of secondary meaning, the intent for an item to sell well, by itself means little. *See, Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC,* 259 F.3d 25, 38 (1st Cir. 2001)

(holding secondary meaning means the public has made a conscious connection between the trade dress at issue and the source of that trade dress.). Express's reliance on its own self-assigned, pre-sale designation as evidence of secondary evidence is groundless and unreasonable.

## IV. APPORTIONMENT

Adjusted from what was originally stated in Steps's Motion, 45.29% of Steps's attorney's fees is attributable to defending the trade dress claims and 54.71% is attributable to defending the copyright infringement claims. *See,* declaration of Robert A. Levinson in support of Reply ("Levinson Decl. II"), ¶6. While most of Steps' attorney's fees cannot be apportioned to a specific claim, some are able to be apportioned. By combing through the billing descriptions, Steps was able to determine that the exact apportionment was slightly different from the fifty-fifty split that it had originally advanced. Two hours of unique time billed at $300/hour and 4.8 hours of unique time billed at $200/hour were dedicated to trade dress. *See,* Levinson Decl. II, ¶4. While 5.8 hours of unique time billed at $300/hour, 0.2 hours of unique time billed at $275/hour, and 21.8 hours of unique time billed at $200/hour were dedicated to copyright. *See,* Levinson Decl. II, ¶5.

## V. FOR STEPS TO SEEK RECOVERY OF FOREVER 21'S ATTORNEY'S FEES WOULD BE IMPROPER AND PREMATURE

Express contends that Steps not seeking recovery of Forever 21's attorney's fees is an indication of some sort of bad behavior. *See,* Opposition II, pg. 3, lines 13-17. However, Steps seeking Forever 21's attorney's fees in its own attorney's fees motion would be premature and improper in light of Forever 21 bringing its own attorney's fees motion and the pending appeal by Express. Express's position that Steps should seek recovery of Forever 21's attorney's fees is strange and unfounded.

///

///

## VI. STEPS' $48,762.50 OF ATTORNEY'S FEES AND $2,124.20 OF EXPENSES IS CERTAINLY REASONABLE IN LIGHT OF STEPS' PARTICIPATION IN THE CASE

Express is correct in stating that Steps collaborated with the other Defendants whenever appropriate. Steps was mindful of its attorney's fees and expenses, avoiding any duplication of efforts by continuously coordinating with its co-Defendants. Nonetheless, significant individual participation was required for Steps to protect its interests during the ten months of litigation.

### A. Express's refusal to stipulate that Steps was in no manner involved with the plaid shorts that allegedly infringed upon the "Ocean" and "Jack" designs caused Steps to incur attorney's fees that could have been avoided.

Prior to the filing of its motion for summary judgment, Steps met and conferred with Express requesting that Steps be dismissed from the claims relating to the Ocean and Jack copyrights. Despite the fact that Express was fully aware that Steps had only produced the shorts that allegedly infringed the Roth and Bruin designs and not the Ocean and Jack designs, Express obstinately refused.

As a result, Steps commenced a joint effort with White Owl to draft a joint motion for summary judgment. However, Steps later determined that filing a joint motion for summary judgment with Forever 21 would be more efficient. Although Steps shared the same issue with White Owl as to liability for garments they had not produced, Steps shared the more weighty issue of defending the trade dress infringement claim with Forever 21. When Forever 21 merged Steps's arguments with its own, Forever 21 reduced much of Steps's arguments to eliminate redundancies and to meet page limitations. Additionally, much of Steps's arguments were incorporated within White Owl's.

Similarly, while meeting and conferring over jury instructions, Steps requested

1815-001/89795

8

Case No. 2:09-cv-04514 ODW (VBKx)      DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

that Express not include the jury instruction relating to vicarious or contributory liability because neither theory was alleged in the Amended Complaint. *See, Dream Games of Arizona, Inc. v. PC Onsite,* 561 F.3d 983, 998 (9th Cir. 2009) (holding that a plaintiff suing for copyright infringement cannot recover on vicarious or contributory liability theories unless those theories were advanced in the complaint.) Again, Express refused, leaving unnecessary obstacles in Steps's way without regard to the frivolousness of its position. As a result, Steps had no choice but to prepare a motion in limine on the issue.

### B. Steps' attendance of depositions was reasonable and necessary.

Express seems to suggest that Steps' attendance of the depositions of Forever 21's witnesses was unreasonable. Most of the depositions were scheduled for January, less than one month after Steps first appeared in the case. Steps was unfamiliar with Express's case strategy and the players involved and attended the depositions in order to familiarize itself with the case, to ensure that Steps's interests were not compromised and to prepare for its own anticipated deposition. Most of the depositions lasted only a couple of hours, with multiple depositions conducted in a single day.[3]

### C. The manner in which Steps' crafted its affirmative defenses was efficient and effective.

Express also suggests that Steps listing the same affirmative defenses as Forever 21 is an indication that Steps's attorney's fees are unwarranted. Steps, in preparing its answer, reviewed Forever 21's affirmative defenses and after agreeing that the defenses applied, included the same in its own answer. Steps also included a sixth affirmative

---

[3] One particular deposition, Tanya Blair's, was taken on February 12, 2010 after the lunch break that followed Joseph Shin's deposition. *See,* declaration of Angie S. Lee in support of Reply ("Lee Decl. II"), ¶2. Steps' counsel returned to the conference room about ten minutes before the time Ms. Blair's deposition was to commence. *See,* Lee Decl. II, ¶4. Steps' counsel overheard Express's counsel tell the court reporter that the deposition was going to be short and *that he was not planning on asking any questions. See,* id. This was in fact, the case. *See,* Lee Decl. II, ¶5. If Steps's counsel had been aware that Express had no intention of asking Ms. Blair any questions, Steps's counsel would have left for her offices immediately following Mr. Shin's deposition, rather than having lunch at the deposition site to attend an extremely short deposition where no questions of consequence were asked. *See,* Lee Decl. II, ¶6.

defense that had not been included by Forever 21. Steps's answer is a clear example of Steps conducting its defense in an efficient manner by utilizing its co-Defendants' work-product when possible and expending its own separate efforts when necessary.

### VII. STEPS SEEKS ALL ADDITIONAL FEES AND COSTS INCURRED IN CONNECTION WITH THE MOTION, REPLY, AND THE HEARING ON THE MOTION

In addition to the fees and costs requested in its Motion, Steps also seeks all additional fees and costs incurred in connection with the Motion, the Reply, and the hearing on the Motion.

### VIII. CONCLUSION

For the foregoing reasons, Steps respectfully requests that the Court award it $48,762.50 in attorney's fees, $2,124.20 in expenses, and all other fees and expenses incurred in connection with the Motion, Reply, and the hearing on the Motion. Steps further requests such other and further relief as the Court may deem just and proper.

Dated: October 25, 2010                LEVINSON ARSHONSKY & KURTZ, LLP


                                       By:  /s/  Angie S. Lee
                                            ROBERT A. LEVINSON
                                            ANGIE S. LEE
                                            Attorneys for Defendant
                                            STEPS APPAREL GROUP, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2010 the foregoing document described as **DEFENDANT STEPS APPAREL GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES** was filed electronically via the Court's Electronic Case Filing System (ECF). Notice of the filing is being served upon all counsel of record automatically through Notice of Electronic Filing.

_/s/ Angie S. Lee_

LEVINSON ARSHONSKY & KURTZ, LLP