1  HOLLAND & KNIGHT LLP
   Theresa W. Middlebrook, SBN 89709
2  theresa.middlebrook @hklaw.com
   Tara L. Cooper, SBN 239018
3  tara.cooper @hklaw.com
   633 West Fifth Street, 21st Floor
4  Los Angeles, California  90071-2040
   Telephone (213) 896-2400
5  Facsimile (213) 896-2450

6

7  Attorneys for Moving Party Defendant
   WHITE OWL CLOTHING, INC.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 EXPRESS, LLC,                     )  Civil Action No.
                                     )  2:09-cv-04514-ODW-VBK
13        Plaintiff,                 )
                                     )  DEFENDANT WHITE OWL
14     vs.                           )  CLOTHING, INC.'S REPLY IN
                                     )  SUPPORT OF ITS MOTION FOR
15 FOREVER 21, INC.; et al.          )  ATTORNEYS' FEES AND FULL
   inclusive,                        )  COSTS
16                                   )
          Defendants.                )  [Supp. Declaration of Middlebrook
17                                   )  filed herewith]
                                     )
18                                   )  **Date:   November 8, 2010**
                                     )  **Time: 1:30 p.m.**
19                                   )  **Courtroom:  11**
                                     )
20                                   )  First Amended Complaint
                                     )  Filed December 7, 2009
21                                   )

22

23

24

25

26

27

28

—————————————————————————————————————————
            **WHITE OWL CLOTHING, INC.'S REPLY IN SUPPORT OF MOTION FOR
                   ATTORNEYS' FEES AND FULL COSTS**

# <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION. ...................................................................... 1

II.  WHITE OWL SHOULD BE AWARDED ATTORNEYS' FEES
     AND FULL COSTS UNDER THE COPYRIGHT ACT. ............................ 1

     A.   Express's Position Relies on Irrelevant Facts or Facts Not
          Supported by the Evidence. ................................................. 1

          1.   White Owl Never Admitted Access. ......................... 1

          2.   Reliance Upon The Issuance Of Copyright Registrations
               Is  Objectively Unreasonable and/or Frivolous. ...................... 2

          3.   Simultaneous Sales Of Garments From Different
               Suppliers Is No Justification For This Lawsuit. ..................... 3

     B.   Express's Legal Arguments Of Justification Are Meritless. ................ 4

          1.   Reliance on the Instructions to Complete A Form
               Without Conducting An Adequate Investigation is
               Frivolous. ................................................. 4

          2.   Inapplicable Case Law Provides No Justification. ................. 4

          3.   Awarding Attorneys Fees and Costs Would Further The
               Interests of the Copyright Law. ................................ 5

III. WHITE OWL SHOULD BE AWARDED FEES AND COSTS
     UNDER THE LANHAM ACT. .................................................. 6

     A.   Express's Position Relies on Irrelevant Facts or Facts Not
          Supported by the Evidence. ................................................. 6

          1.   Express Justifies Suing White Owl For Trade Dress
               Infringement By Pointing To The White Owl Shorts. .............. 6

     B.   There Are No Trade Dress Rights In The Express Jacket. .................. 7

IV.  The Second, Third and Fourth Causes of Action are Intertwined. ................ 9

V.   Express's Motivation under Both The Copyright And Lanham Acts. ........... 9

     A.   Express Filed and Prosecuted This Litigation In Bad Faith. ............... 9

     B.   Express's Misrepresentations And Its Inability to Accomplish
          Any Legitimate End Through Litigation Are Evidence of Bad
          Faith........................................................................ 9

     C.   Express Had Nothing To Gain By This Litigation But Financial
          Damage To White Owl. .................................................. 10

i

VI.   White Owl's Attorneys Fees and Costs are Not Excessive in the Least, and are at Appropriate Rates. ........................................................11

      A.   White Owl's Involvement In The Defense Of This Action Was Significant, Appropriate, and Successful............................................11

VII.  CONCLUSION. .........................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHITE OWL CLOTHING, INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Bibbero Systems v Coldwell Systems*,
    893 F.2d 1104 (9th Cir. 1990) ................................................................ 1

*Continental Lab. Prods v Medax Int'l.*
    114 F. Supp.2d 992 (S.D.Ca. 2000) ......................................... 8

*Dolori Fabrics, Inc. v. The Limited, Inc.*,
    662 F. Supp. 1347 (S.D.N.Y. 1987) ...................................... 11

*Ets-Hokis v Skyy Spirits, Inc*.,
    323 F.3d 763 (9th Cir. 2003) ................................................. 5

*Fogerty v Fantasy*,
    510 U.S. 517 (1994) ................................................... 1, 5, 6

*Fuddruckers, Inc. v Doc's B R Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) .................................................. 8

*Gibson Tex, Inc. v Sears Roebuck & Co*.,
    11 F.Supp.2d 439 (S.D.N.Y. 1998) ...................................... 4

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
    547 F.3d 1213 (9th Cir. 2008) ............................................... 5

*K-Jack Engineering Company, Inc. v Pete's Newsrack, Inc.*,
    1980 WL 30258 (C.D. Cal. 1980) ........................................ 6

*LA Printex Indus. Inc. v Lia Lee, Inc.*,
    2009 U.S. Dist. LEXIS 23477 ............................................. 2

*Levi Strauss & Co. v Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) .............................................. 8

*Love v. The Mail on Sunday*,
    2007 WL 2709975, No. CV 05-7798 ABC ............................ 6

*Mag Jewelry Co., Inc. v. Cherokee, Inc.*,
    496 F.3d 108,117-18 (1st Cir. 2007) ..................................... 2

iii

*Three Boys Music v Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................ 2

*Wal-Mart Stores, Inc. v Samara Brothers, Inc.*,
    526 U.S. 205 (2000) ........................................................................... 8

*Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*,
    259 F.3d 25 (1st Cir. 2001) ................................................................ 8

STATUTES

15 U.S.C
    §1117 ................................................................................................ 6
    § 1117(a) ......................................................................................... 12

17 U.S.C.
    § 101 ................................................................................................ 4
    § 103 ................................................................................................ 4
    § 505 ............................................................................................... 12

**WHITE OWL CLOTHING, INC.'S REPLY IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND FULL COSTS**

I.     INTRODUCTION.

Express argues against the Court awarding attorneys fees and costs to White Owl in two separate opposition briefs, a 25 page brief directed to all defendants [Docket 187] and an 11 page brief directed to White Owl alone [Docket 189].[1] This Reply is directed to both briefs, which overlap and share arguments (and in at least one instance, take conflicting positions. *See*, II.A.1)  While there may appear to be some logic to Express's arguments, a careful reading of the positions taken, the law cited, and the implications of its arguments, lead to the conclusion that Express had no objectively reasonable legal justification for bringing this lawsuit against any of the defendants and that its filing was in bad faith.

II.    WHITE OWL SHOULD BE AWARDED ATTORNEYS' FEES AND FULL COSTS UNDER THE COPYRIGHT ACT.

A.     Express's Position Relies on Irrelevant Facts or Facts Not Supported by the Evidence.

Express relies on three facts to persuade the Court that its copyright action against White Owl was not frivolous or objectively unreasonable:[2] [Oppo to All Defs 5:23-28] "both access and substantial similarity were admitted," "Plaintiff was in possession of copyright registrations," [Oppo to All Defs 6:8-11] and Forever 21 resold "all five garments "at the same time. Oppo to WO 2:18-21.

1.     White Owl Never Admitted Access.

As Express is well aware and even concedes at Oppo to WO 9:23-10:13, White Owl never admitted "access" to Express's shorts which used the Express

---

[1] References to Express's Opposition to all Defendants are cited as "Oppo to All Defs page:line(s)." References to the Opposition directed to White Owl alone are cited as "Oppo to WO page:line(s)."
[2] Express cites *Bibbero Systems v Coldwell Systems*, 893 F.2d 1104 (9th Cir. 1990) for the position having "colorable" claims is material. Oppo to All Defs 5:23-26. *Biberro* never defines "colorable,"and in any event, its application of a duel standard in awarding attorneys fees under the Copyright Act was overruled by *Fogerty v Fantasy*, 510 U.S. 517 (1994).

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

Plaid Design fabrics.[3]  Express also argues in the alternative, and solely with respect to White Owl, that "access" to Express's shorts was established "as a matter of law" because Express offered its shorts for sale in its stores and on its website. Oppo to WO 10:1-13.  Relying upon an <u>admission</u> of access is significantly different than relying upon an <u>argument</u> that access has been established <u>as a matter of law</u>.  Admissions are admissible evidence but a legal argument is not. Further, while Express relies on two cases[4] for its position that access was shown in this case as a matter of law, its argument is an over-simplication of the law of access. Access remains a question of fact, not a matter of law, and is to be determined based upon the specifics in each case.  *Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 496 F.3d 108,117-18  (1st Cir. 2007), discussed in 4 Nimmer on Copyright, ¶13.02[5] In this case, access was not admitted, nor shown as a matter of law.

> ## 2.     Reliance Upon The Issuance Of Copyright Registrations Is Objectively Unreasonable and/or Frivolous.

Express sued White Owl for <u>direct</u> infringement,i.e., "manufacture and/or sales" of infringements, and argues that the fact that it held registrations in hand for these four copyrights justified its filing suit against White Owl for infringement of, apparently, <u>all four copyrights.</u>  *See* FAC ¶64; Oppo to All Defs 7:13-14.  Express does not deny that at the time it filed its FAC naming White Owl, it knew that White Owl was not the manufacturer or seller of the claimed infringements of two

---

[3] Other than using similar plaids, the single White Owl short design (as versus fabric design) is <u>nothing like</u> the two different Express short designs. *See*, Section III.A.1 herein. That is certainly consistent with <u>no</u> copying and <u>no</u> access.

[4] *LA Printex Indus. Inc. v Lia Lee, Inc.*, 2009 U.S. Dist. LEXIS 23477, and *Three Boys Music v Bolton*, 212 F.3d 477 (9th Cir. 2000)

[5] See, for instance, the "unusual posture" of *Mag Jewelry* where plaintiff's works were generally available, defendant's works were virtually identical, but independent derivation was proven. Defendant prevailed because the plaintiff failed to prove access.

2

out of the four copyrights.[6] Express did not sue White Owl for contributory infringement, or under any liability shifting theory - <u>but for direct infringement alone</u>. Knowing from the outset that White Owl did not manufacture or sell the charged infringements of two copyrights, Express's filing of those claims was unquestionably frivolous from the outset.

With respect to the other two copyright registrations, a registration affects the burden of proof only. There are no factual or legal grounds for Express's apparent assumption that possession of two copyright registrations on the other two Express Plaid Design fabrics would relieve it from investigating the facts relating to creation of the fabrics prior to filing for those registrations. Express claims it conducted a "thorough investigation" of its rights prior to suing. Oppo to All Defs 3:2-10.  Even assuming, *arguendo*, that Express did in fact conduct some level of investigation, that investigation was clearly insufficient as it did not uncover basic creation and originality facts revealed by Express's witness, Michael Tower, during a deposition of less than two hours.[7]

3.   <u>Simultaneous Sales Of Garments From Different Suppliers Is No Justification For This Lawsuit</u>.

The fact that Forever 21 sold garments it received from two suppliers at the same time is certainly no justification at all for suing one supplier for the goods that the other supplier provided, or vice versa.

---

[6] Express's arguments relating to another alleged infringement of "Bruin" by White Owl are specious and irrelevant to this lawsuit, which is beyond the scope of the Complaint.

[7] Tower's deposition was taken on Thursday, April 22, 2010, commencing at 1:03 p.m. and terminated at 2:50 p.m. See Ex.Q to Supplemental Decl. of Middlebrook.

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

1    B.    Express's Legal Arguments Of Justification Are Meritless.

2        1.    Reliance on the Instructions to Complete A Form Without

3        Conducting An Adequate Investigation is Frivolous.

4    Express states it held a good faith belief that the Express Plaid Designs were

5    "copyrightable" because "the Copyright Act only requires derivatives of

6    preexisting works to be identified - not inspiration," citing 17 U.S.C. 101 and 103.

7    Oppo to All  Defs 8:6-8. Assuming "copyrightable" means "registerable,[8] Express

8    cannot claim good faith reliance on copyright application form completion

9    requirements when it failed to conduct the very investigation of the facts behind

10   the creation of the Express Plaid Designs necessary to complete the forms correctly

11   in the first place.  Accordingly, Express's purported reliance on the copyright

12   application instructions is objectively unreasonable and frivolous.

13       2.    Inapplicable Case Law Provides No Justification.

14   Express claims it had a good faith belief that the Express Plaids Designs

15   "were not derivatives" based upon the "pertinent standard" of 'substantial' versus

16   'merely trivial' standard in *Gibson Tex, Inc. v Sears Roebuck & Co*., 11 F.Supp.2d

17   439 (S.D.N.Y. 1998). Oppo to All Defs 8:9-24.  However, *Gibson* does not even

18   discuss that issue - *Gibson* deals with a different question, i.e., whether the

19   differences between a pre-existing work and its derivative are sufficiently original

20   so as to create a separate copyrighted work.[9]  Express's reliance on *Gibson* is

21   misplaced for the further reason that Express had no original pre-existing works to

22   compare with the Express Plaid Designs.  Express continues its argument by

23

24

---

25   [8] "Copyrightable" must mean "registerable", because Express's phrase "…to be identified.." seems to refer to the process of completing a copyright application under Section 409(9) of the

26   Copyright Act. The other possible meaning of "copyrightable" i.e., "protectable by copyright" does not make sense in the context of Express's argument.

27   [9] The sentence in the *Gibson* decision immediately prior to the extensive quotation by Express

28   makes this clear: "Conversely, Gibson cannot succeed on its summary judgment motion without showing that its design possesses sufficient originality for copyright."

4

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

1   comparing one of the Burberry signature plaids[10] and one of the Express Plaid

2   Designs, which is irrelevant to this case.

3       Express's reliance on *Ets-Hokis v Skyy Spirits, Inc*., 323 F.3d 763, 766 (9th

4   Cir. 2003) is also misplaced.  Express argues that the defendants copied the

5   Express Plaid Designs used by Express "*with no variation or change whatsoever.*"

6   Oppo to All Defs 15:25, emphasis in original. This incorrectly assumes that

7   copying alone is significant, and ignores that Express knew or should have known

8   that it held no valid copyrights under the law of *Feist*.

9       Express cites to *Halicki Films, LLC v. Sanderson Sales & Mktg., 5*47 F.3d

10  1213, 1230-31 (9th Cir. 2008), for the proposition that a prevailing party is not

11  granted an award of attorneys' fees as a matter of course.  This citation is

12  misleading at best and disingenuous at worst in that the district court in *Halicki*

13  *Films* denied fees because that <u>case did not involve a decision based on the</u>

14  <u>copyright claim</u>. The district court applied the *Fogerty* factors and determined an

15  award of attorneys' fees was not warranted because the case was decided "on the

16  basis of standing, not on the question whether the Shelby Defendants were in fact

17  copyright infringers." *Id,* at 1230.

18          3.   <u>Awarding Attorneys Fees and Costs Would Further The</u>

19              <u>Interests of the Copyright Law</u>.

20      "Because copyright law ultimately serves the purpose of enriching the

21  general public through access to creative works, it is peculiarly important that the

22  boundaries of copyright law be demarcated as clearly as possible.  To that end,

23  defendants who seek to advance a variety of meritorious copyright defenses should

24  be encouraged to litigate them to the same extent that plaintiffs are encouraged to

25  litigate meritorious claims of infringement." *Fogerty,* 510 U.S. at 534.  The

26  question is whether "[t]he successful defense herein served the purposes of the

27

28  ---
[10] Indeed, the Burberry plaids are protected by trademark registrations, not copyrights.

5

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

1   copyright law by maintaining the boundaries of liability under copyright law[.]"

2   *Love v. The Mail on Sunday,* 2007 WL 2709975,  No. CV 05-7798 ABC (PJWx),

3   at *5 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).   The award

4   sought would clearly reward White Owl for defending against an improper action.

5   III.   WHITE OWL SHOULD BE AWARDED FEES AND COSTS UNDER

6         THE LANHAM ACT.

7         A.    Express's Position Relies on Irrelevant Facts or Facts Not

8               Supported by the Evidence.

9   Express's claim for trade dress infringement, its Second Cause of Action,

10  does not incorporate any of the allegations relating to the Express or Forever 21

11  shorts or any copyright claims in the Express Plaid Designs. Docket 35, at 15:25-

12  27.  The trade dress cause relates solely to the Forever 21 Jacket. *Id*, 16:1-21.

13        1.    Express Justifies Suing White Owl For Trade Dress

14              Infringement By Pointing To The White Owl Shorts.

15  Despite that, Express justifies its action against White Owl for trade dress

16  infringement by the Forever 21 Jacket because it is "undisputed" [Oppo to WO

17  2:13-21] that the White Owl shorts were "virtually identical" to the Express

18  shorts.[11]   First, filing and asserting charges of trademark infringement "without

19  any basis of admissible evidence for a good faith belief that such infringement was

20  occurring renders this an exceptional case under 15 U.S.C 1117." *K-Jack*

21  *Engineering Company, Inc. v Pete's Newsrack, Inc.,* 1980 WL 30258 *3(C.D. Cal.

22  1980)  Express does not deny that it knew White Owl was not the manufacturer or

23  seller of the Forever 21 Jacket at the time Express filed its First Amended

24  Complaint. Second, Express's trade dress claim relating to the Express Jacket,

25  which is not even a plaid, has absolutely nothing to do with the copyright claims

26

27  _____

28  [11] While the Steps shorts shared the same garment features as the Express shorts, the
    White Owl shorts did not.

6

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND
FULL COSTS**

for plaids used in shorts. Finally, Express's premise, that the (irrelevant) White Owl shorts are "virtually identical" to the Express shorts, is false.[12] This is apparent by simply viewing pictures of the respective shorts which were attached by Express to its First Amended Complaint and are attached to the Supplemental Declaration of Middlebrook filed herewith, as Exhibits R and S. The differences are apparent:

| FEATURE | EXPRESS OCEAN Ex R 1-2 | WHITE OWL 46B Ex R 3-4 |
|---|---|---|
| FIT | cargo fit | trim fit |
| WAIST | part of body of garment | separate piece, bias cut |
| BELT HOOPS | single strap hoops | two strap hoops; at center back waist, with straps crossed making an X |
| SIDE POCKETS | plain | ornamentation printed at entrance to pockets |
| BACK POCKETS | flap covering opening | button closure; no flap |

| FEATURE | EXPRESS JACK Ex S 1-2 | WHITE OWL 48B Ex S 3-4 |
|---|---|---|
| FIT | extra wide cargo fit | trim fit |
| WAIST | part of body of garment | separate piece, bias cut |
| BELT HOOPS | single strap hoops | two strap hoops; at center back waist, with straps crossed making an X |
| BELT | Yes | none |
| SIDE POCKETS | Plain | ornamentation printed at entrance to pockets |
| BACK POCKETS | flap covering opening | button closure; no flap |

B.   There Are No Trade Dress Rights In The Express Jacket.

Express claims that it held an objectively reasonable belief that it held trade dress rights in the Express Jacket because there was intentional copying [Oppo to All Defs 20:3-21:2], there were "substantial" sales of the Express Jacket, and Express designated the Express Jacket as a "Top 15." Oppo to All Defs 18:21-24.

---

[12]  The chart above is included, and the exhibits attached to the Supplemental Declaration of Middlebrook, are included both so that the Court is not misled by a failure to dispute this fact and to show yet another example of the habitual "loose" use of facts by Express in this litigation.

1        With respect to intentional copying, there is absolutely nothing inappropriate

2   in copying alone; it has long been recognized that copying alone creates no

3   inference of secondary meaning in trade dress. *Fuddruckers, Inc. v Doc's B R*

4   *Others, Inc.*, 826 F.2d 837, 844-45 (9th Cir. 1987); *Continental Lab. Prods v*

5   *Medax Int'l.* 114 F. Supp.2d 992, 1013 (S.D.Ca. 2000)  On sales, *Yankee Candle*

6   makes clear that the sales figures must be "<u>high</u>."[13]  Express's records show that

7   when compared with sales of its other garments, including other jackets, the sales

8   of the Express Jacket were miserable. Express is using the phrase "significant

9   sales" in a vacuum and without any meaningful comparison.  This claimed fact is

10  illusory and provided no support for any reasonable belief.

11       Finally, Express's <u>self-designation</u> of the Express Jacket as a "Top 15" (the

12  meaning of which is not clear) is legally irrelevant. Secondary meaning is "the

13  mental association by a substantial segment of <u>consumers and potential customers</u>

14  between the alleged [trade dress] and a single source of the product." *Levi Strauss*

15  *& Co. v Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc, internal

16  quotations marks omitted, emphasis added) Secondary meaning means that the

17  <u>members of the public</u> have made a conscious connection between the trade dress

18  and Express as its source. *Yankee Candle*, 259 F.3d at 38.   Thus, a self-awarded

19  designation such as "Top 15" is no evidence whatsoever of the manner in which

20  the claimed trade dress is perceived by consumers, potential consumers or

21  members of the public. Therefore this "fact" does not demonstrate a reasonable

22  basis for Express to believe it held trade dress rights in the Express Jacket.

23       Express's arguments that (1) the White Owl's sale of shorts to Forever 21 is

24  relevant to trade dress rights in a jacket, that (2) the White Owl shorts are "virtually

25  identical" to Express's shorts <u>are simply inexplicable</u>. Likewise, Express's claim

26  ────────────

27  [13] *Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*, 259 F.3d 25, 43 (1st Cir. 2001), is recognized as a controlling case interpreting the Supreme Court decision in *Wal-Mart Stores, Inc. v Samara Brothers, Inc.,* 526 U.S. 205 (2000), the seminal product design trade dress

28  case.

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

1   that it held trade dress rights in a jacket (1) first offered to consumers the prior

2   year, (2) which it never independently promoted, (3) sold poorly compared to other

3   jackets, (4) received no editorial comment, (5) which it relegated to the sale racks

4   after only months, and (6) which it never reordered is inexplicable.

5   IV.   The Second, Third and Fourth Causes of Action are Intertwined.

6

7       There is no factual difference alleged between the Second Cause of Action,

    and the Third and Fourth Causes, as they are based on identical facts.

8

9   V.   Express's Motivation under Both The Copyright And Lanham Acts.

10      A.   Express Filed and Prosecuted This Litigation In Bad Faith.

11      Express's motivation is a factor that may be considered by the Court in its

12  decision on attorneys fees and costs under both the Lanham Act and the Copyright

13  Act. Express claims its motivation in this case was a generalized desire to protect

14  its unique and exclusive designs and its reputation. Oppo to All Defs 16:4-17;

15  Oppo to WO 6:12-15.  Express does not explain how it might accomplish this end

16  by suing White Owl for the three garments it knew were provided by another

17  supplier, not White Owl.

18      B.   Express's Misrepresentations And Its Inability to Accomplish Any

19          Legitimate End Through Litigation Are Evidence of Bad Faith.

20      Further, misrepresenting facts and the law to the Court throughout the course

21  of this briefing is evidence of bad faith. For example, Express claims that as

22  "prudent legal counsel" it declined to "release" White Owl simply because White

23  Owls "main argument" for dismissal was that it was a "small company" and "made

24  no profits." Oppo to WO 2:12-23; 7:5-9. As the correspondence from counsel for

25  White Owl to counsel for Express clearly stated, White Owl (which is small and

26  made next to no profits) asked to be released from the Second to Fourth Causes of

27  Action because it had no involvement whatsoever with the Forever 21 Jacket. *See*,

28  Decl. Middlebrook, Docket 182-1, ¶¶ 8 - 10, Exhibits F & G.

9

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

1    Further, Express argues that White Owl should not recover its attorneys fees

2    "given the minimal scope of its involvement throughout this litigation." Oppo to

3    WO 8:12-22. It presents the Court with a partial list of White Owl's activities in

4    this litigation. This is a grossly unfair and misleading argument - it ignores that

5    White Owl had to respond to two full rounds of discovery <u>from Express</u> (70

6    requests for production, 121 Requests for Admission, and 19 massive

7    interrogatories), and ignores Express's gamesmanship in litigation and during

8    discovery. Express does not deny that (1) it rebuffed three separate requests to

9    dismiss White Owl from the claims relating to garments with which it had no

10   involvement, (2) refused a ten day extension of time for White Owl to respond to

11   discovery unless White Owl agreed to impossible conditions, (3) first refused to

12   provide access to fabrics for comparison when its discovery to White Owl

13   demanded admissions that could be answered only by comparison to those fabrics,

14   then when it finally agreed to provide access, Express significantly delayed

15   production of those items.  Finally, Express ignored multiple inquiries from White

16   Owl about an upcoming noticed document production, and then simply failed to

17   appear. All of these actions <u>by Express</u> grossly drove up legal fees.

18       C.    <u>Express Had Nothing To Gain By This Litigation But Financial</u>

19            <u>Damage To White Owl</u>.

20   Ironically, Express argues that White Owl's attorneys fees are "Excessive

21   and Unreasonable <u>Given **White Owl's** Financial Means</u>." Oppo to WO 8:10-11

22   (emphasis added),  In doing so, Express admits that White Owl is a relatively small

23   supplier of insignificant financial means. For Express to argue that Express should

24   not be ordered to pay attorneys fees and costs that White Owl necessarily incurred

25   to respond to Express's litigation because <u>White Owl</u> could not afford them is both

26   illogical and arrogant. In effect, Express is arguing that it had the right to file a

27   baseless and extremely expensive lawsuit against a small company, and refuse to

28   dismiss certain claims even though Express was aware White Owl had no

10

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**

connection to those claims, but White Owl should not have retained experienced and competent defense counsel because that would be a huge financial burden. This result would unjustly reward Express for filing a meritless lawsuit.  As Express's counsel is obviously aware, "attorney's fees are 'particularly appropriate where plaintiff is a small business,'" such as here.  *See, e.g., Dolori Fabrics, Inc. v. The Limited, Inc.*, 662 F. Supp. 1347 (S.D.N.Y. 1987)  (awarding fees to small prevailing plaintiff company in case involving Colucci & Umans).  Here, the relative size of White Owl and Express militates in favor of an award of fees.

Finally, Express had nothing to gain by this lawsuit. Even had Express prevailed, it had no right to statutory damages, no right to attorneys fees, and its chances of obtaining an injunction were realistically nil.  At most, Express had $9,000 in White Owl's net profits from two shorts to gain, at, however, a cost of many hundreds of thousands of dollars in attorneys fees to reach that point. This was a lawsuit filed with ill will against White Owl. There is no other explanation.

VI. **White Owl's Attorneys Fees and Costs are Not Excessive in the Least, and are at Appropriate Rates.**

A. White Owl's Involvement In The Defense Of This Action Was Significant, Appropriate, and Successful.

White Owl took the lead on demonstrating via summary judgment that Express's copyright registrations were unenforceable.  Its realistic risk was under copyright, and immediately[14] after Michael Tower's deposition occurred, it served discovery directed to that claim. Eighty percent (20 of 25 pages) of its Motion for Summary Judgment [Docket 90-1] were directed to copyright validity.  In contrast, Forever 21 and Steps' Motion directed roughly the same amount of their brief to the trade dress issues [Docket 104].  The Court's Opinion dealt with the question of

---

[14] The Tower deposition occurred in the afternoon, in New York, on a Thursday. White Owl's discovery was served the following Monday.

copyright validity in the first 13 out of 18 pages.  White Owl's contribution was valuable and decisive.

Further, White Owl's counsels' hourly charges are completely appropriate, particularly when comparing these rates to the market rates for experienced counsel set forth in Exhibit O to the Declaration of Middlebrook filed in support of its Motion.[15] White Owl and its counsel, carefully using productive senior counsel, at billing rates under partners, and associates and paralegals when that was more appropriate and efficient, to defend a four count lawsuit, respond to two massive rounds of discovery, file and win a Motion for Summary Judgment, and all the while preparing for trial, for under $150,000 in fees prior to the fees and costs of filing of this motion.  Further, in preparing this Reply to Express's Opposition, Express drove legal costs up by avoiding the 25 page limited by spreading its arguments over 36 pages in two briefs.

VII.   CONCLUSION.

White Owl respectfully looks to this Court to exercise its discretion and make it whole by awarding its attorneys fees and costs under both 17 USC 505 and 15 USC 1117(a), as it would be grossly unjust for White Owl to be left with the burden of its litigation costs and expenses.

October 25, 2010                     HOLLAND & KNIGHT LLP

                                     __/S/ Theresa W.  Middlebrook_____
                                     Theresa W. Middlebrook
                                     Counsel for Defendant
                                     WHITE OWL CLOTHING, INC.

---

[15] Comparable firms in the Los Angeles area listed in Middlebrook Exhibit O and include Express's co-counsel, Buchalter Nemer (partners $448/associates $287), Knobbe Martens (partners $473/associates $287), and Manatt (partners $626/associates $407).  White Owl's counsel's rates were certainly not excessive.

WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 633 West Fifth Street, 21st Floor, Los Angeles, California 90071.

On  October 25, 2010, I served the document described as **DEFENDANT WHITE OWL CLOTHING, INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**  on the interested parties in this action as follows:

 [X] (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and General Order 07-08, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date.  It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system.  The transmission was reported as complete and without error.

 <u>X</u>    I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

   Executed on October 25, 2010, Los Angeles, California.


          _____/S/_____
           Tara L. Cooper

**WHITE OWL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND FULL COSTS**