RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 82768
lruss@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Telephone:   (310) 826-7474
Facsimile:   (310) 826-6991

Attorneys for Defendants
Forever 21, Inc., Forever 21
Logistics, Inc., Forever 21
Retail, Inc., Jin Sook Chang,
and Do Won Chang

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPRESS LLC, <br><br> Plaintiff, <br><br> v. <br><br> FOREVER 21, INC.; FOREVER 21 LOGISTICS, INC.; FOREVER 21 RETAIL, INC.; JIN SOOK CHANG; DO WON CHANG; WHITE OWL CLOTHING, INC.; STEPS APPAREL GROUP, INC. dba STEPS OF CA; and DOES 1 through 10, inclusive, <br><br> Defendants | Case No. CV09-04514 ODW (VBK) <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS FEES AND COSTS** <br><br> Complaint Filed:  June 23, 2009 |

RUSS, AUGUST & KABAT

# TABLE OF CONTENTS

page

I.   INTRODUCTION ................................................................................ 1

II.  COPYRIGHT: EXPRESS CANNOT AND DOES NOT REFUTE THAT TOWER DID NOT DESIGN ANYTHING; ITS ASSERTION THAT A REGISTRATION CERTIFICATE CONSTITUTES AN ABSOLUTE DEFENSE IS NOT WELL TAKEN ............................................................................................ 3

     A.   Express's Opposition Does Not Identify any Meaningful Pre-Filing Investigation or Original Design by Michael Tower. .................. 4

     B.   None of the Authorities Relied Upon By Express, Undermine Forever 21's Entitlement To Fees In This Case......................... 6

     C.   The Rule 68 Offer and Express's Conduct Show the Case Was Frivolous and Calculated to Harass. ............................................... 7

III. THIS CASE IS EXCEPTIONAL BECAUSE EXPRESS KNEW OR SHOULD HAVE KNOWN IT DID NOT HAVE A LEGITIMATE TRADE DRESS CASE.  TO THIS DAY, EXPRESS CONTINUES TO AVOID DEALING WITH UNAMBIGUOUS CASE LAW HOLDING THAT IT NEVER HAD A TRADE DRESS CLAIM ............................................................. 8

IV.  EXPRESS PROSECUTED ITS CLAIMS WITH THE INTENT TO HARASS ..................................................................................... 10

V.   FOREVER 21'S FEES WERE REASONABLE ................................. 11

VI.  ADDITIONAL FEES SPENT FILING THE FEE MOTION AND IN REPLY AND HEARING SHOULD BE AWARDED.................... 12

VII. CONCLUSION ................................................................................ 13

RUSS, AUGUST & KABAT

# TABLE OF AUTHORITIES
**page**

RUSS, AUGUST & KABAT

**Cases**

*B&H Mfg. Co., Inc. v. Bright,*
2006 U.S.Dist. LEXIS 12249 at *45 (E.D.Cal. Mar. 3, 2006) ................... 12

*Banff, Ltd., v. Express, Inc.*
921 F.Supp. 1065 (S.D.N.Y. 1995) ..................................................... 3

*Bibbero Systems, Inc. v. Colwell Systems, Inc.,*
893 F.2d 1104 (9th Cir 1990) ........................................................... 3

*Cabrales v. County of Los Angeles,*
935 F.2d 1050, 1053 (9th Cir. 1991) ................................................. 11

*Chrico v. Gateway Oaks, LLC,*
2007 U.S. Dist LEXIS 20229 (E.D. Mich. Mar. 22, 2007) ...................... 6

*Continental Lab. Prods. v. Medax Int'l,*
114 F.Supp.2d 992, 1013 (S.D. Cal. 2000) ......................................... 8

*D.S.P.T. Int'l, Inc. v. Nahum,*
2008 U.S. Dist. LEXIS 25405 (C.D.Cal. Mar. 17, 2008) ...................... 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23, *123 S. Ct. 2041 (2003)* ............................................... 3

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
528 F.3d 696 (9th Cir. 2008) .......................................................... 10

*Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994) ...................................................................... 3

*Gibson Tex, Inc. v. Sears Roebuck & Co.,*
11 F.Supp.2d 439 (S.D.N.Y. 1998) .................................................... 6

*Halicki Films, LLC v. Sanderson sales & Mktg.,*
547 F.3d 1213 (9th Cir. 2008) ......................................................... 6

*Lahiri v. Universal Music and Video Distribution,*
606 F.3d 1216 (9th Cir. 2010) ......................................................... 6

*Mattel Inc. v. Walking Mt. Prods.,*
353 F.3d 792, 816 (9th Cir. 2003) .................................................... 2

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,*
2010 U.S. Dist. LEXIS 97011 at *6 (N.D.Cal. Sept. 16, 2010) ................ 8

*Sunham Home Fashions, LLC v. Pem-America, Inc.,*
2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. December 17, 2002) .................. 7

*Twentieth Century Fox Film Corp. v. Entm't Distrib.,*
429 F.3d 869, 884-85 (9th Cir. 2005) ............................................... 12

*Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.,*
63 F.3d 516, 526 (7th Cir. 1995) ..................................................... 11

*Walker & Zanger, Inc. v. Paragon Indus,*
  465 F.Supp.2d 956, 960 (N.D. Cal. 2006) .................................................... 8

*Wyatt Tech. Corp.v. Malvern Instruments, Incorporation,*
  07-CV-8298 (C.D.Cal. June 17, 2010) ...................................................... 12

*Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC,*
  259 F.3d 25, 38 (1st Cir. 2001)................................................................. 8

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Express's opposition to an award of attorney fees is eloquent, but completely off topic.   After the fact, Express masterfully colors its prosecution of the case as reasonable from beginning to end by completely ignoring the very specific facts articulated in defendants' moving papers.  For example, there is no explanation as to why Express made defendants spend hundreds of thousands of dollars defending claims worth less than $75,000,[1] particularly where Forever 21 offered to accept a judgment in that amount pursuant to a Rule 68 Offer.  Similarly, there is no attempt to rationalize or somehow justify the need to sue the founders of Forever 21 as individual defendants and then harass these founders with days of depositions that have no application to the merits of the claims in issue.  By failing to address all of the evidence justifying the award of attorney fees in this case, Express once again relies upon technical arguments when it should be looking at real world facts.

In its moving papers, Forever 21 concentrates on the objective standards to be employed in evaluating whether a fee award is appropriate.  With respect to copyright, the Court evaluates such indicia as whether the claim was frivolous in light of facts known or which should have been known by the plaintiff, what plaintiff's motivations were other than success on the merits, objective unreasonableness or other meaningful evidence that may reflect upon a losing party's objectives. The moving papers included fundamental facts that Express chose to ignore.  In addition to lacking any reasonable basis for suing Forever 21's founders or rejecting an offer for more damages than could have been legitimately awarded at trial, Express never addresses this Court's conclusion that Express's allegations of originality were "unsupported by even a scintilla of supporting evidence."  Order [Docket No. 168] at 12:1.

RUSS, AUGUST & KABAT

---

[1] Express never disputes that its case was worth no more than $75,000.

1

RUSS, AUGUST & KABAT

As to motivation, Express never explains why it continued to aggressively prosecute copyright claims under circumstances where it knew it could not recover statutory attorney fees, where Forever 21 immediately removed products from its shelves and offered up its total gross profits without expense offsets!  The Court must assume that there is no good explanation.   Indeed, the only logical explanation for Express's conduct is that it wished to engage in punitive tactics against Forever 21, or to strong-arm a settlement that would unjustly enrich Express and its counsel.

Express's opposition pursues a similar strategy in connection with its trade dress claims.[2]   Again, no explanation about why the Changs had to be named as party defendants.   No explanation about why an offer of judgment for all of Forever 21's gross profits was rejected.  No explanation as to why, in a trade dress matter worth less that $20,000, Express went on a costly discovery fishing expedition, intended to challenge Forever 21's alleged "shop and copy" business model.   As well, Express's opposition marks at least the *fifth* brief in which Express blindly refuses to even address the four cases that hold that Express did not and could not have had a valid trade dress claim based upon facts Express knew or should have known at the time of filing.   Accordingly, Express cannot argue in good faith that it's trade dress claim was anything other than objectively unreasonable, because it has not, in more than 100 pages of briefing, even *attempted* to rebut the controlling case law that holds it had no case.

So here we have a party with an objectively unreasonable trade dress claim, involving less than  $20,000 in damages, continuing to aggressively prosecute said claim after a Rule 68 Offer of Judgment.  If Express has an explanation about a

---

[2] The standard for fees under the Lanham Act is similar.  The case must be one of groundless, unreasonable, vexatious, or pursued in bad faith. *Mattel Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 816 (9th Cir. 2003)

2

proper purpose for engaging in this conduct, it has not been articulated in the opposition.

Finally, as the Supreme Court has held in *Dastar,* "in general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." 539 U.S. 23, 32 (2003), copying *is not unfair unless it is unlawful*. The mere fact of copying, as Express learned to its credit – using the same counsel – back in 1995,[3] does not support a claim unless there is protectable intellectual property. Express clearly ignored this proposition when it filed suit here.

Express made its own choices. It dogmatically pursued non-meritorious claims and forced Forever 21 to spend a lot of money, even though Forever 21 offered to give Express what it could expect at trial if it prevailed. There is simply no good explanation or justification for this conduct, making this matter a perfect example of why attorney fees should be awarded. In short, if attorney fees are not appropriate here, it is difficult to imagine a scenario in which they are.

## II. COPYRIGHT: EXPRESS CANNOT AND DOES NOT REFUTE THAT TOWER DID NOT DESIGN ANYTHING; ITS ASSERTION THAT A REGISTRATION CERTIFICATE CONSTITUTES AN ABSOLUTE DEFENSE IS NOT WELL TAKEN

Express's opposition to awarding fees on its copyright claim, based primarily on superseded[4] and, for some reason, Southern District of New York authority, fails to rebut the very significant fact that it filed a copyright application for something it did not in fact create. On that basis, fees should be awarded.

---

[3] *Banff, Ltd., v. Express, Inc.* 921 F.Supp. 1065 (S.D.N.Y. 1995) (Express prevailing defendant in trade dress claim against it when it copied a sweater)
[4] *Bibbero Systems, Inc. v. Colwell Systems, Inc.,* 893 F.2d 1104 (9th Cir 1990) *superseded* by *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994)

RUSS, AUGUST & KABAT

Russ, August & Kabat

### A. Express's Opposition Does Not Identify any Meaningful Pre-Filing Investigation or Original Design by Michael Tower.

In defense of its conduct, Express now contends that it really did engage in a meaningful pre-filing investigation.  Unfortunately, no facts are offered to genuinely support that contention.

Express, referring to a privilege log (not produced until June 18, 2010, just two weeks before the discovery cutoff), claims it shows *substantial* correspondence and *extensive* pre-filing investigation, and that its copyright claim therefore was well-founded.  Opposition at 3 (emphasis in original).  The privilege log produced by Express, however, supports the opposite conclusion.[5]  Colucci Decl. exh. 1.  The privilege log suggests there were two broad "who made this" inquiry e-mails to the Express staff, and a *single e-mail* back from each of Michael Tower, Ed Field (the CAD designer) and Marisa Jacobs.  There is also what appears to be a forwarding e-mail from the legal department back to Express's counsel.  Significantly, **there is no record of any back and forth between either the legal department or Colucci & Umans and Mr. Tower**.  A single e-mail[6] from Mr. Tower, with no response, does not constitute substantial or extensive correspondence.

The alleged pre-filing discussions Express had with Mr. Tower are completely undermined by the fact that, under penalty of perjury, Mr. Tower testified that he had no recollection of any communications with counsel.  See Exhibit "E" to the Declaration of Nathan D. Meyer ("Meyer Decl."),  April 22, 2010 Deposition Transcript of Michael Tower pp. 49:6-50:9.  Moreover, Express's counsel fought tooth and nail to prevent any discovery of its purported pre-filing

---

[5] And Express would have been more than welcome to waive privilege on this issue if it thought it would show a real investigation.

[6] The privilege log does not indicate length.

1    investigation.   Express cannot be given credit for any meaningful pre-filing

2    investigation because it provides no evidence that it in fact engaged in one.

3          Focusing on what Express knew or should have known, it is instructive to

4    take another look at Mr. Tower's declaration [Docket No. 158-1], filed in a last-

5    ditch attempt to save the case at the summary judgment phase.   Mr. Tower's

6    declaration is *consistent* with the argument that he took a single pre-existing plaid

7    and made de minimus changes.   As well, the facts that Mr. Tower (1) took a tear

8    sheet, (2) had a CAD operator scan it in (Decl. at 2:9-12); (3) orally instructed the

9    CAD operator to make *de minimus* changes ---[Tower did not remember any

10   changes](Decl. 2:16-18); and (4)  filled out a color-up form (Decl. 2:19-21) are not

11   the least bit inconsistent with his Declaration .   Even a declaration drafted by

12   Express's counsel could not in good faith allege actual copyrightable changes.[7]

13         Express's resort to photographs in the opposition attempts to distract the

14   Court from the facts in this matter, as opposed to a hypothetical that has no

15   objective reality.   Opposition at 9.   Forever 21 agrees that if the Burberry plaid

16   were the only source plaid, a derivative work could be copyrightable.   But

17   Burberry was obviously not the source plaid because Mr. Tower would surely have

18   remembered if it were.   The problem of course, is that *Express claims it discarded*

19   *the Source Plaid.  So now, we can never know whether Mr. Tower "slavishly"*

20   *copied another source plaid.  What Express ought to know, however, is that it*

21   *cannot receive credit for making changes to a plaid it threw out or simply failed to*

22   *produce in this matter.*

23         More important, and as noted by the Court, even after the lack of an original

24   design became apparent after Mr. Tower's deposition on April 19, Express still

---

[7] The testimony of Mr. Oman is not helpful in this regard.  Mr. Oman essentially testified that, in the abstract, the plaids were copyrightable, a fact that Forever 21 does not dispute.  Neither Mr. Oman nor, due to Express's actions, the copyright office had any knowledge regarding creation of the plaids.

5

RUSS, AUGUST & KABAT

1   pressed forward with the case, taking several depositions and even moving for

2   Summary Judgment.

3       In sum, Express never had any evidence of original creation, has no

4   evidence of substantial investigation, and insisted on pressing ahead long after it

5   became apparent its case could not possibly succeed.

6   **B.   None of the Authorities Relied Upon By Express,**

7   **Undermine Forever 21's Entitlement To Fees In This Case.**

8       As this Court held, and the Ninth Circuit affirmed, in *Lahiri v. Universal*

9   *Music and Video Distribution,* 606 F.3d 1216 (9th Cir. 2010), pursuit of a copyright

10  claim without inquiry into authorship would be "reckless" under the laws of the

11  United States.  It is just the same here, and the Court should award Forever 21 its

12  full attorneys' fees on the copyright claim.

13      The authorities cited by Express primarily involve situations where attorney

14  fees were not awarded because the defendant prevailed on a technicality.  *See, e.g.*

15  *Halicki Films, LLC v. Sanderson sales & Mktg.,* 547 F.3d 1213 (9th Cir. 2008)

16  (case decided on standing grounds, not merits).  Likewise, in *Chrico v. Gateway*

17  *Oaks, LLC,* 2007 U.S. Dist LEXIS 20229 (E.D. Mich. Mar. 22, 2007), the court

18  criticized the ultimate prevailing defendants for failing to hammer the points on

19  which they ultimately prevailed.

20      Other cases cited by Express are inapposite *because real evidence of*

21  *creation was not in dispute.*  Here, Express has no specific evidence of original

22  creation – Mr. Tower had no specific recollection, and any documentary evidence

23  was allegedly "lost" by Express.  The out-of-circuit authority cited by Express in

24  support of the claim that their case was not frivolous stand in marked contrast to

25  the facts here.  For example, in *Gibson Tex, Inc. v. Sears Roebuck & Co.,* 11

26  F.Supp.2d 439 (S.D.N.Y. 1998) the source design was produced, and the specific

27  creative steps were identified in detail by the plaintiff: "it put the design in repeat

28  by reducing the original and piecing the small sheets together to form a large sheet

RUSS, AUGUST & KABAT

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS FEES AND COSTS

1    that would fit the printer." *Id.* at 442.  Likewise, in *Sunham Home Fashions, LLC*

2    *v. Pem-America, Inc.,* 2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. December 17,

3    2002) the testimony indicated that the fabric design in question was original, not

4    derivative or 'inspired,' which is a polite euphemism for the same thing.  *Id.* at

5    *19.

6      The facts of these cases stand in contrast to the undisputed facts according to

7    Michael Tower.  Had Mr. Tower been able to identify specific, non-color changes

8    made to the pre-existing plaid, or had Express been able to produce the pre-

9    existing plaid so it could be examined, this would have been a different case.  But

10    the fact that Express could not identify any changes, a fact that it should have

11    known *before* it filed this case, makes *Gibson* and *Sunham* inapposite.  As such,

12    this case was both frivolous and unfounded, so fees should be awarded. [8]

13    **C.**  **The Rule 68 Offer and Express's Conduct Show the Case**

14         **Was Frivolous and Calculated to Harass.**

15      Express gives short shrift to the Rule 68 offer and Forever 21's settlement

16    efforts in its papers, but this offer, which offered Forever 21's gross profits, well in

17    excess of the net profits it could recover if it succeeded at trial, proves that  this

18    case was objectively unreasonable, at the very latest,  after January 25, 2010.  After

19    that date, recovery in excess of its maximum best-case award was on the table.

20    Again, Express' opposition never offers any explanation as to why it continued to

21    require the defendants to spend hundreds of thousands in defense costs on a

22    $75,000 case, where an offer of judgment for more than the net recovery

23    imaginable was served on Express.   Express' improper motive is transparent and

24    there is not even an attempt to address Express alleged "proper" motives.

25

RUSS, AUGUST & KABAT

26   [8] Express's argument that it expected its registrations, which were procured with minimal
investigation, to have a presumptive effect, is a red herring.  Although the Court did indeed find

27   that Express was not entitled to a presumption, it also found that Defendants rebutted any
presumption that may have existed.  Since Express always knew the presumption was rebuttable,

28   this argument bears no weight.

7

RUSS, AUGUST & KABAT

III. **THIS CASE IS EXCEPTIONAL BECAUSE EXPRESS KNEW OR SHOULD HAVE KNOWN IT DID NOT HAVE A LEGITIMATE TRADE DRESS CASE.   TO THIS DAY, EXPRESS CONTINUES TO AVOID DEALING WITH UNAMBIGUOUS CASE LAW HOLDING THAT IT NEVER HAD A TRADE DRESS CLAIM**

As noted in Forever 21's fee motion, four cases, *Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC*, 259 F.3d 25, 38 (1st Cir. 2001); *Walker & Zanger, Inc. v. Paragon Indus,* 465 F.Supp.2d 956, 960 (N.D. Cal. 2006) and *Continental Lab. Prods. v. Medax Int'l*, 114 F.Supp.2d 992, 1013 (S.D. Cal. 2000) unambiguously provide that Express's trade dress claims fail as a matter of law. See Fee Motion at 16 (docket no. 172) (pointing out Express's failure to cite these cases).  Forever 21 argued that Express's failure to address these cases weighed in favor of finding this case extraordinary.  Despite this, in the opposition to the fee motion, *Express continues to fail to address these cases at all*.  In two summary judgment oppositions, two summary judgment replies, and three fee motion oppositions, totaling more than 107 pages, these cases do not appear a *single time* in Express's papers.

Perhaps, had Express argued that these cases were somehow distinguishable, inapposite, wrongly decided, superseded, overruled,[9] *something*, it would suggest that Express at least believed it at one point had a case.  Yet Express has done none of these things – it simply ignored the above authorities because it does not have – and has never had – an answer to them.  As noted in *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,* 2010 U.S. Dist. LEXIS 97011 at *6 (N.D.Cal. Sept. 16, 2010), a claim must raise "debatable issues of law" to avoid a finding of an

---

[9] These efforts would have been futile, but that simply goes to show the case should never have been filed.

exceptional case.  Express utterly refused to debate the issues of law raised by *Yankee* and *Continental*, *because the issues of law here were not debatable, indeed were well settled.*

The following issues were all beyond debate:

- Express's sales, of less than 17,000 units were well below the numbers found in *Yankee* and *Continental*, which were in turn insufficient to survive summary judgment, even when combined with intentional copying. In *Yankee,* heavily cited by Forever 21 and deliberately ignored by Express, sales of millions of units plus deliberate copying were held insufficient to constitute secondary meaning.  Likewise, in *Continental,* sales in excess of 100,000, plus deliberate copying, was held insufficient to constitute secondary meaning; [10]

- Express failed to conduct a survey and had no other direct evidence of infringement;

- Express's length of use, a single season, was less than that of any case cited by any party in which a plaintiff prevailed on a trade dress claim;

- Express never advertised the track jacket specifically;

- Express put the track jacket on the sale rack after just a few months;

---

[10] It must be noted that the jacket was not a top 15 seller. the "top 15" designation appearing on Express BrandGuides did not reference the Express Track Jacket as either a top 15 seller or an expected top 15 seller. Randy Pyles testified that "top 15" referred to track jackets generally as a category, and Colin Campbell, the person most knowledgeable regarding Express's sales, had no idea what the "top 15" category covered. See Exhibit "F" to Meyer Decl.,  April 23, 2010 Deposition Transcript of Randall Pyles pp. 76:25- 77:3 (describing Top 15);  See Exhibit "G" to Meyer Decl., April 30, 2010, Colin Campbell Deposition Transcript pp. 72:2-12; 73:18-74:8 (no idea what Top 15 means).  In any event, even if Express's sales were substantial, that, even combined with copying, is not enough to make a showing of secondary meaning.

2923-003 101025 Reply MtAttyFees4.doc

RUSS, AUGUST & KABAT

- Intentional copying was the *only* factor in Express's favor, and the law provides that intentional copying is not enough.

Yet Express filed this action (it lost entirely on facts within its knowledge), forced the founders and a Senior Vice President of a multi-billion dollar company to be deposed, and engaged in a far-reaching inquiry into Forever 21's business model (none of which could prove helpful under the above cases) when it did not even have a prayer of meeting the standard for trade dress.

If the facts on this record are insufficient to justify an award of fees, again, it is difficult to what set of facts would. Express's only real argument in opposition is that trade dress is *never* extraordinary, because secondary meaning is usually an issue of fact. Opposition at 18:14. By that logic, a fee award would be impossible on a trade dress claim. This is not the case. *See, e.g. Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008) (awarding fees on a trade dress claim); *D.S.P.T. Int'l, Inc. v. Nahum*, 2008 U.S. Dist. LEXIS 25405 (C.D.Cal. Mar. 17, 2008). Simply put, based on controlling law to which Express *never had an answer*, they had no case. As such, this case in undoubtedly exceptional, and fees should be awarded.

## IV.   EXPRESS PROSECUTED ITS CLAIMS WITH THE INTENT TO HARASS

In light of Express's aggressive discovery posture and rejection of the Rule 68 offer, discussed above, the Court must further conclude that this case was prosecuted only to harass. Litigation is meant to make whole, not to punish. Express, which is a competitor of Forever 21, and its counsel, which had recently concluded a trial against it, knew very well that Forever 21 would be more than sufficiently solvent to satisfy any judgment, and knew that it was a large company.

It further knew that its failure to register its copyrights in a timely manner made a recovery of fees or statutory damages impossible. Yet Express insisted on

RUSS, AUGUST & KABAT

1  suing Forever 21's founders, for no apparent reason other than to harass them –

2  adding them as defendants could not increase Express's best-case recovery by a

3  single red cent.

4      At every stage of this case, Express made clear that it's goal was something

5  other than recovery of the $75,000 that represented it's best-case scenario.  Express

6  rejected a Rule 68 offer for the full amount – a point it deliberately ignores in its

7  papers.  Express engaged in discovery against the Changs and focused on Forever

8  21's business model at the expense of investigating the actual issues in this case.

9  Express has no explanation as to why it did this, other than to drive up costs.

10     By adopting these tactics, Express assumed the risk that it might lose.

11 Forever 21 should not be forced to pay for Express's tactics.  Forcing Express to

12 pay for its choices would serve the purposes of the Copyright and Lanham Acts,

13 and would deter frivolous litigation.  It is only fair that Express absorb the fees it

14 forced Forever 21 to expend for no good reason.

15 **V.     FOREVER 21'S FEES WERE REASONABLE**

16     Apart from a quick one-sentence allegation that Forever 21's fees were

17 unreasonable, Express challenges only a single portion of Forever 21's fees, the

18 $76,631.15 it spent on discovery motion practice (out of approximately

19 $500,000.00 in total fees).  This attack does not support a downward adjustment

20 for two reasons.  First, even motions that a party lost on may be recoverable to the

21 prevailing party, if part of the overall winning strategy on a claim.  *Cabrales v.*

22 *County of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir. 1991) ("If a plaintiff

23 ultimately wins on a particular claim, she is entitled to all attorney's fees

24 reasonably expended in pursuing that claim - even though she may have suffered

25 some adverse rulings"); *see also Uniroyal Goodrich Tire Co. v. Mut. Trading*

26 *Corp.,* 63 F.3d 516, 526 (7th Cir. 1995) ("MTC wishes to exclude fees incurred for

27 any work performed by Uniroyal's attorneys on motions which were eventually

28 denied. MTC does not provide us with authority in support of this proposition, nor

RUSS, AUGUST & KABAT

11

RUSS, AUGUST & KABAT

does our own review uncover any. Common sense, however, informs us that such a rule is inappropriate.").   Here, the discovery disputes all arose from Express's insistence that Forever 21's entire business model was on trial.   Forever 21 ultimately prevailed on those claims (indeed, on all claims).   As such, those fees are recoverable.

Second, Forever 21 has segregated those fees, and to the extent there is any downward adjustment, it should be limited to a portion of the $76,631.15 spent on discovery motion practice.   The remaining $420,009.85 goes unchallenged by Express.

As for expenses, Express ignored *Twentieth Century Fox Film Corp. v. Entm't Distrib.,* 429 F.3d 869, 884-85 (9th Cir. 2005) (costs read broadly), the controlling case on this issue, which holds that the other litigation expenses described in the motion are recoverable.   The older and out-of-circuit case law cited by Express does not control over *Twentieth Century.*[11]

## VI.   ADDITIONAL FEES SPENT FILING THE FEE MOTION AND IN REPLY AND HEARING SHOULD BE AWARDED

In addition to the $496,641.00 in fees and $34,969.43 requested in the Motion, Forever 21 also requests an additional $13,967.00 in fees and $3,658.28 in expenses incurred in drafting the reply and filing the fee motion itself,[12] plus an additional $2,260.00 expected in appearing at the hearing.[13]   See supplemental declaration of Nathan D. Meyer.

---

[11] The one more recent case cited by Express, *B&H Mfg. Co., Inc. v. Bright,* 2006 U.S.Dist. LEXIS 12249 at *45 (E.D.Cal. Mar. 3, 2006), awarded Lexis fees, and reduced them apparently because of lack of documentation and lack of evidence of practices in the legal community. Documentation was not an issue here (Lexis fees were well documented).  In any event, the more recent and local *Wyatt Tech. Corp.v. Malvern Instruments, Incorporation*, 07-CV-8298 (C.D.Cal. June 17, 2010) awarded full Lexis fees to the prevailing defendants, and it is now common practice in Los Angeles law firms for all case research to be done online, and billed for.
[12] Forever 21 was able to incorporate fees up to approximately 24 hours before the fee motion was filed in its original motion.
[13] Obviously, this latter amount should not be awarded if the hearing is taken off calendar.

## VII.   CONCLUSION

For the reasons stated above and in the motion, the court should award Forever 21 its reasonable attorneys fees and expenses.  The Court should award $496,641.00 in fees and $34,969.43 in fees through September 28, plus an additional $16,227.00 in fees through the hearing, for a total of $512,868.00 in fees ($510,608.00 if the hearing is taken off calendar) and $38,627.71 in expenses.

DATED: OCTOBER 25, 2010                    RUSS, AUGUST & KABAT
                                           Larry C. Russ
                                           Nathan D. Meyer


                                           By:  /s/_____
                                                Nathan D. Meyer
                                                Attorneys for Defendants

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1  **CERTIFICATE OF SERVICE**

2        I hereby certify that on October 25, 2010 the foregoing document described

3  as **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS**

4  **FEES AND COSTS** was filed electronically via the Court's Electronic Case Filing

5  System (ECF).   Notice of the filing is being served upon all counsel of record

6  automatically through Notice of Electronic Filing.

7

8

9                                                    /s/ Nathan D. Meyer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2923-003 101025 Reply MtAttyFees4.doc